1 | Howard Wollitz  [SBN: 58674]
CHARLSTON, REVICH & WOLLITZ LLP
2 | 1925 Century Park East, Suite 1250
Los Angeles, California  90067-2746
3 | Telephone:  (310) 551-7000
Facsimile:   (310) 203-9321
4 | E-Mail:      hwollitz@crwllp.com

5 | Attorneys for Defendant,
Homestead Insurance Company

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO**

11 | HDI-GERLING AMERICA INSURANCE
COMPANY, a New York Corporation,

12

13 |                                Plaintiff,

14 |          v.

15 | HOMESTEAD INSURANCE COMPANY,
a Pennsylvania Corporation; GREAT
16 | AMERICAN B&S INSURANCE
COMPANY, an Ohio Corporation, formerly
17 | known as AGRICULTURAL EXCESS
AND SURPLUS INSURANCE
18 | COMPANY; and DOES 1-10,

19 |                                Defendants.

Case No. CV 08-1716 PJH

**NOTICE OF MOTION AND MOTION
TO DISMISS (Fed. R. Civ. P. 12(b)(6))**

Date:   June 25, 2008
Time:   9:00 a.m.
Dept:   3
         [Hon. Phyllis J. Hamilton]

20

21 | TO ALL PARTIES AND THEIR COUNSEL:

22 |          NOTICE IS HEREBY GIVEN that on June 25, 2008 at 9:00 a.m., or as soon thereafter

23 | as this matter may be heard, in the United States District Court for the Northern District of

24 | California (San Francisco Division), located at 450 Golden Gate Avenue, San Francisco,

25 | California, in the courtroom of The Honorable Phyllis J. Hamilton, Defendant HOMESTEAD

26 | INSURANCE COMPANY ("Homestead") will and hereby does move the Court, pursuant to

27 | ///

28

Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

By way of this Motion, Homestead seeks the following relief: Dismissal of Plaintiff's first cause of action for declaratory and dismissal of Plaintiff's third cause of action for contribution.  Dismissal is required under Rule 12(b)(6) because the allegations pled in support of these causes of action fail to state a claim upon which relief can be granted as a matter of law.  This motion is based upon this Notice, Motion and Memorandum of Points and Authorities, Declaration of Joanne Horak, pleadings and other papers on file in this action, and other oral or written submissions as the Court may entertain.

CHARLSTON, REVICH & WOLLITZ LLP

/S/ Howard Wollitz

By: _____
        Howard Wollitz
Attorneys for Defendant,
Homestead Insurance Company

**MEMORANDUM OF POINTS AND AUTHORITIES**
**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    GERLING'S ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     Allegations Regarding the Underlying Actions . . . . . . . . . . . . . . . . . . . . . . . 2

      B.     Allegations Regarding the Homestead Excess Insurance Policies . . . . . . . . . . 2

III.   RELEVANT PROVISIONS OF THE HOMESTEAD POLICIES GERLING
       FAILED TO CITE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.     Gerling's Failure to Properly Allege the Terms and Conditions of the
            Homestead Policies Is a Fatal Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.     Gerling Has Conflated Homestead's Duty to Indemnify and Duty to
            Defend under Homestead's Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.     Homestead Had No Duty to Defend Jonce In the Underlying Actions . . . . . . 9

      D.     Homestead Had No Duty to Indemnify Jonce Prior to the Exhaustion of
            All Underlying Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.     Even If the Homestead Policies Underlying the Policies Issued by
            United National, AIG and American Equity Were Triggered by the
            Exhaustion of Those Policies, the "Other Insurance" Condition States
            That Those Homestead Policies Are "Excess Insurance over All Other
            Valid and Collectible Insurance Not Described in the Schedule A." . . . . . . . 13

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.,* 7 Cal.4th 503,
        28 Cal.Rptr.2d 475 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . 6

*Bell Atlantic Corp. v. Twombly,* 27 S.Ct. 1955, 167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . 6

*Branch v. Tunnell,* 14 F.3d 449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cmty. Redevelopment Agency v. Aetna Cas. & Surety Co.,*
        50 Cal.App.4th 329, 57 Cal.Rptr.2d 755 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal. App. 3d 1540,
        259 Cal. Rptr. 298 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Employers Ins. of Wasau v. Granite State Ins. Co.*, 330 F.3d 1214 (9th Cir. 2003) . . . . . . . 11

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 54 Cal. Rptr. 104 (1966) . . . . . . . . . . . . . . . . . . . . . . 9

*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Neitzke v. Williams*, 490 U.S. 319 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 949 F.3d 788 (9th Cir. 2007) . . . . . . . . . . . . . . . . . 6

*SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780 (9th Cir. 1996) . . . . 6

*State of New York v. Blank*, 27 F.3d 783 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46 Cal.App.4th 1810,
        54 Cal.Rptr.2d 176 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750 (7th Cir. 2002) . . . . . . . . . . . . . . . . . 9

*Twaite v. USF&G Ins. Co.*, 216 Cal.App.3d 239, 264 Cal.Rptr. 598 (1990) . . . . . . . . . . . . . 7

*Wise v. Southern Pacific Co.*, 223 Cal.App. 2d 50, 35 Cal.Rptr. 652 (1963) . . . . . . . . . . . . . 7

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Local Rule 7-4(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      Defendant Homestead Insurance Company ("Homestead") requests that this Court

4   grant its motion to dismiss HDI-Gerling America Insurance Company's ("Gerling") complaint

5   for declaratory relief and contribution pursuant to Federal Rules of Civil Procedure Rule

6   12(b)(6) for failure to state a claim upon which relief may be granted.  Gerling seeks

7   declaratory relief and contribution from Homestead pursuant to Homestead's purported duties

8   arising from excess liability insurance policies issued by Homestead to Jonce Thomas

9   Construction Company ("Jonce") with respect to two construction defect actions: *Emery Bay*

10  *II Associates v. Devcon Construction Inc., et al.*, Alameda County Superior Court Case

11  Number RG04144077 (the "*Emery Bay* Action") and *Chartwell HOA, et al. v. 44 Third Street,*

12  *Ltd. LP, et al.*, Santa Clara County Superior Court Case Number 1-03-CV-814851 (the

13  "*Chartwell* Action") (collectively the "Underlying Actions").  Specifically, Gerling alleges

14  that Homestead had a duty to defend Jonce and a duty to indemnify Jonce in the Underlying

15  Actions.

16      Gerling's complaint against Homestead is defective because the complaint fails to

17  properly allege the terms and conditions allegedly giving rise to a duty to defend and the duty

18  to indemnify.  In the alternative, Gerling's complaint fails because: (1) Homestead could have

19  no duty to defend Jonce so long as any other insurer had a duty to defend Jonce; and (2)

20  Homestead could have no duty to indemnify Jonce until all underlying primary insurance

21  policies issued to Jonce were exhausted.

22      Pursuant to Local Rule 7-4(a)(4), Homestead defines the issue presented by this

23  motion as follows:

24      1)    Whether Gerling's failure to properly allege the terms and conditions of

25            the Homestead policies is a fatal defect.

26      2)    Whether Homestead had a duty to defend Jonce and thus contribute to

27            Gerling's defense of Jonce given that the Homestead policies clearly

28

1       and unambiguously state that Homestead would not have a duty to

2       defend Jonce if any other insurer had a duty to defend.

3   3)    Whether Homestead had a duty to indemnify Jonce and thus contribute

4       to Gerling's indemnification of Jonce prior to complete horizontal

5       exhaustion, including the exhaustion of Gerling's underlying primary

6       policy issued to Jonce.

7 **II.    GERLING'S ALLEGATIONS**[1]

8     **A.    Allegations Regarding the Underlying Actions**

9     In its Complaint, Gerling alleges that its predecessor company, Gerling America

10 Insurance Company, issued general liability insurance, policy number 8020350GLP, under

11 which Jonce is an insured. (See Compl. ¶ 9.) Gerling alleges that the plaintiffs in the

12 Underlying Actions alleged that various defects in the construction of the dwellings caused

13 property damage during Homestead's policy periods. (See Compl. ¶ 30.) Gerling alleges that

14 Jonce tendered its defense in the Underlying Actions to Gerling. (See Compl. ¶ 8.) Gerling

15 alleges that it defended Jonce in the Underlying Actions. (See Compl. ¶¶ 56, 62.) Gerling

16 alleges that it settled the *Chartwell* Action under a full reservation of rights, contributing

17 $425,000.00 towards settlement. (See Compl. ¶ 34.) Gerling alleges that the *Emery Bay*

18 action settled in or around September 2006. (See Compl. ¶ 38.) Gerling alleges that, under a

19 full reservation of rights, Gerling contributing $302,842.00, the remainder of Gerling's policy

20 limits, towards the *Emery Bay* settlement. (See Compl. ¶ 38.) Gerling alleges that upon

21 exhaustion of Gerling's policy limits, Homestead contributed to the settlement of the *Emery*

22 *Bay* Action. (See Compl. ¶ 36.)

23     **B.    Allegations Regarding the Homestead Excess Insurance Policies**

24     Gerling alleges that Homestead issued the following policies to Jonce: Policy No. UL-

25 03641, effective June 30, 1994 to June 20, 1995; Policy No. UL-04314, effective June 30,

26

27     [1] In reviewing a Rule 12(b)(6) Motion, the Court must accept as true all material allegations in the Complaint. *See Neitzke v. Williams*, 490 U.S. 319 (1989); *NL Indus., Inc. v.*

28 *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

1  1995 to June 30, 1996; Policy No. UL-04935, effective June 30, 1996 to June 30, 1997; and

2  Policy No. UL-05389, effective June 30, 1997 to June 30, 1998 (collectively the "Homestead

3  Policies"). (See Compl. ¶ 10.)

4      Gerling does not attach copies of the Homestead Policies. Instead, Gerling merely

5  quotes two provisions from the policies. Gerling asserts the Homestead Policies state:

6      I. INSURING AGREEMENTS

7      COVERAGE A – EXCESS LIABILITY INSURANCE (FOLLOWING

8  FORM)

9      Coverage A is excess insurance and follows the underlying insurance except as

10     otherwise stated in this policy.

11  1.      We will pay those sums that the Insured must legally pay as damages

12          because of bodily injury, property damage, personal injury, or

13          advertising injury, caused by an occurrence which occurs during the

14          policy period of this policy in excess of the sums payable as damages in

15          the underlying insurance or would have been payable but for the

16          exhaustion of the applicable limit of insurance.

17                          * * *

18  (See Compl. ¶ 11.)

19      Next, Gerling quotes a portion of the policies' definition of "underlying insurance":

20  "the insurance policies listed in Schedule A – Schedule of Underlying Insurance Policies,

21  including any renewals or replacements thereof which provide the underlying coverages and

22  limits stated in Schedule A – Schedule of Underlying Insurance Policies . . . ." (See Compl. ¶

23  12.)

24      Gerling alleges that Schedule A of Homestead policy number UL-03641 identifies

25  commercial general liability coverage issued by "United National" as "underlying insurance."

26  (See Compl. ¶ 13.) Gerling alleges that Schedule A of Homestead policy number UL-04314

27  identifies commercial general liability coverage issued by Gerling as "underlying insurance."

28

1    (See Compl. ¶ 14.)  Gerling alleges that Schedule A of Homestead policy number UL-04935

2    identifies commercial general liability coverage issued by "AIG" as "underlying insurance."

3    (See Compl. ¶ 15.)  Gerling alleges that Schedule A of Homestead policy number UL-05389

4    identifies commercial general liability coverage issued by "American Equity" as "underlying

5    insurance."  (See Compl. ¶ 16.)  Gerling alleges that the, prior to the settlement of the

6    Underlying Actions, the limits on the policies issued by United National, AIG and American

7    Equity became exhausted.  (See Compl. ¶¶ 17, 18 and 19.)  Gerling alleges that its policy of

8    primary insurance did not exhaust until the settlement of the *Emery Bay* Action in September

9    2006.  (See Compl. ¶ 38.)

10   **III.    RELEVANT PROVISIONS OF THE HOMESTEAD POLICIES**

11   **GERLING FAILED TO CITE**

12   In addition to the provisions cited by Gerling in its Complaint, the Homestead Policies

13   contain other provisions necessary to determine Homestead's duty to defend and indemnify

14   Jonce.  Each of the Homestead Policies contain the following policy provisions found in the

15   Excess/Umbrella Liability Policy, form number UL-502 (9/90):

16   **I. INSURING AGREEMENTS**

17   **COVERAGE A – EXCESS LIABILITY INSURANCE (FOLLOWING**

18   **FORM)**

19   1.    **We** will pay those sums that the **Insured** must legally pay as **damages**

20   because of **bodily injury**, **property damage**, **personal injury**, or

21   **advertising injury**, caused by an **occurrence** which occurs during the

22   policy period of this policy in excess of the sums payable as **damages**

23   in the **underlying insurance** or would have been payable but for the

24   exhaustion of the applicable limit of insurance.

25   2.    **We** have no other obligation or liability to pay sums or perform acts or

26   services except as shown under DEFENSE SETTLEMENTS.

27   * * *

28

4.    Coverage A is subject to the terms of the **underlying insurance** except:

* * *

d.    For any obligation to provide or to pay for legal defense. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.

* * *

**II. DEFENSE SETTLEMENTS**

* * *

1.    **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend.  If w**e** elect to join in the defense of such **claims** or **suits**, we will pay all expenses we incur.  **You** shall give **us** the opportunity to associate with **you** or the underlying insurers or both in the defense and control of any **claims**, **suit**, or other proceedings which involve or appear likely to involve this insurance.  **You** and **your** Insurers shall cooperate with us in the defense of such **claim**, **suit** or proceeding.

* * *

**CONDITIONS**

* * *

7.    Other Insurance

The insurance afforded by this policy shall be excess insurance over all **underlying insurance** covering a loss covered by this policy whether or not valid and collectible.  It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A – Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the **Insured**, covering a loss also covered by this policy.

* * *

(See Decl. of Joanne Horak ¶ 8.)[2]  Despite Gerling's failure to quote the above-listed provisions, these provisions are essential for determining Homestead's obligations towards Jonce in the Underlying Actions.

## IV.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *See* Fed.R.Civ.P. 12(b)(6); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir.2003).  Rule 12(b)(6) permits dismissal of a claim when plaintiff has failed to assert a cognizable legal theory or there are insufficient facts alleged to support plaintiff's theory.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990); *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996).  To survive a 12(b)(6) motion for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face"; in other words, when all the allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff, there must be sufficient facts pled to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, — U.S. ----, ----, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).  A motion to dismiss should be granted where there is either a lack of a cognizable legal theory or an absence of sufficient *facts* alleged under a cognizable legal theory.  See Balistreri, 901 F.2d at 699 (9th Cir.1990); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 949 F.3d 788, 794 (9th Cir. 2007) ("the court need not accept conclusory allegations of law or unwarranted inferences, and dismissal is required if the facts are insufficient to support a cognizable claim").

///

///

---

[2] The attached policies are true and correct copies of the policies in Homestead's possession; however, Policy Nos. UL-04314, UL-04935 and UL-05389 are missing endorsement form "EUL 788 (4/95)" entitled "Amendatory Endorsement Assault and Battery Exclusion". That assault and battery exclusion is not relevant to the instant construction defect litigation-related coverage dispute.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    ARGUMENT

### A.    Gerling's Failure to Properly Allege the Terms and Conditions of the Homestead Policies Is a Fatal Defect[3]

In order to plead a cause of action for breach of contract, a plaintiff must allege the existence of a contract. *See Wise v. Southern Pacific Co.*, 223 Cal.App. 2d 50, 59, 35 Cal.Rptr. 652, 656-57 (1963), overruled on other grounds by *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.,* 7 Cal.4th 503, 510, 28 Cal.Rptr.2d 475, 456-67 (1994).  To do so, "it is absolutely essential" for a plaintiff to either set forth verbatim those promises allegedly breached or to provide a comprehensive statement of the specific legal effect of those promises.  *See Twaite v. USF&G Ins. Co.*, 216 Cal.App.3d 239, 252, 264 Cal.Rptr. 598, 604-05 (1990) ("to state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect").

Although Gerling is not asserting a breach of contract in the title of the Complaint, it is seeking this Court to issue declaratory judgment as to Homestead's duties under its contract of insurance with Jonce, as well as contribution from Homestead based upon Homestead's purported contractual duties to Jonce.  Gerling's Complaint is necessarily dependent upon the existence of certain duties in a contract of insurance between Homestead and Jonce, Homestead's and Gerling's mutual insured.  Nonetheless, Gerling has failed to properly allege the Homestead Policies' terms and conditions.  Gerling has selectively quoted a small portion of the policy's insuring agreement in support of its claim that Homestead owed a duty to defend and indemnify without citing all relevant portions of the policy.  In fact, the portion of the policy cited by Gerling in its Complaint does not even speak to Homestead's defense obligations.  Gerling's failure to properly allege the terms and conditions of the Homestead

---

[3] Homestead notes that in federal lawsuits based upon diversity jurisdiction such as the instant case the Court must apply the substantive law of the state where they are located. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  The interpretation of a contract is considered "substantive law" for Erie purposes. *See State of New York v. Blank*, 27 F.3d 783, 788 (2nd Cir. 1994). As such, California provides the "substantive" law governing this lawsuit.

**Case No. CV 08-1716 PJH**
**NOTICE OF MOTION AND MOTION TO DISMISS**

CHARLSTON, REVICH
& WOLLITZ LLP
10335K.WPD

1  Policies is fatal.[4]  This failure renders the Complaint defective and subject to this Motion to

2  Dismiss.

3         **B.    Gerling Has Conflated Homestead's Duty to Indemnify and Duty to**

4               **Defend under Homestead's Policies.**

5         The Homestead Policies clearly distinguish between Homestead's duty to indemnify

6  Jonce and its duty to defend Jonce.  In the small section of the policy quoted by Gerling in its

7  Complaint, the Homestead policies provide that Homestead "will pay those sums that the

8  **Insured** must legally pay as damages because of ... **property damage** ... caused by an

9  **occurrence** which occurs during the policy period of this policy in excess of the sums payable

10  as **damages** in the **underlying insurance** or would have been payable but for the exhaustion

11  of the applicable limit of insurance."  That policy language sets forth, in part, Homestead's

12  duty to indemnify Jonce.  Contrary to Gerling's implicit assertions, however, that provision

13  does not speak to Homestead's duty to defend Jonce.

14         The limits of Homestead's duties under the provision quoted by Gerling becomes clear

15  when one reads the policies' next provision:

16         2.    **We** have no other obligation or liability to pay sums or perform acts or services

17               except as shown under DEFENSE SETTLEMENTS.

18  Moving down to subpart 4 of this section, it becomes clear that the Homestead Policies'

19  provisions concerning the duty to defend are not subject to the terms of the underlying

20  primary insurance policies:

21  ───────────────

22         [4] Homestead respectfully suggests that this Court can "overlook" this deficiency if it
admits the policy language contained in its four policies issued to Jonce, attached as Exhibits "A"
23  through "D" to the Declaration of Joanne Horak.  Should Gerling question the accuracy of the
policy terms contained in Exhibits "A" through "D" or otherwise object to the Court's
24  consideration of the policy language contained therein, the Court should grant Homestead's
Motion to Dismiss based on the failure to attach the policy.  This would force Gerling to place the
25  "disputed" policy terms before the Court and allow the Court to rule on the substantive portions
of Homestead's motion.  Consideration of documents referred to in a complaint, but not attached
26  thereto is proper under Ninth Circuit precedent: "documents whose contents are alleged in a
complaint and whose authenticity no party questions, but which are not physically attached to the
27  pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. Such consideration
does 'not convert the motion to dismiss into a motion for summary judgment.' [internal citation
28  omitted]."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds.

4.     Coverage A is subject to the terms of the **underlying insurance** except:

* * *

d.     For any obligation to provide or to pay for legal defense. Legal defense

is covered by this insurance only as shown under DEFENSE

SETTLEMENTS.

In other words, it is irrelevant whether Gerling or any of the other underlying primary insurers

had a duty to defend Jonce based on their own policies of insurance when determining

whether Homestead had an duty to defend Jonce or an obligation to pay for Jonce's legal

defense.

Turning to DEFENSE SETTLEMENTS, Homestead's duty to defend is clearly set

forth in the first sentence of the first subpart of that section:

1.     **We** will have no duty to defend any **claim** or **suit** that any other insurer has a

duty to defend.

Thus, if any other insurer of had a duty to defend Jonce, Homestead would not.

It is well-settled that "when a written instrument contradicts allegations in a complaint

to which it is attached, the exhibit trumps the allegations." *See Thompson v. Illinois Dept. of

Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002).  Although Gerling has implicitly asserted that

the policy language quoted in its Complaint determines Homestead's duty to defend Jonce

under the Homestead Policies, the above-cited provisions clearly indicated that Homestead's

duty to defend is determined by the DEFENSE SETTLEMENTS section.  Thus, as the

"written instruments" – the Homestead Policies – contradict the allegations in Gerling's

Complaint, the Complaint's allegations are "trumped" and may be disregarded by this Court.

**C.     Homestead Had No Duty to Defend Jonce In the Underlying**

**Actions.**

An insurer's duty to defend its insured is measured by the nature and kind of risks

covered by the particular policy.  *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275, 54 Cal.

Rptr. 104 (1966), *Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal. App. 3d 1540,

1547, 259 Cal. Rptr. 298 (1989). An insurer has no obligation to defend the insured against a loss of the nature and kind that does not fall within the coverage of the policy. *Dyer* at 1547.

Each of the Homestead Policies with Jonce states that "**We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend." The plain meaning of this provision is inescapable: if any insurer of Jonce has a duty to defend Jonce, Homestead will not have a duty to defend Jonce. Here, Gerling has failed to allege that it did not have a duty to defend Jonce. In fact, Gerling has admitted that it defended and indemnified Jonce in both Underlying Actions. (See Compl. ¶ 48.) Moreover, Gerling asserts that Homestead "owes an equitable duty to contribute to those sums Gerling incurred in defending and indemnifying Jonce with regard to the Underlying Actions." (Compl. ¶ 67.) Thus, Gerling appears to recognize that it had a duty to defend Jonce pursuant to the terms of its policy of primary insurance issued to Jonce. Homestead, then, could not have had a duty to defend Jonce.

Homestead's duty to defend was never triggered in either of the Underlying Actions. Unless Gerling can allege and show that it did not have a duty to defend Jonce, Homestead cannot be found to have had a duty to defend Jonce.

Based on the foregoing, Gerling cannot be granted a declaration and determination that Homestead owed a duty to defend Jonce in the Underlying Actions. Furthermore, Gerling cannot be granted a declaration that Homestead owes a duty to reimburse Gerling for sums of money Gerling incurred in defending Jonce with regard to the Underling Actions. Finally, Gerling cannot maintain its cause of action for contribution based on Homestead's purported equitable duty to contribute to those sums Gerling incurred defending Jonce with regard to the Underlying Actions.

**D.    Homestead Had No Duty to Indemnify Jonce Prior to the Exhaustion of All Underlying Policies.**

Pointing to Subpart 1. of Coverage A and the policies' definition of "underlying insurance", Gerling asserts that Homestead's duty to indemnify Jonce was triggered prior to

///

1    the exhaustion of all Jonce's primary policies of liability insurance.  This assertion ignores

2    fundamental California case law on the respective duties of primary and excess insurers.

