PETER J. WHALEN (SBN 130041)
ROBERT M. FINEMAN (SBN 188211)
TERRANCE J. EVANS (SBN 227671)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:   pjwhalen@duanemorris.com
          rmfineman@duanemorris.com
          tjevans@duanemorris.com

Attorneys for Defendant,
GREAT AMERICAN E&S INSURANCE COMPANY,
AN OHIO CORPORATION, FKA AGRICULTURAL
EXCESS AND SURPLUS INSURANCE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, a New York Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOMESTEAD INSURANCE COMPANY, an Pennsylvania Corporation; GREAT AMERICAN E&S INSURANCE COMPANY, an Ohio Corporation, formerly known as AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | Case No.: CV-08-1716<br><br>**GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    July 9, 2008<br>Time:    9:00 a.m.<br>Courtroom: 3<br><br>Judge:  Hon. Phyllis J. Hamilton<br>Complaint Filed:   March 31, 2008 |

DM1\1333069.1

GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. CV 08-1716 PJH

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................2

II. ISSUES TO BE DECIDED ..................................................................................................2

III. STATEMENT OF FACTS ...................................................................................................3

    A. The Underlying Actions................................................................................................ 3

    B. Summary of Insurance at Issue. .................................................................................... 3

    C. Relevant Provisions of the Great American Excess Policies........................................ 4

IV. LEGAL ARGUMENT..........................................................................................................7

    A. California Law Applies to This Action......................................................................... 7

    B. Legal Standards Applicable to 12(b)(6) Motion to Dismiss. ........................................ 7

    C. Gerling's Complaint Should Be Dismissed Because Under California's Horizontal Exhaustion Rule and the Express Language of the Great American Policies, Great American's Excess Policies Do Not Have An Obligation to Defend or Indemnify the Insured Until All Primary Coverage Has Been Exhausted. ..................................................................................................................... 8

    D. The Horizontal Exhaustion Rule Is Reinforced by the Plain Meaning of the Great American Contract Wording, Construed in Context and as a Whole. ......... 10

        1. The Great American Policies' "Defense" Provision Plainly States That Great American Has No Duty to Defend Until All Underlying Policies Have Been Exhausted by the Payment of Claims. ....................................................... 10

        2. The "Insuring Agreement" and "Other Insurance" Provision Plainly Require Application of the Horizontal Exhaustion Rule That Provides That Great American Is Not Obligated to Indemnify the Insured Until All Primary Policies Have Been Exhausted................................................................ 12

V. CONCLUSION...................................................................................................................14

DM1\1333069.1                                                     i

GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION                         CASE NO. CV 08-1716 PJH
AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Balistreri v. Pacifica Police Department*
    901 F.2d 696 (9th Cir. 1990) ................................................................................... 7

*Branch v. Tunnel*
    14 F.3d 449 (9th Cir. 1993) ............................................................................. 5, 7, 8

*Bryant v. Avado Brands, Inc.* 187 F. 3d. 1271 (11th Cir. 1999) ................................. 7

*Community Redevelopment Agency v. Aetna Casualty & Surety Co.*
    50 Cal. App. 4th 329 (1996) ............................................................................ passim

*Erie Railroad Co. v. Tompkins*
    304 U.S. 64, 58 S. Ct. 817 (1938) ............................................................................ 7

*Fireman's Fund Insurance Company v. Maryland Casualty Company*
    65 Cal. App. 4th 1279 (1998) .................................................................................. 9

*North River Ins. Co. v. American Home Assurance Co.*
    210 Cal. App. 3d 108 (1989) ................................................................................... 9

*Olympics Ins. Co. v. Employers Surplus Lines Ins. Co.*
    126 Cal. App. 3d 593 (1981) ............................................................................. 9, 13

*Padilla Construction Co., Inc. v. Transportation Ins. Co.*
    150 Cal. App. 4th 984 (2007) ............................................................................ passim

*Reliance National Indemnity Company v. General Star Indemnity Company*
    72 Cal. App. 4th 1063 (1999) ............................................................................ 8, 10

