Peter J. Whalen SBN 130041
Robert M. Fineman SBN 188211
Terrance J. Evans SBN 227671
**DUANE MORRIS** LLP
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:    pjwhalen@duanemorris.com
           rmfineman@duanemorris.com
           tjevans@duanemorris.com

Attorneys for Great American E&S Insurance Company,
formerly known as Agricultural Excess and Surplus
Insurance Company

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, a New York Corporation, | Case No.: CV-08-1716 |
| Plaintiff, | **DECLARATION OF FRANK CURCI** |
| v. | Complaint Filed:     March 31, 2008 |
| HOMESTEAD INSURANCE COMPANY, an Pennsylvania Corporation; GREAT AMERICAN E&S INSURANCE COMPANY, an Ohio Corporation, formerly known as AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, and DOES 1-10, | |
| Defendants. | |

I, Frank Curci, declare:

1.      I am a Claim Director at Great American Insurance Company, and I have responsibility for the handling of the claims at issue in this litigation. I have personal knowledge of the facts stated in this declaration and would competently testify as to those facts if called upon to do so.

2.      This declaration is made in support of Great American E&S Insurance Company's ("Great American") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil for failure to state a claim upon which relief can be granted. Great American E&S Insurance Company

DM1\1329957.1

1

1  was formerly known as Agricultural Excess and Surplus Insurance Company

2      3.      Agricultural Excess and Surplus Insurance Company issued the following excess

3  policies of insurance to Jonce Thomas Construction Co. ("Jonce"): Policy No. UMB 2703840,

4  effective June 30, 1998 to June 30, 1999; Policy No. UMB 2703840-01, effective June 30, 1999 to

5  February 6, 2000; Policy No. UMB 2703840-02, effective February 6, 2000 to February 6, 2001; and

6  Policy No. UMB 2703840-03, effective February 6, 2001 to February 6, 2002 (collectively the

7  "Great American Policies").

8      4.      Attached as Exhibit "A" is a true and correct certified copy of Agricultural Excess

9  and Surplus Insurance Company Policy No. UMB 2703840 issued to Jonce that Great American has

10  in its possession.

11      5.      Attached as Exhibit "B" is a true and correct certified copy of Agricultural Excess

12  and Surplus Insurance Company Policy No. UMB 2703840-01 issued to Jonce that Great American

13  has in its possession.

14      6.      Attached as Exhibit "C" is a true and correct certified copy of Agricultural Excess

15  and Surplus Insurance Company Policy No. UMB 2703840-02 issued to Jonce that Great American

16  has in its possession.

17      7.      Attached as Exhibit "D" is a true and correct certified copy of Agricultural Excess

18  and Surplus Insurance Company Policy No. UMB 2703840-03 issued to Jonce that Great American

19  has in its possession.

20      I declare under penalty of perjury under the laws of the State of California that the foregoing

21  is true and correct.

22      Executed on May 28, 2008, at Cincinnati, Ohio.

23

24      _____

25      Frank Curci

26

27

28

DM1\1329957.1

2

CASE NO. CV08-1716 PJH
DECLARATION OF FRANK CURCI

1  Peter J. Whalen SBN 130041
   Robert M. Fineman SBN 188211
2  Terrance J. Evans SBN 227671
   **DUANE MORRIS LLP**
3  One Market, Spear Tower, Suite 2000
   San Francisco, CA 94105-1104
4  Telephone: 415.957.3000
   Facsimile: 415.957.3001
5  E-Mail:   pjwhalen@duanemorris.com
             rmfineman@duanemorris.com
6             tjevans@duanemorris.com

7  Attorneys for Great American E&S Insurance Company,
   formerly known as Agricultural Excess and Surplus
8  Insurance Company

9
                **IN THE UNITED STATES DISTRICT COURT**
10
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11

12  HDI-GERLING AMERICA INSURANCE          Case No.: CV-08-1716
    COMPANY, a New York Corporation,
13                                         **EXHIBIT A TO THE DECLARATION**
                     Plaintiff,            **OF FRANK CURCI**
14
           v.
15                                         Complaint Filed:    March 31, 2008
    HOMESTEAD INSURANCE COMPANY, an
16  Pennsylvania Corporation; GREAT AMERICAN
    E&S INSURANCE COMPANY, an Ohio
17  Corporation, formerly known as AGRICULTURAL
    EXCESS AND SURPLUS INSURANCE
18  COMPANY, and DOES 1-10,

19                   Defendants.

20

21

22

23

24

25

26

27

28
   DM1\1342251.1



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840
Renewal Of  NEW

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Co., Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From  06/30/98    To    06/30/99 |
| IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE WILL AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>3974 Brown Park Drive, Suite D<br>Hilliard, OH  43026 |

Insurance is afforded by:  Agricultural Excess and Surplus Insurance Company

3. PREMIUM:    Commercial Umbrella Premium    $ 50,200.
                Personal Umbrella Premium       $
                Total Umbrella Premium          $ 50,200.
                Service Charge                  $
                Taxes                           $
                Surcharge                       $
                Total                           $

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 12,550. as a policy minimum premium.

BASIS OF PREMIUM:    Non-Auditable ( X )    Auditable (  )

| 4. LIMITS OF INSURANCE: | $ 2,000,000 | Each Occurrence |
|---|---|---|
| | $ 2,000,000 | General Aggregate  (Where Applicable) |
| | $ 2,000,000 | Products-Completed Operations Aggregate |

5. SELF-INSURED RETENTION:    $ 10,000

6. FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule.

THIS IS A TRUE AND CERTIFIED COPY OF POLICY UMB 2703840.

_____          4-15-08
AUTHORIZED SIGNATURE                      _____
                                          DATE

Countersigned ____08/06/98____          By: _____
                                              Authorized Representative

(Page 1 of 1)

EX. A Page 1 of 44



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840
Effective Date of Change 06/30/98

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Co., Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From  06/30/98      To      06/30/99 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>P.O. Box 127<br>Hilliard,  OH  43026 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒   AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS AGREED THE POLICY IS AMENDED AS FOLLOWS:

REVISING FORM AES6003U - SCHEDULE A-SCHEDULE OF UNDERLYING POLICIES TO REFLECT UPDATED
UNDERLYING POLICY INFORMATION AS PER THE ATTACHED.

FORMS AND ENDORSEMENTS hereby added:

FORMS AND ENDORSEMENTS hereby amended: AES6003U

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned _____  By _____
　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　Authorized Representative

AES6012U                                    (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

## THE PROTECTOR
### CATASTROPHE LIABILITY POLICY

#### SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Cal Comp<br>Policy Number: W991130562<br>01/01/99 to 01/01/2000 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000  each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000  policy limit<br><br>$ 1,000,000  each employee |
| b) Royal Insurance<br>Policy Number: P ST-244506 0000<br>06/30/98 to 06/30/99 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$          each person<br>$          each accident<br>Property Damage Liability<br>$          each accident<br>☒ Combined Single Limit<br>$  1,000,000  each accident<br>☐ Garage Operations<br>$          Auto only each accident<br>$          Other than auto each accident<br>$          Other than auto aggregate |
| | ☐ Garagekeepers Liability | $          each location |

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$          each occurence<br><br>$          aggregate<br><br>Property Damage Liability<br><br>$          each occurence<br><br>$          aggregate<br><br>☐ Combined Single Limit<br><br>$          each occurence<br><br>$          aggregate |
| OR<br><br>☒ Newmarket Underwriters Insurance Company<br>Policy Number: NMG001027<br>06/30/98 to 06/30/99<br><br><br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$  2,000,000  General Aggregate Limit<br><br>$  1,000,000  Products - Completed Operation Aggregate Limit<br><br>$  1,000,000  Personal and Advertising Injury Limit<br><br>$  1,000,000  Each Occurence Limit |
| d) | | |

**EX. A Page 4 of 44**



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840
Effective Date of Change 06/30/98

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1.  NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Co., Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   06/30/98     To        06/30/99 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>P.O. Box 127<br>Hilliard, OH  43026 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒   AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS AGREED THE POLICY IS AMENDED AS FOLLOWS:

UPDATING THE COMMERCIAL GENERAL LIABILITY UNDERLYING POLICIES INFORMATION AS PER THE ATTACHED REVISED FORM AES6003U.

AMENDING THE NAMED INSURED ENDORSEMENT TO READ AS PER THE ATTACHED FORM AES6005U.

FORMS AND ENDORSEMENTS hereby added:
FORMS AND ENDORSEMENTS hereby amended:  AES6003U, AES6005U
FORMS AND ENDORSEMENTS hereby deleted:

Countersigned _____   By _____
                              Date                                                Authorized Representative

AES6012U                                             (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

### THE PROTECTOR
#### CATASTROPHE LIABILITY POLICY

#### SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Cal Comp<br>Policy Number: W991130562<br>01/01/98 to 01/01/99 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000  each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000  policy limit<br><br>$ 1,000,000  each employee |
| b) Northbrook<br>Policy Number: TBD<br>06/30/98 to 06/30/99 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$            each person<br>$            each accident<br>Property Damage Liability<br>$            each accident<br>☒ Combined Single Limit<br>$  1,000,000  each accident<br>☐ Garage Operations<br>$            Auto only each accident<br>$            Other than auto each accident<br>$            Other than auto aggregate |
| | ☐ Garagekeepers Liability | $            each location |

**EX. A Page 6 of 44**

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$            each occurence<br><br>$            aggregate<br><br>Property Damage Liability<br><br>$            each occurence<br><br>$            aggregate<br><br>☐ Combined Single Limit<br><br>$            each occurence<br><br>$            aggregate |
| OR<br><br>☒ New Market Underwriters Insurance Company Policy Number: NMG001027 06/30/98 to 06/30/99<br><br>St. Paul Policy Number: TBD 06/30/98 to 06/30/99<br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$ 2,000,000    General Aggregate Limit<br><br>$ 1,000,000    Products - Completed Operation Aggregate Limit<br><br>$ 1,000,000    Personal and Advertising Injury Limit<br><br>$ 1,000,000    Each Occurence Limit |
| d) | | |

AES6003U                                   (Page 2 of 2)



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED**

The Named Insured listed in Item 1 of the Declarations is changed to the following:

> Jonce Thomas Construction Co.
> D & J Construction, Inc.
> Jonce Thomas & Donna Thomas
> Jonce Thomas & Donna Thomas as Trustees of the Thomas Living Trust
> Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
> Jonce Thomas Development Co.
> Jon-Don Farms

This endorsement does not change any other provision of the policy.



**Agricultural Excess
and Surplus
Insurance Company**

# T H E   P R O T E C T O R

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement Section II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item **4.** of the Declarations and the rules below state the most we will pay regardless of the number of:

   1. "Insureds";

   2. "claims" made or "suits" brought; or

   3. persons or organizations making "claims" or bringing "suits."

B. The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section I., except

   1. damages included in the "products-completed operations hazard"; and

   2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

   The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

C. The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

AES 6002                                (Page 1 of 15)

D. Subject to **B.** or **C.** in Section II. **LIMITS OF INSURANCE,** whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section I. because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

E. If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

1. in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

2. in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. **Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

2. the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III. **DEFENSE**

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

B. When we assume the defense of any "claim" or "suit":

1. We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

2. All expenses we incur in the investiga-
tion of any "claim" or defense of any
"suit" are in addition to our Limits of
Insurance.

3. We will pay the following as ex-
penses, to the extent that they are not
included in the coverage in the under-
lying policies listed in the Schedule of
Underlying Insurance or in any other
insurance providing coverage to the
"Insured":

    a. premiums on bonds to release at-
tachments, which bond amounts
will not exceed our Limits of In-
surance, but we are not obligated
to apply for or furnish any such
bond;

    b. premiums on appeal bonds, which
bond amounts will not exceed our
policy limits, required by law to
appeal any "claim" or "suit" we
defend, but we are not obligated
to apply for or furnish any such
bond;

    c. all costs taxed against the "In-
sured" in any "claim" or "suit" we
defend;

    d. pre-judgment interest awarded
against the "Insured" on that part
of the judgment we pay that is
within our applicable Limits of In-
surance. If we make an offer to
pay the applicable Limits of Insur-
ance, we will not pay any pre-
judgment interest based on the
period of time after the offer;

    e. all interest that accrues after en-
try of judgment and before we
have paid, offered to pay or de-
posited in court the part of the
judgment that is within our ap-
plicable Limit of Insurance;

    f. the "Insured's" actual and reason-
able expenses incurred at our re-
quest.

C. We will not investigate any "claim" or de-
fend any "suit" after our applicable Limits
of Insurance have been exhausted by pay-
ment of judgments or settlements.

D. In all other instances except Subsection A.
in Section III. DEFENSE, we will not be
obligated to assume charge of the inves-
tigation, settlement or defense of any
"claim" or "suit" against the "Insured." We
will, however, have the right and will be
given the opportunity to participate in the
settlement, defense and trial of any "claim"
or "suit" relative to any "occurrence"
which, in our opinion, may create liability
on our part under the terms of this policy.
If we exercise such right, we will do so at
our own expense.

IV. EXCLUSIONS

This insurance does not apply to:

A. "Bodily injury" or "property damage" ex-
pected or intended from the standpoint of
the "Insured." This exclusion does not ap-
ply to "bodily injury" resulting from the
use of reasonable force to protect per-
sons or property.

B. Any obligation of the "Insured" under a
Workers Compensation, Unemployment
Compensation or Disability Benefits Law,
or under any similar law, regulation or or-
dinance.

C. Any obligation of the "Insured" under the
Employee Retirement Income Security Act
of 1974 or any amendments to that act,
or under any similar law, regulation or or-
dinance.

D. Any obligation of the "Insured" under a No
Fault, Uninsured Motorist or Underinsured
Motorist law, or under any similar law,
regulation or ordinance.

E. "Property damage" to "impaired property"
or property that has not been physically
injured, arising out of:

    1. a defect, deficiency, inadequacy or
dangerous condition in "your product"
or "your work"; or

    2. a delay or failure by you or anyone
acting on your behalf to perform a
contract or agreement in accordance
with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

F. "Property damage" to "your product" arising out of it or any part of it.

G. "Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "your product";

2. "your work"; or

3. "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. "Property damage" to property owned by the "Insured."

