Howard Wollitz [SBN: 58674]
CHARLSTON, REVICH & WOLLITZ LLP
1925 Century Park East, Suite 1250
Los Angeles, California 90067-2746
Telephone: (310) 551-7000
Facsimile: (310) 203-9321
E-Mail: hwollitz@crwllp.com

Attorneys for Defendant,
Homestead Insurance Company

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, a New York Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOMESTEAD INSURANCE COMPANY, a Pennsylvania Corporation; GREAT AMERICAN B&S INSURANCE COMPANY, an Ohio Corporation, formerly known as AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY; and DOES 1-10,<br><br>Defendants. | Case No. CV 08-1716 PJH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  July 9, 2008<br>Time:  9:00 a.m.<br>Dept:  3<br>       [Hon. Phyllis J. Hamilton] |

# MEMORANDUM OF POINTS AND AUTHORITIES
# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 1

II. GERLING'S CHALLENGE TO THE AUTHENTICITY OF THE HOMESTEAD POLICIES IS NOT REASONABLE .......................... 1

III. UNDER CALIFORNIA LAW, EXCESS POLICIES ARE PRESUMED TO REQUIRE HORIZONTAL EXHAUSTION OF ALL UNDERLYING POLICIES .......................... 4

IV. UNDER THE TERMS OF ITS EXCESS POLICY, HOMESTEAD HAD NO DUTY TO DEFEND PRIOR TO THE EXHAUSTION OF ALL PRIMARY POLICIES .......................... 8

V. GERLING CANNOT RECOVER IN EQUITY UNDER THE FACTS ALLEGED IN ITS COMPLAINT .......................... 10

VI. THERE IS NO INDEMNIFICATION DUTY IN ABSENCE OF HORIZONTAL EXHAUSTION .......................... 12

VII. CONCLUSION .......................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES
# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal.App.4th 1470,
41 Cal.Rptr.2d 166 (1995) .................................................. 3

*Aetna Cas. & Surety Co. v. Certain Underwriters* (1976)
56 Cal.App.3d 791, 129 Cal.Rptr. 47 ................................... 11

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854,
21 Cal.Rptr.2d 691 .......................................................... 3

*Bell Atlantic Corp. v. Twombly*, 27 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........... 3

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ................................ 1, 2

*Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal.App.4th 1246,
135 Cal.Rptr.2d 879 (2003) ............................................. 9, 10

*Chubb/Pacific Indem. Group v. Ins. Co. of North America* (1987)
188 Cal.App.3d 691, 233 Cal.Rptr. 539 ................................... 12

*Community Redevelopment Agency v. Aetna Cas. & Surety Co.*,
50 Cal.App.4th 329, 57 Cal.Rptr.2d 755 (1996) .......... 4, 5, 7, 9, 10, 13, 14

*La Jolla Beach & Tennis Club*, 9 Cal.4th 27, 36 Cal.Rptr.2d 100 (1994) ........... 3

*Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150 Cal.App.4th 984,
58 Cal.Rptr.3d 807, 811 n. 7 (2007) ............................... 6, 10, 12, 13

*Pension Benefit Guarantee Corp. v. White Consolidated Indus., Inc.*,
998 F.2d 1192 (3rd Cir. 1993) ............................................. 2

*Powerine Oil Co., Inc. v. Sup. Ct. (Powerine II)*, 37 Cal.4th 377,
33 Cal.Rptr.3d 562 ..................................................... 12, 13

*Signal Co. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 165 Cal.Rptr. 799 ..... 10, 11, 12

*Travelers Casualty Surety Co. v. Century Surety Co.*, 118 Cal.App.4th 1156,
13 Cal.Rptr.3d 526 (2004) ................................................. 9

*Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949,
1 Cal.Rptr.3d 272 (2004) ........................................... 4, 5, 6, 7, 9

*USF Ins. Co. v. Clarendon America Ins. Co.*, 452 F.Supp.2d 972, 986 (2006) ...... 3, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