3         There are two levels of insurance coverage – primary and excess.  Primary insurance

4    is coverage under which liability attaches to the loss immediately upon the happening of the

5    occurrence.  *See Cmty. Redevelopment Agency v. Aetna Cas. & Surety Co.*, 50 Cal.App.4th

6    329, 337-338, 57 Cal.Rptr.2d 755 (1996).  California state and Ninth Circuit precedent hold

7    that liability under an excess policy attaches only after all primary coverage has been

8    exhausted.  *Cmty. Redevelopment*, 50 Cal.App.4th at 337-338; *Employers Ins. of Wasau v.*

9    *Granite State Ins. Co.*, 330 F.3d 1214 (9th Cir. 2003) ("liability under a secondary [excess]

10   policy will not attach until all primary insurance is exhausted ...").  Gerling alleges that the

11   Homestead Policies are excess policies and that its policy was primary to Homestead policy

12   number UL-04314 (See Compl. ¶¶ 11, 14.)

13        Under California law, a plaintiff cannot state a claim for coverage against an excess

14   insurer for claims involving property damage over multiple policy periods unless it alleges,

15   and subsequently establishes, exhaustion of all primary coverage in effect during the period of

16   alleged property damage.  *See Cmty. Redevelopment*, 50 Cal.App.4th at 340 ("[A]ll of the

17   primary policies in force during the period of continuous loss will be deemed primary policies

18   to each of the excess policies covering that same period.  Under the principle of horizontal

19   exhaustion, *all* of the primary policies must exhaust before *any* excess will have coverage

20   exposure[.]") (emphasis in original); *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46

21   Cal.App.4th 1810, 1850-51, 54 Cal.Rptr.2d 176 (1996).  Gerling has alleged that the

22   Underlying Actions alleged property damage over multiple policy periods.  (See Compl. ¶ 30.)

23   As the losses alleged in the Underlying Actions were continuous losses, it is clear that all

24   Jonce's primary policies must exhaust before Homestead's excess coverage would have

25   exposure.

26        It is not enough to defeat the presumption that all primary coverage must be exhausted

27   simply to point to a provision stating that the subject excess policy is excess over a

28

1   specifically described policy.  *See Cmty. Redevelopment*, 50 Cal.App.4th at 339-341.  In *Cmty.*

2   *Redevelopment*, United Pacific Insurance Company, a primary insurer, argued that the excess

3   policy issued by Scottsdale Insurance Company specifically provided that it was excess to a

4   primary policy issued by State Farm Fire & Casualty Insurance Company and that

5   Scottsdale's duty to participate arose upon State Farm's exhaustion.  *Id.* at 341.  The court

6   rejected United's argument, citing provisions of the Scottsdale policy such as its "other

7   insurance" provision, which clearly indicated that it was to be excess over all primary policies,

8   not merely the State Farm policy.  *Id.* at 342.

9          The issue here is nearly identical to the issue addressed in *Cmty. Redevelopment*.

10  Gerling has alleged that Homestead issued four excess liability policies, each of which

11  specifically describes a different primary policy in the policies' Schedule A – Schedule of

12  Underlying Insurance Policies.  (See Compl. ¶¶ 13-16.)  Because each Homestead policy

13  specifically described the primary policy to which it was excess, Gerling seeks to apply the

14  "vertical exhaustion" rule, wherein excess coverage has exposure upon the exhaustion of the

15  policy or policies directly under the excess policy, rather than the default rule of "horizontal

16  coverage" as articulated in *Cmty. Redevelopment*.  Nonetheless, as with Scottsdale's policy in

17  *Cmty. Redevelopment*, the Homestead Policies' "other insurance" condition clearly states that

18  the Homestead policy is to be excess over **all** primary insurance, whether or not the primary

19  insurance is listed in Schedule A – Schedule of Underlying Insurance Policies: "[the

20  Homestead Policies] shall also be excess insurance over all other valid and collectible

21  insurance not described in the Schedule A – Schedule of Underlying Insurance Policies

22  (except other insurance purchased specifically to apply in excess of this insurance) which is

23  available to the **Insured**, covering a loss also covered by this policy."  This clearly and

24  unambiguously states that the Homestead Policies are to be excess over all primary insurance

25  policies, regardless of whether the primary policy is specifically listed in Schedule A.  As the

26  express language of the Homestead policies provides that the policies' duty to indemnify is

27  not triggered until all underlying primary policies have been exhausted, Homestead's did not

28

1   have a duty to indemnify Jonce until the exhaustion of the Gerling policy. As Gerling has

2   admitted, once its policy was exhausted in the *Emery Bay* Action settlement, Homestead

3   contributed to that settlement. (See Compl. ¶ 36.) Therefore, Homestead fulfilled its

4   contractual obligations to indemnify Jonce under the Homestead Policies.

5           As Gerling provided a policy of primary insurance to Jonce and Homestead issued

6   excess policies to Jonce, Gerling's complaint must be dismissed for failure to allege horizontal

7   exhaustion of all primary policies which could constitute underlying insurance to the

8   Homestead Policies.

9           Based on the foregoing, Gerling cannot be granted a declaration and determination that

10  Homestead owed a duty to indemnify Jonce in the *Chartwell* Action or the *Emery Bay* Action

11  prior to the exhaustion of the Gerling policy. Furthermore, Gerling cannot be granted a

12  declaration that Homestead owes a duty to reimburse Gerling for sums of money Gerling

13  incurred in indemnifying Jonce with regard to the Underling Actions. Finally, Gerling cannot

14  maintain its cause of action for contribution based on Homestead's purported equitable duty to

15  contribute to those sums Gerling incurred indemnifying Jonce with regard to the Underlying

16  Actions.

17  **E.      Even If the Homestead Policies Underlying the Policies Issued by United**

18  **National, AIG and American Equity Were Triggered by the Exhaustion of**

19  **Those Policies, the "Other Insurance" Condition States That Those**

20  **Homestead Policies Are "Excess Insurance over All Other Valid and**

21  **Collectible Insurance Not Described in the Schedule A."**

22          Even assuming, *arguendo*, that the Homestead policies UL-03641, UL-04935 and UL-

23  05389 were triggered by the exhaustion of the United National, AIG and American Equity

24  primary policies, respectively, those Homestead policies are nonetheless still excess and non-

25  contributory to the Gerling policy as a result of the Homestead Policies' "other insurance"

26  condition.

27  ///

28

1    The Homestead Policies' "other insurance" condition states that the "insurance

2    afforded by this policy . . . shall also be excess insurance over all other valid and collectible

3    insurance not described in the Schedule A – Schedule of Underlying Insurance Policies

4    (except other insurance purchased specifically to apply in excess of this insurance) which is

5    available to the **Insured**, covering a loss also covered by this policy."

6    If, as Gerling asserts, the Homestead policies UL-03641, UL-04935 and UL-05389

7    were triggered by the exhaustion of the policies of underlying insurance described those

8    policies respective Schedule A endorsements, then those policies would "drop down" to

9    provide indemnity coverage at the primary layer.  This primary layer is the layer occupied by

10    the Gerling policy.  Since the Gerling policy was not "purchased specifically to apply in

11    excess" to the implicated Homestead policies, those policy's "other insurance" condition

12    would render them excess over the Gerling policy unless it was not "valid and collectible."

13    As Gerling has essentially admitted that its policy of primary insurance was "valid and

14    collectible" – Gerling alleged that it contributed $425,000.00 towards settlement of the

15    *Chartwell* Action (see Compl. ¶ 34) and $302,842.00 towards the settlement of the *Emery Bay*

16    Action (see Compl. ¶ 38) – Homestead policies UL-03641, UL-04935 and UL-05389 would

17    still be excess to the Gerling policy.

18    **VI.    CONCLUSION**

19    For the foregoing reasons, Defendant Homestead Insurance Company respectfully

20    requests that the Court dismiss without leave to amend Gerling's claims for declaratory relief

21    and contribution.  In the alternative, should Gerling demonstrate that it is able to allege that it

22    did not have a duty to defend Jonce in the Underlying Actions and that its primary insurance

23    policy issued to Jonce was not "valid and collectible" prior to its exhaustion, Defendant

24    ///

25    ///

26    ///

27    ///

28

1    Homestead Insurance Company respectfully requests that the Court dismiss with leave to

2    amend Gerling's claims for declaratory relief and contribution.

3                              CHARLSTON, REVICH & WOLLITZ LLP

4

5                                    /S/ Howard Wollitz

6                        By: _____
                              Howard Wollitz
7                        Attorneys for Defendant,
                         Homestead Insurance Company
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Howard Wollitz  [SBN: 58674]
     CHARLSTON, REVICH & WOLLITZ LLP
2   1925 Century Park East, Suite 1250
     Los Angeles, California  90067-2746
3   Telephone:  (310) 551-7000
     Facsimile:  (310) 203-9321
4   E-Mail:    hwollitz@crwllp.com

5   Attorneys for Defendant,
     Homestead Insurance Company

6

7

8               UNITED STATES DISTRICT COURT

          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                     SAN FRANCISCO

10

11

12  HDI-GERLING AMERICA INSURANCE     Case No. CV 08-1716 PJH
     COMPANY, a New York Corporation,
13
             Plaintiff,
14                           DECLARATION OF JOANNE HORAK
           v.                    IN SUPPORT OF HOMESTEAD
15                         INSURANCE COMPANY'S MOTION
     HOMESTEAD INSURANCE COMPANY,     TO DISMISS
16  a Pennsylvania Corporation; GREAT
     AMERICAN B&S INSURANCE
17  COMPANY, an Ohio Corporation, formerly
     known as AGRICULTURAL EXCESS
18  AND SURPLUS INSURANCE
     COMPANY; and DOES 1-10,
19
             Defendants.
20

21

22               DECLARATION OF JOANNE HORAK

23  I, Joanne Horak, declare:

24       1.     I am Vice-President of Homestead Insurance Company ("Homestead").  I have

25  personal knowledge of the facts stated in this declaration and would competently testify as to

26  those facts if called upon to do so.

27       2.     This declaration is made in support of Homestead's motion to dismiss

28  Plaintiff's Complaint pursuant to Federal Rule of Civil for failure to state a claim upon which

CHARLSTON, REVICH
& WOLLITZ LLP
10342K.WPD
                          Case No. CV 08-1716 PJH
                      DECLARATION OF JOANNE HORAK

1  relief can be granted.

2      3.    Homestead issued the following policies of insurance to Jonce Thomas

3  Construction Co. ("Jonce"): Policy No. UL-03641, effective June 30, 1994 to June 20, 1995;

4  Policy No. UL-04314, effective June 30, 1995 to June 30, 1996; Policy No. UL-04935,

5  effective June 30, 1996 to June 30, 1997; and Policy No. UL-05389, effective June 30, 1997 to

6  June 30, 1998 (collectively the "Homestead Policies").

7      4.    I have reviewed the file for this case maintained by Homestead.

8      5.    Attached as Exhibit "A" is a true and correct copy of Homestead Policy No.

9  UL-03641 for Jonce that Homestead has in its possession.

10     6.    Attached as Exhibit "B" is a true and correct copy of Homestead Policy No.

11  UL-04314 for Jonce that Homestead has in its possession.  The declarations page for Policy

12  No. UL-04314 contains a typographical error: Homestead did not issue any endorsement form

13  number "EUL 7884 (4/95)".  Homestead did issue endorsement forms enumerated "EUL 788

14  (4/95)", entitled "Amendatory Endorsement Assault and Battery Exclusion" and "EUL 784

15  (4/95)", entitled "Lead Paint Exclusion".  The declarations page of this policy also lists

16  endorsement "EUL 784 (4/95)", indicating that the incorrectly listed endorsement was "EUL

17  788 (4/95)".  Homestead's copy of Policy No. UL-04314 is missing endorsement EUL 788

18  (4/95).

19     9.    Attached as Exhibit "C" is a true and correct copy of Homestead Policy No.

20  UL-04935 for Jonce that Homestead has in its possession.  This copy of the policy is missing

21  endorsement EUL 788 (4/95), the "Amendatory Endorsement Assault and Battery Exclusion"

22  endorsement.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1       10.    Attached as Exhibit "D" is a true and correct copy of Homestead Policy No.

2   UL–05389 for Jonce that Homestead has in its possession.  This copy of the policy is missing

3   endorsement EUL 788 (4/95), the "Amendatory Endorsement Assault and Battery Exclusion"

4   endorsement.

5       I declare under penalty of perjury under the laws of the State of California that the

6   foregoing is true and correct.

7       Executed on May 17, 2008, at Ridgewood, New Jersey.

8

9

10                                _____

11                            Joanne Horak

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT  A**

DECLA    ONS-EXCESS/UMBRELLA LIABILITY F    CY                *Frank*

POLICY NO:___ **UL- 03641**                Renewal or Rewrite of No.:    **NEW**

# HOMESTEAD INSURANCE COMPANY
## Philadelphia, Pennsylvania  19103

Item 1. **Named Insured and Mailing Address**

JONCE THOMAS CONSTRUCTION CO.,
INC. ETAL
P.O. BOX 1856
FREMONT        CA 94538-0034

Surplus Lines Tax and Affidavit Filed
by: *W K Cooper*
    *P O Box 260797*
    *Encino CA 91426*
License #: *0697297*

Item 2. **Policy Period:**
Inception    **June 30, 1994**

Expiration    **June 30, 1995**
12:01 A.M. Standard Time at the mailing address shown above.

Item 3. Limits of Insurance, Coverages A and B Combined.
The Limits of Insurance, subject to all the terms of this policy are:

(a) Per Occurrence Limit        4,000,000.00

(b) Products/Completed Operations Combined Aggregate Limit        4,000,000.00

(c) General Aggregate Limit        4,000,000.00

Item 4. Self-Insured Retention-Coverage B    10,000.00    Per Occurrence

Item 5. Premium:    46,700.00    Rate    **FLAT**    Per        Premium Basis

Advance Premium        46,700.00

Minimum Premium        11,675.00    (Minimum Earned Premium)

Form numbers of forms and endorsements forming part of this policy when issued:

UL501(9/90)        UL502(9/90)        GNL6868(#1-5)

THOMAS C. DEVORE & ASSOC., INC

Date Issued:  July 13, 1994                Countersigned by: *Thomas C Devore*
Form No. UL-500 (9/90)

### Schedule A-Schedule of Underlying Insurance Policies

**HOMESTEAD INSURANCE COMPANY**
Philadelphia, Pennsylvania 19103

Issued to form a part of Policy No.: ____UL-03641____  By Homestead Insurance Co

| TYPE OF POLICY | APPLICABLE LIMITS OF LIABILITY | INSURER POLICY PERIOD |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY (Bodily Injury, Property Damage, Personal Injury and Advertising Injury) | | United National To Be Advised Eff From: 6/30/94 Eff To: 6/30/95 |

    ____1973 Form ("Old" Occurrence)
Bodily Injury
        Each Occurrence
        Aggregate where applicable
        Aggregate Per Location where applicable
        Other:
Property Damage
        Each Occurrence
        Aggregate where applicable
        Aggregate Per Location where applicable
        Other:
Bodily Injury and Property Damage
Combined Single Limit
        Each Occurrence
        Aggregate where applicable
        Aggregate Per Location where applicable
        Other:

  _X_1986 Form ("New" Occurrence)
1,000,000  Each Occurrence
1,000,000  Personal Injury and Advertising Injury
1,000,000  General Aggregate
1,000,000  Products-Completed Operations Aggregate
  ---   Aggregate Per Location where applicable
  ---   Other:

NOTE: Unless specifically noted hereunder, all General Liability Policies are written on comprehensive forms without special restrictive endorsements, on the standard forms in general use as designated by the letter "X" above indicating the appropriate GL form.

| COMPREHENSIVE AUTOMOBILE LIABILITY | Bodily Injury | Northbrook To Be Advised Eff From: 6/30/94 Eff To: 6/30/95 |
|---|---|---|

        Each Person
        Each Occurrence
Property Damage
        Each Occurrence
Bodily Injury and Property
Damage Combined Single Limit
1,000,000  Each Occurrence

NOTE: Unless specifically noted hereunder, all Automobile Liability policies are written on comprehensive forms, including Any Automobile, Hired and Non-owned Automobile Liability coverage, without special restrictive endorsements or aggregate limits, on standard forms in general use.

| STANDARD WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | Coverage B-Employer's Liability | Health Cal C0101348 Eff From: 1/1/94 Eff To: 1/1/95 |
|---|---|---|

1,000,000  Each Accident
1,000,000  Disease Policy Limit
1,000,000  Disease Each Employee

Date Issued: 7/13/94
Form No. UL-501(9/90)

*Homestead Insurance Company*

A STOCK COMPANY
PHILADELPHIA, PENNSYLVANIA 19103

# EXCESS/UMBRELLA LIABILITY POLICY



IN THIS POLICY THE WORDS **YOU** AND **YOUR** REFER TO THE NAMED INSURED SHOWN IN THE DECLARATIONS. THE WORD **INSURED** MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER SECTION IV - NAMED INSURED AND INSURED. **WE, US** AND **OUR** REFER TO THE STOCK INSURANCE COMPANY SHOWN IN THE DECLARATIONS. OTHER WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANINGS. REFER TO THE DEFINITIONS SECTION OF THIS POLICY. IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, **WE** AGREE WITH **YOU** AS FOLLOWS:

## I. INSURING AGREEMENTS

### COVERAGE A—EXCESS LIABILITY INSURANCE (FOLLOWING FORM)

Coverage A is excess insurance and follows the **underlying insurance** except as otherwise stated in this policy.
1. **We** will pay those sums that the **Insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury,** or **advertising injury,** caused by an **occurrence** which occurs during the policy period of this policy in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable limit of insurance.
2. **We** have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE SETTLEMENTS.
3. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
4. Coverage A is subject to the terms of the **underlying insurance** except:
   a. That the amounts or limits of liability, policy period, and conditions relating to the premium, subrogation, other insurance, obligation to investigate and defend, and cancellation or non-renewal and any renewal agreement of **underlying insurance** do not apply to this insurance;
   b. That where any exclusions of this policy conflict with any terms of the **underlying insurance,** the exclusions of this policy shall apply;
   c. That where the **underlying insurance** has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment relating to an act, error, omission, injury, **damage,** or offense which occurs before the effective date shown in the Declarations of this policy;
   d. For any obligation to provide or to pay for legal defense. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.
5. Settlement of any **claim** or **suit** for an amount in excess of available **underlying insurance** by any underlying insurer shall not be binding on **us** unless **we** consent in writing.

### COVERAGE B—UMBRELLA LIABILITY INSURANCE

Coverage B is excess insurance over a **self-insured retention.** Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.
1. **We** will pay those sums that the **Insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury,** or **advertising injury** caused by an **occurrence** which occurs during the policy period of this policy.
2. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
3. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.

No. UL-502 (9/90)

## II. DEFENSE SETTLEMENTS

**We** will pay defense expenses only as follows:
   i. When **defense expense** payments of any **underlying insurance** reduce the Limits of Insurance provided by that policy, then any such expense payment made under this policy will reduce the Limits of Insurance as stated in Item 3 of the Declarations.
   ii. When **defense expense** payments of any of the **underlying insurance** do not reduce the Limits of Insurance provided by those policies, then any such expense payment made under this policy will not reduce the Limits of Insurance as stated in Item 3 of the Declarations.
1. **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If **we** elect to join in the defense of such **claims** or **suits, we** will pay all expenses **we** incur.
   You shall give **us** the opportunity to associate with **you** or the underlying insurers or both in the defense and control of any **claims, suits,** or proceedings which involve or appear likely to involve this insurance. **You** and **your** insurers shall cooperate with **us** in the defense of such **claim, suit** or proceeding.
2. **We** will defend any **suit** which is likely to involve **us** for **damages** payable under Coverages A or B (including **damages** wholly or partly within the **self-insured retention**) but which are not payable by a policy of **underlying insurance,** or any other available insurance, because:
   a. Such **damages** are not covered by such underlying or other insurance; or
   b. The **underlying insurance** has been exhausted by the payment of claims.
3. **We** may investigate and settle any **claim** or **suit** in 2. above at our discretion.
4. All defense expenses in 2. above end when **we** have used up the applicable Limit of Insurance of this policy in the payment of judgements or settlements.
5. **We** will pay, with respect to any **claim** or **suit we** defend in 2. above:
   a. All expenses **we** incur.
   b. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance of this policy. **We** do not have to furnish these bonds.
   c. All reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation and defense of the **claim** or **suit** including actual loss of earnings up to $100 a day because of the time taken off from work.
   d. All costs taxed against the **Insured** in the **suit.**
   e. All interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have:
      (1) paid, or offered to pay; or
      (2) deposited in court;
      that part of the judgement that is within the applicable Limit of Insurance of this policy.
6. In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico and Canada where **we** may be prevented by law or otherwise from carrying out this agreement:

a. The Insured must arrange to investigate, defend, or settle any claim or suit.

b. The Insured will not make any settlement without our consent.

c. We will pay expenses incurred with our consent.

7. We will have no duty or obligation to investigate, settle or defend any claim or suit against any Insured alleging damages which are not covered by this policy.

## III. LIMITS OF INSURANCE–COVERAGES A AND B COMBINED

1. The Limits of Insurance, Coverages A and B Combined shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   i. Insureds;
   ii. Claims or suits brought; or
   iii. Persons or organizations making claims or bringing suits.

   a. The Limit of Insurance stated in Item 3 (b) as the Products/Completed Operations Aggregate Limit is the most we will pay under Coverages A and B combined for damages because of injury or damages included in the products/completed operations hazard. Each payment we make for such damages reduces by the amount of the payment the Products/Completed Operations Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further damages of these kinds.

   b. The Limit of Insurance stated in Item 3 (c) General Aggregate Limit is the most we will pay under Coverages A and B combined except for:
   (1) Damages included in 1.a. above for the products/completed operations hazard; and
   (2) Coverages included in the Schedule A–Schedule of Underlying Insurance Policies to which no underlying aggregate(s) limit applies.

   Each payment we make for such damages reduces by the amount of the payment the General Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further damages of these kinds.

   c. Subject to a. or b. above, whichever applies, the Per Occurrence Limit is the most we will pay for damages under Coverages A or B because of all bodily injury, property damage, personal injury and advertising injury arising out of any one occurrence.

2. Our obligations under Coverage A and B end when the applicable Limit of Insurance available is used up. If we pay any amounts for damages in excess of that Limit of Insurance, you agree to reimburse us promptly for such amounts.

3. The limit of this policy applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations. unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

4. You agree to reimburse us promptly for damages paid in settlement of claims or suits to the extent that such amounts are within the self-insured retention as stated in the Declarations. However, this does not apply to defense expenses incurred by the Insured within the self-insured retention.

## IV. NAMED INSURED AND INSURED

1. WHO IS AN INSURED–COVERAGE A (EXCESS LIABILITY INSURANCE)
   Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES each person or organization who is an Insured in the underlying insurance is an Insured under Coverage A subject to all the limitations upon such underlying insurance other than the limits of the underlying insurer's liability.

2. WHO IS AN INSURED–COVERAGE B (UMBRELLA LIABILITY INSURANCE)
   Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES, the Named Insured and each of the following is an Insured under Coverage B:

   a. If you are designated in the Declarations as:
   (1) An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.
   (2) A partnership or joint venture, you are an Insured. Your members, your partners and their spouses are also Insureds, but only with respect to the conduct of your business.
   (3) An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

   b. Each of the following are also Insureds:
   (1) Your employees, other than your executive officers, but only for acts within the scope of their employment by you.
   (2) Any person or organization to whom or which you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to your operations, or facilities you own or use;
   (3) Any person or organization having proper temporary custody of your property if you die, but only:
   (a) With respect to liability arising out of the maintenance or use of that property; and
   (b) Until your legal representative has been appointed.
   (4) Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

   c. With respect to any auto you own or hire for use, any person (including your employees) while using such auto and any person or organization legally responsible for the use thereof, provided its actual use is with your permission, except:
   (1) Any person or organization, or any agent or employee thereof, operating an auto sales agency, repair shop, service station, storage garage or public parking place, with respect to an occurrence arising out of the operation thereof; or,
   (2) The owner or any lessee of a hired auto or any agent or employee of such owner or lessee.

3. WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES–COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE):

   a. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be an Insured if there is no other similar insurance available to that organization. However:
   (1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.
   You may incur an additional premium charge for such newly acquired or formed organization(s) in accordance with our then current rating procedures;
   (2) Coverage does not apply to bodily injury or property damage that occurred before you acquired or formed the organization;
   (3) Coverage does not apply to personal injury or advertising injury arising out of an offense committed before you acquired or formed the organization;
   (4) No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## EXCLUSIONS

### I. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)

With respect to Coverage A (Excess Liability Insurance) and Coverage B (Umbrella Liability Insurance), this policy does not apply to:

1. Liability imposed on the Insured under any of the following laws:
   a. Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or changes to it;
   b. Any workers' compensation, unemployment compensation, disability benefits law, or any other similar law except for liability of others assumed by the Insured under any contract;
   c. Damages awarded under the provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. Sections 1961-68 (1970) (RICO) or changes to it.

2. Liability assumed by the Insured under any contract or agreement with respect to an occurrence taking place before the contract or agreement is made.

3. Any obligation or liability arising out of:
   a. the contamination of any environment by pollutants that are introduced at any time, anywhere, in any way;
   b. any bodily injury, personal injury, property damage, costs or other loss or damage arising out of such contamination, including but not limited to, cleaning up, remedying or detoxifying such contamination; or
   c. Payment of sums related to (1) the investigation or defense of any loss, injury or damage or (2) payment of any cost, fine or penalty or (3) payment of any expense involving a claim or suit related to a. or b. above.

   As used in this Exclusion 3, the following terms will have the following meanings:
   (1) Contamination means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants, whether permanent or transient in any environment;

2

Attach Declarations and Endorsement(s) Here

## EXCLUSIONS (continued)

(2) **Environment** includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the **Insured**;

(3) **Pollutants** means smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal **pollutants**, and all other irritants or contaminants.

4. Any liability of any **Insured** arising out of discrimination with respect to race, religion, sex, age, national origin, physical disability, or mental disability.

5. Any liability arising out of termination of employment of any person by any **Insured**.

6. Any obligation or liability for **bodily injury, personal injury,** or **property damage,** arising out of:

a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

b. The use of asbestos in constructing or manufacturing any good, product or structure; or

c. The removal of asbestos from any good, product or structure; or

d. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or **suit** related to any of the above.

7. Any liability incurred by any **Insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

8. Any liability:

a. For **bodily injury, property damage, personal injury, advertising injury** if:

(1) with respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the **hazardous properties** of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

b. For **bodily injury, property damage, personal injury** and **advertising injury** if:

(1) the nuclear material (a) is at any **nuclear facility** owned by or operated on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured**; or

(3) the injury, sickness, disease, death, or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction or damage of property at such **nuclear facility**.

As used in this Exclusion 8:

**hazardous properties** means source material, special nuclear material or byproduct material; **source material, special nuclear materials** and **byproduct material** have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

**spent fuel** means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

**waste** means any waste material (i) containing byproduct material and (ii) resulting from the operation by any person or organization of any **nuclear facility**;

**nuclear facility** means:

(1) any nuclear reactor,

(2) any equipment or devise designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or

utilizing **spent fuel**, or (c) handling, processing or packing **waste**.

(3) any equipment or devise used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations; **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word **injury** or **destruction** includes all forms of radioactive contamination of property.

9. Any **claim** for Uninsured or Underinsured Motorist Coverage, personal injury protection, property protection or similiar no-fault coverage by whatever name called, unless this policy is endorsed to provide such coverage.

10. Any obligation to pay expenses under any medical payments coverage.

11. Any liability for which any **Insured** may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the **Insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

12. Punitive or exemplary damages, fines, penalties and fees.

13. Damages claimed for loss due to infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised by any **Insured**.

14. Injury to, destruction of, loss of, or loss of use of:

a. Property owned by, loaned to, rented to, occupied by or used by **you** or in **your** care, custody or control;

b. Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

c. Any goods, products or containers thereof, manufactured, sold, handled or distributed by or for **you**, out of which the **occurrence** arises.

15. Any liability arising out of assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, any **Insured** and/or any employee of any **Insured**.

16. Any liability arising out of the use of any **mobile equipment, auto** or watercraft in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

17. Any liability for **property damage** sustained by any Named Insured arising out of the activities or operations of any other Named Insured.

18. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any aircraft.

19. Any obligation or liability arising out of:

a. Inhaling, ingesting or prolonged physical exposure to radon gas or goods, products or structures containing radon gas; or

b. The exposure to or use of radon gas in constructing or manufacturing any good, product or structure; or

c. The removal or reduction of radon gas from any good, product or structure; or

d. The transportation, storage or disposal of radon gas or goods, products or structures containing radon gas; or

e. The failure of any **Insured** to disclose the existence of radon gas in any structure to any person irrespective of whether or not any **Insured** had knowledge of the existence of radon gas in any such structure; or

f. The manifestation or accumulation of radon gas in any structure.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or **suit** related to any of the above.

## II. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in I. above, this policy does not apply under Coverage A to:

1. Any loss not covered by the **underlying insurance**, and all exclusions now or hereafter contained in the **underlying insurance**, apply to Coverage A with the same force and effect.

2. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft 26 feet or over in length.

3

## EXCLUSIONS (continued)

**III. UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)**

In addition to the exclusions in Sections I and II above, this insurance does not apply under Coverage B to:

1. Any injury or damage:
   a. Covered under Coverage A; or
   b. Which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of an underlying insurer or an **Insured** or the termination of the underlying policy.
2. **Bodily injury** to any officer or employee of the **Insured** who is injured in the course of such employment by any other officer or employee of the same **Insured**.
3. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft.
4. **Property damage** to **your product** arising out of it or any part of it.
5. **Property damage** with respect to the loss of use of tangible property which has not been physically injured or destroyed resulting from:
   a. A delay in or lack of performance by or on behalf of the **Insured** of any contract or agreement; or
   b. The failure of **your product** or **your work** to meet the level of performance, quality, fitness or durability warranted or represented by or on behalf of the **Insured**.
   This exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of **your product** or **your work** after such products or work have been put to use by any person or organization other than an **Insured**.
6. **Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **Insured's** behalf by a sub-contractor.
7. **Damages** claimed for any loss, cost or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
   a. **Your product**, or

b. **Your work**, or
c. Any property of which **your product** or **your work** forms a part; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

8. **Bodily injury** to:
   a. An employee of the **Insured** arising out of and in the course of employment by the **Insured**; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of **bodily injury** to that employee.
   This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity.
   It also applies to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.
   This exclusion does not apply to liability assumed by **you** under any contract.
9. **Personal Injury** or **advertising injury**:
   a. Arising out of oral or written publication or material, if done by or at the direction of the **Insured** with knowledge of its falsity;
   b. Arising out of oral or written publication of material first published before the beginning of the policy period;
   c. Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **Insured**; or
   d. For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for **damages** that **you** would have in absence of the contract or agreement.
10. **Advertising Injury** arising out of:
    a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;
    b. The failure of goods, products or services to conform with the advertised quality or performance;
    c. The wrong description of the price of goods, products or services; or
    d. An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

## DEFINITIONS

1. **Advertising Injury** means injury, other than **personal injury**, arising out of one or more of the following offenses committed in the course of the **Insured's** advertising activities during the Policy Period:
   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. Misappropriation of advertising ideas or style of doing business; or
   d. Infringement of copyright, title or slogan.
2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include **mobile equipment**.
3. **Bodily injury** means bodily injury, mental anguish, shock, disability, care and loss of services or consortium, sickness or disease including death sustained by a person at any time during the Policy Period.
4. **Claim** means a written demand for **damages** or services.
5. **Damages** are all sums that the **Insured** is legally obligated to pay. This obligation may be the decision of a court or the result of a settlement. The cause of the obligation must be from **bodily injury**, **personal injury**, **property damage** or **advertising injury** covered by this policy. **Damages** include interest which accumulates on a civil court judgement from the time the **suit** is brought until the final judgement is entered by the court. **Damages** include defense expense to the same extent included in the **underlying insurance**. **Damages** do not include damages for which insurance is prohibited by law or public policy applicable in construction of this policy.
6. **Defense expense** means payments allocated to a specific **claim** or **suit** for its investigation, settlement or defense, including:
   a. Attorneys fees, expert witness fees and all other litigation expenses;
   b. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies;
   c. The costs of bonds to release attachments, but only for bond amounts within the Limit of Insurance available;
   d. Reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $100 a day because of time off from work;
   e. Costs taxed against the **Insured** in the suit.
   **Defense expense** does not include:
   (1) Salaries of **our** employees or employees of the **Insured**, other than that portion of **our** employed attorney's fees, salaries and expenses allocated to a specific **claim** or **suit**;
   (2) Fees and expenses of independent adjusters we hire;
   (3) The cost of bonds to appeal a judgement or award on any **suit** we defend;
   (4) Interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have paid, offered to pay, or deposited in court the amount available for the judgement

under the provisions of LIMITS OF INSURANCE.

7. **Executive officer** means a person holding any of the officer positions created by the **Insured's** charter, constitution or by-laws.
8. **First named Insured** means the person or organization first named in Item 1 of the Declarations of the policy.
9. **Insured** means any person or organization qualifying as an **Insured** in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each **Insured** against whom **claim** is made or **suit** is brought, except with respect to the limits of **our** liability.
10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:
    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
    b. Vehicles maintained for use solely on or next to the premises **you** own or rent;
    c. Vehicles that travel on crawler treads;
    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
       (1) Power cranes, shovels, loaders, diggers, or drills; or
       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
    e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
       (2) Cherry pickers and similar devices used to raise or lower workers;
    f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:
       (1) Equipment designed primarily for:
          (a) Snow removal;
          (b) Road maintenance, but not construction or resurfacing;
          (c) Street cleaning;
       (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
11. **Occurrence** means:
    a. With respect to **bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **Insured** and includes:

DEFINITIONS (continued)

(1) The rendering of or failure to render professional medical, dental or nursing services by **your dispensary or clinic.**
(2) The use of reasonable force for the lawful protection of **your** employees, tenants, guests or property.
b. With respect to **advertising injury and personal injury** respectively: an offense described in one of the numbered subdivisions of those terms in this policy.
All **damages** that arise from exposure to the same general conditions are considered to arise out of one **occurrence.**

12. **Personal Injury** means injury, other than **advertising injury** or **bodily injury,** arising out of one or more of the following offenses committed in the course of the **Insured's** business during the Policy Period:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication of material that violates a person's right of privacy arising out of the conduct of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you.**

13. **Products/completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent arising out of **your product** or **your work** except:
a. Products that are still in **your** physical possession; or
b. Work that has not yet been completed or abandoned.
**Your work** will be deemed completed at the earliest of the following times:
(1) When all the work called for in **your** contract has been completed;
(2) When all the work to be done at the site has been completed if **your** contract calls for work at more than one site;
(3) When the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor, or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.
c. This hazard does not include **bodily injury** or **property damage** arising out of:
(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;
(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

14. **Property damage** means:
a. Physical injury to tangible property, including all resulting loss of use of that property occurring during the Policy Period; or
b. Loss of use of tangible property that is not physically injured caused by an **occurrence** during the Policy Period.

15. **Self-Insured retention** means the amount stated as such in the Declarations which is retained and payable by the **Insured** with respect to each **occurrence.** All expenses incurred by us, or by the **Insured** with our consent in the investigation or defense of a claim or suit within the self-insured retention shall be payable by us.

16. **Suit** means a civil proceeding in which **damages** because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding alleging such **damages** to which the **Insured** must submit or submit with our consent.

17. **Underlying insurance** means the insurance policies listed in Schedule A–Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in Schedule A–Schedule of Underlying Insurance Policies. The limit of **underlying insurance** includes any deductible amount, any participation of the **Insured** or any **self-insured retention** above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced by payment of loss with respect to **bodily injury, property damage, personal injury** or **advertising injury** taking place after the effective date of this policy. The coverage and limits of such policies shall be deemed to be applicable regardless of (a) any defense which the underlying insurer may assert because of the **Insured's** failure to comply with any condition of any such policy, (b) the actual or alleged insolvency, financial impairment or bankruptcy of the underlying insurer of any **Insured** or (c) cancellation or termination of the underlying policy.

18. **You** means any person or organization named in the Declarations or in an endorsement forming part of this policy.

19. **Your dispensary or clinic** means a dispensary, clinic or similar facility maintained by **you** for the benefit or convenience of **your** employees or students.

20. **Your product** means:
a. Any goods or **products,** other than real property manufactured, sold, handled, distributed or disposed of by:
(1) **You**
(2) Others trading under **your** name, or
(3) A person or organization whose business, or assets of which, **you** have acquired majority interests; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.
**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

21. **Your work** means:
a. Work or operations performed by **you** or on **your** behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

## CONDITIONS

1. **Premium**
The advance premium stated in the Declarations is a deposit premium only, unless otherwise specified. Upon termination of this policy, the final premium shall be computed in accordance with the rates and minimum premium stated in the Declarations. If the final premium thus computed exceeds the advance premium paid, the **first named Insured** shall pay the excess to us. If the final earned premium is less, we shall return to the **first named Insured** the unearned portion paid by such **Insured.**
The **first named Insured** shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to us at the end of the policy period, as we may direct.
Any Minimum Premium shown in the Declarations shall be fully earned and not subject to return upon audit of this insurance.

2. **Inspection and Audit**
**We** shall be permitted but not obligated to inspect **your** property and operations at any time. Neither **our** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on **your** behalf or for **your** benefit or that of others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
**We** may examine and audit **your** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy insofar as they relate to the subject matter of this insurance.

3. **Notice of Occurrence, Claim or Suit**
Whenever it appears that an **occurrence, claim** or **suit** is likely to involve payment under this policy, written notice shall be given to **us** or **our** authorized representative by **you** or **your** designated representative as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstance of the **occurrence, claim** or **suit,** the names and addresses of the injured and of available witnesses.

4. **Assistance and Cooperation of the Insured**
The **Insured** shall cooperate with **us** and shall comply with all the terms and conditions of this policy and shall cooperate with the underlying insurers as required by the terms of the **underlying insurance** and comply with all the terms and conditions thereof.
The **Insured** shall enforce any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of **bodily injury, personal injury, property damage** or **advertising injury** with respect to which insurance is afforded under this policy or any of the **underlying insurance policies.**

5. **Action Against Company**
No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgement against the **Insured,** after actual trial, or by written agreement by the **Insured,** the claimant and us.
Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any action against the **Insured** to determine the **Insured's** liability, nor shall we be impleaded by the **Insured's** legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

5

CONDITIONS (continued)

6. Appeals
In the event the **Insured** or the **Insured's** underlying insurer elects not to appeal a judgement in excess of the **underlying** insurance or the **self-insured retention**, we may elect to make such appeal, at our cost and expense, and shall be liable in addition to the applicable Limit of Insurance, for the taxable costs, disbursements and additional interest incidental to such appeal.

7. Other Insurance
The insurance afforded by this policy shall be excess insurance over all **underlying insurance** covering a loss covered by this policy whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A–Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the Insured, covering a loss also covered by this policy.

8. Subrogation
In the event of any payment under this policy, **we** shall participate with the Insured and any underlying insurer in the exercise of all the **Insured's** rights of recovery against any person or organization liable therefore, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing to prejudice such rights.
Recoveries shall be applied:
First, to reimburse any interest (including the Insured's) that may have paid any amount with respect to liability in excess of **our** Limit of Insurance hereunder;
Then to reimburse **us** up to the amount paid hereunder, along with any other insurers having a proportionate interest at the same level; and
Lastly, to reimburse such interests (including the **Insured's**) with respect to which this insurance is excess, as are entitled to claim the residue, if any;
A different apportionment may be made to effect settlement of a **claim** by agreement signed by all interests. Reasonable expenses incurred in the exercise of rights or recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

9. Changes
Notice to any person, or knowledge possessed by any person, shall not effect a waiver or a change in any part of this policy, or stop **us** from asserting any rights under the terms of this policy with respect to any requirements as to **underlying insurance**; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by **our** authorized representative.

10. Assignment
Assignment of interest under this policy shall not bind **us** until **our** consent is endorsed hereon; if, however, **you** shall die, such insurance as is afforded by this policy shall apply (a) to **your** legal representative, but only while acting within the scope of his or her duties as such, and (b) with respect to **your property**, to the person having proper temporary custody thereof, as **Insured**, but only until the appointment and qualification of the legal representative.

11. Maintenance of **Underlying Insurance**
You agree to maintain all insurance policies affording in total the coverage and limits as stated in the Schedule A–Schedule of Underlying Insurance Policies, or renewals or replacements thereof not more restrictive in coverage or limits, in full force and effect during this policy period, except for reduction of aggregate limits where applicable, solely as a result of the payment of **claims** for **occurrences** which take place on or after the effective date of this policy.
**You** agree to notify **us** within thirty days if any company replaces or changes any terms or conditions of any of the policies designated in the Schedule A–Schedule of Underlying Insurance Policies.
**Your** failure or inability to comply with the foregoing two paragraphs of this Condition 11. shall not invalidate this policy, but in the event of such failure or inability to comply therewith, **we** shall be liable only to the extent that we would have been liable had such failure or inability to comply not occurred.

12. Service of Suit Clause:
It is agreed that in the event **we** fail to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction

and all matters arising hereunder shall be determined in accordance with the law and practice of such court.
It is further agreed that service of process in such **suit** may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located, and that in any **suit** instituted upon this contract we will abide by the final decision of such court or any appellate court in the event of an appeal. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on **our** behalf in any **suit** and/or upon **your** request to give a written undertaking to **us** that they will enter a general appearance upon **our** behalf in the event such a **suit** shall be instituted.

13. Sole Agent
The first named Insured is authorized to act on behalf of all **Insureds** with respect to the giving or receiving of notice of cancellation, receiving unearned premium, agreeing to any changes in the policy and being billed for additional premiums.

14. Cancellation
a. The **first named Insured** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.
b. **We** may cancel this policy by mailing or delivering to the **first named Insured** written notice of cancellation at least:
  (1) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or
  (2) 30 days before the effective date of cancellation if **we** cancel for any other reason.
c. **We** will mail or deliver **our** notice to the **first named Insured's** last mailing address known to **us**.
d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
e. If this policy is cancelled, **we** will send the **first named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **first named Insured** cancels, the refund will be based upon the customary short rate table. The cancellation will be effective even if **we** have not made or offered a refund.
f. If notice is mailed, proof of mailing will be sufficient proof of notice.

15. Workers' Compensation Agreement
With respect to **bodily injury** to or death of any officer or other employee arising out of and in the course of employment by **you**, it is a condition to the recovery of any loss under this policy, and **you** represent and agree, **you** have not abrogated and will not abrogate **your** common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise. In the event you shall at any time during the policy period, abrogate such defenses, such insurance as is afforded for **bodily injury** with respect to such officer or other employee shall automatically terminate at the same time.

16. Bankruptcy or Insolvency
In the event of the actual, or the alleged, bankruptcy, insolvency, liquidation, or financial impairment, whether temporary or permanent, of an underlying insurer, or of the **Insured** if the underlying **Insurance** is comprised in whole or in part of self-insurance, it is agreed that this insurance shall not take the place of such **underlying insurance** which is or becomes invalid, uncollectible or otherwise unavailable. The **underlying insurance** listed in the Schedule A–Schedule of Underlying Insurance Policies will be deemed in effect and the risk of such bankruptcy, insolvency, liquidation, or financial impairment is retained by **you** and not by **us**.

17. Terms of Policy Conformed to Statute
Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

18. Declarations
By acceptance of this policy the **first named Insured** agrees that the statements in the Declarations are agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **first named Insured** and **us** and any of **our** representatives relating to this insurance.

IN WITNESS WHEREOF, **we** have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
President

_____
Secretary

6

GENERAL PURPOSE ENDORSEMENT          Endorsement No.  1    .

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number<br>UL-03641 | Named Insured<br>Jonce Thomas Construction Co, Inc. etal | |
| Policy Inception<br>June 30, 1994 | Policy Expiration<br>June 30, 1995 | Effective Date & Time<br>June 30, 1994 |
| Producer<br>  Thomas C. Devore & Associates, Inc. | | Producer No.-OPC |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


### NAMED INSURED ENDORSEMENT


The entity named below is added to Item 1 of the Declarations.


Naming this entity as a Named Insured does not increase the Company's Limits of Liability as specified in the policy Declarations.


Named Insured:

Jon-Don Farms
Jonce Thomas & Donna Thomas
Jonce Thomas and Donna Thomas as Trustees of the Thomas Living Trust
Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
D & J Construction, Inc.
Jonce Thomas Development Co., Inc.


| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared<br>July 13, 1994 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

| GENERAL PURPOSE ENDORSEMENT | Endorsement No. 2 | |
|---|---|---|
| Issued by:    THE HOMESTEAD INSURANCE COMPANY | | |
| Policy Number | Named Insured | |
| UL-03641 | Jonce thomas Construction Co., Inc. etal | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| June 30, 1994 | June 30, 1995 | June 30, 1994 |
| Producer | | Producer No.-OPC |
| Thomas C. Devore & Associates, Inc. | | |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT

This insurance is modified by the following provisions:

A.  This insurance does not apply to any liability arising out of:

    1.  Any project insured under a "wrap-up" or similar rating plan; or

    2.  The rendering or failure to render any professional services by or for the insured including the preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and any supervisory, inspection or engineering services.

B.  Except insofar as coverage is available to the Insured in valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and the only for such liability for which coverage is afforded under the underlying insurance, this insurance shall not apply to:

    1.  Any liability assumed by the insured under any contract or agreement;

    2.  Any liability for property damage to property leased by, used by, or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; or

    3.  For property damage arising out of:

        (a)  blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

        (b)  the collapse of or structural injury to any building or structure due to (i) grading of land, excavation, borrowing, filling or back-filling, tunneling, pile driving, cofferdam work of caisson work, or (ii) moving shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared July 13, 1994 | Pro Rata of | Short Rate of |

| PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS: | | | | |
|---|---|---|---|---|
| Dates Due | Present | Increase | Decrease | Revised |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

GENERAL PURPOSE ENDORSEMENT              Endorsement No.   2 Continued .

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number<br>UL-03641 | Named Insured<br>Jonce thomas Construction Co., Inc. etal | |
| Policy Inception<br>June 30, 1994 | Policy Expiration<br>June 30, 1995 | Effective Date & Time<br>June 30, 1994 |
| Producer<br>    Thomas C. Devore & Associates, Inc. | | Producer No.-OPC |

It is agreed that this policy is hereby amended as indicated. All other
terms and conditions of this policy remain unchanged.


### CONTRACTORS LIMITATION ENDORSEMENT (Continued)

     (c)   injury to or destruction of wires, conduits, pipes,
         mains, sewers, tanks, tunnels, any similar property
         and any apparatus in connection therewith, beneath
         the surface of the ground or water, caused by and
         occurring during the use of mechanical equipment
         for the purpose of grading land, excavating, drilling,
         borrowing, filling, back-filling or pile driving.