*Weisbuch v. County v. Los Angeles*
    119 F.3d 778 (9th Cir. 1997) ................................................................................... 7

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1327, at 762-63 (2d ed. 1990) ............................................................................................................ 8

Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* §9:187 (2008) ........................... 7

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ..................................................... passim

Local Rule 7-4 ............................................................................................................. 2

TO EACH PARTY AND TO THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on July 9, 2008, at 9:00 a.m., or as soon thereafter as the matter can be heard, in Department 3, of this Court located at 450 Golden Gate Avenue, San Francisco, California, defendant Great American E&S Insurance Company ("Great American") will move to dismiss this action pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff's complaint fails to state a claim upon which relief can be granted because California law requires that the limits of all available primary insurance be exhausted before an excess policy has any coverage obligations. *Community Redevelopment Agency v. Aetna Casualty & Surety Co.,* 50 Cal. App. 4th 329 (1996). Dismissal is required under Rule 12(b)(6) because the allegations pled in support of these causes of action fail to state a claim upon which relief can be granted as a matter of law.

This motion will be based on this notice, the points and authorities served and filed herewith, the Declaration of Frank Curci filed in support of this motion, the complete files and records of this action and on such further oral and documentary evidence as may be presented at the hearing of this matter.

Dated: May 30, 2008                    **DUANE MORRIS LLP**

                                       By: ___/s/_____
                                       Peter J. Whalen
                                       Robert M. Fineman
                                       Terrance J. Evans
                                       Attorneys for Defendant,
                                       Great American E&S Insurance Company, an Ohio
                                       Corporation, fka Agricultural Excess and Surplus
                                       Insurance Company

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Great American E&S Insurance Company ("Great American"), by and through its counsel, and pursuant to Federal Rules of Civil Procedure ("FRCP" or "Rule") 12(b)(6) and Local Rule 7-4, file this Memorandum of Points and Authorities in support of its Motion to Dismiss.

### I.  INTRODUCTION

Great American moves to dismiss HDI-Gerling America Insurance Company's ("Gerling") complaint pursuant to FRCP 12(b)(6) for failure to state a claim because well-established California law requires that the limits of all available primary insurance be exhausted before an excess policy has any coverage obligations. *Community Redevelopment Agency v. Aetna Casualty & Surety Co.,* 50 Cal. App. 4th 329 (1996). Because Gerling acknowledges that its primary policy was not exhausted during the relevant periods at issue in this lawsuit, it cannot establish that it is entitled to any relief from Great American.

In this lawsuit, Gerling seeks declaratory relief and contribution from Great American with respect to two separate underlying construction defect actions that involved Gerling and Great American's mutual insured Jonce Thomas Construction Company ("Jonce"). Specifically, Gerling alleges that Great American's excess policies were required to defend and indemnify Jonce in the underlying construction defect actions before Gerling's primary insurance policy was exhausted.

As explained in more detail below, Gerling's complaint fails because it is contrary to California law; it ignores the complete and unambiguous wording of the Great American excess policies; and it disregards the fundamental differences and obligations between excess insurance and primary insurance. Accordingly, Great American respectfully requests that Gerling's claims against Great American be dismissed pursuant to Rule 12(b)(6) without leave to amend.

### II.  ISSUES TO BE DECIDED

1)  Whether Great American had a duty to defend Jonce and thus contribute to Gerling's defense of Jonce before the Gerling primary policy was exhausted given that the Great

///

2

American excess policies expressly and unambiguously state that Great American has no duty to defend until "any other insurance providing coverage to the 'Insured' have been exhausted."

    2)    Whether Great American had a duty to indemnify Jonce and thus contribute to Gerling's indemnification of Jonce before the Gerling primary policy was exhausted given that the Great American excess policies and California law require all primary insurance to be exhausted before the excess policies have any coverage obligations.