J. "Personal injury" or "advertising injury":

1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

2. arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

3. arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

4. for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

K. "Advertising injury" arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. the failure of goods, products or services to conform with advertised quality or performance;

3. the wrong description of the price of goods, products or services; or

4. an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

L. Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

2. Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not

the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

M. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

N. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

    1. asbestos, asbestos products, asbestos–containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

    2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos–containing materials or products, asbestos fibers or asbestos dust; or

    3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos–containing materials or products, asbestos fibers or asbestos dust.

O. "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

    1. refusal to employ or promote;

    2. termination of employment;

    3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

    4. consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of O.1. through O.3.

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

P. "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion** attached to this Policy.

Q. The following Items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

    1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

    2. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

    3. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such air–

craft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

4. "Bodily injury" to:

   a. an employee of any "Insured" arising out of and in the course of:

      i. employment by any "Insured"; or

      ii. performing duties related to the conduct of any "Insured's" business; or

   b. the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph 4.a.

This exclusion applies:

   a. whether any "Insured" may be liable as an employer or in any other capacity; and

   b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## V. DEFINITIONS

A. "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

   1. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   2. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

   3. misappropriation of advertising ideas or style of doing business;

   4. infringement of copyright, title or slogan; or

5. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

C. "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D. "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

E. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

   2. your fulfilling the terms of the contract or agreement.

F. "Insured" means each of the following, to the extent set forth:

   1. The Named Insured meaning:

      a. Any person or organization listed in Item 1. of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

      b. Any organization you newly acquire or form, other than a partnership, joint venture or limited

AES 6002                                    (Page 6 of 15)

liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

(1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2) coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

(3) coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5. Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6. Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision 6. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

7. Any person, other than one of your employees, or organization while acting as your real estate manager.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision 8. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

9. No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

G. "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under

which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

H. "Loading" or "unloading" means the handling of property:

1. after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. while it is in or on an aircraft, watercraft or "auto"; or

3. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. equipment designed primarily for:

      (1) snow removal;

      (2) road maintenance, but not construction or resurfacing; or

      (3) street cleaning;

   b. cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J. "Occurrence" means:

1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. as respects "personal injury," an offense arising out of the business of any "insured" that results in "personal

injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3. as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K. "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

L. 1. "Products–completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except

a. products that are still in your physical possession; or

b. work that has not yet been completed or abandoned.

2. "Your work" will be deemed completed at the earliest of the following times:

a. When all of the work called for in your contract has been completed.

b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products–completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

b. the existence of tools, uninstalled equipment or abandoned or unused materials.

M. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

O. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P. "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. you;

b. others trading under your name; or

c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Q. "Your work" means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. the providing of or failure to provide warnings or instructions.

VI. **Conditions**

A. **Appeals**

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item **4.** of the Declarations plus the cost and expense of such appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C. **Bankruptcy or Insolvency**

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the

Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's

check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item 1. of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

E. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F. Duties in The Event of An Occurrence, Claim Or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

   a. how, when and where the "occurrence" took place;

   b. the names and addresses of any injured person and witnesses;

   c. the nature and location of any injury or damage arising out of the "occurrence."

2. If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved "Insured" must

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

b. authorize us to obtain records and other information;

c. cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

4. The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G. Inspection

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

H. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1. you have complied with all the terms of this policy; and

2. the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

I. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

J. Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

K. Premium

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 3. of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item 3. of the Declarations for each twelve months of our policy period.

L.  Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each "Insured" against whom "claim" is made or "suit" brought.

M.  Transfer of Rights of Recovery Against Others to Us

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

N.  Terms Conformed to Statute

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

O.  Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1. of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

P.  When Loss Is Payable

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self—Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1. Any liability, injury or damage:

   a. with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

   b. resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or (b) has been discharged or dispersed therefrom;

   b. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

   c. the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States

of America, its territories or possessions or Canada, this Exclusion 2.c. applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3. As used in this exclusion:

   a. "Hazardous properties" includes radioactive, toxic or explosive properties.

   b. "Nuclear facility" means:

      i. any "nuclear reactor";

      ii. any equipment or device designed or used for

         (1) separating the isotopes of uranium or plutonium,

         (2) processing or utilizing "spent fuel" or

         (3) handling, processing or packaging "nuclear waste";

      iii. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      iv. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

   c. "Nuclear material" means "source material," "special nuclear material" or by-product material.

d. "Nuclear property damage" includes all forms of radioactive contamination of property.

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self–supporting chain reaction or to contain a critical mass of fissionable material.

f. "Nuclear waste" means any nuclear waste material (a) containing "by–product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organiza-

tion of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g. "Source material," "special nuclear material," and "by–product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

_Kine Holley Herrell_
Secretary

_Carl H. Lindner III_
President



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED**

The Named Insured listed in Item 1 of the Declarations is changed to the following:

> Jonce Thomas Construction Co., Inc.
> D & J Construction
> Jonce & Donna Thomas
> Jonce Thomas & Donna Thomas nas Trustees of the Thomas Living Trust
> Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
> Jonce Thomas Development Co.

This endorsement does not change any other provision of the policy.

AES6005U                            (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

**THE PROTECTOR**
**CATASTROPHE LIABILITY POLICY**

SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Cal Comp<br>Policy Number: W991130562<br>01/01/98 to 01/01/99 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000   each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000   policy limit<br><br>$ 1,000,000   each employee |
| b) Northbrook<br>Policy Number: TBD<br>06/30/98 to 06/30/99 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$              each person<br>$              each accident<br>Property Damage Liability<br>$              each accident<br>☒ Combined Single Limit<br>$   1,000,000  each accident<br>☐ Garage Operations<br>$              Auto only each<br>              accident<br>$              Other than auto<br>              each accident<br>$              Other than auto<br>              aggregate |
|  | ☐ Garagekeepers Liability | $              each location |

AES 6003U

(page 1 of 2)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br>☐ Broad Form Endorsement<br>☐<br><br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$          each occurence<br>$          aggregate<br>Property Damage Liability<br>$          each occurence<br>$          aggregate<br>☐ Combined Single Limit<br>$          each occurence<br>$          aggregate |
| OR<br><br>☒ New Market<br>Policy Number: TBD<br>06/30/98 to 06/30/99<br><br>St. Paul<br>Policy Number: TBD<br>06/30/98 to 06/30/99<br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$ 2,000,000    General Aggregate Limit<br><br>$ 1,000,000    Products - Completed Operation Aggregate Limit<br><br>$ 1,000,000    Personal and Advertising Injury Limit<br><br>$ 1,000,000    Each Occurence Limit |
| d) | | |

AES6003U                                    (Page 2 of 2)



**Agricultural Excess
and Surplus
Insurance Company**

### THE PROTECTOR
#### CATASTROPHE LIABILITY POLICY

### FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

|  | Form and Edition | Date Added *<br>or<br>ST Date Deleted | Form Description |
|---|---|---|---|
| 1. | Declarations | 06/30/98 | Declarations Page |
| 2. | AES6002 | 06/30/98 | Commercial Umbrella Coverage Form |
| 3. | AES6005U | 06/30/98 | Named Insured Endorsement |
| 4. | AES6003U | 06/30/98 | Schedule of Underlying Policies |
| 5. | AES6013U | 06/30/98 | Forms and Endorsements Schedule |
| 6. | AES6026U | 06/30/98 | Cross Suits Exclusion |
| 7. | AES6030U | 06/30/98 | Care, Custody or Control Exclusion - Real or Personal Property |
| 8. | AES6044U | 06/30/98 | Unimpaired Aggregate Endorsement |
| 9. | AES6066U | 06/30/98 | Prior Insurance |
| 10. | AES6106U | 06/30/98 | Auto Liability – Following Form |
| 11. | AES6113U | 06/30/98 | Contractual Liability – Following Form |
| 12. | AES10U | 06/30/98 | Pre Existing Damage Exclusion |
| 13. | AES6127U | 06/30/98 | Non-Business Activities Exclusion |
| 14. | AES6129U | 06/30/98 | Personal Injury – Following Form |
| 15. | AES6136U | 06/30/98 | Punitive or Exemplary Damages – Following Form |
| 16. | AES6142U | 06/30/98 | Subsidence Exclusion |
| 17. | AES6150U | 06/30/98 | Contractors Limitation Endorsement |
| 18. | AES6153U | 06/30/98 | Employee Benefit Liability – Following Form |
| 19. | AES6277U | 06/30/98 | Amendment of Scheduled Underlying Policies |
| 20. | AES6333U | 06/30/98 | Exclusion – Liability Arising out of Lead |
| 21. | AES342U | 06/30/98 | Service of Suit (excluding Pennsylvania) |
| 22. | AES189U | 06/30/98 | Loss Reporting |

\* If not at inception

AES6013U                                        (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CROSS SUITS EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.

AES6026U



**Agricultural Excess
and Surplus
Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

### CARE, CUSTODY OR CONTROL EXCLUSION - REAL OR PERSONAL PROPERTY

The following exclusion is added to Section IV - EXCLUSIONS:

Any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

This endorsement does not change any other provision of the policy.

AES6030U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### UNIMPAIRED AGGREGATE ENDORSEMENT

The underlying aggregate limit(s) of all "underlying insurance," where applicable, shall be unimpaired at the beginning of the policy period shown in the Declarations and, for the purpose of this policy, only "occurrences" taking place during the policy period of this policy shall be considered in determining the extent of any exhaustion of such underlying aggregate limit(s).

This endorsement does not change any other provision of the policy.

AES6044U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PRIOR INSURANCE**

The following is added to Section VI - CONDITIONS:

If a loss covered by this policy is also covered in whole or in part under any other policy issued to the Insured prior to the effective date of this policy, our Limits of Insurance as stated in Item 4. of the Declarations will be reduced by any amounts due the Insured under such prior insurance.

This endorsement does not change any other provision of the policy.

AES6066U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AUTO LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6106U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CONTRACTUAL LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability assumed by any "Insured" under any "insured contract," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6113U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PRE EXISTING DAMAGE EXCLUSION**

The following exclusion is added to Section IV - EXCLUSIONS:

It is agreed that coverage is not provided for "bodily injury" or "property damage" which first becomes apparent to any person prior to the effective date of this policy regardless of whether there is repeated or continued exposure during the period of this policy or whether the injury or damage continues during the period of this policy.

This endorsement does not change any other provision of the policy.

AES10U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NON-BUSINESS ACTIVITIES EXCLUSION**

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for or arising out of any domestic or non-business activities of any "Insured."

This endorsement does not change any other provision of the policy.

AES6127U



**Agricultural Excess
and Surplus
Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PERSONAL INJURY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6129U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PUNITIVE OR EXEMPLARY DAMAGES - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6136U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EARTH MOVEMENT EXCLUSION**

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by subsidence, expanding, contracting, rising, settling, sinking, slipping, falling away, caving in, shifting, eroding, mudflow, tilting, heaving, cratering, doming, or any other movement of land, soil or earth, including but not limited to earthquake, landslide, mudslide, or mine subsidence, whether such movement of land, soil, or earth occurs alone, in combination with, before, after, or concurrently with any other cause, contributing condition, or aggravating factor, either manmade or natural.

This endorsement does not change any other provision of the policy.

AES6142U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CONTRACTORS LIMITATION ENDORSEMENT

Exclusions **IV.F.** and **IV.G.** are deleted from this policy and the following exclusion is added to Section **IV - EXCLUSIONS:**

1. **a.** Any liability assumed by any "Insured" under any "insured contract"; or

   **b.** Any "property damage":

      **(1)** to "your product" arising out of it or any part of it;

      **(2)** to "your work" arising out of it or any part of it included in the "products-completed operations hazard"; (but this Subparagraph **(2)** does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

      **(3)** to property leased or rented to, occupied or used by or in the care, custody or control of any "Insured" or as to which an "Insured" is for any purpose exercising physical control;

      **(4)** arising out of:

         **(a)** blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

         **(b)** the collapse of or structural injury to any building or structure due to **(a)** grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work, or **(b)** moving, shoring, underpinning, razing or demolition of any

building or structure, or removal or rebuilding of any structural support thereof; or

         **(c)** injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving;

except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

2. Any liability arising out of:

   **a.** any project insured under a wrap-up or any similar rating plan; or

   **b.** the rendering of or failure to render any professional services, including but not limited to:

      **(1)** the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

      **(2)** supervisory, inspection, architectural or engineering activities.

This endorsement does not change any other provision of the policy.

AES 6150U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section IV - EXCLUSIONS:

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6153U



**Agricultural Excess and Surplus Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT OF MAINTENANCE OF UNDERLYING INSURANCE**

The following is added to Section VI. Conditions, Paragraph I:

We will be furnished a complete copy of each policy described in the Schedule of Underlying Insurance. You will immediately notify us of any change in the coverage or Limits of Insurance afforded by any such policy, other than a reduction in any aggregate limit as the result of the payment of a "claim" or "suit." Your failure to do so shall not invalidate this policy but, in the event you fail to report any such change, we shall be liable only to the same extent that we would have been had no change been made.

This endorsement does not change any other provision of the policy.