Contrary to the assertions found in HDI-Gerling America Insurance Company's ("Gerling") Opposition, it cannot state a cause of action against Homestead Insurance Company ("Homestead") for declaratory relief and contribution in this matter. Gerling issued a policy of primary insurance to Jonce Thomas Construction ("Jonce"). Homestead issued an excess policy. Jonce was named as a defendant in two lawsuits: the *Chartwell* Action and the *Emery Bay* Action. Gerling does not, and cannot, allege horizontal exhaustion of all primary coverage because its primary policy did not exhaust until the settlement of the *Emery Bay* Action. Upon the exhaustion of the Gerling policy, Homestead, along with co-defendant Great American B&S Insurance Company, contributed to the amount of the settlement in excess of the Gerling policy. Homestead's excess policy was not triggered until the exhaustion of all implicated primary policies because its policy language requires horizontal exhaustion, or, at a minium, is not "sufficiently clear" to overcome the presumption of horizontal exhaustion.

## II.   GERLING'S CHALLENGE TO THE AUTHENTICITY OF THE HOMESTEAD POLICIES IS NOT REASONABLE

In its Complaint, Gerling declined to cite portions of Homestead's policies which are necessary for not merely the resolution of Gerling's claims, but for Gerling to state a cause of action against Homestead. To correct this error, Homestead attached its policies to its Motion to Dismiss, along with a declaration signed by Homestead's Vice-President, Joanne Horak. Attaching the policies was proper under Ninth Circuit precedent, which allows a court to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds. The policy and reasoning behind this rule is simple: it prevents plaintiffs, such as Gerling, "with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document

///

on which it relied." *Pension Benefit Guarantee Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993).

Ms. Horak's declaration confirmed that the attached policies were true and correct copies of the policies that Homestead has in its possession. Gerling, however, claims to challenge the authenticity of the policies, *despite the fact that Gerling quoted portions of the very Excess/Umbrella Liability Policy form Homestead attached and cited to in its Motion to Dismiss*. Homestead notes that while Gerling purports to challenge the policies' authenticity, Gerling does not actually challenge Ms. Horak's declaration. Gerling does not assert that Ms. Horak is lying or even that she is mistaken in her statement that the attached copies of Homestead's policies are true and correct. Homestead hereby reaffirms that those policies are "authentic." (See Second Decl. of Joanne Horak attached as Exhibit A.)

While the applicable holding of *Branch v. Tunnel* does require that there be no dispute as to the authenticity of the policies, Gerling's objections are patently unreasonable. First, Gerling's Complaint quotes from the same Excess/Umbrella Liability Policy form to which Homestead cites. If Gerling's questions as to the authenticity of that policy form were serious, surely Gerling would not have referred to it and quoted from it in its Complaint. At the least, it is peculiar that Gerling is willing to file suit demanding at least $75,000.00 on the basis of insurance policies from which Gerling itself quotes and yet also claims that those very contracts are possibly not "authentic." Gerling's questions as to the Homestead policies' authenticity likely springs from the same well that prompted Gerling to omit references to relevant provisions concerning Homestead's defense obligations: Gerling understands that the omitted provisions fatally undermine its claims.

The unreasonableness of Gerling's challenge to the policies' authenticity is also reflected in the arguments it makes in its challenge. Gerling asserts that expensive and time consuming discovery is necessary to confirm the authenticity of the policies including investigations into "Defendants' underwriting of the policies, the insured's interpretations of the policies, and whether the terms of the policies have been modified by later agreements." (Opp. at 5, 13-14.) First, Homestead's underwriting of the policies and the insured's