C.  The following additional definition applies:

    "Wrap-up" means any agreement or arrangement under which all the
    contractors working on a specified project are insured under one
    or more policies issued by a specified insurer for liability
    arising out of the project.


| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared<br>July 13, 1994 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

GENERAL PURPOSE ENDORSEMENT                    Endorsement No.  3

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number UL-03641 | Named Insured Jonce Thomas Construction Co., Inc. etal | |
| Policy Inception June 30, 1994 | Policy Expiration June 30, 1995 | Effective Date & Time June 30, 1994 |
| Producer    Thomas C. Devore & Associates, Inc. | | Producer No.-OPC |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


### EMPLOYERS' LIABILITY FOLLOWING FORM ENDORSEMENT


This insurance does not apply to any liability for bodily injury, sickness, disease, disability or shock including death at any time resulting therefrom, and, if arising out of the foregoing, mental anguish or mental injury, sustained by:

1.  An employee of the insured arising out of and in the course of employment by the insured; or

2.  The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown and then only for such liability for which coverage is afforded under the underlying insurance.


| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared July 13, 1994 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

GENERAL PURPOSE ENDORSEMENT                    Endorsement No.   4

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number UL-03641 | Named Insured Jonce Thomas Constructio Co., Inc. etal | |
| Policy Inception June 30, 1994 | Policy Expiration June 30, 1995 | Effective Date & Time June 30, 1994 |
| Producer    Thomas C. Devore & Associates, Inc. | | Producer No.-OPC |

It is agreed that this policy is hereby amended as indicated. All other
terms and conditions of this policy remain unchanged.

### THIS ENDORSEMENT CHANGES THIS POLICY.   READ IT CAREFULLY

### LEAD PAINT EXCLUSION

Notwithstanding anything contained in the underlying insurance to the
contrary, it is understood and agreed that this insurance does not
apply to bodily injury arising out of the existence of any lead based
paint or any product containing lead based paint.   It is further
understood and agreed that the company will not be liable or
responsible to defend the insured in any action or litigation for any
lead based paint or lead based paint allegation including the failure
to warn.

All other terms and conditions remain unchanged.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared July 13, 1994 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

| GENERAL PURPOSE ENDORSEMENT | | Endorsement No.  5 |
| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
| Policy Number | Named Insured | |
| UL-03641 | Jonce Thomas Construction Co., Inc. etal | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| June 30, 1994 | June 30, 1995 | June 30, 1994 |
| Producer | | Producer No. -OPC |
| Thomas C. Devore & Associates, Inc. | | |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### SUBSIDENCE EXCLUSION

This insurance does not apply to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

It is further agreed that this insurance shall not become excess of any reduced or exhausted underlying aggregate limit to the extent that such reduction or exhaustion is the result of claims, damage, loss or expense arising out of or in any way related to the above.

| Authorized Representative | Additional Premium | Return Premium |
| Date Prepared | Pro Rata of | Short Rate of |
| July 13, 1994 | | |
| PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS: | | | | |
| Dates Due | Present | Increase | Decrease | Revised |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

**EXHIBIT B**

*0500-353*

DECLARATIONS-EXCESS/UMBRELLA LIABILITY POLICY

*Jack*

POLICY NO:____ UL- 04314                          Renewal or Rewrite of No.:    UL-03641

# HOMESTEAD INSURANCE COMPANY
## Philadelphia, Pennsylvania  19103

Item 1.  **Named Insured and Mailing Address**

JONCE THOMAS CONSTRUCTION CO.,
INC. ETAL
P.O. BOX 1856
FREMONT,        CA 94538-0034

Surplus Lines Tax and Affidavit Filed
by: *W K COOPER*
*P O Box 260797*
*Encino CA 91426*
License #: *0691297*

Item 2.  Policy Period:
Inception        June 30, 1995

Expiration       June 30, 1996
12:01 A.M. Standard Time at the mailing address shown above.

Item 3.  Limits of Insurance, Coverages A and B Combined.
The Limits of Insurance, subject to all the terms of this policy are:

(a) Per Occurrence Limit                4,000,000.00

(b) Products/Completed Operations Combined Aggregate Limit        4,000,000.00

(c) General Aggregate Limit             4,000,000.00

Item 4.  Self-Insured Retention-Coverage B    10,000.00        Per Occurrence

Item 5.  Premium:        53,000.00        Rate        **FLAT**        Per                Premium Basis

Advance Premium            53,000.00

Minimum Premium            13,250.00    (Minimum Earned Premium)

Form numbers of forms and endorsements forming part of this policy when issued:

| | | |
|---|---|---|
| UL501(9/90) | UL502(9/90) | |
| | EUL605(4/95) | EUL7884(4/95) |
| | EUL643A(4/95) | EUL643B(4/95) |
| | EUL6662(4/95) | EUL784(4/95) |
| | EUL758(4/95) | |

THOMAS C. DEVORE & ASSOC., INC

Countersigned by: _____

Date Issued:   June 30, 1995
Form No. UL-500 (9/90)

## Schedule A-Schedule of Underlying Insurance Policies

### HOMESTEAD INSURANCE COMPANY
Philadelphia, Pennsylvania 19103

Issued to form a part of Policy No.: ___UL-04314___    By Homestead Insurance Co

| TYPE OF POLICY | APPLICABLE LIMITS OF LIABILITY | INSURER POLICY PERIOD |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY (Bodily Injury, Property Damage, Personal Injury and Advertising Injury) | ___1973 Form ("Old" Occurrence)<br>Bodily Injury<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other:<br>Property Damage<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other:<br>Bodily Injury and Property Damage<br>Combined Single Limit<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other: | Gerling America<br>To Be Advised<br>Eff From: 6/30/95<br>Eff To: 6/30/96 |

| | | |
|---|---|---|
| _X_1986 - | 1993 Form ("New" Occurrence) | |
| 1,000,000 | Each Occurrence | |
| 1,000,000 | Personal Injury and Advertising Injury | |
| 2,000,000 | General Aggregate | |
| ---- | Policy Aggregate | |
| 1,000,000 | Products-Completed Operations Aggregate | |
| ---- | Aggregate Per Location where applicable | |

NOTE: Unless specifically noted hereunder, all General Liability Policies are written on comprehensive forms without special restrictive endorsements, on the standard forms in general use as designated by the letter "X" above indicating the appropriate GL form.

---

| COMPREHENSIVE AUTOMOBILE LIABILITY | Bodily Injury<br>    Each Person<br>    Each Occurrence<br>Property Damage<br>    Each Occurrence<br>Bodily Injury and Property<br>Damage Combined Single Limit<br>1,000,000  Each Occurrence | Northbrook<br>To Be Advised<br>Eff From: 6/30/95<br>Eff To: 6/30/96 |
|---|---|---|

NOTE: Unless specifically noted hereunder, all Automobile Liability policies are written on comprehensive forms, including Any Automobile, Hired and Non-Owned Automobile Liability coverage, without special restrictive endorsements or aggregate limits, on standard forms in general use.

---

| STANDARD WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | Coverage B-Employer's Liability<br>1,000,000  Each Accident<br>1,000,000  Disease Policy Limit<br>1,000,000  Disease Each Employee | Heath Cal<br>To Be Advised<br>Eff From: 1/1/95<br>Eff To: 1/1/96 |
|---|---|---|

Date Issued:  6/30/95
Form No. UL-501(9/90)

*(handwritten)* Policy # UL-0431

*Homestead Insurance Company*

### A STOCK COMPANY
PHILADELPHIA, PENNSYLVANIA 19103

# EXCESS/UMBRELLA LIABILITY POLICY



IN THIS POLICY THE WORDS YOU AND YOUR REFER TO THE NAMED INSURED SHOWN IN THE DECLARATIONS. THE WORD INSURED MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER SECTION IV - NAMED INSURED AND INSURED. WE, US AND OUR REFER TO THE STOCK INSURANCE COMPANY SHOWN IN THE DECLARATIONS. OTHER WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANINGS. REFER TO THE DEFINITIONS SECTION OF THIS POLICY. IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU AS FOLLOWS:

## I. INSURING AGREEMENTS

### COVERAGE A—EXCESS LIABILITY INSURANCE (FOLLOWING FORM)

Coverage A is excess insurance and follows the **underlying insurance** except as otherwise stated in this policy.

1. **We** will pay those sums that the **Insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury,** or **advertising injury,** caused by an **occurrence** which occurs during the policy period of this policy in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable limit of insurance.
2. **We** have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE SETTLEMENTS.
3. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
4. Coverage A is subject to the terms of the **underlying insurance** except:
   a. That the amounts or limits of liability, policy period, and conditions relating to the premium, subrogation, other insurance, obligation to investigate and defend, and cancellation or non-renewal and any renewal agreement of **underlying insurance** do not apply to this insurance;
   b. That where any exclusions of this policy conflict with any terms of the **underlying insurance,** the exclusions of this policy shall apply;
   c. That where the **underlying insurance** has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment relating to an act, error, omission, injury, damage, or offense which occurs before the effective date shown in the Declarations of this policy;
   d. For any obligation to provide or to pay for legal defense. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.
5. Settlement of any **claim** or **suit** for an amount in excess of available **underlying insurance** by any underlying insurer shall not be binding on **us** unless **we** consent in writing.

### COVERAGE B—UMBRELLA LIABILITY INSURANCE

Coverage B is excess insurance over a **self-insured retention.** Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.

1. **We** will pay those sums that the **Insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury,** or **advertising injury** caused by an **occurrence** which occurs during the policy period of this policy.
2. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
3. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.

## II. DEFENSE SETTLEMENTS

**We** will pay defense expenses only as follows:
   i. When defense payments of any **underlying insurance** reduce the Limits of Insurance provided by that policy, then any such expense payment made under this policy will reduce the Limits of Insurance as stated in Item 3 of the Declarations.
   ii. When defense expense payments of any of the **underlying insurance** do not reduce the Limits of Insurance provided by those policies, then any such expense payment made under this policy will not reduce the Limits of Insurance as stated in Item 3 of the Declarations.
1. **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If **we** elect to join in the defense of such claims or suits, **we** will pay all expenses **we** incur.
   **You** shall give **us** the opportunity to associate with **you** or the underlying insurers or both in the defense and control of any **claims, suits,** or proceedings which involve or appear likely to involve this insurance. **You** and **your** Insurers shall cooperate with **us** in the defense of any **claim, suit** or proceeding.
2. **We** will defend any **suit** which is likely to involve **us** for **damages** payable under Coverages A or B (including **damages** wholly or partly within the **self-insured retention**) but which are not payable by a policy of **underlying insurance,** or any other available insurance, because:
   a. Such **damages** are not covered by such underlying or other insurance; or
   b. The **underlying insurance** has been exhausted by the payment of claims.
3. **We** may investigate and settle any **claim** or **suit** in 2. above at **our** discretion.
4. All defense expenses in 2. above end when **we** have used up the applicable Limit of Insurance of this policy in the payment of judgements or settlements.
5. **We** will pay, with respect to any **claim** or **suit** **we** defend in 2. above:
   a. All expenses **we** incur.
   b. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance of this policy. **We** do not have to furnish these bonds.
   c. All reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation and defense of the **claim** or **suit** including actual loss of earnings up to $100 a day because of the time taken off from work.
   d. All costs taxed against the **Insured** in the **suit.**
   e. All interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have:
      (1) paid, or offered to pay; or
      (2) deposited in court;
      the part of the judgement that is within the applicable Limit of Insurance of this policy.
6. In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico and Canada where **we** may be prevented by law or otherwise from carrying out this agreement:

No. UL-502 (9/90)

a. The **Insured** must arrange to inv̱ ate, defend, or settle any claim or suit.
b. The **Insured** will not make any settlement without our consent.
c. We will pay expenses incurred with our consent.
7. We will have no duty or obligation to investigate, settle or defend ɑny claim or suit against any **Insured** alleging damages which are n૩. covered by this policy.

## III. LIMITS OF INSURANCE–COVERAGES A AND B COMBINED

1. The Limits of Insurance, Coverages A and B Combined shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   i. **Insureds**;
   ii. **Claims** or **suits** brought; or
   iii. Persons or organizations making **claims** or bringing **suits**.
   a. The Limit of Insurance stated in Item 3 (b) as the Products/Completed Operations Aggregate Limit is the most we will pay under Coverages A and B combined for **damages** because of injury or **damages** included in the products/completed operations hazard. Each payment we make for such **damages** reduces by the amount of the payment the Products/Completed Operations Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.
   b. The Limit of Insurance stated in Item 3 (c) General Aggregate is the most we will pay under Coverages A and B combined except for:
      (1) **Damages** included in 1.a. above for the **products/completed operations hazard** and;
      (2) Coverages included in the Schedule A–Schedule of Underlying Insurance Policies to which no underlying aggregate(s) limit applies.
      Each payment **we** make for such **damages** reduces by the amount of the payment the General Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.
   c. Subject to a. or b. above, whichever applies, the Per Occurrence Limit is the most we will pay for **damages** under Coverages A or B because of all **bodily injury, property damage, personal injury and advertising injury** arising out of any one **occurrence**.
2. Our obligations under Coverage A and B end when the applicable Limit of Insurance available is used up. If **we** pay any amounts for **damages** in excess of that Limit of Insurance, **you** agree to reimburse **us** promptly for such amounts.
3. The limit of this policy applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.
4. **You** agree to reimburse **us** promptly for **damages** paid in settlement of **claims** or **suits** to the extent that such amounts are within the **self-insured retention** as stated in the Declarations. However, this does not apply to defense expenses incurred by the **Insured** within the **self-insured retention**.

## IV. NAMED INSURED AND INSURED

### 1. WHO IS AN INSURED–COVERAGE A (EXCESS LIABILITY INSURANCE)

Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES each person or organization who is an

Insured in th̠ ̠ ̠ ̠underlying insurance is an Insured under Coverage A subject to all the limitations upon such **underlying insurance** other than the limits of the underlying insurer's liability.

### 2. WHO IS AN INSURED–COVERAGE B (UMBRELLA LIABILITY INSURANCE)

Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES, the Named Insured and each of the following is an Insured under Coverage B:
If **you** are designated in the Declarations as:
(1) An individual, **you** and **your** spouse are Insureds, but only with respect to the conduct of a business of which **you** are the sole owner.
(2) A partnership or joint venture, **you** are an Insured. **Your** members, **your** partners and their spouses are also **Insureds**, but only with respect to the conduct of **your** business.
(3) An organization other than a partnership or joint venture, **you** are an Insured. **Your** executive officers and directors are Insureds, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also Insureds, but only with respect to their liability as stockholders.
b. Each of the following are also Insureds:
(1) **Your** employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**.
(2) Any person or organization to whom or which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to **your** operations, or facilities **you** own or use;
(3) Any person or organization having proper temporary custody of **your** property if **you** die, but only:
   (a) With respect to liability arising out of the maintenance or use of that property; and
   (b) Until **your** legal representative has been appointed.
(4) **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this policy.
c. With respect to any **auto you** own or hire or use, any person (including **your** employees) while using such **auto** and any person or organization legally responsible for the use thereof, provided its actual use is with **your** permission, except:
(1) Any person or organization, or any agent or employee thereof, operating an **auto** sales agency, repair shop, service station, storage garage or public parking place, with respect to an **occurrence** arising out of the operation thereof; or,
(2) The owner or any lessee of a hired **auto** or any agent or employee of such owner or lessee.

### 3. WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES–COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)

a. Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will be deemed to be an **Insured** if there is no other similar insurance available to that organization. However:
(1) Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier.
You may incur an additional premium charge for such newly acquired or formed organization(s) in accordance with **our** then current rating procedures;
(2) Coverage does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization;
(3) Coverage does not apply to **personal injury** or **advertising injury** arising out of an offense committed before **you** acquired or formed the organization;
(4) No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## EXCLUSIONS

### I. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)

With respect to Coverage A (Excess Liability Insurance) and Coverage B (Umbrella Liability Insurance), this policy does not apply to:
1. Liability imposed on the **Insured** under any of the following laws:
   a. Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or changes to it;
   b. Any workers' compensation, unemployment compensation, disability benefits law, or any other similar law except for liability of others assumed by the **Insured** under any contract;
   c. Damages awarded under the provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. Sections 1961-68 (1970) (RICO) or changes to it.
2. Liability assumed by the **Insured** under any contract or agreement with respect to an **occurrence** taking place before the contract or agreement is made.

3. Any obligation or liability arising out of:
   a. The **contamination** of any **environment** by **pollutants** that are introduced at any time, anywhere, in any way;
   b. Any **bodily injury, personal injury, property damage**, costs or other loss or damage arising out of such **contamination**, including but not limited to, cleaning up, remedying or detoxifying such **contamination**; or
   c. Payment of sums related to (1) the investigation or defense of any loss, injury or damage or (2) payment of any cost, fine or penalty or (3) payment of any expense involving a **claim** or **suit** related to a. or b. above.
   As used in this Exclusion 3, the following terms will have the following meanings:
   (1) **Contamination** means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of **pollutants**, whether permanent or transient in any **environment**;

Attach Declarations and Endorsement(s) Here

## EXCLUSIONS (continued)

(2) **Environment** includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the **Insured**;

(3) **Pollutants** means smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal **pollutants**, and all other irritants or contaminants.

4. Any liability of any **Insured** arising out of discrimination with respect to race, religion, sex, age, national origin, physical disability, or mental disability.

5. Any liability arising out of termination of employment of any person by any **Insured**.

6. Any obligation or liability for bodily injury, personal injury, or property damage, arising out of:
   a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or
   b. The use of asbestos in constructing or manufacturing any good, product or structure; or
   c. The removal of asbestos from any good, product or structure; or
   d. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

   The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or suit related to any of the above.

7. Any liability incurred by any **Insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

8. Any liability:
   a. For **bodily injury**, **property damage**, personal injury, **advertising injury** if:
      (1) with respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) resulting from the **hazardous properties** of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;
   b. For **bodily injury**, **property damage**, personal injury and **advertising injury** if:
      (1) the nuclear material (a) is at any **nuclear facility** owned by or operated on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;
      (2) the nuclear material is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured**; or
      (3) the injury, sickness, disease, death, or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction or damage of property at such **nuclear facility**.

   As used in this Exclusion 8:
      **hazardous properties** means source material, special nuclear material or byproduct material; **source material, special nuclear material**s and byproduct material have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;
      **spent fuel** means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;
      **waste** means any waste material (i) containing byproduct material and (ii) resulting from the operation by any person or organization of any **nuclear facility**;
      **nuclear facility** means:
      (1) any nuclear reactor;
      (2) any equipment or devise designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or

utilizing **spent fuel**, or (c) handling, processing or packing **waste**;
      (3) any equipment or devise used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.
      (4) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations; **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word **injury** or **destruction** includes all forms of radioactive contamination of property.

9. Any **claim** for Uninsured or Underinsured Motorist Coverage, personal injury protection, property protection or similar no-fault coverage by whatever name called, unless this policy is endorsed to provide such coverage.

10. Any obligation to pay expenses under any medical payments coverage.

11. Any liability for which any **Insured** may be held liable by reason of:
    (1) Causing or contributing to the intoxication of any person;
    (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
    (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if the **Insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

12. Punitive or exemplary **damages**, fines, penalties and fees.

13. **Damages** claimed for loss due to infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised by any **Insured**.

14. Injury to, destruction of, loss of, or loss of use of:
    a. Property owned by, loaned to, rented to, occupied by or used by **you** or in **your** care, custody or control;
    b. Premises you sell, give away or abandon; if the **property damage** arises out of any part of those premises;
    c. Any goods, products or containers thereof, manufactured, sold, handled or distributed by or for **you**, out of which the **occurrence** arises.

15. Any liability arising out of assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, any **Insured** and/or any employee of any **Insured**.

16. Any liability arising out of the use of any **mobile equipment**, auto or watercraft in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

17. Any liability for **property damage** sustained by any Named Insured arising out of the activities or operations of any other Named Insured.

18. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any aircraft.

19. Any obligation or liability arising out of:
    a. Inhaling, ingesting or prolonged physical exposure to radon gas or goods, products or structures containing radon gas; or
    b. The exposure to or use of radon gas in constructing or manufacturing any good, product or structure; or
    c. The removal or reduction of radon gas from any good, product or structure; or
    d. The transportation, storage or disposal of radon gas or goods, products or structures containing radon gas; or
    e. The failure of any **Insured** to disclose the existence of radon gas in any structure to any person irrespective of whether or not any **Insured** had knowledge of the existence of radon gas in any such structure; or
    f. The manifestation or accumulation of radon gas in any structure.

    The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or **suit** related to any of the above.

## II. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in I. above, this policy does not apply under Coverage A to:
1. Any loss not covered by the **underlying insurance**, and all exclusions now or hereafter contained in the **underlying insurance**, apply to Coverage A with the same force and effect.
2. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft 26 feet or over in length.