### III. STATEMENT OF FACTS

#### A. The Underlying Actions.

This insurance coverage lawsuit arises from the underlying litigation and settlements in two construction defect lawsuits involving the insured, Jonce: 1) *Emery Bay II Associates v. Devcon Construction Incorporated, et al.*, Alameda County Superior Court Case Number RG04144077 (the "*Emery Bay Action*"), and 2) *Chartwell HOA, et al. v. 44 Third Street, Ltd. LP, et al.*, Santa Clara Superior Court Case Number 1-03-CV-814851 (the "*Chartwell Action*") (collectively "the Underlying Actions"). (Complaint ("Compl.") ¶6.) Plaintiff Gerling alleges that Jonce was named as a defendant in the Underlying Actions and tendered its defense and indemnity to various insurance companies, including Gerling. (Compl. ¶8.)

Gerling alleges that it defended Jonce in the *Chartwell Action* and contributed $425,000 toward a settlement under its unexhausted primary policy. (Compl. ¶¶43, 48.) Gerling alleges that it also defended Jonce in the *Emery Bay Action* and contributed the remainder of its applicable limits under its primary policy, $302,842, toward a settlement. (Compl. ¶¶47, 48.) Gerling acknowledges that its policy limits were not exhausted until its payment was made to settle the *Emery Bay Action*. (Compl. ¶47.) Gerling alleges that once the Gerling Policy limits were exhausted, Great American contributed a portion of its excess limit to settle the *Emery Bay Action*. (Compl. ¶63.)

#### B. Summary of Insurance at Issue.

Plaintiff Gerling alleges that it issued a primary policy that was in effect during the period from June 30, 1995 to September 9, 1995. (Compl. ¶9.) Gerling further alleges that defendant

///

3

Homestead issued various excess policies that covered periods of time including the period of the Gerling policy. (Compl. ¶10.)

Gerling alleges that Great American's predecessor Agricultural Excess & Surplus Insurance Company issued four excess insurance policies to Jonce: UMB 2703840 (June 30, 1998 to June 30, 1999); UMB 2703840-01 (June 30, 1999 to February 6, 2000); UMB 2703840-02 (February 6, 2000 to February 6, 2001); and UMB 2703840-03 (February 6, 2001 to February 6, 2002). (Compl. ¶20.) These policies are referred to collectively in the Complaint and in this brief as the "Great American Policies." (Compl. ¶20.) Gerling alleges that the Great American Policies were excess of primary policies issued by Newmarket Underwriting Insurance Company and Lloyds of London. (Compl. ¶¶23 - 26.)

Gerling alleges that at the time of the settlement of the *Emery Bay* and *Chartwell* lawsuits, the Newmarket and Lloyds of London primary policies directly below the Great American Policies had already exhausted. (Compl. ¶¶ 23 - 28.) Gerling complains that it was forced to exhaust its primary limits before the Great American Policies contributed and in the current lawsuit seeks reimbursement of defense and indemnity amounts it paid as a primary insurer to resolve the *Chartwell* and *Emery Bay* lawsuits. (Compl. ¶¶70 - 73.) Gerling alleges that in the Underlying Actions, the plaintiffs alleged that various defects in the construction of the dwellings caused property damage during multiple periods of time, including Great American's policy periods. (Compl. ¶30.) Gerling contends that Great American's excess policies should have participated in the defense and settlements of Jonce in the underlying lawsuits. (Compl. ¶61.)

  **C.**    **Relevant Provisions of the Great American Excess Policies.**

In addition to the limited policy provisions cited by Gerling in its Complaint, the Great American Policies contain additional provisions which must be considered in determining Great

///

///

///

///

4

American's defense and indemnity obligations with respect to Jonce.[1]  Each of the Great American Policies contains the following provisions:

**INSURING AGREEMENTS**

**I.     COVERAGE**

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.  The amount we will pay for damages is limited as described below in the Insuring Agreement Section **II.  LIMITS OF INSURANCE.**

**II.    LIMITS OF INSURANCE**

\*\*\*

E.     If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1.     in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

2.     in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

\*\*\*

**G.     Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1.     the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

---

[1] Great American's excess policies referred to and quoted in the complaint are attached as Exhibits A-D to the Declaration of Frank Curci filed in support of this Motion to Dismiss.  These insurance policies are properly before the Court because "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnel,* 14 F.3d 449, 453 (9th Cir. 1993), overruled on other grounds.