AES6277U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION - LIABILITY ARISING OUT OF LEAD**

The following exclusion is added to Section IV - EXCLUSIONS:

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

AES6333U



**Agricultural Excess
and Surplus
Insurance Company**

# SERVICE OF SUIT CLAUSE

## (Not Applicable in Pennsylvania)

PURSUANT TO ANY STATUTE OF ANY STATE OR DISTRICT OF THE UNITED STATES OF AMERICA, WHICH MAKES PROVISION THEREFOR, THE COMPANY HEREBY DESIGNATES THE COMMISSIONER, SUPERINTENDENT OR DIRECTOR OF INSURANCE OR OTHER OFFICER SPECIFIED FOR THAT PURPOSE IN THE STATUTE AND HIS OR HER SUCCESSORS IN OFFICE AND DULY AUTHORIZED DEPUTIES IN THE STATE WHERE THIS POLICY IS ISSUED, AS THE COMPANY'S TRUE AND LAWFUL ATTORNEY FOR SERVICE OF LEGAL PROCESS IN ANY ACTION, SUIT OR PROCEEDING BROUGHT IN THE STATE WHERE THIS POLICY IS ISSUED BY OR ON BEHALF OF AN INSURED OR BENEFICIARY AGAINST THE COMPANY ARISING OUT OF SERVICE OF LEGAL PROCESS SHALL BE FORWARDED TO THE COMPANY TO THE ATTENTION OF:

KAREN HOLLEY HORRELL
GENERAL COUNSEL
AGRICULTURAL EXCESS AND
SURPLUS INSURANCE CO.
580 WALNUT STREET
CINCINNATI, OH 45202

CALIFORNIA
JERE KEPRIOS
C/O CT CORPORATION SYSTEM
818 WEST SEVENTH STREET
LOS ANGELES, CA 90017

ILLINOIS
DON L. BUTLER
C/O CT CORPORATION SYSTEM
208 SOUTH LA SALLE
CHICAGO, IL 60604

DISTRICT OF COLUMBIA
CT CORPORATION SYSTEM
1025 VERMON AVENUE, N.W.
WASHINGTON, DC 20005

THE FOREGOING DESIGNATION OF ATTORNEY FOR SERVICE OF LEGAL PROCESS UPON THE COMPANY SHALL NOT CONSTITUTE A WAIVER OF THE COMPANY'S RIGHT TO REMOVE, REMAND, DISMISS OR TRANSFER ANY SUIT OR PROCEEDING FROM ANY COURT, OR TO COMMENCE ANY SUIT OR OTHER PROCEEDING IN ANY COURT OF COMPETENT JURISDICTION.

AES 342U



**Agricultural Excess
and Surplus
Insurance Company**

## *Thank You For Your Business*

*This policy is ready for you to assemble.  You may wish to include your state's tax and other charges on the declarations.*

*We have retained the underwriting copy.*

## *Loss Reporting*

*Report all losses to Home Office.  Large or unusual losses may be reported by phone or telex.*

### *Agricultural Excess and Surplus Insurance Company*

| | |
|---|---|
| **Home Office:** | **49 East Fourth Street** |
| | **P.O. Box 5425,  Cincinnati,  OH  45201** |
| **Phone:** | **800-952-6757** |
| **FAX:** | **513-333-6915** |

AES 189U

1  Peter J. Whalen SBN 130041
   Robert M. Fineman SBN 188211
2  Terrance J. Evans SBN 227671
   **DUANE MORRIS LLP**
3  One Market, Spear Tower, Suite 2000
   San Francisco, CA 94105-1104
4  Telephone: 415.957.3000
   Facsimile: 415.957.3001
5  E-Mail:    pjwhalen@duanemorris.com
              rmfineman@duanemorris.com
6              tjevans@duanemorris.com

7  Attorneys for Great American E&S Insurance Company,
   formerly known as Agricultural Excess and Surplus
8  Insurance Company

9
              **IN THE UNITED STATES DISTRICT COURT**
10
           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11

12  HDI-GERLING AMERICA INSURANCE           Case No.: CV-08-1716
    COMPANY, a New York Corporation,
13                                          **EXHIBIT B TO THE DECLARATION**
                Plaintiff,                  **OF FRANK CURCI**
14
          v.
15                                          Complaint Filed:    March 31, 2008
    HOMESTEAD INSURANCE COMPANY, an
16  Pennsylvania Corporation; GREAT AMERICAN
    E&S INSURANCE COMPANY, an Ohio
17  Corporation, formerly known as AGRICULTURAL
    EXCESS AND SURPLUS INSURANCE
18  COMPANY, and DOES 1-10,

19              Defendants.

20

21

22

23

24

25

26

27

28

DM1\1342251.1



**Agricultural Excess
and Surplus
Insurance Company**

Policy No. UMB 2703840-01
Renewal Of  UMB 2703840

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>　Jonce Thomas Construction Company, Inc.<br>　(See Named Insured Endorsement)<br>　P.O. Box 1856<br>　Fremont, CA  94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   06/30/99    To    06/30/00 |
| IN RETURN FOR PAYMENT OF THE PREMIUM<br>AND SUBJECT TO ALL TERMS OF THIS<br>POLICY, WE WILL AGREE WITH YOU TO<br>PROVIDE THE INSURANCE AS STATED IN<br>THIS POLICY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>3974 Brown Park Drive, Suite D<br>Hilliard, OH  43026 |

Insurance is afforded by:  Agricultural Excess and Surplus Insurance Company

3. PREMIUM:　　Commercial Umbrella Premium　$ 50,200.
　　　　　　　　 Personal Umbrella Premium　　$
　　　　　　　　 Total Umbrella Premium　　　 $ 50,200.
　　　　　　　　 Service Charge　　　　　　　 $
　　　　　　　　 Taxes　　　　　　　　　　　 $
　　　　　　　　 Surcharge　　　　　　　　　 $
　　　　　　　　 Total　　　　　　　　　　　 $

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 12,550. as a policy minimum premium.

BASIS OF PREMIUM:　Non-Auditable ( X )　　Auditable ( )

4. LIMITS OF INSURANCE:　$ 2,000,000　　Each Occurrence
　　　　　　　　　　　　 $ 2,000,000　　General Aggregate  (Where Applicable)
　　　　　　　　　　　　 $ 2,000,000　　Products-Completed Operations Aggregate

5. SELF-INSURED RETENTION:　$ 10,000

6. FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule.

　　　　　THIS IS A TRUE AND CERTIFIED COPY OF POLICY UMB 2703840-01.

　　　　　　—————————————————　　　　4-15-08
　　　　　　　AUTHORIZED SIGNATURE　　　　　 —————
　　　　　　　　　　　　　　　　　　　　　　　DATE

Countersigned　07/27/99　—————　　　By:—————————————
　　　　　　　　　　　　　　　　　　　　　　　　Authorized Representative

(Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840-01
Effective Date of Change 02/06/00

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From     06/30/99   To  06/30/00 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>P.O. Box 127<br>Hilliard,  OH  43026 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒   AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IN CONSIDERATION OF A RETURN PREMIUM, IT IS AGREED THE POLICY IS AMENDED AS FOLLOWS:

CANCELING THE POLCIY EFFECTIVE 02/06/00 AS PER THE ATTACHED FORM F10083F.

FORMS AND ENDORSEMENTS hereby added:  F10083F

FORMS AND ENDORSEMENTS hereby amended:

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned _____  By _____
                                   Date                                    Authorized Representative

AES6012U                              (Page 1 of 1)

## CANCELLATION MEMO

GREAT AMERICAN®
INSURANCE COMPANIES

Date:       February 25, 2000

From:       Jackie Smith

Insured:    Jonce Thomas Construction

TO:         Thomas C. DeVore & Associates
            P.O. Box 127
            Hilliard, OH  43026-0127

Policy No.  UMB 2703840-01

Please refer to item (s) marked (x) below:

---

1. ☒  As you requested, the following information is furnished:
      Policy cancelled ☐ Flat  ☒ Pro Rate  ☐ Short Rate as of February 06,2000.

   ☒  The return premium computed on the annual premium is $ 19,890.**
   ** If the policy is on an installment plan, the return premium due insured is annual less any or future installments

---

2. ☐  Above policy premium has been received for cancellation ☐ Pro Rata  ☐ Short Rate as of _____
      quoting return premium of $ _____

      Our calculation develops return premium of $ _____ Please recheck your figures and advise

---

3. ☐  Please advise:
      ☐ Method of cancellation    ☐ Effective date of cancellation    ☐ Reason for cancellation

---

4. ☐  Audit Policy
      Premium adjustment for the auditable coverages will be sent upon completion of audit

---

5. ☐  Please refrain from taking credit for return premium of $ _____ computed by you.  An audit is required
      before this premium can be adjusted.

---

6. ☐  We have received word that the above policy has been cancelled on you record, but the evidence of cancellation has not
      been received in this office.  Will you kindly check your records and if in agreement submit the cancellation evidence to the
      writer's attention.

---

   Reply:

F 10083F (9/89)



**Agricultural Excess
and Surplus
Insurance Company**

# THE PROTECTOR

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as

such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement Section II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item **4.** of the Declarations and the rules below state the most we will pay regardless of the number of:

1. "Insureds";

2. "claims" made or "suits" brought; or

3. persons or organizations making "claims" or bringing "suits."

B. The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section I., except

1. damages included in the "products–completed operations hazard"; and

2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

C. The Products–Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products–completed operations hazard."

D. Subject to B. or C. in Section II. **LIMITS OF INSURANCE,** whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section I. because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

E. If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

   1. in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

   2. in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. **Retained Limit**

   We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

   1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

   2. the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III. **DEFENSE**

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

   1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

   2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

B. When we assume the defense of any "claim" or "suit":

   1. We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

2. All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

3. We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the "Insured":

   a. premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

   c. all costs taxed against the "Insured" in any "claim" or "suit" we defend;

   d. pre—judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   f. the "Insured's" actual and reasonable expenses incurred at our request.

C. We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

D. In all other instances except Subsection A. in Section III. DEFENSE, we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV. EXCLUSIONS

This insurance does not apply to:

A. "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B. Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

C. Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

D. Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

E. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

F. "Property damage" to "your product" arising out of it or any part of it.

G. "Property damage" to "your work" arising out of it or any part of it and included in the "products—completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   1. "your product";

   2. "your work"; or

   3. "impaired property"

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. "Property damage" to property owned by the "Insured."

J. "Personal injury" or "advertising injury":

   1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

   2. arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

   3. arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

   4. for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

K. "Advertising injury" arising out of:

   1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

   2. the failure of goods, products or services to conform with advertised quality or performance;

   3. the wrong description of the price of goods, products or services; or

   4. an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

L. Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

   1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

   2. Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

   3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

   This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not

the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

M. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

N. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

  1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

  2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

  3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

O. "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

  1. refusal to employ or promote;

  2. termination of employment;

  3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

  4. consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **O.1.** through **O.3.**

  This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

P. "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion** attached to this Policy.

Q. The following Items **1.** through **4.**, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

  1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

  2. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

  3. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such air-

craft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

4. "Bodily injury" to:

    a. an employee of any "Insured" arising out of and in the course of:

        i. employment by any "Insured"; or

        ii. performing duties related to the conduct of any "Insured's" business; or

    b. the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph 4.a.

This exclusion applies:

    a. whether any "Insured" may be liable as an employer or in any other capacity; and

    b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## V. DEFINITIONS

A. "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

    1. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    2. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

    3. misappropriation of advertising ideas or style of doing business;

    4. infringement of copyright, title or slogan; or

    5. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

C. "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D. "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

E. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

    2. your fulfilling the terms of the contract or agreement.

F. "Insured" means each of the following, to the extent set forth:

    1. The Named Insured meaning:

        a. Any person or organization listed in Item 1. of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

        b. Any organization you newly acquire or form, other than a partnership, joint venture or limited

liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

(1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2) coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

(3) coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5. Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6. Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision 6. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

7. Any person, other than one of your employees, or organization while acting as your real estate manager.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision 8. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

9. No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

G. "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under

which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

H. "Loading" or "unloading" means the handling of property:

1. after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. while it is in or on an aircraft, watercraft or "auto";

3. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a. power cranes, shovels, loaders, diggers or drills; or

    b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

    b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    a. equipment designed primarily for:

        (1) snow removal;

        (2) road maintenance, but not construction or resurfacing; or

        (3) street cleaning;

    b. cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

    c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J. "Occurrence" means:

1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. as respects "personal injury," an offense arising out of the business of any "Insured" that results in "personal

AES 6002

injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3. as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K. "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

L. 1. "Products—completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except

a. products that are still in your physical possession; or

b. work that has not yet been completed or abandoned.

2. "Your work" will be deemed completed at the earliest of the following times:

a. When all of the work called for in your contract has been completed.

b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products—completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

b. the existence of tools, uninstalled equipment or abandoned or unused materials.

M. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

O. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P. "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Q. "Your work" means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. the providing of or failure to provide warnings or instructions.

VI. Conditions

A. Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item 4. of the Declarations plus the cost and expense of such appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the

Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's

check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item 1. of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

E. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F. Duties in The Event of An Occurrence, Claim Or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

   a. how, when and where the "occurrence" took place;

   b. the names and addresses of any injured person and witnesses;

   c. the nature and location of any injury or damage arising out of the "occurrence."

2. If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved "Insured" must

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

b. authorize us to obtain records and other information;

c. cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

4. The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G. **Inspection**

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

H. **Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

1. you have complied with all the terms of this policy; and

2. the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

I. **Maintenance of Underlying Insurance**

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

J. **Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

K. **Premium**

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 3. of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item 3. of the Declarations for each twelve months of our policy period.

### L. Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each "Insured" against whom "claim" is made or "suit" brought.

### M. Transfer of Rights of Recovery Against Others to Us

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

### N. Terms Conformed to Statute

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

### O. Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1. of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

### P. When Loss Is Payable

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self-Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1. Any liability, injury or damage:

    a. with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

    b. resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

    a. the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or (b) has been discharged or dispersed therefrom;

    b. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

    c. the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States

of America, its territories or possessions or Canada, this Exclusion 2.c. applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3. As used in this exclusion:

    a. "Hazardous properties" includes radioactive, toxic or explosive properties.

    b. "Nuclear facility" means:

        i. any "nuclear reactor";

        ii. any equipment or device designed or used for

            (1) separating the isotopes of uranium or plutonium,

            (2) processing or utilizing "spent fuel" or

            (3) handling, processing or packaging "nuclear waste";

        iii. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

        iv. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

    c. "Nuclear material" means "source material," "special nuclear material" or by-product material.

d. "Nuclear property damage" includes all forms of radioactive contamination of property.

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. "Nuclear waste" means any nuclear waste material (a) containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organiza-tion of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g. "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

Secretary

President



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NAMED INSURED

The Named Insured listed in Item 1 of the Declarations is changed to the following:

> Jonce Thomas Construction Company, Inc.
> D & J Construction
> Jonce Thomas & Donna Thomas
> Jonce Thomas & Donna Thomas as Trustees of the Thomas Living Trust
> Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
> Jonce Thomas Development Co.