interpretation of the policies is utterly irrelevant as to the *authenticity* of the documents attached to Ms. Horak's declaration. Moreover, Homestead's underwriting and the insured's subjective interpretation of the policies does not even address how those policies are to be interpreted. Under California contract law, "[t]o ascertain the parties' intent, the court must look first to the language of the policy itself." *USF Ins. Co. v. Clarendon America Ins. Co.*, 452 F.Supp.2d 972, 986 (2006); *A.B.S. Clothing Collection, Inc. v. Home Ins. Co.*, 34 Cal.App.4th 1470, 1478, 41 Cal.Rptr.2d 166 (1995); *La Jolla Beach & Tennis Club*, 9 Cal.4th 27, 37, 36 Cal.Rptr.2d 100 (1994). Gerling makes no argument that any provision in the Homestead policies is ambiguous and, even if it had *and* ambiguity was found, "policy terms must be construed to give effect to the *objectively reasonable expectations of the insured*." *USF*, 452 F.Supp.2d at 986 (emphasis added); *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691; *A.B.S.*, 34 Cal.App.4th at 1478, 41 Cal.Rptr.2d 166. An insured's subjective interpretation of the policy nor the insurer's underwriting practices are not the arbiter of coverage.

More importantly, Gerling claims Homestead owed Jonce a duty to defend, but Gerling failed to cite any policy language in support of its claim. As noted in Homestead's Motion to Dismiss, to survive a 12(b)(6) motion for failure to state a claim, Gerling must allege "enough facts to state a claim to relief that is plausible on its face", meaning that when all the allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff, there must be sufficient facts pled to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, — U.S. ----, ----, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007). The provision cited by Gerling clearly does not speak to any duty to defend on Homestead's part; instead, it merely states that Homestead will "pay those sums that the Insured must legally pay as damages because of . . . property damage . . . caused by an occurrence which occurs during the policy period of this policy in excess of the sums payable as damages in the underlying insurance or would have been payable but for the exhaustion of the applicable limit of insurance." As that does not speak to Homestead's duty

///

1  to defend, Gerling's Complaint on its face lacks enough facts to state a claim for relief on the
2  basis of Homestead's purported duty to defend.
3     On one hand, Gerling fails to plead facts in support of its claim that Homestead owed
4  Jonce a duty to defend. On the other, Gerling refuses to accept the authenticity of a policy
5  form *it quotes from regarding Homestead's coverage duties*. Gerling cannot have it both
6  ways: it must either accept the relevant policy language concerning Homestead's defense
7  obligations or it must withdraw its claim that Homestead had a duty to defend. Until Gerling
8  quotes the relevant policy language regarding Homestead's defense obligations, Gerling
9  cannot allege sufficient facts to state a claim to relief that is plausible on its face. Thus, as
10 Gerling has failed to raise a right to relief above the speculative level, its Complaint must be
11 dismissed.

12 **III.   UNDER CALIFORNIA LAW, EXCESS POLICIES ARE PRESUMED
13         TO REQUIRE HORIZONTAL EXHAUSTION OF ALL UNDERLYING
14         POLICIES**

15    California case law is clear: "[A]n excess or secondary policy does not cover a loss,
16 nor does any duty to defend the insured arise, until *all* of the primary insurance has been
17 exhausted. . . . [¶] The California general rule that *all* primary insurance must be exhausted
18 before a secondary insurer will have exposure favors and results in what is called 'horizontal
19 exhaustion.'" *Community Redevelopment Agency v. Aetna Cas. & Surety Co.*, 50 Cal.App.4th
20 329, 339, 57 Cal.Rptr.2d 755 (1996) (original in italics) (citations omitted). In certain
21 situations, the language in an excess policy *may* provide that it shares with primary policies
22 upon exhaustion of a specific primary policy; however, the language of the excess policy must
23 be "sufficiently clear to overcome the usual presumption that all primary coverage must be
24 exhausted." *Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949,
25 959, 1 Cal.Rptr.3d 272 (2004). "Absent a provision in the excess policy *specifically*
26 *describing* and *limiting* the underlying insurance, a horizontal exhaustion rule should be
27 applied in continuing loss cases because it is the most consistent with the principles
28 enunciated in *Montrose* [i.e., that a continuing or progressively deteriorating condition which

causes damage throughout multiple policy periods will be covered by all policies in effect during those periods]." *Community Redevelopment*, 50 Cal.App.4th at 340.