3

## EXCLUSIONS (continued)

**III. UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)**

In addition to the exclusions in Sections I and II above, this insurance does not apply under Coverage B to:

1. Any injury or damage
   a. Covered under Coverage A; or
   b. Which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of an underlying insurer or an **Insured** or the termination of the underlying policy.
2. **Bodily injury** to any officer or employee of the **Insured** who is injured in the course of such employment by any other officer or employee of the same **Insured**.
3. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft.
4. **Property damage** to **your product** arising out of it or any part of it.
5. **Property damage** with respect to the loss of use of tangible property which has not been physically injured or destroyed resulting from:
   a. A delay in or lack of performance by or on behalf of the **Insured** of any contract or agreement, or
   b. The failure of **your product** or **your work** to meet the level of performance, quality, fitness or durability warranted or represented by or on behalf of the **Insured**.
   This exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of **your product** or **your work** after such products or work have been put to use by any person or organization other than an **Insured**.
6. **Property damage** to **your work** arising out of it or any part of it and included in the **products/completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **Insured's** behalf by a sub-contractor.
7. **Damages** claimed for any loss, cost or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
   a. **Your product**, or

   b. **Your work**, or
   c. Any property of which **your product** or **your work** forms a part; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
8. **Bodily injury** to:
   a. An employee of the **Insured** arising out of and in the course of employment by the **Insured**; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of **bodily injury** to that employee.
   This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity.
   It also applies to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.
   This exclusion does not apply to liability assumed by **you** under any contract.
9. **Personal Injury** or **advertising Injury**:
   a. Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;
   b. Arising out of oral or written publication of material first published before the beginning of the policy period;
   c. Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **Insured**; or
   d. For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for **damages** that **you** would have in absence of the contract or agreement.
10. **Advertising Injury** arising out of:
    a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;
    b. The failure of goods, products or services to conform with the advertised quality or performance;
    c. The wrong description of the price of goods, products or services;
    d. An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

## DEFINITIONS

1. **Advertising Injury** means injury, other than **personal injury**, arising out of one or more of the following offenses committed in the course of the Insured's advertising activities during the Policy Period:
   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. Misappropriation of advertising ideas or style of doing business; or
   d. Infringement of copyright, title or slogan.
2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.
3. **Bodily injury** means bodily injury, mental anguish, shock, disability, care and loss of services or consortium, sickness or disease including death sustained by a person at any time during the Policy Period.
4. **Claim** means a written demand for **damages** or services.
5. **Damages** are all sums that the **Insured** is legally obligated to pay. This obligation may be the decision of a court or the result of a settlement. The cause of the obligation must be from **bodily injury**, **personal injury**, **property damage** or **advertising injury** covered by this policy. **Damages** include interest which accumulates on a civil court judgement from the time the suit is brought until the final judgement is entered by the court. **Damages** include defense expense to the same extent included in the **underlying insurance**. **Damages** do not include **damages** for which insurance is prohibited by law or public policy applicable in construction of this policy.
6. **Defense expense** means payments allocated to a specific **claim** or **suit** for its investigation, settlement or defense, including:
   a. Attorneys fees, expert witness fees and all other litigation expenses;
   b. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies;
   c. The costs of bonds to release attachments, but only for bond amounts within the Limit of Insurance available;
   d. Reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $100 a day because of time off from work;
   e. Costs taxed against the **Insured** in the suit.
   **Defense expense** does not include:
   (1) Salaries and expenses of **our** employees or employees of the **Insured**, other than that portion of **our** employed attorney's fees, salaries and expenses allocated to a specific **claim** or **suit**;
   (2) Fees and expenses of independent adjusters **we** hire;
   (3) The cost of bonds to appeal a judgement or award on any **suit** **we** defend;
   (4) Interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have paid, offered to pay, or deposited in court the amount available for the judgement

   under the provisions of LIMITS OF INSURANCE.
7. **Executive officer** means a person holding any of the officer positions created by the Insured's charter, constitution or by-laws.
8. **First named Insured** means the person or organization first named in item 1 of the Declarations of the policy.
9. **Insured** means any person or organization qualifying as an **Insured** in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each Insured against whom claim is made or **suit** is brought, except with respect to the limits of our liability.
10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:
    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
    b. Vehicles maintained for use solely on or next to the premises **you** own or rent;
    c. Vehicles that travel on crawler treads;
    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
       (1) Power cranes, shovels, loaders, diggers, or drills; or
       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
    e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
       (2) Cherry pickers and similar devices used to raise or lower workers;
    f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered autos:
       (1) Equipment designed primarily for:
          (a) Snow removal;
          (b) Road maintenance, but not construction or resurfacing;
          (c) Street cleaning;
       (2) Cherry pickers and similiar devices mounted on automobile or truck chassis and used to raise or lower workers; and
       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
11. **Occurrence** means:
    a. With respect to **bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the Insured and includes:

4

DEFINITIONS (continued)

(1) The rendering of or failure to render professional medical, dental or nursing services by your dispensary or clinic.
(2) The use of reasonable force for the lawful protection of your employees, tenants, guests or property.
b. With respect to advertising injury and personal injury respectively: an offense described in one of the numbered subdivisions of those terms in this policy.
All damages that arise from exposure to the same general conditions are considered to arise out of one occurrence.
12. Personal Injury means injury, other than advertising Injury or bodily injury, arising out of one or more of the following offenses committed in the course of the Insured's business during the Policy Period:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication of material that violates a person's right of privacy arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.
13. Products/completed operations hazard includes all bodily injury and property damage occurring away from premises you own or rent arising out of your product or your work except:
a. Products that are still in your physical possession; or
b. Work that has not yet been completed or abandoned.
Your work will be deemed completed at the earliest of the following times:
(1) When all the work called for in your contract has been completed;
(2) When all the work to be done at the site has been completed if your contract calls for work at more than one site;
(3) When the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor, or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.
c. This hazard does not include bodily injury or property damage arising out of:
(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;
(2) The existence of tools, uninstalled equipment or abandoned or unused materials.
14. Property damage means:
a. Physical injury to tangible property, including all resulting loss of use of that property occurring during the Policy Period; or
b. Loss of use of tangible property that is not physically injured caused by an occurrence during the Policy Period.

15. Self-Insured retention means the amount stated as such in the Declarations which is retained and payable by the Insured with respect to each occurrence. All expenses incurred by us, or by the Insured with our consent in the investigation or defense of a claim or suit within the self-insured retention shall be payable by us.
16. Suit means a civil proceeding in which damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies are alleged. Suit includes an arbitration proceeding alleging such damages to which the Insured must submit or submit with our consent.
17. Underlying Insurance means the insurance policies listed in Schedule A–Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in Schedule A–Schedule of Underlying Insurance Policies. The limit of underlying insurance includes any deductible amount, any participation of the Insured or any self-insured retention above or payable under any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced by payment of loss with respect to bodily injury, property damage, personal injury or advertising injury taking place after the effective date of this policy. The coverage and limits of such policies shall be deemed to be applicable regardless of (a) any defense which the underlying insurer may assert because of the Insured's failure to comply with any condition of any such policy, (b) the actual or alleged insolvency, financial impairment or bankruptcy of the underlying insurer of any Insured or (c) cancellation or termination of the underlying policy.
18. You means any person or organization named in the Declarations or in an endorsement forming part of this policy.
19. Your dispensary or clinic means a dispensary, clinic or similar facility maintained by you for the benefit or convenience of your employees or students.
20. Your product means:
a. Any goods or products, other than real property manufactured, sold, handled, distributed or disposed of by:
(1) You
(2) Others trading under your name, or
(3) A person or organization whose business, or assets of which, you have acquired majority interests; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
Your product includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.
Your product does not include vending machines or other property rented to or located for the use of others but not sold.
21. Your work means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

## CONDITIONS

1. Premium
The advance premium stated in the Declarations is a deposit premium only, unless otherwise specified. Upon termination of this policy, the final premium shall be computed in accordance with the rates and minimum premium stated in the Declarations. If the final premium thus computed exceeds the advance premium paid, the first named Insured shall pay the excess to us. If the final earned premium is less, we shall return to the first named Insured the unearned portion paid by such Insured.
The first named Insured shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to us at the end of the policy period, as we may direct.
Any Minimum Premium shown in the Declarations shall be fully earned and not subject to return upon audit of this insurance.
2. Inspection and Audit
We shall be permitted but not obligated to inspect your property and operations at any time. Neither our right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on your behalf or for your benefit or that of others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
We may examine and audit your books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy insofar as they relate to the subject matter of this insurance.
3. Notice of Occurrence, Claim or Suit
Whenever it appears that an occurrence, claim or suit is likely to involve payment under this policy, written notice shall be given to us or our authorized representative by you or your designated

representative as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstance of the occurrence, claim or suit, the names and addresses of the injured and of available witnesses.
4. Assistance and Cooperation of the Insured
The Insured shall cooperate with us and shall comply with all the terms and conditions of this policy and shall cooperate with the underlying insurers as required by the terms of the underlying insurance and comply with all the terms and conditions thereof.
The Insured shall enforce any right of contribution or indemnity against any person or organization who may be liable to the Insured because of bodily injury, personal injury, property damage or advertising injury with respect to which insurance is afforded under this policy or any of the underlying insurance policies.
5. Action Against Company
No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgement against the Insured, after actual trial, or by written agreement by the Insured, the claimant and us.
Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any action against the Insured to determine the Insured's liability, nor shall we be impleaded by the Insured's legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve us of any of our obligations hereunder.

## CONDITIONS (continued)

6. Appeals

In the event the Insured or the Insured's underlying insurer elects not to appeal a judgement in excess of the underlying insurance or the self-insured retention, we may elect to make such appeal, at our cost and expense, and shall be liable in addition to the applicable Limit of Insurance, for the taxable costs, disbursements and additional interest incidental to such appeal.

7. Other Insurance

The insurance afforded by this policy shall be excess insurance over all underlying insurance covering a loss covered by this policy whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A–Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the Insured, covering a loss also covered by this policy.

8. Subrogation

In the event of any payment under this policy, we shall participate with the Insured and any underlying insurer in the exercise of all the Insured's rights of recovery against any person or organization liable therefore, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing to prejudice such rights.

Recoveries shall be applied:

First, to reimburse any interest (including the Insured's) that may have paid any amount with respect to liability in excess of our Limit of Insurance hereunder;

Then to reimburse us up to the amount paid hereunder, along with any other insurers having a proportionate interest at the same level; and

Lastly, to reimburse such interests (including the Insured's) with respect to which this insurance is excess, as are entitled to claim the residue, if any;

A different apportionment may be made to effect settlement of a claim by agreement signed by all interests. Reasonable expenses incurred in the exercise of rights or recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

9. Changes

Notice to any person, or knowledge possessed by any person, shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy with respect to any requirements as to underlying insurance; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by our authorized representative.

10. Assignment

Assignment of interest under this policy shall not bind us until our consent is endorsed hereon; if, however, you shall die, such insurance as is afforded by this policy shall apply (a) to your legal representative, but only while acting within the scope of his or her duties as such, and (b) with respect to your property, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

11. Maintenance of Underlying Insurance

You agree to maintain all insurance policies affording in total the coverage and limits as stated in the Schedule A–Schedule of Underlying Insurance Policies, or renewals or replacements thereof not more restrictive in coverage or limits, in full force and effect during this policy period, except for reduction of aggregate limits where applicable, solely as a result of the payment of claims for occurrences which take place on or after the effective date of this policy.

You agree to notify us within thirty days if any company replaces or changes any terms or conditions of any of the policies designated in the Schedule A–Schedule of Underlying Insurance Policies.

Your failure or inability to comply with the foregoing two paragraphs of this Condition 11. shall not invalidate this policy, but in the event of such failure or inability to comply therewith, we shall be liable only to the extent that we would have been liable had such failure or inability to comply not occurred.

12. Service of Suit Clause:

It is agreed that in the event we fail to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction

and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located, and that in any suit instituted upon this contract we will abide by the final decision of such court or any appellate court in the event of an appeal. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on our behalf in any suit and/or upon your request to give a written undertaking to us that they will enter a general appearance upon our behalf in the event such a suit shall be instituted.

13. Sole Agent

The first named Insured is authorized to act on behalf of all Insureds with respect to the giving or receiving of notice of cancellation, receiving unearned premium, agreeing to any changes in the policy and being billed for additional premiums.

14. Cancellation

a. The first named Insured may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the first named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the first named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first named Insured cancels, the refund will be based upon the customary short rate table. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

15. Workers' Compensation Agreement

With respect to bodily injury to or death of any officer or other employee arising out of and in the course of employment by you, it is a condition to the recovery of any loss under this policy, and you represent and agree, you have not abrogated and will not abrogate your common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise. In the event you shall at any time during the policy period, abrogate such defenses, such insurance as is afforded for bodily injury with respect to such officer or other employee shall automatically terminate at the same time.

16. Bankruptcy or Insolvency

In the event of the actual, or the alleged, bankruptcy, insolvency, liquidation, or financial impairment, whether temporary or permanent, of an underlying insurer, or of the Insured if the underlying insurance is comprised in whole or in part of self-insurance, it is agreed that this insurance shall not take the place of such underlying insurance which is or becomes invalid, uncollectible or otherwise unavailable. The underlying insurance listed in the Schedule A–Schedule of Underlying Insurance Policies will be deemed in effect and the risk of such bankruptcy, insolvency, liquidation, or financial impairment is retained by you and not by us.

17. Terms of Policy Conformed to Statute

Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

18. Declarations

By acceptance of this policy the first named Insured agrees that the statements in the Declarations are agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the first named Insured and us and any of our representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

President

Secretary

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## NAMED INSURED ENDORSEMENT

The entity named below is added to Item 1 of the Declarations.

Naming this entity as a Named Insured does not increase the Company's Limits of Liability as specified in the policy Declarations.

Named Insured:

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL605 (4/95)

Issued by:       THE HOMESTEAD INSURANCE COMPANY                              .

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT

This insurance is modified by the following provisions:

A.  This insurance does not apply to any liability arising out of:

  1.  Any project insured under a "wrap-up" or similar rating plan; or
  2.  The rendering or failure to render any professional services by or for the insured including the preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and any supervisory, inspection or engineering services.

B.  Except insofar as coverage is available to the Insured in valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and the only for such liability for which coverage is afforded under the underlying insurance, this insurance shall not apply to:

  1.  Any liability assumed by the insured under any contract or agreement;
  2.  Any liability for property damage to property leased by, used by, or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; or
  3.  For property damage arising out of:

    (a)  blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or
    (b)  the collapse of or structural injury to any building or structure due to (i) grading of land, excavation, borrowing, filling or back-filling, tunneling, pile driving, cofferdam work of caisson work, or (ii) moving shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643A (4/95)

Issued by:  THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT - CONTINUED

(c)  injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, excavating, drilling, borrowing, filling, back-filling or pile driving.

C.  The following additional definition applies:

"Wrap-up" means any agreement or arrangement under which all the contractors working on a specified project are insured under one or more policies issued by a specified insurer for liability arising out of the project.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643B (4/95)

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

Ii is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### EMPLOYERS' LIABILITY FOLLOWING FORM ENDORSEMENT

This insurance does not apply to any liability for bodily injury, sickness, disease, disability or shock including death at any time resulting therefrom, and, if arising out of the foregoing, mental anguish or mental injury, sustained by:

1. An employee of the insured arising out of and in the course of employment by the insured; or

2. The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown and then only for such liability for which coverage is afforded under the underlying insurance.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL662 (4/95)

Issued by:     THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THIS POLICY.   READ IT CAREFULLY

LEAD PAINT EXCLUSION

Notwithstanding anything contained in the underlying insurance to the contrary, it is understood and agreed that this insurance does not apply to bodily injury arising out of the existence of any lead based paint or any product containing lead based paint.  It is further understood and agreed that the company will not be liable or responsible to defend the insured in any action or litigation for any lead based paint or lead based paint allegation including the failure to warn.

All other terms and conditions remain unchanged.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL784 (4/95)

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## SUBSIDENCE EXCLUSION

This insurance does not apply to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

It is further agreed that this insurance shall not become excess of any reduced or exhausted underlying aggregate limit to the extent that such reduction or exhaustion is the result of claims, damage, loss or expense arising out of or in any way related to the above.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL758 (4/95)

GENERAL PURPOSE ENDORSEMENT                Endorsement No   1

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| UL-04314 | Jonce Thomas Construction Co., Inc. | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| 06-30-95 | 06-30-96 | 09-09-95 |
| Producer | | Producer No. |
| Thomas C. Devore & Associates, Inc. | | |

It is agreed that this policy is hereby amended as indicated. All other
terms and conditions of this policy remain unchanged.


It is hereby agreed & understood that the Schedule of Underlying
Insurance is amended to show the following:

Gen. Liab. - Reliance in lieu of Gerling America
             #FJ2672150
             9-10-95 to 6-30-96
             1,000,000 Gen. Agg.
             1,000,000 Occ.
             1,000,000 Prods Comp. Ops
             1,000,000 Pers. Adv. Inj

It is further agreed & understood that the Limits of Insurance, item #3
of the Declarations is decreased to 2,000,000.


                                                      OCT   1995

                                               HOMESTEAD INS.


| Authorized Representative | Additional Premium | Return Premium 9458.00 |
|---|---|---|
| Date Prepared 10-24-95 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

GENERAL PURPOSE ENDORSEMENT                Endorsement No.   2

| | |
|---|---|
| Issued by:          THE HOMESTEAD INSURANCE COMPANY | |
| Policy Number<br>UL-04314 | Named Insured<br>Jonce Thomas Construction  Co., Inc. |

| | | |
|---|---|---|
| Policy Inception<br>06-30-95 | Policy Expiration<br>06-30-96 | Effective Date & Time<br>09-09-95 |
| Producer<br>    Thomas C. Devore & Associates, Inc. | | Producer No.-OPC |

It is agreed that this policy is hereby amended as indicated. All other
terms and conditions of this policy remain unchanged.


It is hereby agreed & understood that the Endorsement #1, form GNL6868,
amending the Schedule of Underlying Insurance and decreasing limits is
null and void and replaced with Endorsement #2 & 3, form GNL6868.


It is further agreed & understood that the Limits of Insurance, item
#3a,b,c of the Declarations is decreased to $2,000,000. and the
Premium, item #5 of the Declarations is decreased to $50,312.00.


| | | |
|---|---|---|
| Authorized Representative | Additional Premium | Return Premium<br>9458.00 |
| Date Prepared<br>12-04-95 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

GENERAL PURPOSE ENDORSEMENT                    Endorsement No.  3

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number UL-04314 | Named Insured Jonce Thomas Construction  Co., Inc. | |
| Policy Inception 06-30-95 | Policy Expiration 06-30-96 | Effective Date & Time 09-09-95 |
| Producer Thomas C. Devore & Associates, Inc. | Producer No.-OPC | |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


It is hereby agreed & understood that the Schedule of Underlying Insurance is amended to show the following:

Gen. Liab. - Reliance in lieu of Gerling America
            #FJ2672150
            9-10-95 to 6-30-96
            1,000,000 Gen. Agg.
            1,000,000 Occ.
            1,000,000 Prods Comp. Ops
            1,000,000 Pers. Adv. Inj.

| Authorized Representative | Additional Premium 7647.00 | Return Premium |
|---|---|---|
| Date Prepared 12-04-95 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

| GENERAL PURPOSE ENDORSEMENT | | Endorsement No.  4 | *Jack HIC* |
|---|---|---|---|
| Issued by:    THE HOMESTEAD INSURANCE COMPANY | | | |
| Policy Number<br>UL-04314 | Named Insured<br>Jonce Thomas Construction Co., Inc. Etal | | |
| Policy Inception<br>06-30-95 | Policy Expiration<br>06-30-96 | Effective Date & Time<br>01-01-96 | |
| Producer<br>   Thomas C. Devore & Associates, Inc. | | Producer No.-OPC | |

It is agreed that this policy is hereby amended as indicated. All other
terms and conditions of this policy remain unchanged.


It is hereby agreed & understood that the Schedule of Underlying
Insurance is amended to show:

Employers Liab. - Cal Comp.
                  W961130562
                  1-1-96/97
                  same limits


                                   ..CEIVED
                                  'DERWRITING
                                     DEPT.

                                 JAN 0 5 1996

                              HOMESTEAD INS. C..

| Authorized Representative | Additional Premium<br>nil | Return Premium<br>nil |
|---|---|---|
| Date Prepared<br>01-30-96 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

**EXHIBIT C**

DECLAR/    NS-EXCESS/UMBRELLA LIABILITY PO    Y

POLICY NO:____ **UL- 04935**                Renewal or Rewrite of No.:    UL-04314

# HOMESTEAD INSURANCE COMPANY

Administrative Office          200 Plaza Dr.          Secaucus, NJ  07096-1581

**Item 1. Named Insured and Mailing Address**

**JONCE THOMAS CONSTRUCTION CO.**
**MR. AND MRS. JONCE THOMAS**
**P.O. BOX 1856**
**FREMONT,      CA 94538-0034**

Surplus Lines Tax and Affidavit Filed
by: W K Cooper & CO
P O Box 260797
Encino CA 91426
License #: 0697297

**Item 2. Policy Period:**
Inception      June 30, 1996

Expiration      June 30, 1997
12:01 A.M. Standard Time at the mailing address shown above.

**Item 3. Limits of Insurance, Coverages A and B Combined.**
The Limits of Insurance, subject to all the terms of this policy are:

(a) Per Occurrence Limit                  2,000,000.00

(b) Products/Completed Operations Combined Aggregate Limit          2,000,000.00

(c) General Aggregate Limit              2,000,000.00

**Item 4. Self-Insured Retention-Coverage B    10,000.00        Per Occurrence**

**Item 5. Premium:        52,250.00      Rate    FLAT        Per              Premium Basis**

Advance Premium          52,250.00

Minimum Premium          13,063.00    (Minimum Earned Premium)

Form numbers of forms and endorsements forming part of this policy when issued:

| | | | |
|---|---|---|---|
| UL500(9/90) | UL501(9/90) | UL502(9/90) | EUL605(4/95) |
| EUL788(4/95) | EUL643A(4/95) | EUL643B(4/95) | EUL662(4/95) |
| EUL784(4/95) | EUL758(4/95) | GNL6868(#1) | |

THOMAS C. DEVORE & ASSOC., INC

Date Issued:  July 08, 1996
Form No. UL-500 (9/90)            Countersigned by:_____

## Schedule A-Schedule of Underlying Insurance Policies

### HOMESTEAD INSURANCE COMPANY
Philadelphia, Pennsylvania 19103

Issued to form a part of Policy No.: _____UL-04935_____  By Homestead Insurance Co

| TYPE OF POLICY | APPLICABLE LIMITS OF LIABILITY | INSURER POLICY PERIOD |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY (Bodily Injury, Property Damage, Personal Injury and Advertising Injury) | ___1973 Form ("Old" Occurrence)<br>Bodily Injury<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other:<br>Property Damage<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other:<br>Bodily Injury and Property Damage<br>Combined Single Limit<br>    Each Occurrence<br>    Aggregate where applicable<br>    Aggregate Per Location where applicable<br>    Other: | AIG<br>To Be Advised<br>Eff From: 6/30/96<br>Eff To: 6/30/97 |

```
 X 1986 - 1993 Form ("New" Occurrence)
1,000,000  Each Occurrence
1,000,000  Personal Injury and Advertising Injury
2,000,000  General Aggregate
----       Policy Aggregate
1,000,000  Products-Completed Operations Aggregate
----       Aggregate Per Location where applicable
```

NOTE: Unless specifically noted hereunder, all General Liability Policies are written on comprehensive forms without special restrictive endorsements, on the standard forms in general use as designated by the letter "X" above indicating the appropriate GL form.

| COMPREHENSIVE AUTOMOBILE LIABILITY | Bodily Injury<br>    Each Person<br>    Each Occurrence<br>Property Damage<br>    Each Occurrence<br>Bodily Injury and Property<br>Damage Combined Single Limit<br>1,000,000  Each Occurrence | Northbrook<br>0237878<br>Eff From: 6/30/96<br>Eff To: 6/30/97 |

NOTE: Unless specifically noted hereunder, all Automobile Liability policies are written on comprehensive forms, including Any Automobile, Hired and Non-Owned Automobile Liability coverage, without special restrictive endorsements or aggregate limits, on standard forms in general use.

| STANDARD WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | Coverage B-Employer's Liability<br>1,000,000  Each Accident<br>1,000,000  Disease Policy Limit<br>1,000,000  Disease Each Employee | Cal Comp<br>W961130562<br>Eff From: 1/1/96<br>Eff To: 1/1/97 |

Date Issued:  7/8/96
Form No. UL-501(9/90)

*Jorce Thomas*

*poly # UL-0493*

*Homestead Insurance Company*

A STOCK COMPANY
PHILADELPHIA, PENNSYLVANIA 19103



# EXCESS/UMBRELLA LIABILITY POLICY

IN THIS POLICY THE WORDS **YOU** AND **YOUR** REFER TO THE NAMED INSURED SHOWN IN THE DECLARATIONS. THE WORD **INSURED** MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER SECTION IV - NAMED INSURED AND INSURED. **WE, US** AND **OUR** REFER TO THE STOCK INSURANCE COMPANY SHOWN IN THE DECLARATIONS. OTHER WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANINGS. REFER TO THE DEFINITIONS SECTION OF THIS POLICY. IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, **WE** AGREE WITH **YOU** AS FOLLOWS:

## I. INSURING AGREEMENTS

### COVERAGE A—EXCESS LIABILITY INSURANCE (FOLLOWING FORM)

Coverage A is excess insurance and follows the **underlying insurance** except as otherwise stated in this policy.
1. **We** will pay those sums that the **insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury,** or **advertising injury,** caused by an **occurrence** which occurs during the policy period of this policy in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable limit of insurance.
2. **We** have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE SETTLEMENTS.
3. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
4. Coverage A is subject to the terms of the **underlying insurance** except:
   a. That the amounts or limits of liability, policy period, and conditions relating to the premium, subrogation, other insurance, obligation to investigate and defend, and cancellation or non-renewal and any renewal agreement of **underlying insurance** do not apply to this insurance;
   b. That where any exclusions of this policy conflict with any terms of the **underlying insurance,** the exclusions of this policy shall apply;
   c. That where the **underlying insurance** has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment relating to an act, error, omission, injury, damage, or offense which occurs before the effective date shown in the Declarations of this policy;
   d. For any obligation to provide or to pay for legal defense. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.
5. Settlement of any **claim** or **suit** for an amount in excess of available **underlying insurance** by any underlying insurer shall not be binding on **us** unless **we** consent in writing.