5

GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION               CASE NO. CV 08-1716 PJH
AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

    2.    the amount stated in the Declarations as Self-Insured Retention . . . ;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

### III.  DEFENSE

A.    We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

1.    the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or ...

### VI.  Conditions

\*\*\*

J.    **Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

(*See* Great American Policies attached to Declaration of Frank Curci ("Curci Decl.") at Ex A, Pages 9-10, 20 of 44; Ex. B, Pages 4-5, 15 of 41; Ex. C, Pages 7-8, 18 of 45; and Ex. D, Pages 9-10, 20 of 52.)[2]

Gerling's Complaint failed to identify these provisions (other than a portion of the Retained Limit provision). However, they are essential for determining Great American's obligations toward Jonce in the Underlying Actions.

///

///

---

[2] All of the Great American policies at issue were written on the same form and contain the same relevant policy provisions.

6

## IV. LEGAL ARGUMENT

### A. California Law Applies to This Action.

Where, as here, a Court has subject matter jurisdiction over a case based on diversity of citizenship of the parties, the Court decides substantive issues based on the law of the state in which the Court is located. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78-79, 58 S. Ct. 817, 822-823 (1938). Thus, California law applies in this case.

### B. Legal Standards Applicable to 12(b)(6) Motion to Dismiss.

"A Rule 12(b)(6) motion is similar to the common law general demurrer: i.e., it tests the legal sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy." Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* §9:187 (2008). Thus, a Rule 12(b)(6) dismissal is proper where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990).

A motion to dismiss for failure to state a claim is properly granted when plaintiff has included allegations in the complaint that, on their face, disclose some absolute defense or bar to recovery. "If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." *Weisbuch v. County v. Los Angeles*, 119 F. 3d 778, 783, fn.1 (9th Cir.1997).

Further, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnel, supra,* 14 F.3d at 453, overruled on other grounds.[3] "The leading commentators state that 'when [the] plaintiff fails to introduce a

---

[3] The rationale for this rule is "that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the documents, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may considered at the 12(b)(6) stage..." *Bryant v. Avado Brands, Inc.,* 187 F. 3d. 1271, 1281, fn. 16. (11th Cir.1999)

pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading." *Id. quoting* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1327, at 762-63 (2d ed. 1990). Under this rule, Great American's excess insurance policies, attached to the Declaration of Frank Curci, should be considered by this Court in ruling on this motion to dismiss because Gerling's claims against Great American are based on the policies and Gerling quotes from the policies, but Gerling did not attach a copy of the policies to its complaint.[4]

Great American's motion to dismiss is made on the grounds that it is plain from the face of the Complaint and the Great American Policies that Gerling fails to state a claim against Great American because under California law and the express language of the Great American Policies, Great American was not obligated to defend or indemnify Jonce under its excess policies before Gerling's primary policy was exhausted.

### C. Gerling's Complaint Should Be Dismissed Because Under California's Horizontal Exhaustion Rule and the Express Language of the Great American Policies, Great American's Excess Policies Do Not Have an Obligation to Defend or Indemnify the Insured Until All Primary Coverage Has Been Exhausted.

Gerling's Complaint contains two causes of action against Great American: declaratory relief and contribution. Both claims are based on Gerling's allegation that Great American's excess policies should have participated in the defense and indemnity of Jonce in the underlying lawsuits before the Gerling primary policy was exhausted. Gerling's complaint should be dismissed pursuant to Rule 12(b)(6) because California law and the applicable policy language are clear that the Great American excess policies do not attach until all primary insurance is exhausted.

As a threshold matter, Gerling's claim for contribution must fail because under California law "there is no contribution between a primary and an excess carrier." *See Reliance National Indemnity Company v. General Star Indemnity Company,* 72 Cal. App. 4th 1063, 1078 (1999). As

---

[4] Alternatively, if Gerling challenges the authenticity of the copies of the policies submitted with this motion, its complaint should be dismissed on the grounds of uncertainty for failing to properly allege the terms and conditions of the Great American policies.