This endorsement does not change any other provision of the policy.

AES6005U                                    (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

### THE PROTECTOR
CATASTROPHE LIABILITY POLICY

#### SCHEDULE A – SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Cal Comp<br>Policy Number: W991130562<br>01/01/99 to 01/01/00 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000   each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000    policy limit<br><br>$ 1,000,000    each employee |
| b) Royal Insurance<br>Policy Number: P ST-244506 0000<br>06/30/99 to 06/30/00 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$              each person<br>$              each accident<br>Property Damage Liability<br>$              each accident<br>☒ Combined Single Limit<br>$  1,000,000  each accident<br>☐ Garage Operations<br>$              Auto only each accident<br>$              Other than auto each accident<br>$              Other than auto aggregate |
| | ☐ Garagekeepers Liability | $              each location |

AES 6003U                                      (page 1 of 2)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$          each occurence<br><br>$          aggregate<br><br>Property Damage Liability<br><br>$          each occurence<br><br>$          aggregate<br><br>☐ Combined Single Limit<br><br>$          each occurence<br><br>$          aggregate |
| OR<br><br>☒ Newmarket Underwriters Insurance Company Policy Number: NMG001027 06/30/99 to 06/30/00 | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$ 2,000,000   General Aggregate Limit<br><br>$ 1,000,000   Products - Completed Operation Aggregate Limit<br><br>$ 1,000,000   Personal and Advertising Injury Limit<br><br>$ 1,000,000   Each Occurence Limit |
| Retroactive Date | | |
| d) Royal Insurance Policy Number: TBD 06/30/99 to 06/30/00 | OL & T | $1,000,000 -  Each Occurrence |

**EX. B Page 21 of 41**



**Agricultural Excess
and Surplus
Insurance Company**

**THE PROTECTOR**
CATASTROPHE LIABILITY POLICY

**FORMS AND ENDORSEMENTS SCHEDULE**

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form and Edition | Date Added *<br>or<br>ST Date Deleted | Form Description |
|---|---|---|
| 1. Declarations | 06/30/99 | Declarations Page |
| 2. AES6002 | 06/30/99 | Commercial Umbrella Coverage Form |
| 3. AES6005U | 06/30/99 | Named Insured Endorsement |
| 4. AES6003U | 06/30/99 | Schedule of Underlying Policies |
| 5. AES6013U | 06/30/99 | Forms and Endorsements Schedule |
| 6. AES6026U | 06/30/99 | Cross Suits Exclusion |
| 7. AES6030U | 06/30/99 | Care, Custody or Control Exclusion – Real or Personal Property |
| 8. AES6044U | 06/30/99 | Unimpaired Aggregate Endorsement |
| 9. AES6047U | 06/30/99 | Advertising Injury – Following Form |
| 10. AES6066U | 06/30/99 | Prior Insurance |
| 11. AES6106U | 06/30/99 | Auto Liability - Following Form |
| 12. AES6113U | 06/30/99 | Contractual Liability – Following Form |
| 13. AES10U | 06/30/99 | Pre Existing Damage Exclusion |
| 14. AES6127U | 06/30/99 | Non-Business Activities Exclusion |
| 15. AES6129U | 06/30/99 | Personal Injury – Following Form |
| 16. AES6136U | 06/30/99 | Punitive or Exemplary Damages – Following Form |
| 17. AES6142U | 06/30/99 | Subsidence Exclusion |
| 18. AES6150U | 06/30/99 | Contractors Limitation Endorsement |
| 19. AES6153U | 06/30/99 | Employee Benefit Liability – Following Form |
| 20. AES6277U | 06/30/99 | Amendment of Scheduled Underlying Policies |
| 21. AES6333U | 06/30/99 | Exclusion – Liability Arising out of Lead |
| 22. AES6407U | 06/30/99 | Exclusion-Year 2000 Computer Related & Other Electronic Problems |
| 23. AES342U | 06/30/99 | Service of Suit (Excluding Pennsylvania) |
| 24. AES189U | 06/30/99 | Loss Reporting |

•   If not at inception

AES6013U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CROSS SUITS EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.


AES6026U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

## CARE, CUSTODY OR CONTROL EXCLUSION - REAL OR PERSONAL PROPERTY

The following exclusion is added to Section IV - EXCLUSIONS:

Any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

This endorsement does not change any other provision of the policy.

AES6030U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## UNIMPAIRED AGGREGATE ENDORSEMENT

The underlying aggregate limit(s) of all "underlying insurance," where applicable, shall be unimpaired at the beginning of the policy period shown in the Declarations and, for the purpose of this policy, only "occurrences" taking place during the policy period of this policy shall be considered in determining the extent of any exhaustion of such underlying aggregate limit(s).

This endorsement does not change any other provision of the policy.

AES6044U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

ADVERTISING INJURY – FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract, "because of "advertising injury," except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

This endorsement does not change any other provision of the policy.


AES6047U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PRIOR INSURANCE

The following is added to Section VI - CONDITIONS:

If a loss covered by this policy is also covered in whole or in part under any other policy issued to the Insured prior to the effective date of this policy, our Limits of Insurance as stated in Item 4. of the Declarations will be reduced by any amounts due the Insured under such prior insurance.

This endorsement does not change any other provision of the policy.

AES6066U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AUTO LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6106U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CONTRACTUAL LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability assumed by any "Insured" under any "insured contract," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6113U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PRE EXISTING DAMAGE EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

It is agreed that coverage is not provided for bodily injury or property damage which first becomes apparent to any named insured prior to the effective date of this policy regardless of whether there is repeated or continued exposure during the period of this policy or whether the injury or damage continues during the period of this policy.

This endorsement does not change any other provision of the policy.

AES10U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NON-BUSINESS ACTIVITIES EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for or arising out of any domestic or non-business activities of any "Insured."

This endorsement does not change any other provision of the policy.

AES6127U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PERSONAL INJURY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6129U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGES - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6136U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SUBSIDENCE EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

This policy does not cover any liability directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth, whether such movement of land or earth occurs alone, in combination with, before, after or concurrently with any other cause, contributing condition, or aggravating factor.

This endorsement does not change any other provision of the policy.

AES6142U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS LIMITATION ENDORSEMENT

Exclusions IV.F. and IV.G. are deleted from this policy and the following exclusion is added to Section IV - EXCLUSIONS:

1. a. Any liability assumed by any "Insured" under any "insured contract"; or

   b. Any "property damage":

      (1) to "your product" arising out of it or any part of it;

      (2) to "your work" arising out of it or any part of it included in the "products-completed operations hazards"; (but this Subparagraph (2) does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

      (3) to property leased or rented to, occupied or used by or in the care, custody or control of any "Insured" or as to which any "Insured" is for any purpose exercising physical control;

      (4) arising out of:

         (a) blasting or explosion other than the explosion of air or stream vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

         (b) the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work, or (b) moving, shoring, underpinning, razing or demolition or any

building or structure, or removal or rebuilding of any structural support thereof; or

         c) injury to or destruction of wires, conduits, pipes mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving;

      except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

2. Any liability arising out of:

   a. any project insured under a wrap-up or any similar rating plan; or

   b. the rendering of or failure to render any professional services, including but not limited to:

      (1) the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

      (2) supervisory, inspection, architectural or engineering activities.

This endorsement does not change any other provision of the policy.

AES 6150U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6153U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT OF SCHEDULED UNDERLYING POLICIES

The following is added to Section VI. Conditions, Paragraph I:

We shall be furnished a complete copy of each policy described in the Schedule of Underlying Insurance.  You shall immediately notify us of any change in the coverage or Limits of Insurance afforded by any such policy, other than a reduction in any aggregate limit as the result of the payment of a "claim" or "suit."  Your failure to do so shall not invalidate this policy but, in the event you fail to report any such change, we shall be liable only to the same extent that we would have been had no change been made.

This endorsement does not change any other provision of the policy.

AES6277U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section IV - EXCLUSIONS:

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

AES6333U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

The following exclusion is added to **SECTION IV – EXCLUSIONS:**

Any liability, including, but not limited to settlements, judgements, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or related in any way, either directly or indirectly, to:

1. Any actual or alleged failure, malfunction or Inadequacy of:

   a. any of the following, whether belonging to any "insured" or to others:

      (1) computer hardware, including micro-processors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer system; or

      (6) any other computerized or electronic equipment or components; or

   b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **1.a.** of this endorsement.

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 1. of this endorsement.

This endorsement does not change any other provision of the policy.

AES 6407U



**Agricultural Excess
and Surplus
Insurance Company**

# SERVICE OF SUIT CLAUSE

## (Not Applicable in Pennsylvania)

PURSUANT TO ANY STATUTE OF ANY STATE OR DISTRICT OF THE UNITED STATES OF AMERICA, WHICH MAKES PROVISION THEREFOR, THE COMPANY HEREBY DESIGNATES THE COMMISSIONER, SUPERINTENDENT OR DIRECTOR OF INSURANCE OR OTHER OFFICER SPECIFIED FOR THAT PURPOSE IN THE STATUTE AND HIS OR HER SUCCESSORS IN OFFICE AND DULY AUTHORIZED DEPUTIES IN THE STATE WHERE THIS POLICY IS ISSUED, AS THE COMPANY'S TRUE AND LAWFUL ATTORNEY FOR SERVICE OF LEGAL PROCESS IN ANY ACTION, SUIT OR PROCEEDING BROUGHT IN THE STATE WHERE THIS POLICY IS ISSUED BY OR ON BEHALF OF AN INSURED OR BENEFICIARY AGAINST THE COMPANY ARISING OUT OF SERVICE OF LEGAL PROCESS SHALL BE FORWARDED TO THE COMPANY TO THE ATTENTION OF:

| | | |
|---|---|---|
| KAREN HOLLEY HORRELL | CALIFORNIA | ILLINOIS |
| GENERAL COUNSEL | JERE KEPRIOS | DON L. BUTLER |
| AGRICULTURAL EXCESS AND | C/O CT CORPORATION SYSTEM | C/O CT CORPORATION SYSTEM |
| SURPLUS INSURANCE CO. | 818 WEST SEVENTH STREET | 208 SOUTH LA SALLE |
| 580 WALNUT STREET | LOS ANGELES, CA 90017 | CHICAGO, IL 60604 |
| CINCINNATI, OH 45202 | | |

DISTRICT OF COLUMBIA
CT CORPORATION SYSTEM
1025 VERMON AVENUE, N.W.
WASHINGTON, DC 20005

THE FOREGOING DESIGNATION OF ATTORNEY FOR SERVICE OF LEGAL PROCESS UPON THE COMPANY SHALL NOT CONSTITUTE A WAIVER OF THE COMPANY'S RIGHT TO REMOVE, REMAND, DISMISS OR TRANSFER ANY SUIT OR PROCEEDING FROM ANY COURT, OR TO COMMENCE ANY SUIT OR OTHER PROCEEDING IN ANY COURT OF COMPETENT JURISDICTION.

AES 342U



**Agricultural Excess
and Surplus
Insurance Company**

### *Thank You For Your Business*

*This policy is ready for you to assemble. You may wish to include your state's tax and other charges on the declarations.*

*We have retained the underwriting copy.*

### *Loss Reporting*

*Report all losses to Home Office. Large or unusual losses may be reported by phone or telex.*

### *Agricultural Excess and Surplus Insurance Company*

|  |  |
|---|---|
| Home Office: | 49 East Fourth Street, Suite 300 |
|  | P.O. Box 5425, Cincinnati, OH 45201 |
| Phone: | 800-952-6757 |
| FAX: | 513-333-6915 |

AES 189U

Peter J. Whalen SBN 130041
Robert M. Fineman SBN 188211
Terrance J. Evans SBN 227671
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail:     pjwhalen@duanemorris.com
            rmfineman@duanemorris.com
            tjevans@duanemorris.com

Attorneys for Great American E&S Insurance Company,
formerly known as Agricultural Excess and Surplus
Insurance Company

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, a New York Corporation,<br><br>                              Plaintiff,<br><br>       v.<br><br>HOMESTEAD INSURANCE COMPANY, an Pennsylvania Corporation; GREAT AMERICAN E&S INSURANCE COMPANY, an Ohio Corporation, formerly known as AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, and DOES 1-10,<br><br>                              Defendants. | Case No.: CV-08-1716<br><br>**EXHIBIT C TO THE DECLARATION OF FRANK CURCI**<br><br>Complaint Filed:     March 31, 2008 |

DM1\1342251.1


**Agricultural Excess
and Surplus
Insurance Company**

Policy No. UMB 2703840-02
Renewal Of  UMB 2703840-01

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   02/06/00   To   02/06/01 |
| IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE WILL AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>3974 Brown Park Drive, Suite D<br>Hilliard, OH  43026 |

Insurance is afforded by:  Agricultural Excess and Surplus Insurance Company

3. PREMIUM:      Commercial Umbrella Premium  $ 53,000.
                 Personal Umbrella Premium    $
                 Total Umbrella Premium       $ 53,000.
                 Service Charge              $
                 Taxes                    $
                 Surcharge               $
                 Total                    $

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 13,250. as a policy minimum premium.

BASIS OF PREMIUM:    Non-Auditable ( X )    Auditable (  )

4. LIMITS OF INSURANCE:    $ 2,000,000          Each Occurrence
                            $ 2,000,000          General Aggregate  (Where Applicable)
                            $ 2,000,000          Products-Completed Operations Aggregate

5. SELF-INSURED RETENTION:    $ 10,000

6. FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule.

THIS IS A TRUE AND CERTIFIED COPY OF POLICY UMB 2703840-02.

_____          4-15-08
AUTHORIZED SIGNATURE                               DATE

Countersigned    02/28/00                    By:_____
                                                                Authorized Representative

(Page 1 of 1)

**EX. C Page 1 of 45**



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840-02
Effective Date of Change 11/30/00

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| 1.  NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From    02/06/00   To  02/06/01 |
|---|---|
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates<br>P.O. Box 127<br>Hilliard, OH  43026-0127 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒  AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS HEREBY AGREED THAT THE POLICY IS AMENDED AS FOLLOWS:

ADDING NAMED INSURED AS PER THE ATTACHED FORM AES6005U.