The excess policy at issue in *Community Redevelopment* was specifically written over one primary policy and stated that "In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of payment of damages . . . this policy . . . shall . . . in the event of exhaustion continue in force as underlying insurance subject to all the terms and conditions of such underlying insurances." *Id.* at 335. Nonetheless, other sections of the policy, including the "Defense" and "Other Insurance" provisions, indicated that the policy was to be excess over all available primary insurance. *Id.* at 341. Thus, if there are conflicting provisions in the excess policy, then the language cannot be "sufficiently clear" to overcome the presumption that the horizontal rule should apply.

Again and again, Gerling's Opposition claims the only relevant section of the policy is the "insuring agreement" which Gerling quotes in part in its Complaint. This displays a fundamental misunderstanding of the *Community Redevelopment* opinion. The *Community Redevelopment* court did not simply look at any one provision in the excess policy – not even that excess policy's insuring agreement – to determine whether the horizontal exhaustion rule applied. Instead, the court looked at the policy as whole, reading each provision in the context of the entire policy. *Id.* at 338. Whether or not any one provision in the Homestead policy suggests that the horizontal exhaustion rule should not apply, when the policy is read as a whole, it is clear that the policy is to be excess over all policies of primary insurance.

Gerling makes much of the alleged similarities between the Homestead policies and the excess policy at issue in *Travelers Cas. & Surety Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949, 19 Cal.Rptr.3d 272 (2004). In *Travelers*, the court found that the excess carrier had a duty to defend the insured contractor after the exhaustion of the contractor's primary insurance regardless of the existence or exhaustion of subcontractors' policies covering the contractor. *Id.* at 956. A simple comparison of the excess policy at issue in

///

*Travelers* and Homestead's excess policies show that the reasoning behind *Travelers* actually supports Homestead's position, not Gerling's.

The *Travelers*' excess policy's insuring agreement contained two coverages: Coverage A and Coverage B. Coverage A essentially provided "following form" excess coverage, while Coverage B provided umbrella coverage.[1] Coverage A stated that the excess insurer agreed to "pay on behalf of the **insured**, that part of the **loss** covered by this insurance in excess of the total applicable limits of **underlying insurance**." *Id.* at 952. The phrase "underlying insurance" was defined in the policy as "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy." *Id.* Had the *Travelers* court merely examined that single coverage provision and that policy's definition of "underlying insurance", as Gerling would have this Court do with Homestead's policies, then perhaps Homestead would have coverage duties under California law prior to the exhaustion of the Gerling policy. The *Travelers* court, however, only concluded that the horizontal rule did not apply after examining the excess policy as a whole. The *Travelers* court examined the excess policy's "Defense and Supplementary Payments" section, which stated:

> We have the right and the duty to assume control of the investigation, settlement or defense of any claim or **suit** against the insured for damages covered by this policy: 1. under Coverage A, when the applicable limit of **underlying insurance** had been exhausted by payment of claims; or 2. under Coverage B, when damages are sought for **bodily injury, property damage, personal injury** or **advertising injury** to which no **underlying insurance** or **other insurance** applies.

*Id.* at 274 - 275 (bold in original). The court contrasted the duty to defend under the two coverages:

> While the duty to defend claims covered under Coverage A is expressly triggered "when the applicable limit of **underlying insurance** has been exhausted by payment of claims," the duty to defend under Coverage B arises when neither underlying insurance nor "**other insurance** applies." The unmistakable implication of this contrast is that the duty to defend under

---

[1] The terms "following form" and "umbrella" excess policies describe the two principal types of excess coverage sold by insurers: "umbrella" coverage typically provides coverage for losses which there may be no underlying insurance, while "following form" coverage incorporates the terms and conditions of a specific underlying insurance policy. *See Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150 Cal.App.4th 984, 989 n. 7, 58 Cal.Rptr.3d 807, 811 n. 7 (2007).

Coverage B depends on the absence of "other insurance," while the duty to defend under Coverage A does not.