### COVERAGE B—UMBRELLA LIABILITY INSURANCE

Coverage B is excess insurance over a **self-insured retention.** Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.
1. **We** will pay those sums that the **Insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury,** or **advertising injury** caused by an **occurrence** which occurs during the policy period of this policy.
2. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
3. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.

## II. DEFENSE SETTLEMENTS

**We** will pay defense expenses only as follows:
   i. When **defense expense** payments of any **underlying insurance** reduce the Limits of Insurance provided by that policy, then any such expense payment made under this policy will reduce the Limits of Insurance as stated in Item 3 of the Declarations.
   ii. When **defense expense** payments of any of the **underlying insurance** do not reduce the Limits of Insurance provided by those policies, then any such expense payment made under this policy will not reduce the Limits of Insurance as stated in Item 3 of the Declarations.
1. **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If **we** elect to join in the defense of such **claims** or **suits,** **we** will pay all expenses **we** incur. **You** shall give **us** the opportunity to associate with **you** or the underlying insurers or both in the defense and control of any **claims, suits,** or proceedings which involve or appear likely to involve this insurance. **You** and **your** Insurers shall cooperate with **us** in the defense of such **claim, suit** or proceeding.
2. **We** will defend any **suit** which is likely to involve **us** for **damages** payable under Coverages A or B (including **damages** wholly or partly within the **self-insured retention**) but which are not payable by a policy of **underlying insurance,** or any other available insurance. because:
   a. Such **damages** are not covered by such underlying or other insurance; or
   b. The **underlying insurance** has been exhausted by the payment of **claims.**
3. **We** may investigate and settle any **claim** or **suit** in 2. above at **our** discretion.
4. All **defense expenses** in 2. above end when **we** have used up the applicable Limit of Insurance of this policy in the payment of judgements or settlements.
5. With respect to any **claim** or **suit we** defend in 2. above:
   a. All expenses **we** incur.
   b. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance of this policy. **We** do not have to furnish these bonds.
   c. All reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation and defense of the **claim** or **suit** including actual loss of earnings up to $100 a day because of the time taken off from work.
   d. All costs taxed against the **Insured** in the **suit.**
   e. All interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have:
      (1) paid, or offered to pay; or
      (2) deposited in court;
      the part of the judgement that is within the applicable Limit of Insurance of this policy.
6. In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico and Canada where **we** may be prevented by law or otherwise from carrying out this agreement:

No. UL-502 (9/90)

a. The **Insured** must arrange to inv___ate, defend, or settle any **claim** or **suit**.
b. The **Insured** will not make any settlement without our consent.
c. We will pay expenses incurred with our consent.
7. We will have no duty or obligation to investigate, settle or defend any **claim** or **suit** against any **Insured** alleging damages which are no. covered by this policy

## III. LIMITS OF INSURANCE–COVERAGES A AND B COMBINED

1. The Limits of Insurance, Coverages A and B Combined shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   i. **Insureds**;
   ii. **Claims** or **suits** brought; or
   iii. Persons or organizations making **claims** or bringing **suits**.
a. The Limit of Insurance stated in Item 3 (b) as the Products/Completed Operations Aggregate Limit is the most we will pay under Coverages A and B combined for **damages** because of injury or **damages** included in the products/completed operations hazard. Each payment we make for such **damages** reduces by the amount of the payment the Products/Completed Operations Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.
b. The Limit of Insurance stated in Item 3 (c) General Aggregate Limit is the most we will pay under Coverages A and B combined except for:
   (1) **Damages** included in 1.a. above for the **products/completed operations hazard** and;
   (2) Coverages included in the Schedule A–Schedule of Underlying Insurance Policies to which no underlying aggregate(s) limit applies.
   Each payment we make for such **damages** reduces by the amount of the payment the General Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.
c. Subject to a. or b. above, whichever applies, the Per Occurrence Limit is the most we will pay for **damages** under Coverages A or B because of all **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of any one **occurrence**.
2. Our obligations under Coverage A and B end when the applicable Limit of Insurance available is used up. If we pay any amounts for **damages** in excess of that Limit of Insurance, you agree to reimburse us promptly for such amounts.
3. The limit of this policy applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.
4. **You** agree to reimburse us promptly for **damages** paid in settlement of **claims** or **suits** to the extent that such amounts are within the **self-insured retention** as stated in the Declarations. However, this does not apply to defense expenses incurred by the **Insured** within the **self-insured retention**.

## IV. NAMED INSURED AND INSURED

### 1. WHO IS AN INSURED–COVERAGE A (EXCESS LIABILITY INSURANCE)
Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES each person or organization who is an

**Insured** in th___ ___derlying insurance is an **Insured** under Coverage A subject to all the limitations upon such **underlying insurance** other than the limits of the underlying insurer's liability.

### 2. WHO IS AN INSURED–COVERAGE B (UMBRELLA LIABILITY IN.URANCE)
Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES, the Named Insured and each of the following is an **Insured** under Coverage B:
if you are designated in the Declarations as:
   (1) An individual, **you** and **your** spouse are **Insureds**, but only with respect to the conduct of a business of which **you** are the sole owner.
   (2) A partnership or joint venture, **you** are an **Insured**. **Your** members, **your** partners and their spouses are also **Insureds**, but only with respect to the conduct of **your** business.
   (3) An organization other than a partnership or joint venture, **you** are an **Insured**. **Your** executive officers and directors are **Insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **Insureds**, but only with respect to their liability as stockholders.
b. Each of the following are also **Insureds**:
   (1) **Your** employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**.
   (2) Any person or organization to whom or which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to **your** operations, or facilities **you** own or use;
   (3) Any person or organization having proper temporary custody of **your** property if **you** die, but only:
      (a) With respect to liability arising out of the maintenance or use of that property; and
      (b) Until **your** legal representative has been appointed.
   (4) **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this policy.
c. With respect to any **auto you** own or hire for use, any person (including **your** employees) while using such auto and any person or organization legally responsible for the use thereof, provided its actual use is with **your** permission, except:
   (1) Any person or organization, or any agent or employee thereof, operating an auto sales agency, repair shop, service station, storage garage or public parking place, with respect to an **occurrence** arising out of the operation thereof; or,
   (2) The owner or any lessee of a hired auto or any agent or employee of such owner or lessee.

### 3. WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES–COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)
a. Any organization **you** newly acquire or form, other than a partnership or joint venture, over which **you** maintain ownership or majority interest, will be deemed to be an **Insured** if there is no other similiar insurance available to that organization. However:
   (1) Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier.
      **You** may incur an additional premium charge for such newly acquired or formed organization(s) in accordance with **our** then current rating procedures;
   (2) Coverage does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization;
   (3) Coverage does not apply to **personal injury** or **advertising injury** arising out of an offense committed before **you** acquired or formed the organization;
   (4) No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## EXCLUSIONS

### I. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)
With respect to Coverage A (Excess Liability Insurance) and Coverage B (Umbrella Liability Insurance), this policy does not apply to:
1. Liability imposed on the **Insured** under any of the following laws:
   a. Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or changes to it;
   b. Any workers' compensation, unemployment compensation, disability benefits law, or any other similiar law except for liability of others assumed by the **Insured** under any contract;
   c. Damages assessed under the provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. Sections 1961-68 (1970) (RICO) or changes to it.
2. Liability assumed by the **Insured** under any contract or agreement with respect to an **occurrence** taking place before the contract or agreement is made.

3. Any obligation or liability arising out of:
   a. the **contamination** of any **environment** by **pollutants** that are introduced at any time, anywhere, in any way;
   b. Any **bodily injury**, **personal injury**, **property damage**, costs or other loss or damage arising out of such **contamination**, including but not limited to, cleaning up, remedying or detoxifying such **contamination**; or
   c. Payment of sums related to (1) the investigation or defense of any loss, injury or damage or (2) payment of any cost, fine or penalty or (3) payment of any expense involving a **claim** or **suit** related to a. or b. above.
   As used in this Exclusion 3, the following terms will have the following meanings:
   (1) **Contamination** means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of **pollutants**, whether permanent or transient in any **environment**;

2

Attach Declarations and Endorsement(s) Here

## EXCLUSIONS (continued)

(2) **Environment** includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the Insured;

(3) **Pollutants** means smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal pollutants, and all other irritants or contaminants.

4. Any liability of any Insured arising out of discrimination with respect to race, religion, sex, age, national origin, physical disability, or mental disability.

5. Any liability arising out of termination of employment of any person by any Insured.

6. Any obligation or liability for bodily injury, personal injury, or property damage, arising out of:

a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

b. The use of asbestos in constructing or manufacturing any good, product or structure; or

c. The removal of asbestos from any good, product or structure; or

d. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty for for any expense or **claim** or **suit** related to any of the above.

7. Any liability incurred by any Insured directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

8. Any liability:

a. For **bodily injury, property damage, personal injury, advertising injury** if:

(1) with respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the **hazardous properties** of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

b. For **bodily injury, property damage, personal injury and advertising injury** if:

(1) the nuclear material (a) is at any nuclear facility owned by or operated on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured**; or

(3) the injury, sickness, disease, death, or destruction arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction or damage of property at such **nuclear facility**.

As used in this Exclusion 8:

**hazardous properties** means source material, special nuclear material or byproduct material; **source material, special nuclear materials** and **byproduct material** have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

**spent fuel** means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

**waste** means any waste material (i) containing byproduct material and (ii) resulting from the operation by any person or **nuclear facility**;

**nuclear facility** means:

(1) any nuclear reactor.

(2) any equipment or devise designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or

utilizing spent fuel, or (c) handling, processing or packing waste.

(3) any equipment or devise used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations; **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word injury or **destruction** includes all forms of radioactive contamination of property.

9. Any **claim** for Uninsured or Underinsured Motorist Coverage, personal injury protection, property protection or similar no-fault coverage by whatever name called, unless this policy is endorsed to provide such coverage.

10. Any obligation to pay expenses under any medical payments coverage.

11. Any liability for which any **Insured** may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the **Insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

12. Punitive or exemplary **damages**, fines, penalties and fees.

13. **Damages** or **claim** for loss due to infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised by any Insured.

14. Injury to, destruction of, loss of, or loss of use of:

a. Property owned by, loaned to, rented to, occupied by or used by you or in your care, custody or control;

b. Premises you sell, give away or abandon; if the **property damage** arises out of any part of those premises;

c. Any goods, products or containers thereof, manufactured, sold, handled or distributed by or **for you**, out of which the **occurrence** arises.

15. Any liability arising out of assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, any **Insured** and/or any employee of any **Insured**.

16. Any liability arising out of the use of any **mobile equipment, auto** or watercraft in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

17. Any liability for **property damage** sustained by any Named Insured arising out of the activities or operations of any other Named Insured.

18. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any aircraft.

19. Any obligation or liability arising out of:

a. Inhaling, ingesting or prolonged physical exposure to radon gas or goods, products or structures containing radon gas; or

b. The exposure to or use of radon gas in constructing or manufacturing any good, product or structure; or

c. The removal or reduction of radon gas from any good, product or structure; or

d. The transportation, storage or disposal of radon gas or goods, products or structures containing radon gas; or

e. The failure of any **Insured** to disclose the existence of radon gas in any structure to any person irrespective of whether or not any Insured had knowledge of the existence of radon gas in any such structure; or

f. The manifestation or accumulation of radon gas in any structure. The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or **suit** related to any of the above.

## II. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in I. above, this policy does not apply under Coverage A to:

1. Any loss not covered by the **underlying insurance**, and all exclusions now or hereafter contained in the **underlying insurance**, apply to Coverage A with the same force and effect.

2. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft 26 feet or over in length.

3

## EXCLUSIONS (continued)

**III. UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)**

In addition to the exclusions in Sections I and II above, this insurance does not apply under Coverage B to:

1. Any injury or damage
   a. Covered under Coverage A; or
   b. Which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of an underlying insurer or an Insured or the termination of the underlying policy.
2. **Bodily injury** to any officer or employee of the **Insured** who is injured in the course of such employment by any other officer or employee of the same **Insured**.
3. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft.
4. **Property damage** to **your product** arising out of it or any part of it.
5. **Property damage** with respect to the loss of use of tangible property which has not been physically injured or destroyed resulting from:
   a. A delay in or lack of performance by or on behalf of the **Insured** of any contract or agreement; or
   b. The failure of **your product** or **your work** to meet the level of performance, quality, fitness or durability warranted or represented by or on behalf of the **Insured**.
   This exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of **your product** or **your work** after such products or work have been put to use by any person or organization other than an **Insured**.
6. **Property damage** to **your work** arising out of it or any part of it and included in the products/completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **Insured's** behalf by a sub-contractor.
7. **Damages** claimed for any loss, cost or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
   a. **Your product**, or

b. **Your work**, or
c. Any property of which **your product** or **your work** forms a part; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
8. **Bodily injury** to:
   a. An employee of the **Insured** arising out of and in the course of employment by the **Insured**; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of **bodily injury** to that employee.
   This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity.
   It also applies to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.
   This exclusion does not apply to liability assumed by **you** under any contract.
9. **Personal Injury** or **advertising injury**:
   a. Arising out of oral or written publication or material, if done by or at the direction of the **Insured** with knowledge of its falsity;
   b. Arising out of oral or written publication of material first published before the beginning of the policy period;
   c. Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **Insured**; or
   d. For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for **damages** that **you** would have in absence of the contract or agreement.
10. **Advertising Injury** arising out of:
    a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;
    b. The failure of goods, products or services to conform with the advertised quality or performance;
    c. The wrong description of the price of goods, products or services;
    d. An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

## DEFINITIONS

1. **Advertising Injury** means injury, other than **personal injury**, arising out of one or more of the following offenses committed in the course of the **Insured's** advertising activities during the Policy Period:
   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. Misappropriation of advertising ideas or style of doing business; or
   d. Infringement of copyright, title or slogan.
2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include **mobile equipment**.
3. **Bodily injury** means bodily injury, mental anguish, shock, disability, care and loss of services or consortium, sickness or disease including death sustained by a person at any time during the Policy Period.
4. **Claim** means a written demand for **damages** or services.
5. **Damages** are all sums that the **Insured** is legally obligated to pay. This obligation may be the decision of a court or the result of a settlement. The cause of the obligation must be from **bodily injury**, **personal injury**, **property damage** or **advertising injury** covered by this policy. **Damages** include interest which accumulates on a civil court judgement from the time the **suit** is brought until the final judgement is entered by the court. **Damages** include **defense expense** to the same extent included in the **underlying insurance**. **Damages** do not include **damages** for which insurance is prohibited by law or public policy applicable in construction of this policy.
6. **Defense expense** means payments allocated to a specific **claim** or **suit** for its investigation, settlement or defense, including:
   a. Attorneys fees, expert witness fees and all other litigation expenses;
   b. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the bodily injury liability coverage applies;
   c. The costs of bonds to release attachments, but only for bond amounts within the limit of Insurance available;
   d. Reasonable expenses incurred by the **Insured** at **our** request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $100 a day because of time off from work;
   e. Costs taxed against the **Insured** in the suit.
   Defense expense does not include:
   (1) Salaries and expenses of **our** employees or employees of the **Insured**, other than that portion of **our** employed attorney's fees, salaries and expenses allocated to a specific **claim** or **suit**;
   (2) Fees and expenses of independent adjusters **we** hire;
   (3) The cost of bonds to appeal a judgement or award on any **suit we** defend;
   (4) Interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have paid, offered to pay, or deposited in court the amount available for the judgement

under the provisions of LIMITS OF INSURANCE.
7. **Executive officer** means a person holding any of the officer positions created by the **Insured's** charter, constitution or by-laws.
8. **First named Insured** means the person or organization first named in Item 1 of the Declarations of the policy.
9. **Insured** means any person or organization qualifying as an **Insured** in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each **Insured** against whom **claim** is made or **suit** is brought, except with respect to the limits of **our** liability.
10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:
    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
    b. Vehicles maintained for use solely on or next to the premises **you** own or rent;
    c. Vehicles that travel on crawler treads;
    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
       (1) Power cranes, shovels, loaders, diggers, or drills; or
       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
    e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
       (2) Cherry pickers and similar devices used to raise or lower workers;
    f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered autos:
       (1) Equipment designed primarily for:
          (a) Snow removal;
          (b) Road maintenance, but not construction or resurfacing;
          (c) Street cleaning;
       (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
11. **Occurrence** means:
    a. With respect to **bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **Insured** and includes;

4

## DEFINITIONS (continued)

(1) The rendering of or failure to render professional medical, dental or nursing services by **your dispensary or clinic.**

(2) The use of reasonable force for the lawful protection of **your** employees, tenants, guests or property.

b. With respect to **advertising injury and personal injury** respectively: an offense described in one of the numbered subdivisions of those terms in this policy.

All **damages** that arise from exposure to the same general conditions are considered to arise out of one **occurrence.**

12. **Personal Injury** means injury, other than **advertising Injury** or **bodily injury,** arising out of one or more of the following offenses committed in the course of the **Insured's** business during the Policy Period:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy arising out of the conduct of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you.**

13. **Products/completed operations hazard** includes all **bodily injury and property damage** occurring away from premises **you** own or rent arising out of **your product** or **your work** except:

a. Products that are still in **your** physical possession; or

b. **Work** that has not yet been completed or abandoned.

**Your work** will be deemed completed at the earliest of the following times:

(1) When all the work called for in **your** contract has been completed;

(2) When all the work to be done at the site has been completed if **your** contract calls for work at more than one site;

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor, or subcontractor working on the same project.

**Work** that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.

c. This hazard does not include **bodily injury** or **property damage** arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

14. **Property damage** means:

a. Physical injury to tangible property, including all resulting loss of use of that property occurring during the Policy Period; or

b. Loss of use of tangible property that is not physically injured caused by an **occurrence** during the Policy Period.

15. **Self-Insured retention** means the amount stated as such in the Declarations which is retained and payable by the **Insured** with respect to each **occurrence.** All expenses incurred by **us,** or by the **Insured** with our consent in the investigation or defense of a **claim** or **suit** within the **self-insured retention** shall be payable by us.

16. **Suit** means a civil proceeding in which **damages** because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding alleging such **damages** to which the **Insured** must submit or submit with our consent.

17. **Underlying Insurance** means the insurance policies listed in Schedule A–Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in Schedule A–Schedule of Underlying Insurance Policies. The limit of **underlying insurance** includes any deductible amount, any participation of the **Insured** or any **self-insured retention** above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced by payment of loss with respect to **bodily injury, property damage, personal injury** or **advertising injury** taking place after the effective date of this policy. The coverage and limits of such policies shall be deemed to be applicable regardless of (a) any defense which the underlying insurer may assert because of the **Insured's** failure to comply with any condition of any such policy, (b) the actual or alleged insolvency, financial impairment or bankruptcy of the underlying insurer of any financial or (c) cancellation or termination of the underlying policy.

18. **You** means any person or organization named in the Declarations or in an endorsement forming part of this policy.

19. **Your dispensary or clinic** means a dispensary, clinic or similiar facility maintained by **you** for the benefit or convenience of **your** employees or students.

20. **Your product** means:

a. Any goods or **products,** other than real property manufactured, sold, handled, distributed or disposed of by:

(1) **You**

(2) Others trading under **your** name, or

(3) A person or organization whose business, or assets of which, you have acquired majority interests; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

21. **Your work** means:

a. Work or operations performed by **you** or on **your** behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

## CONDITIONS

1. **Premium**
The advance premium stated in the Declarations is a deposit premium only, unless otherwise specified. Upon termination of this policy, the final premium shall be computed in accordance with the rates and minimum premium stated in the Declarations. If the final premium thus computed exceeds the advance premium paid, the **first named Insured** shall pay the excess to **us.** If the final earned premium is less, we shall return to the **first named Insured** the unearned portion paid by such **Insured.**

The **first named Insured** shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to **us** at the end of the policy period, as we may direct.

Any Minimum Premium shown in the Declarations shall be fully earned and not subject to return upon audit of this insurance.

2. **Inspection and Audit**
We shall be permitted but not obligated to inspect **your** property and operations at any time. Neither **our** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on **your** behalf or for **your** benefit or that of others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

We may examine and audit **your** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this insurance insofar as they relate to the subject matter of this insurance.

3. **Notice of Occurrence, Claim or Suit**
Whenever it appears that an **occurrence, claim** or **suit** is likely to involve payment under this policy, written notice shall be given to **us** or our authorized representative by **you** or **your** designated

representative as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstance of the **occurrence, claim** or **suit,** the names and addresses of the injured and of available witnesses.

4. **Assistance and Cooperation of the Insured**
The **Insured** shall cooperate with **us** and shall comply with all the terms and conditions of this policy and shall cooperate with the underlying insurers as required by the terms of the **underlying insurance** and comply with all the terms and conditions thereof.

The **Insured** shall enforce any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of **bodily injury, personal injury, property damage** or **advertising injury** with respect to which insurance is afforded under this policy or any of the **underlying insurance** policies.

5. **Action Against Company**
No action shall be against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgement against the **Insured,** after actual trial, or by written agreement by the **Insured,** the claimant and **us.**

Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any action against the **Insured** to determine the **Insured's** liability, nor shall **we** be impleaded by the **Insured's** legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve us of any of our obligations hereunder.

5

## CONDITIONS (continued)

6. Appeals
In the event the **Insured** or the **Insured's** underlying insurer elects not to appeal a judgement in excess of the **underlying insurance** or the **self-insured retention**, we may elect to make such appeal, at our cost and expense, and shall be liable in addition to the applicable Limit of Insurance, for the taxable costs, disbursements and additional interest incidental to such appeal.

7. Other Insurance
The insurance afforded by this policy shall be excess insurance over **all underlying insurance** covering a loss covered by this policy whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A–Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the **Insured**, covering a loss also covered by this policy.

8. Subrogation
In the event of any payment under this policy, **we** shall participate with the **Insured** and any underlying insurer in the exercise of all the **Insured's** rights of recovery against any person or organization liable therefore, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights.
Recoveries shall be applied:
First, to reimburse any interest (including the **Insured's**) that may have paid any amount with respect to liability in excess of **our** Limit of Insurance hereunder;
Then to reimburse **us** up to the amount paid hereunder, along with any other insurers having a proportionate interest at the same level; and
Lastly, to reimburse such interests (including the **Insured's**) with respect to which this insurance is excess, as are entitled to claim the residue, if any;
A different apportionment may be made to effect settlement of a claim by agreement signed by all interests. Reasonable expenses incurred in the exercise of rights or recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

9. Changes
Notice to any person, or knowledge possessed by any person, shall not effect a waiver or a change in any part of this policy, or stop **us** from asserting any rights under the terms of this policy with respect to any requirements as to **underlying insurance**; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by **our** authorized representative.

10. Assignment
Assignment of interest under this policy shall not bind **us** until **our** consent is endorsed hereon; if, however, **you** shall die, such insurance as is afforded by this policy shall apply (a) to **your** legal representative, but only while acting within the scope of his or her duties as such, and (b) with respect to **your** property, to the person having proper temporary custody thereof, as **Insured**, but only until the appointment and qualification of the legal representative.