8

GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION         CASE NO. CV 08-1716 PJH
AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

one court explained, "[t]he doctrine of equitable contribution applies to insurers who share the *same* level of obligation on the *same* risk as to the *same* insured. As a general rule, there is no contribution between primary and excess carriers absent a specific agreement to the contrary." *Fireman's Fund Insurance Company v. Maryland Casualty Company,* 65 Cal. App. 4th 1279, 1294, fn. 4 (1998).

Gerling's declaratory relief cause of action also fails to state a claim upon which relief may be granted. Gerling seeks a declaration that Great American owed a duty to defend and indemnify Jonce in the Underlying Actions prior to the exhaustion of the Gerling policy and a declaration that Great American owes a duty to reimburse Gerling for sums Gerling incurred in defending and indemnifying Jonce with regards to the Underlying Actions. Gerling's claim fails because the horizontal exhaustion rule is a well-established principle under California law and provides that "[l]iability under an excess policy attaches only after all primary coverage has been exhausted." *North River Ins. Co. v. American Home Assurance Co.,* 210 Cal. App. 3d 108, 112 (1989); *see also Community Redevelopment, supra,* 50 Cal. App. 4th 329; *Padilla Construction Co., Inc. v. Transportation Ins. Co.,*150 Cal. App. 4th 984 (2007). "This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy." *Olympics Ins. Co. v. Employers Surplus Lines Ins. Co.,* 126 Cal. App. 3d 593, 600 (1981).

In *Community Redevelopment*, Justice Croskey confirmed that the horizontal exhaustion rule applies to continuous loss cases, such as this one, and that all triggered primary insurance must be exhausted before an excess insurer covers a loss, unless a contrary intent is expressly provided in the excess insurance policy. *Community Redevelopment, supra*, 50 Cal. App. 4th at 340.

The Court in *Community Redevelopment* held:

> [P]rimary policies may have defense and coverage obligations which make them underlying insurance to excess policies which were effective in entirely different time periods and which may not have expressly described such primary policies as underlying insurance. . . [A] horizontal exhaustion rule should be applied in continuous loss cases because it is most consistent with the principles enunciated in *Montrose*. In other words, all of the primary policies in force during the period of continuous loss will be deemed primary policies to each of the excess policies covering that

9

same period. Under the principle of horizontal exhaustion, all of the primary policies must exhaust before any excess will have coverage exposure.

*Id*.

Another Court of Appeal recently confirmed the application of the horizontal exhaustion rule in a case involving the duty to defend. *Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150 Cal.App.4th 984. In *Padilla*, the Court noted that: "Reasonable insureds don't expect to receive a defense from a typically much cheaper excess policy unless all the expensive primary insurance they bought has been exhausted." *Id*. at 989. The court reasoned further, "A primary policy can fund a long war of attrition. By contrast, defense obligations of an excess policy is far less likely to be triggered, and that improbability is reflected in a cheaper premium." *Id*. at 1003. Such distinctions between primary and excess insurers have been well-defined by California courts. *See, e.g., Reliance National Indemnity Company, supra,* 72 Cal. App. 4th 1063 at 1082 (Primary insurers "calculate[] and accept[] premiums with knowledge that they might be called upon to satisfy a full judgment ... By contrast, an excess insurer does not accept premiums with the full knowledge that it will be called upon to satisfy a full judgment.").

### D. The Horizontal Exhaustion Rule Is Reinforced by the Plain Meaning of the Great American Contract Wording, Construed in Context and as a Whole.

Consistent with California's horizontal exhaustion rule, the Great American Policies require exhaustion of all primary insurance before there is a duty to defend or indemnify.

#### 1. The Great American Policies' "Defense" Provision Plainly States That Great American Has No Duty to Defend Until All Underlying Policies Have Been Exhausted by the Payment of Claims.

The Great American Policies contain the "Defense" Provision quoted in section III.C. above, which expressly states that Great American does not have a defense obligation until:

> the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance **and the Limits of Insurance of any other insurance providing coverage to the "Insured"** have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or ...