FORMS AND ENDORSEMENTS hereby added:

FORMS AND ENDORSEMENTS hereby amended: AES6005U

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned ___02/05/01___     By _____
                    Date                                      Authorized Representative

AES6012U                                    (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NAMED INSURED

The Named Insured listed in Item 1 of the Declarations is changed to the following:

> Jonce Thomas Construction Company
> D & J Construction, Inc.
> Jonce Thomas & Donna Thomas
> Jonce Thomas & Donna Thomas as Trustees of the Thomas Living Trust
> Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
> Jonce Thomas Development Co.
> Jon-Don Farms
> Brandin Court Associates, LLC

This endorsement does not change any other provision of the policy.

AES6005U                                   (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840-02
Effective Date of Change 03/25/00

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1.  NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From      02/06/00   To  02/06/01 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates<br>P.O. Box 127<br>Hilliard, OH  43026-0127 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒  AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IT IS AGREED THE POLICY IS REINSTATED EFFECTIVE 03/25/00.

FORMS AND ENDORSEMENTS hereby added:

FORMS AND ENDORSEMENTS hereby amended:

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned _____  By _____
                          Date                              Authorized Representative

AES6012U                            (Page 1 of 1)

**EX. C Page 4 of 45**



**Agricultural Excess
and Surplus
Insurance Company**

Policy No.  UMB 2703840-02
Effective Date of Change 03/25/00

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1.  NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   02/06/00      To      02/06/01 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>P.O. Box 127<br>Hilliard,  OH  43026 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒  AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY

IN CONSIDERATION OF A RETURN PREMIUM, IT IS AGREED THE POLICY IS AMENDED AS FOLLOWS:

CANCELLING POLICY EFFECTIVE 03/25/00 AS PER THE ATTACHED FORM F10083F.

FORMS AND ENDORSEMENTS hereby added:  F10083F

FORMS AND ENDORSEMENTS hereby amended:

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned _____  By _____
              Date                                 Authorized Representative

AES6012U                              (Page 1 of 1)

**CANCELLATION MEMO**

GREAT AMERICAN®
INSURANCE COMPANIES

Date:        June 20, 2000

From:        Carla Bayless

Insured:     Jonce Thomas Construction Company, Inc.

TO:          Thomas C. DeVore & Associates
             P.O. Box 127
             Hilliard, OH  43026-0127

Policy No.   UMB 2703840-02

Please refer to item (s) marked (x) below:

1. ☒  As you requested, the following information is furnished:
       Policy cancelled ☐ Flat ☒ Pro Rate  ☐  Short Rate as of March 25, 2000.

   ☒  The return premium computed on the annual premium is $  39,750.00**
      ** If the policy is on an installment plan, the return premium due insured is annual less any or future installments

2. ☐  Above policy premium has been received for cancellation ☐ Pro Rata  ☐ Short Rate as of _____
       quoting return premium of $ _____

       Our calculation develops return premium of $ _____  Please recheck your figures and advise

3. ☐  Please advise:
       ☐ Method of cancellation    ☐ Effective date of cancellation    ☐ Reason for cancellation

4. ☐  Audit Policy
       Premium adjustment for the auditable coverages will be sent upon completion of audit

5. ☐  Please refrain from taking credit for return premium of $ _____ computed by you.  An audit is required
       before this premium can be adjusted.

6. ☐  We have received word that the above policy has been cancelled on you record, but the evidence of cancellation has not
       been  received in this office.  Will you kindly check your records and if in agreement submit the cancellation evidence to the
       writer's attention.

   Remarks:

F 10083F (9/89)



**Agricultural Excess
and Surplus
Insurance Company**

# THE PROTECTOR

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as

such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement Section II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

1. "Insureds";

2. "claims" made or "suits" brought; or

3. persons or organizations making "claims" or bringing "suits."

B. The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section I., except:

1. damages included in the "products-completed operations hazard"; and

2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

C. The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

D. Subject to B. or C. in Section II. LIMITS OF INSURANCE, whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the Insuring Agreement in Section I. because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

E. If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

   1. in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

   2. in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. **Retained Limit**

   We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

   1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

   2. the amount stated in the Declarations as Self–Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

   and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

   Once the Self–Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self–Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III. DEFENSE

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

   1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

   2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

B. When we assume the defense of any "claim" or "suit":

   1. We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

2. All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

3. We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the "Insured":

   a. premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

   c. all costs taxed against the "Insured" in any "claim" or "suit" we defend;

   d. pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   f. the "Insured's" actual and reasonable expenses incurred at our request.

C. We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

D. In all other instances except Subsection A. in Section III. DEFENSE, we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV. EXCLUSIONS

This insurance does not apply to:

A. "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B. Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

C. Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

D. Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

E. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

AES 6002

(Page 3 of 15)

EX. C Page 9 of 45

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

F. "Property damage" to "your product" arising out of it or any part of it.

G. "Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "your product";

2. "your work"; or

3. "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. "Property damage" to property owned by the "Insured."

J. "Personal injury" or "advertising injury":

1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

2. arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

3. arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

4. for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

K. "Advertising injury" arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

2. the failure of goods, products or services to conform with advertised quality or performance;

3. the wrong description of the price of goods, products or services; or

4. an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

L. Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

2. Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not

the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

M. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

N. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

O. "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

1. refusal to employ or promote;

2. termination of employment;

3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

4. consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of O.1. through O.3.

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

P. "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the Nuclear Energy Liability Exclusion attached to this Policy.

Q. The following Items 1. through 4., except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

2. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

3. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such air-

craft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

4. "Bodily injury" to:

    a. an employee of any "Insured" arising out of and in the course of:

        i. employment by any "Insured"; or

        ii. performing duties related to the conduct of any "Insured's" business; or

    b. the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph 4.a.

This exclusion applies:

    a. whether any "Insured" may be liable as an employer or in any other capacity; and

    b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## V. DEFINITIONS

A. "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

    1. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    2. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

    3. misappropriation of advertising ideas or style of doing business;

    4. infringement of copyright, title or slogan; or

5. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

C. "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D. "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

E. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

    2. you fulfilling the terms of the contract or agreement.

F. "Insured" means each of the following, to the extent set forth:

    1. The Named Insured meaning:

        a. Any person or organization listed in Item 1. of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

        b. Any organization you newly acquire or form, other than a partnership, joint venture or limited

liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

(1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

(2) coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

(3) coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5. Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6. Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision 6. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

7. Any person, other than one of your employees, or organization while acting as your real estate manager.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision 8. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

9. No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

G. "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under

which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

H. "Loading" or "unloading" means the handling of property:

1. after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. while it is in or on an aircraft, watercraft or "auto";

3. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. equipment designed primarily for:

      (1) snow removal;

      (2) road maintenance, but not construction or resurfacing; or

      (3) street cleaning;

   b. cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J. "Occurrence" means:

1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. as respects "personal injury," an offense arising out of the business of any "insured" that results in "personal

injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3. as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K. "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

L. 1. "Products–completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from prem-

ises you own or rent and arising out of "your product" or "your work" except

   a. products that are still in your physical possession; or

   b. work that has not yet been completed or abandoned.

2. "Your work" will be deemed completed at the earliest of the following times:

   a. When all of the work called for in your contract has been completed.

   b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products–completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

   b. the existence of tools, uninstalled equipment or abandoned or unused materials.

M. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

AES 6002

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

O. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P. "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Q. "Your work" means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. the providing of or failure to provide warnings or instructions.

## VI. Conditions

### A. Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item 4. of the Declarations plus the cost and expense of such appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the

Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's

check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item 1. of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

E. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F. Duties in The Event of An Occurrence, Claim Or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

   a. how, when and where the "occurrence" took place;

   b. the names and addresses of any injured person and witnesses;

   c. the nature and location of any injury or damage arising out of the "occurrence."

2. If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved "Insured" must

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

b. authorize us to obtain records and other information;

c. cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

4. The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### G. Inspection

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

### H. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1. you have complied with all the terms of this policy; and

2. the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

### I. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

### J. Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

### K. Premium

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 3. of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item 3. of the Declarations for each twelve months of our policy period.

L. Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each "Insured" against whom "claim" is made or "suit" brought.

M. Transfer of Rights of Recovery Against Others to Us

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

N. Terms Conformed to Statute

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

O. Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1. of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

P. When Loss Is Payable

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self-Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1. Any liability, injury or damage:

   a. with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

   b. resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or (b) has been discharged or dispersed therefrom;

   b. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

   c. the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States

of America, its territories or possessions or Canada, this Exclusion 2.c. applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3. As used in this exclusion:

   a. "Hazardous properties" includes radioactive, toxic or explosive properties.

   b. "Nuclear facility" means:

      i. any "nuclear reactor";

      ii. any equipment or device designed or used for

         (1) separating the isotopes of uranium or plutonium,

         (2) processing or utilizing "spent fuel" or

         (3) handling, processing or packaging "nuclear waste";

      iii. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      iv. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

   c. "Nuclear material" means "source material," "special nuclear material" or by-product material.

d. "Nuclear property damage" includes all forms of radioactive contamination of property.

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. "Nuclear waste" means any nuclear waste material (a) containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organiza-

tion of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g. "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

Secretary

President



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED**

The Named Insured listed in Item 1 of the Declarations is changed to the following:

> Jonce Thomas Construction Company
> D & J Construction, Inc.
> Jonce Thomas & Donna Thomas
> Jonce Thomas & Donna Thomas as Trustees of the Thomas Living Trust
> Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
> Jonce Thomas Development Co.
> Jon-Don Farms

This endorsement does not change any other provision of the policy.

AES6005U                                        (Page 1 of 1)



**Agricultural Excess
and Surplus
Insurance Company**

### THE PROTECTOR
### CATASTROPHE LIABILITY POLICY

#### SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Cal Comp<br>Policy Number: W991130562<br>01/01/99 to 01/01/00 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000   each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000   policy limit<br><br>$ 1,000,000   each employee |
| b) Royal Insurance<br>Policy Number: P ST-244506 0000<br>06/30/99 to 06/30/00 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$          each person<br>$          each accident<br>Property Damage Liability<br>$          each accident<br>☒ Combined Single Limit<br>$ 1,000,000 each accident<br>☐ Garage Operations<br>$          Auto only each accident<br>$          Other than auto each accident<br>$          Other than auto aggregate |
| | ☐ Garagekeepers Liability | $          each location |

AES 6003U                                   (page 1 of 2)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c)  ☐ | Comprehensive General Liability including<br><br>☐ Products – Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$      each occurence<br><br>$      aggregate<br><br>Property Damage Liability<br><br>$      each occurence<br><br>$      aggregate<br><br>☐ Combined Single Limit<br><br>$      each occurence<br><br>$      aggregate |
| OR<br><br>☒ Lloyds of London<br>Policy Number: TBD<br>02/06/00 to 02/06/01<br><br><br><br><br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$ 2,000,000    General Aggregate Limit<br><br>$ 1,000,000    Products – Completed Operation Aggregate Limit<br><br>$ 1,000,000    Personal and Advertising Injury Limit<br><br>$ 1,000,000    Each Occurence Limit |
| d)  Royal Insurance<br>Policy Number:  TBD<br>06/30/99 to 06/30/00 | OL & T | $1,000,000 -  Each Occurrence |

AES6003U                                   (Page 2 of 2)



**Agricultural Excess
and Surplus
Insurance Company**

### THE PROTECTOR
CATASTROPHE LIABILITY POLICY

### FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form and Edition | Date Added *<br>or<br>ST Date Deleted | Form Description |
|---|---|---|
| 1. Declarations | 02/06/00 | Declarations Page |
| 2. AES6002 | 02/06/00 | Commercial Umbrella Coverage Form |
| 3. AES6005U | 02/06/00 | Named Insured Endorsement |
| 4. AES6003U | 02/06/00 | Schedule of Underlying Policies |
| 5. AES6013U | 02/06/00 | Forms and Endorsements Schedule |
| 6. AES6026U | 02/06/00 | Cross Suits Exclusion |
| 7. AES6030U | 02/06/00 | Care, Custody or Control Exclusion – Real or Personal Property |
| 8. AES6044U | 02/06/00 | Unimpaired Aggregate Endorsement |
| 9. AES6047U | 02/06/00 | Advertising Injury – Following Form |
| 10. AES6066U | 02/06/00 | Prior Insurance |
| 11. AES6106U | 02/06/00 | Auto Liability - Following Form |
| 12. AES6113U | 02/06/00 | Contractual Liability – Following Form |
| 13. AES10U | 02/06/00 | Pre Existing Damage Exclusion |
| 14. AES24U | 02/06/00 | General Liability - Following Form |
| 15. AES6127U | 02/06/00 | Non-Business Activities Exclusion |
| 16. AES6129U | 02/06/00 | Personal Injury – Following Form |
| 17. AES6135U | 02/06/00 | Professional Liability Exclusion |
| 18. AES6136U | 02/06/00 | Punitive or Exemplary Damages – Following Form |
| 19. AES6150U | 02/06/00 | Contractors Limitation Endorsement |
| 20. AES6153U | 02/06/00 | Employee Benefit Liability – Following Form |
| 21. AES6277U | 02/06/00 | Amendment of Scheduled Underlying Policies |
| 22. AES6333U | 02/06/00 | Exclusion – Liability Arising out of Lead |
| 23. AES6407U | 02/06/00 | Exclusion-Year 2000 Computer Related & Other Electronic Problems |
| 24. AES342U | 02/06/00 | Service of Suit (Excluding Pennsylvania) |
| 25. AES189U | 02/06/00 | Loss Reporting |

* If not at inception

AES6013U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CROSS SUITS EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.

AES6026U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

CARE, CUSTODY OR CONTROL EXCLUSION - REAL OR PERSONAL PROPERTY

The following exclusion is added to Section IV - EXCLUSIONS:

Any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

This endorsement does not change any other provision of the policy.