*Id.* at 956 (bold in original).

Under the Homestead policies, the duty to defend is also predicated on the absence of any other insurance:

### DEFENSE SETTLEMENTS

\* \* \*

1. **We** will have no duty to defend any **claim** or **suit** that any other insurer has a duty to defend.

As with the Coverage B of the *Travelers* excess policy, the Homestead policy requires that all available primary insurance be exhausted. Thus, while the *Travelers* excess policy's provisions on defense unambiguously showed that the horizontal exhaustion rule did not apply to that policy's Coverage A, the Homestead policies' DEFENSE SETTLEMENTS section clearly state that Homestead's coverage duties require horizontal exhaustion.

This conclusion is further strengthened by examination of the "other insurance" provisions found in the excess policies at issue here and in *Community Redevelopment*. The "other insurance" provision in the excess policy at issue in *Community Redevelopment* supported the application of the horizontal exhaustion, which stated:

> Other Insurance: The insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance available to the Insured, whether or not described in the Schedule of Underlying Insurance.

*Community Redevelopment*, 50 Cal.App.4th at 335. Discussing this language, along with the section on defense obligations, the *Community Redevelopment* court noted that "[t]his policy language, particularly when read in the context of the entire policy, is certainly unambiguous." *Id.* at 338.

Similarly, Homestead's "other insurance" provision states:

> The insurance afforded by this policy shall be excess insurance over all **underlying insurance** whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A – Schedule of Underlying Insurance Policies (except other

insurance purchased specifically to apply in excess of this insurance) which is available to the **Insured**, covering a loss also covered by this policy.

Contrary to what Gerling argues, Homestead's position is not that its policies' "Other Insurance" provision *on its own* determines when coverage attaches. Instead, the Homestead policies' "Other Insurance" provision is another clear and unambiguous indicator that the Homestead policies are to be excess over all primary insurance, not merely over the specific primary insurance policy listed in the policies' "Schedule A – Schedule of Underlying Insurance Policies" endorsements. At a minimum, the Homestead policies are not "sufficiently clear" so as to abandon California's general rule of horizontal exhaustion.

## IV. UNDER THE TERMS OF ITS EXCESS POLICY, HOMESTEAD HAD NO DUTY TO DEFEND PRIOR TO THE EXHAUSTION OF ALL PRIMARY POLICIES

Even without the application of the horizontal exhaustion rule, Homestead did not have a duty to defend Jonce. Gerling's claim that Homestead's DEFENSE SETTLEMENTS provision is a "generic other insurance" provision is nonsense. Homestead's DEFENSE SETTLEMENTS provision defines the scope and limits of Homestead's duty to defend: without it, there is no duty to defend under the Homestead policies. Coverage A of the Homestead policies explicitly states that Homestead "will pay those sums that the **Insured** must legally pay as **damages** because of . . . **property damage**" and that Homestead will "have no other obligation or liability to pay sums or perform acts or services except as shown under DEFENSE SETTLEMENTS." The first subpart to the Homestead policies' DEFENSE SETTLEMENTS section frames Homestead's defense obligations in the negative: "**We** will have no duty to defend any claim or suit that any other insurer has a duty to defend." Gerling's claim that Homestead has hidden this in an "escape clause" is without merit. The *first page* of the Homestead Excess/Umbrella Liability Policy form clearly and unambiguously limits its defense obligations to situations where no other insurer has a duty to defend.

///

Gerling's reliance on *USF Ins. Co. v. Clarendon American Ins. Co.* 453 F.Supp.2d 972 (2006) is ill-founded. *USF* involved a dispute between two primary insurers.

> [USF] argues that *Century Surety Co. v. United Pacific Ins. Co.*, 109 Cal.App.4th 1246, 135 Cal.Rptr.2d 879 (2003), and *Travelers Casualty* (sic) *Surety Co. v. Century Surety Co.*, 118 Cal.App.4th 1156, 13 Cal.Rptr.3d 526 (2004), clearly hold that where, as here, *two or more primary CGL policies* contain identical "excess insurance" language, the provisions cancel one another our, and all insurers are required to contribute to defense of the insured.