11. Maintenance of Underlying Insurance
**You** agree to maintain all insurance policies affording in total the coverage and limits as stated in the Schedule A–Schedule of Underlying Insurance Policies, or renewals or replacements thereof not more restrictive in coverage or limits, in full force and effect during this policy period, except for reduction of aggregate limits where applicable, solely as a result of the payment of **claims** for **occurrences** which take place on or after the effective date of this policy.
**You** agree to notify **us** within thirty days if any company replaces or changes any terms or conditions of any of the policies designated in the Schedule A–Schedule of Underlying Insurance Policies.
**Your** failure or inability to comply with the foregoing two paragraphs of this Condition 11, shall not invalidate this policy, but in the event of such failure or inability to comply therewith, **we** shall be liable only to the extent that **we** would have been liable had such failure or inability to comply not occurred.

12. Service of Suit Clause:
It is agreed that in the event **we** fail to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction

and all matters arising hereunder shall be determined in accordance with the law and practice of such court.
It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located, and that in any suit instituted upon this contract we will abide by the final decision of such court or any appellate court in the event of an appeal. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on **our** behalf in any **suit** and/or upon **your** request to give a written undertaking to **us** that they will enter a general appearance upon **our** behalf in the event such a **suit** shall be instituted.

13. Sole Agent
The **first named Insured** is authorized to act on behalf of all **Insureds** with respect to the giving or receiving of notice of cancellation, receiving unearned premium, agreeing to any changes in the policy and being billed for additional premiums.

14. Cancellation
a. The **first named Insured** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.
b. **We** may cancel this policy by mailing or delivering to the **first named Insured** written notice of cancellation at least:
(1) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or
(2) 30 days before the effective date of cancellation if **we** cancel for any other reason.
c. **We** will mail or deliver **our** notice to the **first named Insured's** last mailing address known to **us**.
d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
e. If this policy is cancelled, **we** will send the **first named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **first named Insured** cancels, the refund will be based upon the customary short rate table. The cancellation will be effective even if **we** have not made or offered a refund.
f. If notice is mailed, proof of mailing will be sufficient proof of notice.

15. Workers' Compensation Agreement
With respect to **bodily injury** to or death of any officer or other employee arising out of and in the course of employment by **you**, it is a condition to the recovery of any loss under this policy, and **you** represent and agree, **you** have not abrogated and will not abrogate **your** common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise. In the event **you** shall at any time during the policy period, abrogate such defenses, such insurance as is afforded for **bodily injury** with respect to such officer or other employee shall automatically terminate at the same time.

16. Bankruptcy or Insolvency
In the event of the actual, or the alleged, bankruptcy, insolvency, liquidation, or financial impairment, whether temporary or permanent, of an underlying insurer, or of the **Insured** if the **underlying insurance** is comprised in whole or in part of self-insurance, it is agreed that this insurance shall not take the place of such **underlying insurance** which is or becomes invalid, uncollectible or otherwise unavailable. The **underlying insurance** listed in the Schedule A–Schedule of Underlying Insurance Policies will be deemed in effect and the risk of such bankruptcy, insolvency, liquidation, or financial impairment is retained by **you** and not by **us**.

17. Terms of Policy Conformed to Statute
Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

18. Declarations
By acceptance of this policy the **first named Insured** agrees that the statements in the Declarations are agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **first named Insured** and **us** and any of **our** representatives relating to this insurance.

**IN WITNESS WHEREOF, we** have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
President

_____
Secretary

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### NAMED INSURED ENDORSEMENT

The entity named below is added to Item 1 of the Declarations.

Naming this entity as a Named Insured does not increase the Company's Limits of Liability as specified in the policy Declarations.

Named Insured:

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL605 (4/95)

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT

This insurance is modified by the following provisions:

A.  This insurance does not apply to any liability arising out of:

    1.  Any project insured under a "wrap-up" or similar rating plan; or

    2.  The rendering or failure to render any professional services by or for the insured including the preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and any supervisory, inspection or engineering services.

B.  Except insofar as coverage is available to the Insured in valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and the only for such liability for which coverage is afforded under the underlying insurance, this insurance shall not apply to:

    1.  Any liability assumed by the insured under any contract or agreement;

    2.  Any liability for property damage to property leased by, used by, or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; or

    3.  For property damage arising out of:

        (a)  blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

        (b)  the collapse of or structural injury to any building or structure due to (i) grading of land, excavation, borrowing, filling or back-filling, tunneling, pile driving, cofferdam work of caisson work, or (ii) moving shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643A (4/95)

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT - CONTINUED

(c)  injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, excavating, drilling, borrowing, filling, back-filling or pile driving.

C.  The following additional definition applies:

"Wrap-up" means any agreement or arrangement under which all the contractors working on a specified project are insured under one or more policies issued by a specified insurer for liability arising out of the project.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643B (4/95)

Issued by:     THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

Ii is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### EMPLOYERS' LIABILITY FOLLOWING FORM ENDORSEMENT

This insurance does not apply to any liability for bodily injury, sickness, disease, disability or shock including death at any time resulting therefrom, and, if arising out of the foregoing, mental anguish or mental injury, sustained by:

1.  An employee of the insured arising out of and in the course of employment by the insured; or

2.  The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown and then only for such liability for which coverage is afforded under the underlying insurance.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL662 (4/95)

Issued by:          THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THIS POLICY.  READ IT CAREFULLY

LEAD PAINT EXCLUSION

Notwithstanding anything contained in the underlying insurance to the contrary, it is understood and agreed that this insurance does not apply to bodily injury arising out of the existence of any lead based paint or any product containing lead based paint.  It is further understood and agreed that the company will not be liable or responsible to defend the insured in any action or litigation for any lead based paint or lead based paint allegation including the failure to warn.

All other terms and conditions remain unchanged.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL784 (4/95)

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

<u>SUBSIDENCE EXCLUSION</u>

This insurance does not apply to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

It is further agreed that this insurance shall not become excess of any reduced or exhausted underlying aggregate limit to the extent that such reduction or exhaustion is the result of claims, damage, loss or expense arising out of or in any way related to the above.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL758 (4/95)

GENERAL PURPOSE ENDORSEMENT            Endorsement No.  1
Issued by:        THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| L-04935 | Jonce Thomas Construction | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| June 30, 1996 | June 30, 1997 | June 30, 1996 |
| Producer | | Producer No. |
| Thomas C. Devore & Associates, Inc. | | |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


## MONTROSE PROPERTY DAMAGE EXCLUSION


This insurance shall not apply to any claim for property damage arising from a defect known before the inception date of this policy by the officers, directors, managers, or legal representatives of the named insured against whom the claim is being made.  This exclusion shall apply whether or not the insured's legal obligation to pay damages in respect of such pre-existing defect was established before the inception date.


| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| | Pro Rata of | Short Rate of |
| Date Prepared | | |
| July 8, 1996 | | |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868

**EXHIBIT D**

DECLARATIONS-EXCESS/UMBRELLA LIABILITY POLICY

POLICY NO: ____ **UL- 05389** ·                    Renewal or Rewrite of No.:    UL-04935

# HOMESTEAD INSURANCE COMPANY

Administrative Office             200 Plaza Dr.             Secaucus, NJ  07096-1581

**Item 1. Named Insured and Mailing Address**

JONCE THOMAS CONSTRUCTION CO.
(SEE EUL605)
P.O. BOX 1856
FREMONT,        CA 94538-0034

Surplus Lines Tax and Affidavit Filed
by: *American E+S*
*101 California St Ste 1125*
*San Francisco CA 94111*
License #: *0818242*

Item 2. Policy Period:
Inception       June 30, 1997

Expiration     June 30, 1998
12:01 A.M. Standard Time at the mailing address shown above.

Item 3. Limits of Insurance, Coverages A and B Combined.
The Limits of Insurance, subject to all the terms of this policy are:

(a) Per Occurrence Limit                    2,000,000.00

(b) Products/Completed Operations Combined Aggregate Limit          2,000,000.00

(c) General Aggregate Limit                 2,000,000.00

DATA ENTERED
by:    CRW
on  JUN 2 7 1997

Item 4. Self-Insured Retention-Coverage B    10,000.00      Per Occurrence

Item 5. Premium:     52,250.00     Rate    .4583     Per    12MM       Premium Basis

                                              RECEIPTS

Advance Premium          52,250.00

Minimum Premium          13,063.00    (Minimum Earned Premium)

Form numbers of forms and endorsements forming part of this policy when issued:

| | | | |
|---|---|---|---|
| UL500(9/90) | UL501(9/90) | UL502(9/90) | EUL605(4/95) |
| EUL788(4/95) | EUL643A(4/95) | EUL643B(4/95) | EUL662(4/95) |
| EUL784(4/95) | EUL812(2/97) | EUL758(4/95) | |

THOMAS C. DEVORE & ASSOC., INC

Date Issued:   July 02, 1997
Form No. UL-500 (9/90)

Countersigned by *Thomas J. Coppola*

## Schedule A-Schedule of Underlying Insurance Policies

### HOMESTEAD INSURANCE COMPANY
Philadelphia, Pennsylvania 19103

Issued to form a part of Policy No.: ___UL-05389___   By Homestead Insurance Co

| TYPE OF POLICY | APPLICABLE LIMITS OF LIABILITY | INSURER POLICY PERIOD |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY (Bodily Injury, Property Damage, Personal Injury and Advertising Injury) | | American Equity To Be Advised Eff From: 6/30/97 Eff To: 6/30/98 |

```
                      ___1973 Form ("Old" Occurrence)
                      Bodily Injury
                                Each Occurrence
                                Aggregate where applicable
                                Aggregate Per Location where applicable
                                Other:
                      Property Damage
                                Each Occurrence
                                Aggregate where applicable
                                Aggregate Per Location where applicable
                                Other:
                      Bodily Injury and Property Damage
                      Combined Single Limit
                                Each Occurrence
                                Aggregate where applicable
                                Aggregate Per Location where applicable
                                Other:

                      _X_1986 - 1993 Form ("New" Occurrence)
          1,000,000   Each Occurrence
          1,000,000   Personal Injury and Advertising Injury
          2,000,000   General Aggregate
             N/A      Policy Aggregate
             N/A      Products-Completed Operations Aggregate
             N/A      Aggregate Per Location where applicable
```

**NOTE**: Unless specifically noted hereunder, all General Liability Policies are written on comprehensive forms without special restrictive endorsements, on the standard forms in general use as designated by the letter "X" above indicating the appropriate GL form.

---

| COMPREHENSIVE AUTOMOBILE LIABILITY | | Northbrook 0237878 Eff From: 6/30/97 Eff To: 6/30/98 |
|---|---|---|

```
                      Bodily Injury
                                Each Person
                                Each Occurrence
                      Property Damage
                                Each Occurrence
                      Bodily Injury and Property
                      Damage Combined Single Limit
          1,000,000   Each Occurrence
```

**NOTE**: Unless specifically noted hereunder, all Automobile Liability policies are written on comprehensive forms, including Any Automobile, Hired and Non-Owned Automobile Liability coverage, without special restrictive endorsements or aggregate limits, on standard forms in general use.

---

| STANDARD WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | Coverage B-Employer's Liability | Cal Comp W971130562 Eff From: 1/1/97 Eff To: 1/1/98 |
|---|---|---|

```
          1,000,000   Each Accident
          1,000,000   Disease Policy Limit
          1,000,000   Disease Each Employee
```

Date Issued: 7/2/97
Form No. UL-501(9/90)

*Jonee Thomae C*
*UL ~05389*

*Homestead Insurance Company*

**A STOCK COMPANY**
PHILADELPHIA, PENNSYLVANIA 19103

# EXCESS/UMBRELLA LIABILITY POLICY



IN THIS POLICY THE WORDS **YOU** AND **YOUR** REFER TO THE NAMED INSURED SHOWN IN THE DECLARATIONS. THE WORD **INSURED** MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER SECTION IV - NAMED INSURED AND INSURED. **WE, US** AND **OUR** REFER TO THE STOCK INSURANCE COMPANY SHOWN IN THE DECLARATIONS. OTHER WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE SPECIAL MEANINGS. REFER TO THE DEFINITIONS SECTION OF THIS POLICY. IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE DECLARATIONS MADE A PART HEREOF AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, **WE** AGREE WITH **YOU** AS FOLLOWS:

## I. INSURING AGREEMENTS

### COVERAGE A—EXCESS LIABILITY INSURANCE (FOLLOWING FORM)

Coverage A is excess insurance and follows the **underlying insurance** except as otherwise stated in this policy.
1. **We** will pay those sums that the **Insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury,** or **advertising injury,** caused by an **occurrence** which occurs during the policy period of this policy in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable limit of insurance.
2. **We** have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE SETTLEMENTS.
3. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
4. Coverage A is subject to the terms of the **underlying insurance** except:
   a. That the amounts or limits of liability, policy period, and conditions relating to the premium, subrogation, other insurance, obligation to investigate and defend, and cancellation or non-renewal and any renewal agreement of **underlying insurance** do not apply to this insurance;
   b. That where any exclusions of this policy conflict with any terms of the **underlying insurance,** the exclusions of this policy shall apply;
   c. That where the **underlying insurance** has an aggregate limit of liability, such aggregate limit shall not, for the purpose of determining when this insurance applies, be reduced or exhausted by any payment relating to an act, error, omission, injury, **damage,** or offense which occurs before the effective date shown in the Declarations of this policy;
   d. For any obligation to provide or to pay for legal defense. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.
5. Settlement of any **claim** or **suit** for an amount in excess of available **underlying insurance** by any underlying insurer shall not be binding on **us** unless **we** consent in writing.

### COVERAGE B—UMBRELLA LIABILITY INSURANCE

Coverage B is excess insurance over a **self-insured retention.** Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.
1. **We** will pay those sums that the **Insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury,** or **advertising injury** caused by an **occurrence** which occurs during the policy period of this policy.
2. In any jurisdiction where **we** are prevented by law or otherwise from paying on the **Insured's** behalf, **we** will indemnify the **Insured** instead, and paragraph 1. shall be deemed changed accordingly.
3. Legal defense is covered by this insurance only as shown under DEFENSE SETTLEMENTS.

No. UL-502 (9/90)

## II. DEFENSE SETTLEMENTS

**We** will pay defense expenses only as follows:
   i. When **defense expense** payments of any **underlying insurance** reduce the Limits of Insurance provided by that policy, then any such expense payment made under this policy will reduce the Limits of Insurance as stated in Item 3 of the Declarations.
   ii. When **defense expense** payments of any of the **underlying insurance** do not reduce the Limits of Insurance provided by those policies, then any such expense payment made under this policy will not reduce the Limits of Insurance as stated in Item 3 of the Declarations.
1. **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend. If **we** elect to join in the defense of such **claims** or **suits, we** will pay all expenses **we** incur.
   **You** shall give **us** the opportunity to associate with **you** or the underlying insurers or both in the defense and control of any **claims, suits,** or proceedings which involve or appear likely to involve this insurance. **You** and **your** insurers shall cooperate with **us** in the defense of such **claim, suit** or proceeding.
2. **We** will defend any **suit** which is likely to involve **us** for **damages** payable under Coverages A or B (including **damages** wholly or partly within the **self-insured retention**) but which are not payable by a policy of **underlying insurance,** or any other available insurance, because:
   a. Such **damages** are not covered by such underlying or other insurance; or
   b. The **underlying insurance** has been exhausted by the payment of **claims.**
3. **We** may investigate and settle any **claim** or **suit** in 2. above at **our** discretion.
4. All **defense expenses** in 2. above end when **we** have used up the applicable Limit of Insurance of this policy in the payment of judgements or settlements.
5. **We** will pay, with respect to any **claim** or **suit we** defend in 2. above:
   a. All expenses **we** incur.
   b. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance of this policy. **We** do not have to furnish these bonds.
   c. All reasonable expenses incurred by the **Insured** at **our** request to assist **us** in the investigation and defense of the **claim** or **suit** including actual loss of earnings up to $100 a day because of the time taken off from work.
   d. All costs taxed against the **Insured** in the **suit.**
   e. All interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have:
      (1) paid, or offered to pay; or
      (2) deposited in court;
      the part of the judgement that is within the applicable Limit of Insurance of this policy.
6. In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico and Canada where **we** may be prevented by law or otherwise from carrying out this agreement:

a. The **Insured** must arrange to inv_____ate, defend, or settle any claim or suit.

b. The **Insured** will not make any settlement without our consent.

c. We will pay expenses incurred with our consent.

7. We will have no duty or obligation to investigate, settle or defend any claim or suit against any **Insured** alleging **damages** which are n_t covered by this policy

## III. LIMITS OF INSURANCE–COVERAGES A AND B COMBINED

1. The Limits of Insurance, Coverages A and B Combined shown in the Declarations and the rules below fix the most **we** will pay regardless of the number of:
   i. **Insureds**;
   ii. **Claims or suits** brought; or
   iii. Persons or organizations making **claims** or bringing **suits**.

   a. The Limit of Insurance stated in Item 3 (b) as the Products/Completed Operations Aggregate Limit is the most **we** will pay under Coverages A and B combined for **damages** because of injury or **damages** included in the products/completed operations hazard. Each payment **we** make for such **damages** reduces by the amount of the payment the Products/Completed Operations Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.

   b. The Limit of Insurance stated in Item 3 (c) General Aggregate Limit is the most **we** will pay under Coverages A and B combined except for:
      (1) **Damages** included in 1.a. above for the **products/completed operations hazard** and;
      (2) Coverages included in the Schedule A–Schedule of Underlying Insurance Policies to which no underlying aggregate(s) limit applies.

      Each payment **we** make for such **damages** reduces by the amount of the payment the General Aggregate Limit. This reduced limit will then be the Limit of Insurance available for further **damages** of these kinds.

   c. Subject to a. or b. above, whichever applies, the Per Occurrence Limit is the most **we** will pay for **damages** under Coverages A or B because of all **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of any one **occurrence**.

2. Our obligations under Coverage A and B end when the applicable Limit of Insurance available is used up. If **we** pay any amounts for **damages** in excess of that Limit of Insurance, **you** agree to reimburse **us** promptly for such amounts.

3. The limit of this policy applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for the purpose of determining the Limits of Insurance.

4. **You** agree to reimburse **us** promptly for **damages** paid in settlement of **claims or suits** to the extent that such amounts are within the **self-insured retention** as stated in the Declarations. However, this does not apply to defense expenses incurred by the **Insured** within the **self-insured retention**.

## IV. NAMED INSURED AND INSURED

1. **WHO IS AN INSURED–COVERAGE A (EXCESS LIABILITY INSURANCE)**
   Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES each person or organization who is an

**Insured** in th_____ underlying insurance is an Insured under Coverage A subject to all the limitations upon such **underlying** insurance other than the limits of the underlying insurer's liability.

2. **WHO IS AN INSURED–COVERAGE B (UMBRELLA LIABILITY IN___RANCE)**
   Except as provided in WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES, the Named Insured and each of the following is an **Insured** under Coverage B:
   If **you** are designated in the Declarations as:
   (1) An individual, **you** and **your** spouse are Insureds, but only with respect to the conduct of a business of which **you** are the sole owner.
   (2) A partnership or joint venture, **you** are an Insured. **Your** members, **your** partners and their spouses are also **Insureds**, but only with respect to the conduct of **your** business.
   (3) An organization other than a partnership or joint venture, **you** are an **Insured**. **Your** executive officers and directors are **Insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **Insureds**, but only with respect to their liability as stockholders.

   b. Each of the following are also Insureds:
   (1) **Your** employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**.
   (2) Any person or organization to whom or which **you** are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to **your** operations, or facilities **you** own or use;
   (3) Any person or organization having proper temporary custody of **your** property if **you** die, but only:
      (a) With respect to liability arising out of the maintenance or use of that property; and
      (b) Until **your** legal representative has been appointed.
   (4) **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this policy.

   c. With respect to any **auto you** own or hire for use, any person (including **your** employees) while using such **auto** and any person or organization legally responsible for the use thereof, provided its actual use is with **your** permission, except:
   (1) Any person or organization, or any agent or employee thereof, operating an **auto** sales agency, repair shop, service station, storage garage or public parking place, with respect to an **occurrence** arising out of the operation thereof; or,
   (2) The owner or any lessee of a hired **auto** or any agent or employee of such owner or lessee.

3. **WHO IS AN INSURED–NEWLY ACQUIRED OR FORMED ENTITIES–COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)**
   a. Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will be deemed to be an **Insured** if there is no other similar insurance available to that organization. However:
   (1) Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier.
      **You** may incur an additional premium charge for such newly acquired or formed organization(s) in accordance with **our** then current rating procedures;
   (2) Coverage does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization;
   (3) Coverage does not apply to **personal injury** or **advertising injury** arising out of an offense committed before **you** acquired or formed the organization;
   (4) No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

# EXCLUSIONS

## I. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE) AND COVERAGE B (UMBRELLA LIABILITY INSURANCE)
With respect to Coverage A (Excess Liability Insurance) and Coverage B (Umbrella Liability Insurance), this policy does not apply to:

1. Liability imposed on the **Insured** under any of the following laws:
   a. Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or changes to it;
   b. Any workers' compensation, unemployment compensation, disability benefits law, or any other similar law except for liability of others assumed by the **Insured** under any contract;
   c. **Damages** awarded under the provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. Sections 1961-68 (1970) (RICO) or changes to it.

2. Liability assumed by the **Insured** under any contract or agreement with respect to an **occurrence** taking place before the contract or agreement is made.

3. Any obligation or liability arising out of:
   a. The **contamination** of any **environment** by **pollutants** that are introduced at any time, anywhere, in any way;
   b. Any **bodily injury**, **personal injury**, **property damage**, costs or other loss or damage arising out of such **contamination**, including but not limited to, cleaning up, remedying or detoxifying such **contamination**; or
   c. Payment of sums related to (1) the investigation or defense of any loss, injury or damage or (2) payment of any cost, fine or penalty or (3) payment of any expense involving a **claim** or **suit** related to a. or b. above.

   As used in this Exclusion 3, the following terms will have the following meanings:
   (1) **Contamination** means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of **pollutants**, whether permanent or transient in any **environment**;

Attach Declarations and Endorsement(s) Here

## EXCLUSIONS (continued)

(2) **Environment** includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the **Insured**;

(3) **Pollutants** means smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal pollutants, and all other irritants or contaminants.

4. Any liability of any **Insured** arising out of discrimination with respect to race, religion, sex, age, national origin, physical disability, or mental disability.

5. Any liability arising out of termination of employment of any person by any **Insured**.

6. Any obligation or liability for **bodily injury, personal injury, or property damage,** arising out of:

  a. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

  b. The use of asbestos in constructing or manufacturing any good, product or structure; or

  c. The removal of asbestos from any good, product or structure; or

  d. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty for for any expense or **claim** or suit related to any of the above.

7. Any liability incurred by any **Insured** directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

8. Any liability:

  a. For **bodily injury, property damage, personal injury, advertising injury** if:

    (1) with respect to which an **Insured** under the policy is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the **hazardous properties** of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

  b. For **bodily injury, property damage, personal injury** and **advertising injury** if:

    (1) the nuclear material (a) is at any nuclear facility owned by or operated on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured**; or

    (3) the **injury, sickness, disease, death,** or **destruction** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **injury** to or destruction or damage of property at such **nuclear facility.**

As used in this Exclusion 8:

  **hazardous properties** means source material, special nuclear material or byproduct material; **source material, special nuclear materials** and **byproduct material** have the meanings given them by the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **spent fuel** means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;

  **waste** means any waste material (i) containing byproduct material and (ii) resulting from the operation by any person or organization of any **nuclear facility;**

  **nuclear facility** means:

    (1) any nuclear reactor,

    (2) any equipment or devise designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or

utilizing spent fuel, or (c) handling, processing or packing waste,

    (3) any equipment or devise used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (4) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located; all operations conducted on such site and all premises used for operations; **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word **injury** or **destruction** includes all forms of radioactive contamination of property.