(Emphasis added.) (*See* Curci Decl. Ex A, Page 10 of 44).

///

10

GREAT AMERICAN E&S INSURANCE COMPANY'S NOTICE OF MOTION
AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES              CASE NO. CV 08-1716 PJH

This language plainly requires that before Great American would have a defense obligation under its excess policies, there must be exhaustion, by "actual payment of 'claims,'" of both the policies listed in the Schedule of Underlying Insurance AND exhaustion of **"any other insurance providing coverage to the 'Insured.'"**

Gerling cannot dispute that its unexhausted primary policy that defended the underlying claims and settled them would qualify as "any other insurance providing coverage to the Insured." Indeed, Gerling is now seeking to recover defense and indemnity amounts that it acknowledges were covered under its primary policy. (Compl. ¶¶ 40 - 48.) However, Gerling's complaint entirely ignores the "Defense" provision and "Other Insurance" condition in the Great American Policies.

In addition, in *Padilla Construction Co., Inc. v. Transportation Ins. Co.*, *supra,* 150 Cal. App. 4th 984, the Court of Appeal looked to an "other insurance" clause, similar to the "Other Insurance" clause contained in the Great American Policies, and confirmed the application of the horizontal exhaustion rule in a case involving the duty to defend. Read in conjunction with the "Defense Payment and Related Duties" provision of the policy, the *Padilla* Court concluded that while primary insurance was available, there would be no defense obligation triggered by the excess insurer's defense clause because "other insurance" affirmatively relieved it of any obligation to defend.[5] *Id*. at 1000.

Based of the foregoing, Gerling cannot be granted a declaration and determination that Great American owed a duty to defend Jonce in the *Chartwell* Action or the *Emery Bay* Action. Furthermore, Gerling cannot be granted a declaration that Great American owes a duty to reimburse Gerling for sums of money Gerling incurred in defending Jonce in the Underlying Actions. Finally, Gerling cannot maintain its cause of action for contribution based on Great American's purported equitable duty to contribute to those sums Gerling incurred defending Jonce with regard to the Underlying Actions.

---

[5] The "other insurance" clause stated: "Whenever you are covered by other: [¶] a. primary [¶] b. excess; or co. excess-contingent [¶] insurance not scheduled on this policy as 'scheduled underlying insurance', this policy shall apply only in excess of, and will not contribute with, such other insurance..." (*Id*. at 993-995.)

11

2. **The "Insuring Agreement" and "Other Insurance" Provision Plainly Require Application of the Horizontal Exhaustion Rule That Provides That Great American Is Not Obligated to Indemnify the Insured Until All Primary Policies Have Been Exhausted.**

The Great American "Insuring Agreement" and "Other Insurance" clause require horizontal exhaustion of all primary policies before the duty to indemnify is triggered. As quoted above, Section I of the Insuring Agreement, "Coverage," states that, "[t]he amount we will pay for damages is limited as described below in the Insuring Agreement Section **II. Limits of Insurance**." (Emphasis in original) (*See* Curci Decl. Ex A, Page 9 of 44). The "Limits of Insurance" section expressly states that Great American's obligation to provide coverage is "**subject to the terms and conditions of this policy**." (Emphasis added) (Curci Decl. Ex A, Page 10 of 44). Further, the "Other Insurance" clause contained in the Conditions section plainly states, "**If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance**..." (Emphasis added) (Curci Decl. Ex A, Page 20 of 44) Thus, it is plain from the Insuring Agreement provisions that Great American's obligation to provide coverage is limited by the "Other Insurance" condition, which states that the policy is excess of other insurance.

Moreover, California courts have relied on "other insurance" conditions, like the one contained in the Great American Policies, to support horizontal exhaustion. For example, in *Community Redevelopment*, Justice Croskey specifically identified the "other insurance" condition, which was not materially different from Great American's, and found that the "policy language, particularly when read in the context of the entire policy is certainly unambiguous" and reinforces horizontal exhaustion. *Community Redevelopment*, *supra*, 50 Cal. App. 4th at 335, 338; *see also Padilla Construction Co., Inc. v. Transportation Ins. Co., supra,* 150 Cal. App. 4th 984.