AES6030U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**UNIMPAIRED AGGREGATE ENDORSEMENT**

The underlying aggregate limit(s) of all "underlying insurance," where applicable, shall be unimpaired at the beginning of the policy period shown in the Declarations and, for the purpose of this policy, only "occurrences" taking place during the policy period of this policy shall be considered in determining the extent of any exhaustion of such underlying aggregate limit(s).

This endorsement does not change any other provision of the policy.

AES6044U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADVERTISING INJURY – FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract, "because of "advertising injury," except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

This endorsement does not change any other provision of the policy.


AES6047U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PRIOR INSURANCE

The following is added to Section VI - CONDITIONS:

If a loss covered by this policy is also covered in whole or in part under any other policy issued to the Insured prior to the effective date of this policy, our Limits of Insurance as stated in Item 4. of the Declarations will be reduced by any amounts due the Insured under such prior insurance.

This endorsement does not change any other provision of the policy.

AES6066U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AUTO LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6106U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CONTRACTUAL LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability assumed by any "Insured" under any "insured contract," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6113U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PRE EXISTING DAMAGE EXCLUSION


The following exclusion is added to Section IV - EXCLUSIONS:

It is agreed that coverage is not provided for bodily injury or property damage which first becomes apparent to any person prior to the effective date of this policy regardless of whether there is repeated or continued exposure during the period of this policy or whether the injury or damage continues during the period of this policy.


This endorsement does not change any other provision of the policy.


AES10U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**GENERAL LIABILITY - FOLLOWING FORM**

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of "bodily injury,"  "property damage," "personal injury" or "advertising injury" except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.


AES24U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NON-BUSINESS ACTIVITIES EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for or arising out of any domestic or non-business activities of any "Insured."

This endorsement does not change any other provision of the policy.

AES6127U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PERSONAL INJURY - FOLLOWING FORM**

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury,"
except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no
broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6129U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PROFESSIONAL LIABILITY EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service.

This endorsement does not change any other provision of the policy.

AES6135U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PUNITIVE OR EXEMPLARY DAMAGES - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a
policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.


This endorsement does not change any other provision of the policy.


AES6136U



**Agricultural Excess
and Surplus
Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS LIMITATION ENDORSEMENT

Exclusions IV.F. and IV.G. are deleted from this policy and the following exclusion is added to Section IV - EXCLUSIONS:

1. a. Any liability assumed by any "Insured" under any "insured contract"; or

   b. Any "property damage":

      (1) to "your product" arising out of it or any part of it;

      (2) to "your work" arising out of it or any part of it included in the "products-completed operations hazards"; (but this Subparagraph (2) does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

      (3) to property leased or rented to, occupied or used by or in the care, custody or control of any "Insured" or as to which any "Insured" is for any purpose exercising physical control;

      (4) arising out of:

         (a) blasting or explosion other than the explosion of air or stream vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

         (b) the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work, or (b) moving, shoring, underpinning, razing or demolition or any building or structure, or removal or rebuilding of any structural support thereof; or

         (c) injury to or destruction of wires, conduits, pipes mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving;

      except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

2. Any liability arising out of:

   a. any project insured under a wrap-up or any similar rating plan; or

   b. the rendering of or failure to render any professional services, including but not limited to:

      (1) the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

      (2) supervisory, inspection, architectural or engineering activities.

This endorsement does not change any other provision of the policy.

AES 6150U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6153U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT OF MAINTENANCE OF UNDERLYING INSURANCE

The following is added to Section VI. Conditions, Paragraph I:

We will be furnished a complete copy of each policy described in the Schedule of Underlying Insurance.  You will immediately notify us of any change in the coverage or Limits of Insurance afforded by any such policy, other than a reduction in any aggregate limit as the result of the payment of a "claim" or "suit."  Your failure to do so shall not invalidate this policy but, in the event you fail to report any such change, we shall be liable only to the same extent that we would have been had no change been made.

This endorsement does not change any other provision of the policy.

AES6277U



**Agricultural Excess
and Surplus
Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section IV - EXCLUSIONS:

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor clean

up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

AES6333U



**Agricultural Excess
and Surplus
Insurance Company**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC
PROBLEMS**

The following exclusion is added to **SECTION IV –
EXCLUSIONS:**

Any liability, including, but not limited to
settlements, judgements, costs, charges,
expenses, costs of investigations, or the fees of
attorneys, experts, or consultants, arising out of or
related in any way, either directly or indirectly, to:

1.  Any actual or alleged failure, malfunction or
    Inadequacy of:

    a.  any of the following, whether belonging to
        any "insured" or to others:

        (1)  computer hardware, including micro-
             processors;

        (2)  computer application software;

        (3)  computer operating systems and
             related software;

        (4)  computer networks;

        (5)  microprocessors (computer chips)
             not part of any computer system; or

        (6)  any other computerized or electronic
             equipment or components; or

    b.  any other products, and any services, data
        or functions that directly or indirectly use
        or rely upon, in any manner, any of the
        items listed in Paragraph **1.a.** of this
        endorsement.

    due to the inability to correctly recognize,
    process, distinguish, interpret or accept the
    year 2000 and beyond.

2.  Any advice, consultation, design, evaluation,
    inspection, installation, maintenance, repair,
    replacement or supervision provided or done
    by you or for you to determine, rectify or test
    for, any potential or actual problems described
    in Paragraph 1. of this endorsement.

This endorsement does not change any other
provision of the policy.

AES 6407U


**Agricultural Excess
and Surplus
Insurance Company**

# SERVICE OF SUIT CLAUSE

## (Not Applicable in Pennsylvania)

PURSUANT TO ANY STATUTE OF ANY STATE OR DISTRICT OF THE UNITED STATES OF AMERICA, WHICH MAKES PROVISION THEREFOR, THE COMPANY HEREBY DESIGNATES THE COMMISSIONER, SUPERINTENDENT OR DIRECTOR OF INSURANCE OR OTHER OFFICER SPECIFIED FOR THAT PURPOSE IN THE STATUTE AND HIS OR HER SUCCESSORS IN OFFICE AND DULY AUTHORIZED DEPUTIES IN THE STATE WHERE THIS POLICY IS ISSUED, AS THE COMPANY'S TRUE AND LAWFUL ATTORNEY FOR SERVICE OF LEGAL PROCESS IN ANY ACTION, SUIT OR PROCEEDING BROUGHT IN THE STATE WHERE THIS POLICY IS ISSUED BY OR ON BEHALF OF AN INSURED OR BENEFICIARY AGAINST THE COMPANY ARISING OUT OF SERVICE OF LEGAL PROCESS SHALL BE FORWARDED TO THE COMPANY TO THE ATTENTION OF:

| | | |
|---|---|---|
| KAREN HOLLEY HORRELL | CALIFORNIA | ILLINOIS |
| GENERAL COUNSEL | JERE KEPRIOS | DON L. BUTLER |
| AGRICULTURAL EXCESS AND | C/O CT CORPORATION SYSTEM | C/O CT CORPORATION SYSTEM |
| SURPLUS INSURANCE CO. | 818 WEST SEVENTH STREET | 208 SOUTH LA SALLE |
| 580 WALNUT STREET | LOS ANGELES, CA 90017 | CHICAGO, IL 60604 |
| CINCINNATI, OH 45202 | | |

DISTRICT OF COLUMBIA
CT CORPORATION SYSTEM
1025 VERMON AVENUE, N.W.
WASHINGTON, DC 20005

THE FOREGOING DESIGNATION OF ATTORNEY FOR SERVICE OF LEGAL PROCESS UPON THE COMPANY SHALL NOT CONSTITUTE A WAIVER OF THE COMPANY'S RIGHT TO REMOVE, REMAND, DISMISS OR TRANSFER ANY SUIT OR PROCEEDING FROM ANY COURT, OR TO COMMENCE ANY SUIT OR OTHER PROCEEDING IN ANY COURT OF COMPETENT JURISDICTION.

AES 342U



**Agricultural Excess
and Surplus
Insurance Company**

## *Thank You For Your Business*

*This policy is ready for you to assemble. You may wish to include your state's tax and other charges on the declarations.*

*We have retained the underwriting copy.*

### *Loss Reporting*

*Report all losses to Home Office. Large or unusual losses may be reported by phone or telex.*

### *Agricultural Excess and Surplus Insurance Company*

| | |
|---|---|
| Home Office: | 49 East Fourth Street, Suite 300 |
| | P.O. Box 5425, Cincinnati, OH 45201 |
| Phone: | 800-952-6757 |
| FAX: | 513-333-6915 |

AES 189U

1  Peter J. Whalen SBN 130041
   Robert M. Fineman SBN 188211
2  Terrance J. Evans SBN 227671
   **DUANE MORRIS LLP**
3  One Market, Spear Tower, Suite 2000
   San Francisco, CA 94105-1104
4  Telephone: 415.957.3000
   Facsimile: 415.957.3001
5  E-Mail:   pjwhalen@duanemorris.com
              rmfineman@duanemorris.com
6              tjevans@duanemorris.com

7  Attorneys for Great American E&S Insurance Company,
   formerly known as Agricultural Excess and Surplus
8  Insurance Company

9
              IN THE UNITED STATES DISTRICT COURT
10
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12  HDI-GERLING AMERICA INSURANCE          Case No.: CV-08-1716
    COMPANY, a New York Corporation,
13                                          **EXHIBIT D TO THE DECLARATION**
                  Plaintiff,               **OF FRANK CURCI**
14
        v.
15                                          Complaint Filed:     March 31, 2008
    HOMESTEAD INSURANCE COMPANY, an
16  Pennsylvania Corporation; GREAT AMERICAN
    E&S INSURANCE COMPANY, an Ohio
17  Corporation, formerly known as AGRICULTURAL
    EXCESS AND SURPLUS INSURANCE
18  COMPANY, and DOES 1-10,

19                Defendants.

20

21

22

23

24

25

26

27

28

DM1\1342251.1

**Great American E & S Insurance Company**

Policy No. UMB 2703840-03
Renewal Of  UMB 2703840-02

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| | |
|---|---|
| 1.  NAMED INSURED AND ADDRESS:<br>    Jonce Thomas Construction Company, Inc.<br>    (See Named Insured Endorsement)<br>    P.O. Box 1856<br>    Fremont, CA  94538 | 2.  POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From    02/06/01    To    02/06/02 |
| IN RETURN FOR PAYMENT OF THE PREMIUM<br>AND SUBJECT TO ALL TERMS OF THIS<br>POLICY, WE WILL AGREE WITH YOU TO<br>PROVIDE THE INSURANCE AS STATED IN<br>THIS POLICY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>3974 Brown Park Drive, Suite D<br>Hilliard,  OH  43026 |

Insurance is afforded by:  Agricultural Excess and Surplus Insurance Company

3.  PREMIUM:    Commercial Umbrella Premium   $ 65,000.
                Personal Umbrella Premium     $
                Total Umbrella Premium        $ 65,000.
                Service Charge                $
                Taxes                         $
                Surcharge                     $
                Total                         $ 65,000.

In the event of cancellation by the Named Insured, the company will receive and retain no less than $16,250. as a policy minimum premium.

BASIS OF PREMIUM:    Non-Auditable  ( X )    Auditable  (  )

| | | |
|---|---|---|
| 4.  LIMITS OF INSURANCE: | $ 2,000,000<br>$ 2,000,000<br>$ 2,000,000 | Each Occurrence<br>General Aggregate  (Where Applicable)<br>Products-Completed Operations Aggregate |

5.  SELF-INSURED RETENTION:    $ 10,000

6.  FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule.

THIS IS A TRUE AND CERTIFIED COPY OF POLICY UMB 2703840-03.

_____        __4-15-08__
(AUTHORIZED) SIGNATURE          DATE

Countersigned    __02/26/01__        By: _____
                                          Authorized Representative

(Page 1 of 1)

**Great American E & S Insurance Company**

Policy No. UMB 2703840-03
Effective Date of Change 02/06/01

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| | |
|---|---|
| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA 94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From      02/06/01  To  02/06/02 |
| THIS ENDORSEMENT CHANGES THE POLICY.<br><br>PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates<br>P.O. Box 127<br>Hilliard, OH 43026-0127 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒ GREAT AMERICAN E & S INSURANCE COMPANY

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS HEREBY AGREED THE POLICY IS AMENDED AS FOLLOWS:

UPDATING THE UNDERLYING POLICIES INFORMATION AS PER THE REVISED FORM AES6003U ATTACHED.

FORMS AND ENDORSEMENTS hereby added:

FORMS AND ENDORSEMENTS hereby amended: AES6003U

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned ___06/05/01___    By _____
                    Date                                  Authorized Representative

AES6012U                              (Page 1 of 1)

**EX. D Page 2 of 52**

Great American E & S Insurance Company

### THE PROTECTOR
### CATASTROPHE LIABILITY POLICY

#### SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Zenith Insurance<br>Policy Number: Z046065902<br>01/01/01 to 01/01/02 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000  each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000  policy limit<br><br>$ 1,000,000  each employee |
| b) Royal Insurance Company of America<br>Policy Number: P ST-244506 000Y<br>06/30/00 to 06/30/01 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$               each person<br>$               each accident<br>Property Damage Liability<br>$               each accident<br>☒ Combined Single Limit<br>$1,000,000   each accident<br>☐ Garage Operations<br>$               Auto only each accident<br>$               Other than auto each accident<br>$               Other than auto aggregate |
|  | ☐ Garagekeepers Liability | $               each location |

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$            each occurence<br><br>$            aggregate<br><br>Property Damage Liability<br><br>$            each occurence<br><br>$            aggregate<br><br>☐ Combined Single Limit<br><br>$            each occurence<br><br>$            aggregate |
| OR<br><br>☒ Lloyds of London<br>Policy Number: 618/A01635001/093<br>02/06/01 to 02/06/02<br><br><br><br><br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br><br>☐ Claims - Made Form<br><br><br>☐ | OR<br><br>$2,000,000  General Aggregate Limit<br><br>$1,000,000  Products - Completed Operation Aggregate Limit<br><br>$1,000,000  Personal and Advertising Injury Limit<br><br>$ 1,000,000  Each Occurence Limit |
| d)  Royal Insurance Company of America<br>Policy Number: P SV-009866 000Y<br>06/30/00 to 06/30/01 | OL & T | $1,000,000 -  Each Occurrence |

AES6003U                              (Page 2 of 2)

**Great American E & S Insurance Company**

Policy No.  UMB 2703840-03
Effective Date of Change 02/06/01

## THE PROTECTOR CATASTROPHE LIABILITY POLICY CHANGES

| 1. NAMED INSURED AND ADDRESS: <br> Jonce Thomas Construction Company, Inc. <br> (See Named Insured Endorsement) <br> P.O. Box 1856 <br> Fremont, CA  94538 | 2. POLICY PERIOD: <br> 12:01 A.M. Standard Time at the <br> address of the Named Insured <br> shown at left. <br> From    02/06/01  To  02/06/02 |
|---|---|
| THIS ENDORSEMENT CHANGES THE POLICY. <br><br> PLEASE READ IT CAREFULLY. | PRODUCER'S NAME AND ADDRESS: <br> Thomas C. DeVore & Associates <br> P.O. Box 127 <br> Hilliard, OH  43026-0127 |

Insurance is afforded by company indicated below:
(Each a capital stock corporation)

☒   GREAT AMERICAN E & S INSURANCE COMPANY

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS HEREBY AGREED THAT THE POLICY IS AMENDED AS FOLLOWS:

UPDATING THE UNDERLYING POLICIES INFORMATION AS PER THE REVISED FORM AES6003U ATTACHED.