See *USF* 453 F.Supp.2d at 1000 (emphasis added). Explaining the *Century Surety* decision, the *USF* court stated, "Justice Croskey concluded that Century's 'excess insurance' provision was contrary to public policy, since it permitted a *primary* insurer 'to make a seemingly ironclad guarantee of coverage, only to withdraw that coverage (and thus escape liability) in the presence of other insurance." *Id.* (emphasis in original) (citations omitted). The *USF* court rejected Clarendon's "excess defense" clause, stating that it was "a type of 'escape clause' – albeit a narrower one than an excess insurance clause – since it allow[ed] a **primary insurer** 'to make a seemingly ironclad guarantee' that it will defend the insured, 'only to withdraw that [guarantee] . . . in the presence of other insurance." *Id.* at 1001 (quoting *Century Surety Co.*, 109 Cal.App.4th at 1256).

The instant dispute, of course, is not between two primary insurers. Gerling issued a primary policy to Jonce. Homestead issued an **excess** policy. Applying the reasoning of *USF*, *Century Surety* and *Travelers Casualty & Surety* regarding "excess insurance" and "excess defense" provisions to a Homestead's true excess policy, as Gerling would have this court do, would lead to the absurdity of voiding provisions of an excess insurance policy because the excess policy contain language making it excess. Indeed, it begs the question of what "excess insurance" or "excess defense" provisions would be appropriate or enforceable in an excess insurance policy.

Perhaps clearest evidence that Gerling's argument is without merit is the fact that Justice Croskey, who wrote the *Century Surety* opinion also wrote the opinion in *Community Redevelopment*. In *Community Redevelopment*, excess insurer Scottsdale's excess policy stated:

> The company shall have the right and duty to defend any suit against the Insured seeking damages which are payable under the above insurer Agreement, even if any of the allegations of the suit are groundless, false, or fraudulent, *provided, however, that no other insurance affording a defense or indemnity against such a suit is available to the Insured.*

*Community Redevelopment*, 50 Cal.App.4th at 335 (emphasis in original). Surely if a so-called "excess insurance" provision in an actual excess policy was void as a matter of public policy under California law, Justice Croskey, author of the *Century Surety* opinion, would have voided the Scottsdale provision. He did not. The Scottsdale provision was valid and enforceable, as are the provisions of Homestead's DEFENSE OBLIGATIONS section.

Gerling's counter-argument that "as Defendant's (sic) policies required them to drop down upon the exhaustion of the directly underlying insurance, once those policies exhausted, Defendants' policies became primary policies on the same level as Gerling's policy" is a red-herring. First, that argument ignores the simple fact that Homestead's DEFENSE SETTLEMENTS provision clearly indicate that the Homestead policies are to be excess of all primary insurance. Therefore, horizontal exhaustion applies. Second, even if Homestead was to "drop down", its policies would not thereby lose all characteristics of an excess policy. "Reasonable insureds don't expect to receive a defense from a typically much cheaper excess policy unless all the expensive primary insurance they bought has been exhausted." *Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150 Cal.App.4th 984, 989, 58 Cal.Rptr.3d 807, 811. Homestead is not aware of any binding case law holding that its policy language limiting its defense obligations becomes void upon the exhaustion of any or all of the insured's primary policies and Gerling does not cite to any. Gerling's argument is without merit and may be rejected by this Court.

V.  **GERLING CANNOT RECOVER IN EQUITY UNDER THE FACTS ALLEGED IN ITS COMPLAINT**

Contrary to Gerling's assertions, there is no absolute rule requiring an excess carrier share the burden of defending claims that exceed the limits of the underlying coverage. Gerling claims that equity requires Homestead reimburse Gerling for a portion of Jonce's defense costs in the *Emery Bay* Action. Gerling relies on *Signal Co. v. Harbor Ins. Co.* (1980)

27 Cal.3d 359, 165 Cal.Rptr. 799, and *Aetna Cas. & Surety Co. v. Certain Underwriters* (1976) 56 Cal.App.3d 791, 129 Cal.Rptr. 47.  Both cases are factually distinguishable from the instant matter and neither supports Gerling's claims.