9. Any **claim** for Uninsured or Underinsured Motorist Coverage, personal injury protection, property protection or similar no-fault coverage by whatever name called, unless this policy is endorsed to provide such coverage.

10. Any obligation to pay expenses under any medical payments coverage.

11. Any liability for which any **Insured** may be held liable by reason of:

  (1) Causing or contributing to the intoxication of any person;

  (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

  (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if the **Insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

12. **Punitive** or exemplary **damages,** fines, penalties and fees.

13. **Damages** claimed for loss due to infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised by any **Insured.**

14. Injury to, destruction of, loss of, or loss of use of:

  a. Property owned by, loaned to, rented to, occupied by or used by you or in your care, custody or control;

  b. Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

  c. Any goods, products or containers thereof, manufactured, sold, handled or distributed by or for you, out of which the **occurrence** arises.

15. Any liability arising out of assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, any **Insured** and/or any employee of any **Insured.**

16. Any liability arising out of the use of any **mobile equipment, auto** or watercraft in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

17. Any liability for **property damage** sustained by any Named Insured arising out of the activities or operations of any other Named Insured.

18. Bodily injury or property damage arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any aircraft.

19. Any obligation or liability arising out of:

  a. Inhaling, ingesting or prolonged physical exposure to radon gas or goods, products or structures containing radon gas; or

  b. The exposure to or use of radon gas in constructing or manufacturing any good, product or structure; or

  c. The removal or reduction of radon gas from any good, product or structure; or

  d. The transportation, storage or disposal of radon gas or goods, products or structures containing radon gas; or

  e. The failure of any **Insured** to disclose the existence of radon gas in any structure to any person irrespective of whether or not any **Insured** had knowledge of the existence of radon gas in any such structure; or

  f. The manifestation or accumulation of radon gas in any structure.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or **claim** or suit related to any of the above.

## II. UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)

In addition to the exclusions in I. above, this policy does not apply under Coverage A to:

1. Any loss not covered by the **underlying insurance,** and all exclusions now or hereafter contained in the **underlying insurance,** apply to Coverage A with the same force and effect.

2. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft 26 feet or over in length.

## EXCLUSIONS (continued)

**III. UNDER COVERAGE B (UMBRELLA LIABILITY INSURANCE)**

In addition to the exclusions in Sections I and II above, this insurance does not apply under Coverage B to:

1. Any injury or damage
   a. Covered under Coverage A; or
   b. Which would have been covered under Coverage A but for the actual or alleged bankruptcy or insolvency of an underlying insurer or an **Insured** or the termination of the underlying policy.
2. **Bodily injury** to any officer or employee of the **Insured** who is injured in the course of such employment by any other officer or employee of the same **Insured**.
3. **Bodily injury** or **property damage** arising out of the ownership, operation, maintenance, use, entrustment to others or loading or unloading of any watercraft.
4. **Property damage** to **your product** arising out of it or any part of it.
5. **Property damage** with respect to the loss of use of tangible property which has not been physically injured or destroyed resulting from:
   a. A delay in or lack of performance by or on behalf of the **Insured** of any contract or agreement, or
   b. The failure of **your product** or **your work** to meet the level of performance, quality, fitness or durability warranted or represented by or on behalf of the **Insured**.
   This exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of **your product** or **your work** after such products or work have been put to use by any person or organization other than an Insured.
6. **Property damage** to **your work** arising out of it or any part of it and included in the products/completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **Insured's** behalf by a sub-contractor.
7. **Damages** claimed for any loss, cost or expense incurred for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
   a. **Your product**, or
   b. **Your work**, or
   c. Any property of which **your product** or **your work** forms a part; if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
8. **Bodily injury** to:
   a. An employee of the **Insured** arising out of and in the course of employment by the **Insured**; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of **bodily injury** to that employee.
   This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity.
   It also applies to any obligation to share **damages** with or repay someone else who must pay **damages** because of the injury.
   This exclusion does not apply to liability assumed by **you** under any contract.
9. **Personal Injury** or **advertising Injury**:
   a. Arising out of oral or written publication or material, if done by or at the direction of the **Insured** with knowledge of its falsity;
   b. Arising out of oral or written publication of material first published before the beginning of the policy period;
   c. Arising out of the willful violation of penal statute or ordinance committed by or with the consent of the **Insured**; or
   d. For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for **damages** that **you** would have in absence of the contract or agreement.
10. **Advertising Injury** arising out of:
    a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;
    b. The failure of goods, products or services to conform with the advertised quality or performance;
    c. The wrong description of the price of goods, products or services;
    d. An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

## DEFINITIONS

1. **Advertising Injury** means injury, other than **personal injury**, arising out of one or more of the following offenses committed in the course of the Insured's advertising activities during the Policy Period:
   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. Misappropriation of advertising ideas or style of doing business; or
   d. Infringement of copyright, title or slogan.
2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But auto does not include **mobile equipment**.
3. **Bodily injury** means bodily injury, mental anguish, shock, disability, care and loss of services or consortium, sickness or disease including death sustained by a person at any time during the Policy Period.
4. **Claim** means a written demand for damages or services.
5. **Damages** are all sums that the **Insured** is legally obligated to pay. This obligation may be the decision of a court or the result of a settlement. The cause of the obligation must be from **bodily injury**, **personal injury**, **property damage** or **advertising injury** covered by this policy. **Damages** include interest which accumulates on a civil court judgement from the time the **suit** is brought until the final judgement is entered by the court. **Damages** include defense **expense** to the same extent included in the **underlying insurance**. **Damages** do not include **damages** for which insurance is prohibited by law or public policy applicable in construction of this policy.
6. **Defense expense** means payments allocated to a specific **claim** or **suit** for its investigation, settlement or defense, including:
   a. Attorneys fees, expert witness fees and all other litigation expenses;
   b. Up to $250 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** liability coverage applies;
   c. The costs of bonds to release attachments, but only for bond amounts within the Limit of Insurance available;
   d. Reasonable expenses incurred by the **Insured** at our request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $100 a day because of time off from work;
   e. Costs taxed against the **Insured** in the suit.
   Defense expense does not include:
   (1) Salaries and expenses of our employees or employees of the **Insured**, other than that portion of our employed attorney's fees, salaries and expenses allocated to a specific **claim** or **suit**;
   (2) Fees and expenses of independent adjusters **we** hire;
   (3) The cost of bonds to appeal a judgement or award on any **suit** we defend;
   (4) Interest on the full amount of any judgement that accrues after entry of the judgement and before **we** have paid, offered to pay, or deposited in court the amount available for the judgement
   under the provisions of LIMITS OF INSURANCE.
7. **Executive officer** means a person holding any of the officer positions created by the Insured's charter, constitution or by-laws.
8. **First named Insured** means the person or organization first named in Item 1 of the Declarations of the policy.
9. **Insured** means any person or organization qualifying as an **Insured** in the applicable WHO IS AN INSURED provision of this policy. The insurance afforded applies separately to each **Insured** against whom **claim** is made or **suit** is brought, except with respect to the limits of our liability.
10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:
    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
    b. Vehicles maintained for use solely on or next to the premises **you** own or rent;
    c. Vehicles that travel on crawler treads;
    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
       (1) Power cranes, shovels, loaders, diggers, or drills; or
       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
    e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
       (2) Cherry pickers and similar devices used to raise or lower workers;
    f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:
       (1) Equipment designed primarily for:
          (a) Snow removal;
          (b) Road maintenance, but not construction or resurfacing;
          (c) Street cleaning;
       (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
11. **Occurrence** means:
    a. With respect to **bodily injury** or **property damage**: an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the Insured and includes;

DEFINITIONS (continued)

(1) The rendering of or failure to render professional medical, dental or nursing services by **your dispensary or clinic.**
(2) The use of reasonable force for the lawful protection of **your** employees, tenants, guests or property.
b. With respect to **advertising injury and personal injury** respectively: an offense described in one of the numbered subdivisions of those terms in this policy.
All **damages** that arise from exposure to the same general conditions are considered to arise out of one **occurrence.**
12. **Personal Injury** means injury, other than **advertising injury** or **bodily injury,** arising out of one or more of the following offenses committed in the course of the **Insured's** business during the **Policy Period:**
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication of material that violates a person's right of privacy arising out of the conduct of **your** business, excluding advertising, publishing, broadcasting or telecasting done by or for **you.**
13. **Products/completed operations hazard** includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent arising out of **your product** or **your work** except:
a. Products that are still in **your** physical possession; or
b. Work that has not yet been completed or abandoned.
**Your work** will be deemed completed at the earliest of the following times:
(1) When all the work called for in **your** contract has been completed;
(2) When all the work to be done at the site has been completed if **your** contract calls for work at more than one site;
(3) When the part of the work done at a job site has been put to its intended use by any person or organization other than another contractor, or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.
c. This hazard does not include **bodily injury** or **property damage** arising out of:
(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;
(2) The existence of tools, uninstalled equipment or abandoned or unused materials.
14. **Property damage** means:
a. Physical injury to tangible property, including all resulting loss of use of that property occurring during the Policy Period; or
b. Loss of use of tangible property that is not physically injured caused by an **occurrence** during the Policy Period.

15. **Self-Insured retention** means the amount stated as such in the Declarations which is retained and payable by the **Insured** with respect to each **occurrence.** All expenses incurred by **us,** or by the **Insured** with our consent in the investigation or defense of a **claim** or **suit** within the self-insured retention shall be payable by us.
16. **Suit** means a civil proceeding in which damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding alleging such **damages** to which the **Insured** must submit or submit with our consent.
17. **Underlying Insurance** means the insurance policies listed in Schedule A—Schedule of Underlying Insurance Policies, including any renewals or replacements thereof which provide the underlying coverages and limits stated in Schedule A—Schedule of Underlying Insurance Policies. The limit of **underlying insurance** includes any deductible amount, any participation of the Insured or any **self-insured retention** above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced by payment of loss with respect to **bodily injury, property damage, personal injury** or **advertising injury** taking place after the effective date of this policy. The coverage and limits of such policies shall be deemed to be applicable regardless of (a) any defense which the underlying insurer may assert because of the **Insured's** failure to comply with any condition of any such policy, (b) the actual or alleged insolvency, financial impairment or bankruptcy of the underlying insurer of any **Insured** or (c) cancellation or termination of the underlying policy.
18. **You** means any person or organization named in the Declarations or in an endorsement forming part of this policy.
19. **Your dispensary or clinic** means a dispensary, clinic or similar facility maintained by **you** for the benefit or convenience of **your** employees or students.
20. **Your product** means:
a. Any goods or products, other than real property manufactured, sold, handled, distributed or disposed of by:
(1) **You**
(2) Others trading under **your** name, or
(3) A person or organization whose business, or assets of which, **you** have acquired majority interests; and
b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
**Your product** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.
**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.
21. **Your work** means:
a. Work or operations performed by **you** or on **your** behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
**Your work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

CONDITIONS

1. **Premium**
The advance premium stated in the Declarations is a deposit premium only, unless otherwise specified. Upon termination of this policy, the final premium shall be computed in accordance with the rates and minimum premium stated in the Declarations. If the final premium thus computed exceeds the advance premium paid, the **first named Insured** shall pay the excess to us. If the final earned premium is less, we shall return to the **first named Insured** the unearned portion paid by such Insured.
The **first named Insured** shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to **us** at the end of the policy period, as we may direct.
Any Minimum Premium shown in the Declarations shall be fully earned and not subject to return upon audit of this insurance.
2. **Inspection and Audit**
**We** shall be permitted but not obligated to inspect **your** property and operations at any time. Neither **our** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking on **your** behalf or for **your** benefit or that of others to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.
**We** may examine and audit **your** books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy insofar as they relate to the subject matter of this insurance.
3. **Notice of Occurrence, Claim or Suit**
Whenever it appears that an **occurrence, claim** or **suit** is likely to involve payment under this policy, written notice shall be given to **us** or **our** authorized representative by **you** or **your** designated

representative as soon as practicable. Such notice shall contain particulars sufficient to identify the **Insured** and also reasonably obtainable information respecting the time, place and circumstance of the **occurrence, claim** or **suit,** the names and addresses of the injured and of available witnesses.
4. **Assistance and Cooperation of the Insured**
The **Insured** shall cooperate with **us** and shall comply with all the terms and conditions of this policy and shall cooperate with the underlying insurers as required by the terms of the **underlying insurance** and comply with all the terms and conditions thereof.
The **Insured** shall enforce any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of **bodily injury, personal injury, property damage** or **advertising injury** with respect to which insurance is afforded under this policy or any of the **underlying insurance** policies.
5. **Action Against Company**
No action shall lie against **us** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgement against the **Insured,** after actual trial, or by written agreement by the **Insured,** the claimant and **us.**
Any person or organization or the legal representative thereof who has secured such judgement or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any action against the **Insured** to determine the **Insured's** liability, nor shall **we** be impleaded by the **Insured's** legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve **us** of any of **our** obligations hereunder.

5

## CONDITIONS (continued)

6. Appeals
In the event the **Insured** or the **Insured's** underlying insurer elects not to appeal a judgement in excess of the **underlying insurance** or the **self-insured retention**, we may elect to make such appeal, at our cost and expense, and shall be liable in addition to the applicable Limit of Insurance, for the taxable costs, disbursements and additional interest incidental to such appeal.

7. Other Insurance
The insurance afforded by this policy shall be excess insurance over all **underlying insurance** covering a loss covered by this policy whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A–Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the **Insured**, covering a loss also covered by this policy.

8. Subrogation
In the event of any payment under this policy, **we** shall participate with the **Insured** and any underlying insurer in the exercise of all the **Insured's** rights of recovery against any person or organization liable therefore, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.
The **Insured** shall do nothing to prejudice such rights.
Recoveries shall be applied:
First, to reimburse any interest (including the **Insured's**) that may have paid any amount with respect to liability in excess of **our** Limit of Insurance hereunder;
Then to reimburse **us** up to the amount paid hereunder, along with any other insurers having a proportionate interest at the same level; and Lastly, to reimburse such interests (including the **Insured's**) with respect to which this insurance is excess, as are entitled to claim the residue, if any;
A different apportionment may be made to effect settlement of a **claim** by agreement signed by all interests. Reasonable expenses incurred in the exercise of rights or recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

9. Changes
Notice to any person, or knowledge possessed by any person, shall not effect a waiver or a change in any part of this policy, or stop us from asserting any rights under the terms of this policy with respect to any requirements as to **underlying insurance;** nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by **our** authorized representative.

10. Assignment
Assignment of interest under this policy shall not bind **us** until **our** consent is endorsed hereon; if, however, **you** shall die, such insurance as is afforded by this policy shall apply (a) to **your** legal representative, but only while acting within the scope of his or her duties as such, and (b) with respect to **your property**, to the person having proper temporary custody thereof, as **Insured**, but only until the appointment and qualification of the legal representative.

11. Maintenance of **Underlying Insurance**
You agree to maintain all insurance policies affording in total the coverage and limits as stated in the Schedule A–Schedule of Underlying Insurance Policies, or renewals or replacements thereof not more restrictive in coverage or limits, in full force and effect during this policy period, except for reduction of aggregate limits where applicable, solely as a result of the payment of **claims** for **occurrences** which take place on or after the effective date of this policy.
You agree to notify **us** within thirty days if any company replaces or changes any terms or conditions of any of the policies designated in the Schedule A–Schedule of Underlying Insurance Policies.
Your failure or inability to comply with the foregoing two paragraphs of this Condition 11, shall not invalidate this policy, but in the event of such failure or inability to comply therewith, we shall be liable only to the extent that we would have been liable had such failure or inability to comply not occurred.

12. Service of Suit Clause
It is agreed that in the event **we** fail to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction

and all matters arising hereunder shall be determined in accordance with the law and practice of such court.
It is further agreed that service of process in such **suit** may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located, and that in any **suit** instituted upon this contract we will abide by the final decision of such court or any appellate court in the event of an appeal. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on **our** behalf in any **suit** and/or upon **your** request to give a written undertaking to **us** that they will enter a general appearance upon **our** behalf in the event such a **suit** shall be instituted.

13. Sole Agent
The **first** named **Insured** is authorized to act on behalf of all **Insureds** with respect to the giving or receiving of notice of cancellation, receiving unearned premium, agreeing to any changes in the policy and being billed for additional premiums.

14. Cancellation
a. The **first** named **Insured** may cancel this policy by mailing or delivering to **us** advance written notice of cancellation.
b. We may cancel this policy by mailing or delivering to the **first** named **Insured** written notice of cancellation at least:
(1) 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or
(2) 30 days before the effective date of cancellation if **we** cancel for any other reason.
c. We will mail or deliver **our** notice to the **first** named **Insured's** last mailing address known to **us**.
d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
e. If this policy is cancelled, **we** will send the **first** named **Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **first** named **Insured** cancels, the refund will be based upon the customary short rate table. The cancellation will be effective even if **we** have not made or offered a refund.
f. If notice is mailed, proof of mailing will be sufficient proof of notice.

15. Workers' Compensation Agreement
With respect to **bodily injury** to or death of any officer or other employee arising out of and in the course of employment by **you**, it is a condition to the recovery of any loss under this policy, and **you** represent and agree, **you** have not abrogated and will not abrogate **your** common-law defenses under any Workers' Compensation or Occupational Disease Law by rejection of such law or otherwise. In the event **you** shall at any time during the policy period, abrogate such defenses, such insurance as is afforded for **bodily injury** with respect to such officer or other employee shall automatically terminate at the same time.

16. Bankruptcy or Insolvency
In the event of the actual, or the alleged, bankruptcy, insolvency, liquidation, or financial impairment, whether temporary or permanent, of an underlying insurer, or of the **Insured** if the **underlying insurance** is comprised in whole or in part of self-insurance, it is agreed that this insurance shall not take the place of such **underlying insurance** which is or becomes invalid, uncollectible or otherwise unavailable. The **underlying insurance** listed in the Schedule A–Schedule of Underlying Insurance Policies will be deemed in effect and the risk of such bankruptcy, insolvency, liquidation, or financial impairment is retained by **you** and not by **us**.

17. Terms of Policy Conformed to Statute
Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

18. Declarations
By acceptance of this policy the **first** named **Insured** agrees that the statements in the Declarations are agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **first** named **Insured** and **us** and any of **our** representatives relating to this insurance.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

President

Secretary

6

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### NAMED INSURED ENDORSEMENT

The entity named below is added to Item 1 of the Declarations.

Naming this entity as a Named Insured does not increase the Company's Limits of Liability as specified in the policy Declarations.

Named Insured:

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL605 (4/95)

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number | Named Insured | |
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

## CONTRACTORS LIMITATION ENDORSEMENT

This insurance is modified by the following provisions:

A.  This insurance does not apply to any liability arising out of:

1.  Any project insured under a "wrap-up" or similar rating plan; or
2.  The rendering or failure to render any professional services by or for the insured including the preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications, and any supervisory, inspection or engineering services.

B.  Except insofar as coverage is available to the Insured in valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown, and the only for such liability for which coverage is afforded under the underlying insurance, this insurance shall not apply to:

1.  Any liability assumed by the insured under any contract or agreement;
2.  Any liability for property damage to property leased by, used by, or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; or
3.  For property damage arising out of:

(a)  blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or
(b)  the collapse of or structural injury to any building or structure due to (i) grading of land, excavation, borrowing, filling or back-filling, tunneling, pile driving, cofferdam work of caisson work, or (ii) moving shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643A (4/95)

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### CONTRACTORS LIMITATION ENDORSEMENT - CONTINUED

(c)  injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, excavating, drilling, borrowing, filling, back-filling or pile driving.

C.  The following additional definition applies:

"Wrap-up" means any agreement or arrangement under which all the contractors working on a specified project are insured under one or more policies issued by a specified insurer for liability arising out of the project.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL643B (4/95)

Issued by:        THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

Ii is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


## EMPLOYERS' LIABILITY FOLLOWING FORM ENDORSEMENT


This insurance does not apply to any liability for bodily injury, sickness, disease, disability or shock including death at any time resulting therefrom, and, if arising out of the foregoing, mental anguish or mental injury, sustained by:

1.  An employee of the insured arising out of and in the course of employment by the insured; or

2.  The spouse, child, parent, brother or sister of that employee as a consequence of (1) above;

unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance for the full limit shown and then only for such liability for which coverage is afforded under the underlying insurance.


| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL662 (4/95)

Issued by:      THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THIS POLICY.    READ IT CAREFULLY

LEAD PAINT EXCLUSION

Notwithstanding anything contained in the underlying insurance to the contrary, it is understood and agreed that this insurance does not apply to bodily injury arising out of the existence of any lead based paint or any product containing lead based paint. It is further understood and agreed that the company will not be liable or responsible to defend the insured in any action or litigation for any lead based paint or lead based paint allegation including the failure to warn.

All other terms and conditions remain unchanged.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL784 (4/95)

01/03/01  WED 11:04 FAX 614 771 0785          DEVORE INS BRK.        →→→ HOMESTEAD          @005

Issued by:    THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date |

Producer
    Thomas C. Devore & Associates, Inc.

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### PRE-EXISTING DAMAGE EXCLUSION

It is agreed that coverage is not provided for bodily injury or property damage which first becomes apparent to any person prior to the effective date of this policy regardless for whether there is repeated or continued exposure during the period of this policy or whether the injury or damage continues during the period of this policy.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL812(2/97)

Issued by:          THE HOMESTEAD INSURANCE COMPANY

| Policy Number | Named Insured | |
|---|---|---|
| Policy Inception | Policy Expiration | Effective Date & Time |
| Producer | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

### SUBSIDENCE EXCLUSION

This insurance does not apply to any liability, whether direct or indirect, arising out of, caused by, resulting from, contributed to, or aggravated by the subsidence, settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

It is further agreed that this insurance shall not become excess of any reduced or exhausted underlying aggregate limit to the extent that such reduction or exhaustion is the result of claims, damage, loss or expense arising out of or in any way related to the above.

| Authorized Representative | Additional Premium | Return Premium |
|---|---|---|
| Date Prepared | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

EUL758 (4/95)

*Jack*

GENERAL PURPOSE ENDORSEMENT                    Endorsement No.  1

| Issued by: | THE HOMESTEAD INSURANCE COMPANY | |
|---|---|---|
| Policy Number UL-05389 | Named Insured Jonce Thomas Construction Co. | |
| Policy Inception June 30, 1997 | Policy Expiration June 30, 1998 | Effective Date & Time June 30, 1997 |
| Producer   Thomas C. Devore & Associates, Inc. | | Producer No. |

It is agreed that this policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.


It is hereby agreed and understood that Rate, Item #5 of the Declarations is amended to read: Flat in lieu of Receipts.

Authorized Representative

| | Additional Premium Nil | Return Premium Nil |
|---|---|---|
| Date Prepared July 25, 1997 | Pro Rata of | Short Rate of |

PREMIUM ADJUSTMENT IF THE PREMIUM IS PAYABLE IN INSTALLMENTS:

| Dates Due | Present | Increase | Decrease | Revised |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | $ | $ | $ | $ |

GNL6868