In *Community Redevelopment*, United Pacific Insurance Company, a primary insurer, argued that the excess policy issued by Scottsdale Insurance Company specifically provided that it was excess to a primary policy issued by State Farm Fire & Casualty Insurance Company and that Scottsdale's duty to participate arose upon State Farm's exhaustion. *Community Redevelopment*, *supra,* 50 Cal. App. 4th at 335, 341. The court rejected United's argument, citing provisions of

the Scottsdale policy such as its "other insurance" provision, which indicated that it was to be excess over all primary policies, not merely the State Farm policy. *Id.* at 342.

Here, as in *Community Redevelopment* and *Padilla*, the "other insurance" provision reinforces and supports the horizontal exhaustion rule. The plain meaning of the provision requires horizontal exhaustion of all primary insurance, which is "other insurance." *Community Redevelopment, supra*, 50 Cal. App. 4th at 338; *Padilla, supra*, 150 Cal. App. 4th at 1000. That all primary insurance must be exhausted before an excess insurer provides coverage "holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy." *Olympic Ins. Co., supra*, 126 Cal. App. 3d at 600. The "Other Insurance" condition here plainly requires the horizontal exhaustion of all primary insurance, not just the directly underlying insurance.

In its Complaint, Gerling ignores Great American's "Other Insurance" condition. Gerling quotes only a portion of the "Retained Limit" language to support its strained position that the Great American excess policies are obligated to contribute to the insured's defense and indemnity before the Gerling primary policy is exhausted. Gerling, however, cannot defeat California law that all primary coverage must be exhausted simply by isolating the language of one part of one provision of the Great American Policies. *See Community Redevelopment, supra,* 50 Cal. App. 4th at 339-341. Rather the Great American Policies must be read in their entirety and the terms must be read in context. *See London Market Insurers v. Superior Court ("LMI")*, 146 Cal. App. 4th 648, 663 (2007), *citing Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 847, 868 (1998). As noted, the Limits of Insurance section states that the obligation to pay is "subject to the terms and conditions of this policy," which includes the "Other Insurance" condition of the Great American Policies. When the "Other Insurance" condition and the other policy provisions in the Great American Policies are considered as a whole, as *Community Redevelopment* held they must be, it is plain that Gerling's complaint fails. Thus, the exhaustion requirement in the Great American Policies is not limited by the "Retained Limit" provision, but is instead extended by the "Other Insurance" provision to include the Gerling primary policy.

///

Based of the foregoing, Gerling cannot be granted a declaration and determination that Great American owed a duty to indemnify Jonce in the *Chartwell* Action or the *Emery Bay* Action before the Gerling primary policy was exhausted.  Furthermore, Gerling cannot be granted a declaration that Great American owes a duty to reimburse Gerling for sums of money Gerling incurred in indemnifying Jonce in the Underlying Actions.  Finally, Gerling cannot maintain its cause of action for contribution based on Great American's purported equitable duty to contribute to those sums Gerling incurred indemnifying Jonce with regard to the Underlying Actions.

## V. CONCLUSION

For the foregoing reasons, Great American respectfully requests that Gerling's Complaint against it be dismissed pursuant to Rule 12(b)(6), without leave to amend, because California law and the applicable Great American policy language is clear that the Great American excess policies have no duty to defend or indemnify until all primary insurance is exhausted and Gerling acknowledges that its primary policy was not exhausted during the relevant periods of time at issue.

Dated: May 30, 2008                                    **DUANE MORRIS LLP**

                                    By:      /s/ Robert M. Fineman
                                          Peter J. Whalen
                                          Robert M. Fineman
                                          Terrance J. Evans
                                          Attorneys for Defendant,
                                          Great American E&S Insurance Company, an Ohio
                                          Corporation, fka Agricultural Excess and Surplus
                                          Insurance Company