AMENDING THE COMMERCIAL UMBRELLA DECLARATIONS-ITEM 1-"INSURANCE IS AFFORDED BY" TO READ GREAT AMERICAN E & S INSURANCE COMPANY AS PER THE ATTACHED.

FORMS AND ENDORSEMENTS hereby added:

FORMS AND ENDORSEMENTS hereby amended:  AES6003U    DECLARATION

FORMS AND ENDORSEMENTS hereby deleted:

Countersigned ____03/14/01____ By _____*John L Jensen*_____
              Date                      Authorized Representative

AES6012U                          (Page 1 of 1)

Great American E & S Insurance Company

## THE PROTECTOR
### CATASTROPHE LIABILITY POLICY

#### SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a)  Zenith Insurance<br>Policy Number:  Z046065902<br>01/01/01 to 01/01/02 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000   each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000    policy limit<br><br>$ 1,000,000    each employee |
| b)  Royal Insurance Company of America<br>Policy Number: P ST-244506 000Y<br>06/30/00 to 06/30/01 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$            each person<br>$            each accident<br>Property Damage Liability<br>$            each accident<br>☒ Combined Single Limit<br>$1,000,000    each accident<br>☐ Garage Operations<br>$            Auto only each accident<br>$            Other than auto each accident<br>$            Other than auto aggregate |
|  | ☐ Garagekeepers Liability | $            each location |

**EX. D Page 6 of 52**

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c)  ☐ | Comprehensive<br>General Liability<br>including<br><br>☐ Products - Completed Operation<br>Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$        each occurence<br><br>$        aggregate<br><br>Property Damage Liability<br><br>$        each occurence<br><br>$        aggregate<br><br>☐ Combined Single Limit<br><br>$        each occurence<br><br>$        aggregate |
| OR<br><br>☒ Lloyds of London<br>Policy Number: TBD<br>02/06/01 to 02/06/02<br><br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$2,000,000  General Aggregate<br>Limit<br><br>$1,000,000  Products - Completed<br>Operation Aggregate<br>Limit<br><br>$1,000,000  Personal and Advertising<br>Injury Limit<br><br>$ 1,000,000  Each Occurence Limit |
| d)  Royal Insurance Company of<br>America<br>Policy Number: P SV-009866 000Y<br>06/30/00 to 06/30/01 | OL & T | $1,000,000 -  Each Occurrence |

AES6003U                                    (Page 2 of 2)

**Great American E & S Insurance Company**

Policy No. UMB 2703840-03
Renewal Of  UMB 2703840-02

## THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

| 1. NAMED INSURED AND ADDRESS:<br>Jonce Thomas Construction Company, Inc.<br>(See Named Insured Endorsement)<br>P.O. Box 1856<br>Fremont, CA  94538 | 2. POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   02/06/01   To   02/06/02 |
|---|---|
| IN RETURN FOR PAYMENT OF THE PREMIUM<br>AND SUBJECT TO ALL TERMS OF THIS<br>POLICY, WE WILL AGREE WITH YOU TO<br>PROVIDE THE INSURANCE AS STATED IN<br>THIS POLICY. | PRODUCER'S NAME AND ADDRESS:<br>Thomas C. DeVore & Associates, Inc.<br>3974 Brown Park Drive, Suite D<br>Hilliard, OH  43026 |

Insurance is afforded by:  Great American E & S Insurance Company

3. PREMIUM:
| | | |
|---|---|---|
| | Commercial Umbrella Premium | $ 65,000. |
| | Personal Umbrella Premium | $ |
| | Total Umbrella Premium | $ 65,000. |
| | Service Charge | $ |
| | Taxes | $ |
| | Surcharge | $ |
| | Total | $ 65,000. |

In the event of cancellation by the Named Insured, the company will receive and retain no less than $16,250. as a policy
minimum premium.

BASIS OF PREMIUM:   Non-Auditable  ( X )   Auditable  (  )

| 4. LIMITS OF INSURANCE: | $ 2,000,000 | Each Occurrence |
|---|---|---|
| | $ 2,000,000 | General Aggregate  (Where Applicable) |
| | $ 2,000,000 | Products-Completed Operations Aggregate |

5. SELF-INSURED RETENTION:   $ 10,000

6. FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this Policy at time of issue are listed
on the attached Forms and Endorsements Schedule.

Countersigned _____ 03/14/01 _____   By: _John L. Jensen_____
                                              Authorized Representative

(Page 1 of 1)

# THE PROTECTOR

## COMMERCIAL UMBRELLA COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement Section II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

  1. "Insureds";

  2. "claims" made or "suits" brought; or

  3. persons or organizations making "claims" or bringing "suits."

B. The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section I., except

  1. damages included in the "products-completed operations hazard"; and

  2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

C. The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

AES 6002

D. Subject to B. or C. ... Section II. LIMITS OF INSURANCE, whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section I. because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

E. If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

   1. in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

   2. in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G. **Retained Limit**

   We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

   1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

   2. the amount stated in the Declarations as Self–Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self–Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self–Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III. DEFENSE

A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

   1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

   2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured".

B. When we assume the defense of any "claim" or "suit":

   1. We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

AES 6002                          (Page 2 of 15)

2. All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

3. We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the "Insured":

   a. premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

   b. premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

   c. all costs taxed against the "Insured" in any "claim" or "suit" we defend;

   d. pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   e. all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   f. the "Insured's" actual and reasonable expenses incurred at our request.

C. We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

D. In all other instances except Subsection A. in Section III. DEFENSE, we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim" or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV. EXCLUSIONS

This insurance does not apply to:

A. "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B. Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

C. Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

D. Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

E. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   1. a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

AES 6002

(Page 3 of 15)

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

F. "Property damage" to "your product" arising out of it or any part of it.

G. "Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

  1. "your product";

  2. "your work"; or

  3. "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I. "Property damage" to property owned by the "Insured."

J. "Personal injury" or "advertising injury":

  1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

  2. arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

  3. arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or

  4. for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

K. "Advertising injury" arising out of:

  1. breach of contract, other than misappropriation of advertising ideas under an implied contract;

  2. the failure of goods, products or services to conform with advertised quality or performance;

  3. the wrong description of the price of goods, products or services; or

  4. an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

L. Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

  1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.

  2. Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

  3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not

the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

M. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

N. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

O. "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

1. refusal to employ or promote;

2. termination of employment;

3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

4. consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of O.1. through O.3.

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

P. "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion** attached to this Policy.

Q. The following Items 1. through 4., except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

2. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

3. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such air-

craft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

4. "Bodily injury" to:

a. an employee of any "Insured" arising out of and in the course of:

i. employment by any "Insured"; or

ii. performing duties related to the conduct of any "Insured's" business; or

b. the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph **4.a.**

This exclusion applies:

a. whether any "Insured" may be liable as an employer or in any other capacity; and

b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

## V. DEFINITIONS

A. "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

1. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

3. misappropriation of advertising ideas or style of doing business;

4. infringement of copyright, title or slogan; or

5. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items A.1. through A.4.

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

C. "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

D. "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

E. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

2. your fulfilling the terms of the contract or agreement.

F. "Insured" means each of the following, to the extent set forth:

1. The Named Insured meaning:

a. Any person or organization listed in Item 1. of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

b. Any organization you newly acquire or form, other than a partnership, joint venture or limited

AES 6002                    (Page 6 of 15)

liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

    (1) coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    (2) coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

    (3) coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5. Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6. Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

However, the coverage granted by this Provision 6. does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

7. Any person, other than one of your employees, or organization while acting as your real estate manager.

8. Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision 8. does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

9. No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

G. "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under

which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

H. "Loading" or "unloading" means the handling of property:

1. after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

2. while it is in or on an aircraft, watercraft or "auto";

3. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

I. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. equipment designed primarily for:

      (1) snow removal;

      (2) road maintenance, but not construction or resurfacing; or

      (3) street cleaning;

   b. cherry pickers and similar devices mounted on auto or truck chassis and used to raise or lower workers; and

   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

J. "Occurrence" means:

1. as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

2. as respects "personal injury," an offense arising out of the business of any "insured" that results in "personal

injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

3. as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

K. "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

6. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items K.1. through 5.

L. 1. "Products–completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from prem-

ises you own or rent and arising out of "your product" or "your work" except

a. products that are still in your physical possession; or

b. work that has not yet been completed or abandoned.

2. "Your work" will be deemed completed at the earliest of the following times:

a. When all of the work called for in your contract has been completed.

b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products–completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

b. the existence of tools, uninstalled equipment or abandoned or unused materials.

M. "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

N. "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

O. "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

P. "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Q. "Your work" means:

1. work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

2. the providing of or failure to provide warnings or instructions.

VI. Conditions

A. Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item 4. of the Declarations plus the cost and expense of such appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

C. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the

Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1. of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item 3. of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's

check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item 1. of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

### E. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

### F. Duties in The Event of An Occurrence, Claim Or Suit

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

   a. how, when and where the "occurrence" took place;

   b. the names and addresses of any injured person and witnesses;

   c. the nature and location of any injury or damage arising out of the "occurrence."

2. If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3. You and any other involved "Insured" must

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

b. authorize us to obtain records and other information;

c. cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

d. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

4. The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## G. Inspection

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

## H. Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1. you have complied with all the terms of this policy; and

2. the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

## I. Maintenance of Underlying Insurance

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

## J. Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

## K. Premium

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 3. of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item 3. of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item 3. of the Declarations for each twelve months of our policy period.

## L. Separation of Insureds

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each "Insured" against whom "claim" is made or "suit" brought.

## M. Transfer of Rights of Recovery Against Others to Us

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;

2. we then will be reimbursed up to the amount we have paid; and

3. lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

## N. Terms Conformed to Statute

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

## O. Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1. of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

## P. When Loss Is Payable

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self–Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

1. Any liability, injury or damage:

   a. with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

   b. resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) any "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

   a. the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or (b) has been discharged or dispersed therefrom;

   b. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

   c. the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion 2.c. applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

3. As used in this exclusion:

   a. "Hazardous properties" includes radioactive, toxic or explosive properties.

   b. "Nuclear facility" means:

      i. any "nuclear reactor";

      ii. any equipment or device designed or used for

         (1) separating the isotopes of uranium or plutonium,

         (2) processing or utilizing "spent fuel" or

         (3) handling, processing or packaging "nuclear waste";

      iii. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      iv. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

   c. "Nuclear material" means "source material," "special nuclear material" or by-product material.

d. "Nuclear property ꞏmage" includes all forms of radioactive contamination of property.

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. "Nuclear waste" means any nuclear waste material (a) containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organiza-

tion oꞏ ꞏny "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

g. "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

h. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

Secretary

President

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NAMED INSURED

The Named Insured listed in Item 1 of the Declarations is changed to the following:

      Jonce Thomas Construction Company
      Jon-Don Farms
      Jonce Thomas & Donna Thomas
      Jonce Thomas & Donna Thomas as Trustees of the Thomas Living Trust
      Jonce Thomas Construction Co., Inc. Defined Benefit Pension Plan
      D & J Construction, Inc.
      Jonce Thomas Development Co.

This endorsement does not change any other provision of the policy.