*Aetna* involved multiple claims against the parties' mutual insured, Union Oil Co., arising as a result of the infamous 1969 Santa Barbara Channel oil well blow-out.  Aetna, the primary insurer, settled and paid out claims totaling $50,000, its policy limits.  It sought reimbursement of defense costs *incurred after that time*.  In the absence of language in the excess insurance policies which expressly and clearly excluded a duty to defend – such as the language found in Homestead's policy – the court found that Aetna had a right to reimbursement from the excess carriers for costs of defense *incurred after payment of policy limits*.

*Signal* involved multiple claims arising out of the 1963 collapse of the Baldwin Hills dam.  Pacific Indemnity was the primary insurer, insuring Signal Oil with a policy limit of $25,000.  Harbor Insurance provided excess coverage.  Defense of claims against Signal was undertaken by Pacific Indemnity which advised Harbor that claims against Signal could be settled for $35,000.  Harbor agreed to contribute $10,000 in fulfillment of its excess coverage liability, and the matter was settled.  During settlement negotiations, Pacific Indemnity had unsuccessfully sought contribution toward costs of defense from Harbor and pursued the matter via litigation after settlement of the Signal claims.

The Supreme Court held that Pacific Indemnity had a primary duty to defend until settlement.  *Signal*, 27 Cal.3d at p. 365.  Pacific Indemnity contended that once the excess insurer has been given notice that claims against the insured might invade the excess coverage, and the amount of potential exposure is reasonably ascertainable, the excess insurer should immediately be obligated to participate in the defense.  The Supreme Court rejected Pacific Indemnity's position saying it would make the excess carrier a coinsurer with the primary carrier, and that it would require the excess carrier to contribute to defense costs even though its liability might never attach.  *Id.* at 359.

///

Contrary to Gerling's assertion in its Opposition that intensive factual discovery is required, this matter may be disposed of simply by assuming the truth of the facts asserted in Gerling's Complaint clearly shows that this matter may be disposed now. Unlike in *Aetna*, Gerling has not alleged that it inequitably incurred defense costs after the exhaustion of its policy. Gerling has simply claimed that equity requires Homestead reimburse its defense costs on the basis that the settlement exhausted the limits of its policy. *Signal* also demands the rejection of this argument. First, as in *Signal*, the primary carrier, Gerling, made its demands upon at a time when the excess carriers' liability had not attached and when Gerlin's obligations under its policies had not been satisfied. Second, requiring Homestead to contribute to Gerling defense costs would, in direct conflict with the DEFENSE SETTLEMENTS provision of the Homestead policies, make Homestead a coinsurer with Gerling. *See also Chubb/Pacific Indem. Group v. Ins. Co. of North America* (1987) 188 Cal.App.3d 691, 233 Cal.Rptr. 539.

## VI. THERE IS NO INDEMNIFICATION DUTY IN ABSENCE OF HORIZONTAL EXHAUSTION

Homestead maintains that it neither had a duty to defend nor a duty to indemnify Jonce based the lack of horizontal exhaustion and, therefore, is not obligated to reimburse Gerling for any costs Gerling incurred prior to the exhaustion of Gerling's primary policy. Gerling asserts that even if Homestead did not have a duty to defend, it still had a duty to indemnify, citing *Powerine Oil Co., Inc. v. Sup. Ct. (Powerine II)*, 37 Cal.4th 377, 33 Cal.Rptr.3d 562 and *Padilla*, 150 Cal.App.4th. *Powerine II* is simply inapposite, as it explicitly did not address coverage duties of excess insurers prior to the exhaustion of primary policies:

> Central National [Insurance Company] argued in the Court of Appeal that these excess policies were intended to operate primarily as excess insurance policies . . . If that were the case, then the circumstance that the underlying primary CGL policies afforded no indemnity coverage by virtue of our holding in *Powerine I* would end the inquiry, as the limits of those underlying policies were not exhausted for purposes of triggering "excess" coverage. [¶] But the policies here in question are *not* merely intended to operate as excess insurance. . . . [T]hese policies also provide umbrella coverage[.]