AES6005U

(Page 1 of 1)

Great American E & S Insurance C   pany

### THE PROTECTOR
#### CATASTROPHE LIABILITY POLICY

**SCHEDULE A - SCHEDULE OF UNDERLYING POLICIES**

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) Zenith Insurance<br>Policy Number: Z046065902<br>01/01/01 to 01/01/02 | Employers Liability | Bodily Injury By Accident<br><br>$ 1,000,000   each accident<br><br>Bodily Injury By Disease<br><br>$ 1,000,000    policy limit<br><br>$ 1,000,000    each employee |
| b) Royal Insurance<br>Policy Number: TBD<br>06/30/00 to 06/30/01 | Automobile / Garage<br>☒ Any Automobile<br>☐ Owned Automobile Only<br>☐ Specifically Designated Automobile<br>☐ Hired Automobile<br>☐ Non-owned Automobile<br>☐ Garage Liability<br>☐ | ☐ Split Limit<br>Bodily Injury Liability<br>$            each person<br>$            each accident<br>Property Damage Liability<br>$            each accident<br>☒ Combined Single Limit<br>$1,000,000   each accident<br>☐ Garage Operations<br>$            Auto only each accident<br>$            Other than auto each accident<br>$            Other than auto aggregate |
| | ☐ Garagekeepers Liability | $            each location |

(page 1 of 2)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| c) ☐ | Comprehensive General Liability including<br><br>☐ Products - Completed Operation Liability<br><br>☐ Broad Form Endorsement<br><br>☐<br><br>☐ | ☐ Split Limit<br><br>Bodily Injury Liability<br><br>$ _____ each occurence<br><br>$ _____ aggregate<br><br>Property Damage Liability<br><br>$ _____ each occurence<br><br>$ _____ aggregate<br><br>☐ Combined Single Limit<br><br>$ _____ each occurence<br><br>$ _____ aggregate |
| OR<br><br>☒ Lloyds of London<br>Policy Number: TBD<br>02/06/01 to 02/06/02<br><br><br><br><br><br><br>Retroactive Date | OR<br><br>Commercial General Liability<br><br>☒ Occurence Form<br><br>☐ Claims - Made Form<br><br>☐ | OR<br><br>$2,000,000  General Aggregate Limit<br><br>$1,000,000  Products - Completed Operation Aggregate Limit<br><br>$1,000,000  Personal and Advertising Injury Limit<br><br>$ 1,000,000  Each Occurence Limit |
| d)  Royal Insurance<br>Policy Number:  TBD<br>06/30/00 to 06/30/01 | OL & T | $1,000,000 –  Each Occurrence |

Great American E & S Insurance C    mpany

### THE PROTECTOR
#### CATASTROPHE LIABILITY POLICY

### FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form and Edition | Date Added *<br>or<br>ST Date Deleted | Form Description |
|---|---|---|
| 1. Declarations | 02/06/01 | Declarations Page |
| 2. AES6002 | 02/06/01 | Commercial Umbrella Coverage Form |
| 3. AES6005U | 02/06/01 | Named Insured Endorsement |
| 4. AES6003U | 02/06/01 | Schedule of Underlying Policies |
| 5. AES6013U | 02/06/01 | Forms and Endorsements Schedule |
| 6. AES6026U | 02/06/01 | Cross Suits Exclusion |
| 7. AES6028U | 02/06/01 | Abuse or Molestation Exclusion |
| 8. AES6030U | 02/06/01 | Care, Custody or Control Exclusion – Real or Personal Property |
| 9. AES6044U | 02/06/01 | Unimpaired Aggregate Endorsement |
| 10. AES6047U | 02/06/01 | Advertising Injury – Following Form |
| 11. AES6066U | 02/06/01 | Prior Insurance |
| 12. AES6106U | 02/06/01 | Auto Liability - Following Form |
| 13. AES6113U | 02/06/01 | Contractual Liability – Following Form |
| 14. AES10U | 02/06/01 | Pre Existing Damage Exclusion |
| 15. AES18U | 02/06/01 | Exclusion of Coverage for Specific Entities |
| 16. AES24U | 02/06/01 | General Liability - Following Form |
| 17. AES6127U | 02/06/01 | Non-Business Activities Exclusion |
| 18. AES6129U | 02/06/01 | Personal Injury – Following Form |
| 19. AES6135U | 02/06/01 | Professional Liability Exclusion |
| 20. AES6142U | 02/06/01 | Earth Movement Exclusion |
| 21. AES6150U | 02/06/01 | Contractors Limitation Endorsement |
| 22. AES6153U | 02/06/01 | Employee Benefit Liability – Following Form |
| 23. AES6218U | 02/06/01 | Amendment of Pollution Exclusion |
| 24. AES6277U | 02/06/01 | Amendment of Maintenance of Underlying Insurance |
| 25. AES6333U | 02/06/01 | Exclusion – Liability Arising out of Lead |

* If not at inception
  AES6013U

(Page 1 of 2)

Great American E & S Insurance Company

## THE PROTECTOR
### CATASTROPHE LIABILITY POLICY

### FORMS AND ENDORSEMENTS SCHEDULE (CONTINUED)

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| Form and Edition | Date Added *<br>or<br>ST Date Deleted | Form Description |
|---|---|---|
| 26. AES6339U | 02/06/01 | Punitive or Exemplary Damages Exclusion |
| 27. AES6434 | 02/06/01 | Amendment of Insuring Agreement – Known Injury or Damage |
| 28. AES342U | 02/06/01 | Service of Suit (Excluding Pennsylvania) |
| 29. AES189U | 02/06/01 | Loss Reporting |

* If not at inception
AES6013U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CROSS SUITS EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability of any "Insured" covered under this policy to any other "Insured" covered under this policy.

This endorsement does not change any other provision of the policy.

AES6026U

Great American E & S Insurance Company

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for or arising out of:

1.  the actual, threatened, or alleged abuse, molestation, harassment or sexual conduct by anyone of any person; or

2.  the negligent:

    a.   employment,

    b.   investigation

    c.   supervision,

    d.   reporting to the proper authorities, or failure to so report,

    e.   retention, or

    f.    referral

    of a person for whom any "Insured" is or ever was legally responsible and whose conduct would be excluded by 1. above.

This endorsement does not change any other provision of the policy.

AES6028U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

## CARE, CUSTODY OR CONTROL EXCLUSION - REAL OR PERSONAL PROPERTY

The following exclusion is added to Section IV - EXCLUSIONS:

Any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

This endorsement does not change any other provision of the policy.

AES6030U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

UNIMPAIRED AGGREGATE ENDORSEMENT

The underlying aggregate limit(s) of all "underlying insurance," where applicable, shall be unimpaired at the beginning of the policy period shown in the Declarations and, for the purpose of this policy, only "occurrences" taking place during the policy period of this policy shall be considered in determining the extent of any exhaustion of such underlying aggregate limit(s).

This endorsement does not change any other provision of the policy.

AES6044U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

ADVERTISING INJURY – FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract, "because of "advertising injury," except to the extent that such insurance is provided by a policy listed in the Schedule of "Underlying Insurance" and for no broader coverage than is provided by such coverage.

This endorsement does not change any other provision of the policy.

AES6047U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AUTO LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6106U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CONTRACTUAL LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability assumed by any "Insured" under any "insured contract," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6113U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EXCLUSION OF COVERAGE FOR SPECIFIED ENTITIES ENDORSEMENT

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of any operation(s) of the entity (ies) listed below:

    The following projects are excluded from this policy for any past, present, or future liability:
    Ocean Corner Association
    South County Justice Center
    Diamond Crossings
    West Court Village

AES 18U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

GENERAL LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of "bodily injury,"  "property damage," "personal injury" or "advertising injury" except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES24U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

NON-BUSINESS ACTIVITIES EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for or arising out of any domestic or non-business activities of any "Insured."

This endorsement does not change any other provision of the policy.

AES6127U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PERSONAL INJURY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "Insured" under an "insured contract," because of "personal injury," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6129U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PROFESSIONAL LIABILITY EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability for, caused by, arising out of, or in connection with the rendering of or failure to render any professional service.

This endorsement does not change any other provision of the policy.

AES6135U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EARTH MOVEMENT EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability directly or indirectly arising out of, caused by, resulting from, contributed to, or aggravated by subsidence, expanding, contracting, rising, settling, sinking, slipping, falling away, caving in, shifting, eroding, mudflow, tilting, heaving, cratering, doming, or any other movement of land, soil or earth, including but not limited to earthquake, landslide, mudslide, or mine subsidence, whether such movement of land, soil, or earth occurs alone, in combination with, before, after, or concurrently with any other cause, contributing condition, or aggravating factor, either manmade or natural.

This endorsement does not change any other provision of the policy.

AES6142U

**Great American E & S Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CONTRACTORS LIMITATION ENDORSEMENT

Exclusions **IV.F.** and **IV.G.** are deleted from this policy and the following exclusion is added to Section **IV - EXCLUSIONS:**

1. **a.** Any liability assumed by any "Insured" under any "insured contract"; or

   **b.** Any "property damage":

   **(1)** to "your product" arising out of it or any part of it;

   **(2)** to "your work" arising out of it or any part of it included in the "products-completed operations hazard"; (but this Subparagraph **(2)** does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor);

   **(3)** to property leased or rented to, occupied or used by or in the care, custody or control of any "Insured" or as to which any "Insured" is for any purpose exercising physical control;

   **(4)** arising out of:

   **(a)** blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment; or

   **(b)** the collapse of or structural injury to any building or structure due to **(a)** grading of land, excavation, burrowing, filling or back-filling, tunneling, pile driving, coffer-dam work or caisson work, or **(b)** moving, shoring, underpinning, razing or demolition of any building or structure, or removal or rebuilding of any structural support thereof; or

   **(c)** injury to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, or pile driving;

   except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

2. Any liability arising out of:

   **a.** any project insured under a wrap-up or any similar rating plan; or

   **b.** the rendering of or failure to render any professional services, including but not limited to:

   **(1)** the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

   **(2)** supervisory, inspection, architectural or engineering activities.

This endorsement does not change any other provision of the policy.

AES 6150U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYEE BENEFIT LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any actual or alleged act, error, or omission in the administration of any "Insured's" Employee Benefit Programs, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

AES6153U

**Great American E & S Insurance Company**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDMENT OF POLLUTION EXCLUSION - EXCEPTION FOR NAMED PERIL OF HOSTILE FIRE

Exclusion L. is deleted from Section IV. - EXCLUSIONS and is replaced by the following:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.

3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising

directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" arising out of the named peril of heat, smoke or fumes from a "hostile fire" at any "Insured's" premises or job location, to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

As used in this exclusion:

"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

This endorsement does not change any other provision of the policy.

AES 6218U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT OF MAINTENANCE OF UNDERLYING INSURANCE

The following is added to Section VI. Conditions, Paragraph I:

We will be furnished a complete copy of each policy described in the Schedule of Underlying Insurance.  You will immediately notify us of any change in the coverage or Limits of Insurance afforded by any such policy, other than a reduction in any aggregate limit as the result of the payment of a "claim" or "suit."  Your failure to do so shall not invalidate this policy but, in the event you fail to report any such change, we shall be liable only to the same extent that we would have been had no change been made.

This endorsement does not change any other provision of the policy.

AES6277U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section IV - EXCLUSIONS:

1. any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any -

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or in neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.

AES6333U

**Great American E & S Insurance Company**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

Any award of, or liability for, punitive or exemplary damages.

This endorsement does not change any other provision of the policy.

AES6339U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PRE EXISTING DAMAGE EXCLUSION

The following exclusion is added to Section IV - EXCLUSIONS:

It is agreed that coverage is not provided for "bodily injury" or "property damage" which first becomes apparent to any person prior to the effective date of this policy regardless of whether there is repeated or continued exposure during the period of this policy or whether the injury or damage continues during the period of this policy.

This endorsement does not change any other provision of the policy.

AES10U

Great American E & S Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

PRIOR INSURANCE

The following is added to Section VI - CONDITIONS:

If a loss covered by this policy is also covered in whole or in part under any other policy issued to the Insured prior to the effective date of this policy, our Limits of Insurance as stated in Item 4. of the Declarations will be reduced by any amounts due the Insured under such prior insurance.

This endorsement does not change any other provision of the policy.

AES6066U

**Great American E & S Insurance Company**

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

### AMENDMENT OF INSURING AGREEMENT –
### KNOWN INJURY OR DAMAGE

Section **I – COVERAGE** is deleted and replaced by the following:

1. **COVERAGE**

    a.  We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE.**

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) Prior to the policy period, no "Insured" knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If any "Insured" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such

-"bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any "Insured," includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Insured":

        (1) reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3) becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

AES 6434

Great American E & S Insurance Company

## SERVICE OF SUIT CLAUSE

## (Not Applicable in Pennsylvania)

PURSUANT TO ANY STATUTE OF ANY STATE OR DISTRICT OF THE UNITED STATES OF AMERICA, WHICH MAKES PROVISION THEREFOR, THE COMPANY HEREBY DESIGNATES THE COMMISSIONER, SUPERINTENDENT OR DIRECTOR OF INSURANCE OR OTHER OFFICER SPECIFIED FOR THAT PURPOSE IN THE STATUTE AND HIS OR HER SUCCESSORS IN OFFICE AND DULY AUTHORIZED DEPUTIES IN THE STATE WHERE THIS POLICY IS ISSUED, AS THE COMPANY'S TRUE AND LAWFUL ATTORNEY FOR SERVICE OF LEGAL PROCESS IN ANY ACTION, SUIT OR PROCEEDING BROUGHT IN THE STATE WHERE THIS POLICY IS ISSUED BY OR ON BEHALF OF AN INSURED OR BENEFICIARY AGAINST THE COMPANY ARISING OUT OF SERVICE OF LEGAL PROCESS SHALL BE FORWARDED TO THE COMPANY TO THE ATTENTION OF:

KAREN HOLLEY HORRELL
GENERAL COUNSEL
GREAT AMERICAN E & S
INSURANCE COMPANY
580 WALNUT STREET
CINCINNATI, OH 45202

CALIFORNIA
JERE KEPRIOS
C/O CT CORPORATION SYSTEM
818 WEST SEVENTH STREET
LOS ANGELES, CA 90017

ILLINOIS
DON L. BUTLER
C/O CT CORPORATION SYSTEM
208 SOUTH LA SALLE
CHICAGO, IL 60604

DISTRICT OF COLUMBIA
CT CORPORATION SYSTEM
1025 VERMON AVENUE, N.W.
WASHINGTON, DC 20005

THE FOREGOING DESIGNATION OF ATTORNEY FOR SERVICE OF LEGAL PROCESS UPON THE COMPANY SHALL NOT CONSTITUTE A WAIVER OF THE COMPANY'S RIGHT TO REMOVE, REMAND, DISMISS OR TRANSFER ANY SUIT OR PROCEEDING FROM ANY COURT, OR TO COMMENCE ANY SUIT OR OTHER PROCEEDING IN ANY COURT OF COMPETENT JURISDICTION.

AES 342U

# Great American E & S Insurance Company

## *Thank You For Your Business*

*This policy is ready for you to assemble.  You may wish to include your state's tax and other charges on the declarations.*

*We have retained the underwriting copy.*

## *Loss Reporting*

*Report all losses to Home Office.  Large or unusual losses may be reported by phone or telex.*

### *Great American E & S Insurance Company*

| | |
|---|---|
| Home Office: | 49 East Fourth Street, Suite 700 |
| | P.O. Box 5425,  Cincinnati,  OH  45201 |
| Phone: | 800-952-6757 |
| FAX: | 513-333-6915 |

AES 189U