///

1  *Id.* at 398. Although the Homestead policies also provided umbrella coverage to Jonce, Gerling has not alleged that Homestead had any such obligations to Jonce. Thus, *Powerine II* is of limited applicability in the instant dispute.

Moreover, while Gerling's Opposition quoted a portion of the *Powerine II* opinion – "it would be manifestly unfair to penalize the insured for paying a premium to obtain added protection by concluding that the defense coverage endorsements purchased for the seven policies defeat indemnity coverage clear under the literal policy language" – Gerling fails to explain the quote properly. (See Opp. at page 21, line 24 - page 22, line 1.) Gerling claims that "Turning to the excess policies, however, the Court refused to hold that there was no duty to indemnify simply because some of the policies had a duty to defend and others did not." (See Opp. at page 21, lines 22 - 23.) In actuality, the Court rejected the excess/umbrella insurer's argument that defense coverage endorsements "provide[d] a duty to defend found in the standard CGL policy, and hence, *as regards those seven policies*, the *Foster-Gardner* syllogism announced in *Powerine I*" defeated coverage. *Id.* at 403 (emphasis added).. Thus, the court did not reject an argument that the insurer did not have a duty to indemnify because seven of nine policies had no defense obligations. Instead, the court (1) rejected the insurer's argument that *Foster-Gardner* applied at all to the seven defense coverage endorsements; (2) noted that the express terms of the defense coverage endorsements provided that those endorsements would not alter the other terms of the policy; and (3) further noted that it would be unfair to find that endorsements *purchased at extra cost to provide additional coverage* could be used to limit another coverage. Gerling's attempt to confuse matters should not be accepted.

As to Gerling's claim that *Padilla* might allow the invasion of excess policies in absence of horizontal exhaustion, let us return to *Community Redevelopment*: "[A]n excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise, until *all* of the primary insurance has been exhausted. . . . [¶] The California general rule that *all* primary insurance must be exhausted before a secondary insurer will have exposure favors and results in what is called 'horizontal exhaustion.'" *Community Redevelopment*, 50

Cal.App.4th at 339 (1996) (italics in original). Although *Community Redevelopment* dealt with the duty to defend, it did not limit its scope to defense obligations. Instead, the opinion boldly stated that excess insurance *"does not cover a loss"* prior to horizontal exhaustion. Had the decision been intended to address solely the duty to defend, the opinion would not have included that phrase. Moreover, the logical resolution to this issue given California's adherence to the horizontal exhaustion rule is that it must be applied to indemnification as well as defense. If excess insurers were required to indemnify primary insurers based on some method of distribution (pro-rata, time on the risk, etc.) in the absence of horizontal exhaustion, it would eliminate the purpose of the horizontal exhaustion rule as applied to defense. Excess insurers would be forced to participate in settlement negotiations even if those excess insurers did not have defense counsel assigned to the matter. Or, in all likelihood, excess insurers would be compelled to appoint defense counsel, not to protect the interests of the insured, who would already have defense counsel provided by the primary insurer(s), but to protect their own interests against primary carriers. The reason, of course, is that those primary carriers would have little incentive to keep settlement costs low; after all, it wouldn't be their money they would be spending. Thus, as neither California case law nor logic support Gerling's position, Gerling's claim that Homestead's duty to indemnity may have been triggered even if its duty to defend was not triggered fails.

### VII. CONCLUSION

Homestead's Motion to Dismiss should be granted.

CHARLSTON, REVICH & WOLLITZ LLP

By: /s/ Howard Wollitz
_____
Howard Wollitz
Attorneys for Defendant,
Homestead Insurance Company