1  PETER J. WHALEN (SBN 130041)
   ROBERT M. FINEMAN (SBN 188211)
2  TERRANCE J. EVANS (SBN 227671)
   **DUANE MORRIS** LLP
3  One Market, Spear Tower, Suite 2000
   San Francisco, CA 94105-1104
4  Telephone: 415.957.3000
   Facsimile: 415.957.3001
5  E-Mail:   pjwhalen@duanemorris.com
             rmfineman@duanemorris.com
6            tjevans@duanemorris.com

7  Attorneys for Defendant,
   GREAT AMERICAN E&S INSURANCE COMPANY,
8  AN OHIO CORPORATION, FKA AGRICULTURAL
   EXCESS AND SURPLUS INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HDI-GERLING AMERICA INSURANCE COMPANY, a New York Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOMESTEAD INSURANCE COMPANY, an Pennsylvania Corporation; GREAT AMERICAN E&S INSURANCE COMPANY, an Ohio Corporation, formerly known as AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | Case No.: CV-08-1716<br><br>**GREAT AMERICAN E&S INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        July 9, 2008<br>Time:       9:00 a.m.<br>Courtroom: 3<br><br>Judge: Hon. Phyllis J. Hamilton<br>Complaint Filed:  March 31, 2008 |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................1

    A. Great American's 12(b)(6) Motion Is Procedurally Proper Because the Great American Excess Insurance Policies Are Incorporated by Reference into Gerling's Complaint. ....................................................................................1

    B. California Law Recognizes the Fundamental Difference Between Primary and Excess Insurance Policies and Applies a General Presumption of Horizontal Exhaustion. ...........................................................................................3

    C. The Great American Policies' Defense Provision Plainly States That Great American Has No Duty to Defend Until All Primary Policies Have Been Exhausted by the Payment of Claims. .......................................................................6

        1. The Great American Policies' Defense Provision Requires Horizontal Exhaustion Before There Is a Duty to Defend. ...........................6

        2. Gerling's Public Policy and Equity Arguments Are Invalid and Do Not Trump Great American's Policy Language. ................................................8

    D. The Great American Policies' "Insuring Agreement" and "Other Insurance" Condition Plainly Require Application of the Horizontal Exhaustion Rule for Indemnity ...........................................................................................................10

    E. Gerling's Argument That "Other Insurance" Conditions Are only Relevant in Disputes Between Insurers on the Same Level Is Invalid and Mischaracterizes California Case Law. ....................................................................13

III. CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*20th Century Insurance Company v. Liberty Mutual,*
   965 F.2d. 747 (9th Cir. 1992) .................................................................................. 5, 13

*Aetna Casualty & Surety Co. v. Certain Underwriters at Lloyd's of London,*
   56 Cal.App.3d 791 (1976) ............................................................................................ 9

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) .......................................................................................... 2

*Carmel Development Company v. RLI Insurance Company,*
   126 Cal.App.4th 502 (2005) ..................................................................................... 9-10

*Certain Underwriters at Lloyds of London v. Sup.Ct. (Powerine Oil Co., Inc.)*
   24 Cal.4th 945 (2001) ................................................................................................. 11

*Community Redevelopment Agency v. Aetna Casualty & Surety Co.,*
   50 Cal.App.4th 329 (1996) ................................................................................... Passim

*Fireman's Fund Insurance Company v. Maryland Casualty Company,*
   65 Cal. App. 4th 1279 (1998) ..................................................................................... 10

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,*
   18 Cal. 4th 847 (1998) ................................................................................................ 12

*Groten v. California,*
   251 F.3d 844 (9th Cir. 2001) ........................................................................................ 1

*Hartford Casualty Ins. Co. v. Travelers Indemnity Co.,*
   110 Cal.App.4th 710 (2003) ......................................................................................... 9

*London Market Insurers v. Superior Court ("LMI"),*
   146 Cal.App.4th 648 (2007) ................................................................................... 12-13

*Mission Ins. Co. v. Hartford Ins. Co.,*
   155 Cal.App.3d 1199 (1984) ........................................................................................ 5

*Padilla Construction Co., Inc. v. Transportation Ins. Co.,*
   150 Cal.App.4th 984 (2007) ................................................................................. Passim

*Parrino v. FHP, Inc.*
   146 F.3d 699 (9th Cir. 1998) ........................................................................................ 2

*Reliance National Indemnity Company v. General Star Indemnity Company,*
   72 Cal.App.4th 1063 (1999) ................................................................................... 5-6, 14

*Signal Companies v. Harbor Insurance Company,*
   27 Cal.3d 359 (1985) ................................................................................. 9, 13

*Stonewall v. City of Palos Verdes Estates,*
   46 Cal.App.4th 1810 (1996) .................................................................................. 4

*Travelers Casualty and Surety Co. v. Transcontinental Insurance Co.,*
   122 Cal.App.4th 949 (2004) ........................................................................ Passim

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .................................................................................. 2

*USF Insurance Co. v. Clarendon America Insurance Company,*
   452 F.Supp.2d 972 (C.D.Cal. 2006) .................................................................. 8-9

*Van Buskirk v. CNN,*
   284 F.3d 977 (9th Cir. 2002) .................................................................................. 2

*Venture Assoc. Corp. v. Zenith Data Systems Corp.,*
   987 F.2d 429 (7th Cir. 1993) .................................................................................. 2

*Waller v. Truck Ins. Exchange, Inc.,*
   11 Cal.4th 1 (1995) ................................................................................................ 2

*Weisbuch v. County of Los Angeles,*
   119 F.3d 778 (9th Cir. 1997) .................................................................................. 3

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) .................................................... 1, 2, 3, 15

GREAT AMERICAN E&S INSURANCE COMPANY'S REPLY                              CASE NO. CV 08-1716 PJH
DM1\1351756.1

## I. INTRODUCTION

In its Complaint and Opposition to Great American E&S Insurance Company's ("Great American") 12(b)(6) motion, HDI-Gerling American Insurance Company ("Gerling") admits that it had an obligation to fully defend and indemnify the insured in the two underlying actions at issue until its primary policy limits were exhausted. The narrow question presented by Gerling's Complaint is whether Great American's excess policies were obligated to contribute to the defense and indemnity of the insured before Gerling's primary policy was exhausted. Gerling agrees that the Court must look at the Great American excess policy language to answer this question.

An examination of the Great American policy language leads to the conclusion that Great American is not obligated to defend or indemnify the insured until all primary insurance is exhausted, including the Gerling primary policy. This policy language and result is consistent with California's horizontal exhaustion rule, which is described in *Community Redevelopment Agency v. Aetna Casualty & Surety Co.*, 50 Cal.App.4th 329 (1996) and supported by the well-established distinctions between primary and excess insurers recognized by California courts. Gerling's Opposition does not raise any valid reasons why the Great American policy language and established California law should not be applied in this case.

Accordingly, Great American respectfully requests that Gerling's claims against Great American be dismissed pursuant to Rule 12(b)(6) without leave to amend.

## II. ARGUMENT

### A. Great American's 12(b)(6) Motion Is Procedurally Proper Because the Great American Excess Insurance Policies Are Incorporated by Reference into Gerling's Complaint.

A Rule 12(b)(6) dismissal is proper when an absolute defense or bar to recovery is apparent from the face of the complaint. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Here, a dismissal is proper because Gerling's Opposition brief affirms that the only issue presented by Gerling's Complaint is whether Great American's excess insurance policies (and Homestead's excess policies) had a duty to contribute to the defense and indemnity of the insured in the underlying actions before Gerling's primary policy was exhausted. (*See* Gerling's Opposition ("Op.") at pg. 4:8-12)  This issue can be determined solely by an examination of the

1

allegations in the Complaint, the Great American excess insurance policies, which are incorporated by reference into the Complaint, and settled California law.

Gerling concedes that the issue of whether the Great American excess policies must indemnify and defend the insured before Gerling's primary policy is exhausted "is controlled by the actual language of the [Great American] policy."[1] (See Op. at pg. 1:18-22)  Gerling cannot avoid a 12(b)(6) motion by quoting only selected language from the insurance policies it relies on to make its claim against Great American.  While it is true that normally the Court cannot rely on documents outside the complaint when ruling on a 12(b)(6) motion, the Ninth Circuit has carved out an exception to this rule in cases where the document forms the basis of the plaintiff's claim, but the plaintiff fails to attach the document to its complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") *citing Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

As explained by the Court in *Ritchie*, "the defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." 342 F.3d at 908. Further, the Ninth Circuit specifically held that the doctrine of incorporation by reference could be used to incorporate a coverage plan (insurance policy) in a case in which the plaintiff's claim about insurance coverage was based on the contents of a coverage plan (insurance policy) but the coverage plan was not attached. *See Parrino v. FHP, Inc.* 146 F.3d 699, 705-06 (9th Cir. 1998). Thus, Gerling cannot dodge Great American's 12(b)(6) motion by arguing that the Great American policies are not properly before the Court.

///

---

[1] Under California law, interpretation of an insurance policy is a legal matter for the court. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995)

2

In addition, Gerling's argument that it does not "know whether the policies attached to Defendants' motions are, in fact, authentic versions" is unfounded. The policies submitted with Great American's 12(b)(6) motion are authenticated by the Declaration of Frank Curci and are properly before the Court. Gerling does not assert that Great American misquoted any of the policy language or that terms contained in the certified copies of the policies submitted with Great American's 12(b)(6) motion are inaccurate or contain provisions not actually contained in the policies. Gerling does not suggest that there is any other Great American policy language that needs to be considered. In fact, Gerling relies upon and cites portions of these same policies in its Opposition brief and its Complaint.

For these reasons, Gerling's claim that there needs to be discovery before the issue presented by its Complaint can be decided fails. *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, fn.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.") It is plain from the face of Gerling's Complaint and the Great American excess insurance policies, which are incorporated by reference, that Great American was not obligated to defend or indemnify the insured until all of the insured's primary insurance, including the Gerling policy, was exhausted. Thus, Great American's motion to dismiss pursuant to Rule 12(b)(6) is proper and should be granted.

**B.  California Law Recognizes the Fundamental Difference Between Primary and Excess Insurance Policies and Applies a General Presumption of Horizontal Exhaustion.**

Contrary to Gerling's assertions, the California Court of Appeal in *Community Redevelopment v. Aetna Cas. And Sur. Com., supra,* 50 Cal.App.4th 329, announced the "general rule" and "presumption" that "*all* primary insurance must be exhausted before a secondary insurer will have exposure …" *Id.* at 339-340, emphasis in original. The *Community Redevelopment* court noted that this "general rule" applies in continuing-loss cases, such as this action. Therefore, all primary policies must exhaust prior to the application of excess policies "which were effective in entirely different time periods and which may not have expressly described such primary policies as underlying insurance." *Id.* at 340. As noted by the California Court of Appeal in

3

*Stonewall v. City of Palos Verdes Estates*, 46 Cal.App.4th 1810 (1996), "horizontal exhaustion" is consistent with California's "continuous trigger" approach:

> . . . the 'horizontal' approach seems far more consistent with *Montrose*'s *continuous* trigger approach. That is, if 'occurrences' are continuously occurring throughout a period of time, all of the primary policies in force during that period of time cover these occurrences, and all of them are primary to each of the excess policies; *and if the limits of liability of each of these primary policies is adequate in the aggregate to cover the liability of the insured, there is no 'excess' loss for the excess policies to cover.*

*Stonewall*, 46 Cal.App.4th at 1853 (emphasis added).

This rule of horizontal exhaustion was recently affirmed in *Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150 Cal.App.4th 984 (2007). There, the California Court of Appeal relied upon all of the excess policy language at issue, including an "other insurance" condition, similar to the "Other Insurance" condition contained in the Great American Policies, and confirmed the application of the horizontal exhaustion rule in a continuing loss case arising from a construction defect action. The Court said, "the rule of horizontal exhaustion applies to cases of alleged continuing property damage – as often happens when the insured is sued for construction defects." *Id.* at 987.

Both *Community Redevelopment* and *Padilla* involved, like this case, a continuing loss arising from a construction defect action. In both cases, the California Court of Appeal examined excess policy language very similar to the language contained in the Great American excess policies and found that the horizontal exhaustion rule required all primary insurance to be exhausted before an excess insurer must "drop down" and provide coverage.

Gerling attempts to negate the application of the "horizontal exhaustion" rule in this case by arguing that "horizontal exhaustion" is not an "absolute rule." This argument is based on a footnote in *Community Redevelopment*, which indicates that theoretically a policy could be specifically drafted to overcome the horizontal exhaustion presumption. *Community Redevelopment, supra*, 50 Cal.App.4th at 340, fn.6. *Community Redevelopment*, however, by no means suggests this is a usual or automatic outcome. This narrow exception only applies where the excess policy *as a whole* provides that it is excess only to the specific underlying policy and nothing else. In fact, there are no California cases that have held that an excess insurer with policy

4

language like that contained in the Great American excess policies must drop down and provide a defense or indemnity in a continuing loss case when all primary insurance has not been exhausted. Here, the Great American policies do not specifically describe and limit the underlying insurance; to the contrary, they contain language like that in *Community Redevelopment* and *Padilla*, which makes the policies excess of all other applicable insurance.

Gerling also relies on *20th Century Insurance Company v. Liberty Mutual*, 965 F.2d. 747 (9th Cir. 1992), a case decided several years before *Community Redevelopment,* to argue that "horizontal exhaustion" is not an absolute rule. Notably, the *20th Century* case dealt only with a dispute between a car rental agency's insurer and the driver's auto insurer, concerning the issue of indemnity, not defense, and arose from a single auto accident, not a continuing loss. In *20th Century*, the Court held that the primary and excess liability insurance policies issued to Alamo Rent-a-Car must respond to the loss before the driver's own personal auto policy. The Court based its decision on the fact that Alamo's excess insurance policy specifically referenced the underlying primary policy. *20th Century* is not relevant to the analysis here because it involved different language, and it did not concern the issue of horizontal exhaustion, but instead focused on the priority between insurance policies issued to two different insureds.

In addition, Gerling relies on a host of cases that deal with allocation between multiple primary policies (not primary versus excess carriers as in this action) or are based on policy language inapposite and inconsistent with the Great American policy language. Gerling's argument that the Great American excess policy should be treated as a primary policy flies in the face of the well-recognized difference between primary and excess policies. "[C]ourts will give heed to 'primary' and 'excess' provisions of insurance policies" (*Mission Ins. Co. v. Hartford Ins. Co.,* 155 Cal.App.3d 1199, 1208 (1984)), especially "where the dispute is between two or more insurance carriers and the rights of policyholders or their accident victims will be unaffected by its application." *Id.* This is because the risks involved in providing primary coverage are different from those involved in issuing an excess policy. *Reliance National Indemnity Company v. General Star Indemnity Company,* 72 Cal.App.4th 1063, 1078 (1999) Primary insurers "calculate[] and accept[] premiums with knowledge that they might be called upon to satisfy a full

5

judgment ... By contrast, an excess insurer does not accept premiums with the full knowledge that it will be called upon to satisfy a full judgment." *Id.*; s*ee also Padilla Construction Co., Inc. v. Transportation Ins. Co.,* 150 Cal.App.4th 984, 989 (2007) ("Reasonable insureds don't expect to receive a defense from a typically much cheaper excess policy unless all the expensive primary insurance they bought has been exhausted.").

Gerling does concede, however, that the actual language of the Great American policies controls the issue of whether the Great American excess policies fall within some narrow exception to the horizontal exhaustion rule. Gerling also concedes that the duty to defend and the duty to indemnify are two separate obligations that must be analyzed independently. As shown in detail below, the Great American policies plainly state that there is no obligation to defend or indemnify until all applicable primary policies are exhausted.

### C. The Great American Policies' Defense Provision Plainly States That Great American Has No Duty to Defend Until All Primary Policies Have Been Exhausted by the Payment of Claims.

Gerling admits that it had a duty to defend the insured but seeks a ruling that Great American was obligated to contribute to defense costs Gerling paid before the Gerling primary policy was exhausted. To determine whether Great American had a duty to defend, the Court should examine the specific section of the policies governing defense obligations, not the inapplicable "Retained Limits" provision relied on by Gerling.

#### 1. The Great American Policies' Defense Provision Requires Horizontal Exhaustion Before There Is a Duty to Defend.

The Great American defense provision states:

> **III. DEFENSE**
>
> A. We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy **when:**
>
> 1. the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance **and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted** by actual payment of "claims" for any "occurrence" to which this policy applies; or ...

(Emphasis added.) (*See* Declaration of Frank Curci filed with Great American's Motion to Dismiss ("Curci Decl."). Ex A, Page 10 of 44).

Gerling does not cite a single case that holds this plain and unambiguous language should not be applied. In fact, in *Travelers Casualty and Surety Co. v. Transcontinental Insurance Co.*, 122 Cal.App.4th 949, 956 (2004), a case cited extensively by Gerling, the California Court of Appeal looked at this same type of defense provision and found that it required all primary insurance to be exhausted before there was a duty to defend. In the *Travelers* case, the excess policy at issue afforded two different types of coverage: Coverage A and Coverage B. With respect to defense, the policy stated that there would be a duty to defend under Coverage A when the "applicable limit of 'underlying insurance' has been exhausted by payment of claims." In contrast, Coverage B contained a defense provision similar to the one contained in the Great American excess policies. The Coverage B provision stated that there would be a duty to defend under Coverage B when "no underlying insurance or other insurance applies." The *Travelers* court noted that the policy made a clear distinction between Coverage A and Coverage B, as coverage under Coverage B required the exhaustion of all other coverage, while Coverage A did not. The Court expressly contrasted the defense provision of Coverage A with the defense provision Coverage B and found that Coverage B required that all primary insurance be exhausted before the defense obligation was triggered. *Travelers v. Transcontinental*, supra, 122 Cal.App.4th 949, 956. The Court said:

> While the duty to defend claims covered under Coverage A is expressly triggered 'when the applicable limit of underlying insurance has been exhausted by the payment of claims,' the duty to defend under Coverage B arises when neither underlying insurance nor 'other insurance applies.' The unmistakable implication of this contrast is that the duty to defend under Coverage B depends upon the absence of 'other insurance,' while the duty to defend under Coverage A does not.

*Id.*

Thus, the *Travelers* court found that while there was a duty to defend under Coverage A (which was the type of Coverage that both parties conceded applied to the claims at issue in that case) when the directly underlying policy was exhausted, there would be no duty to defend under

7

1  Coverage B (the defense provision like the one contained in the Great American policies) until all
2  applicable primary insurance was exhausted.
3      Here, the Great American defense provision is also bolstered by the "Other Insurance"
4  condition contained in the policy. The "Other Insurance" condition provides: "**If other**
5  **insurance applies to a loss that is also covered by this policy, this policy will apply excess of**
6  **the other insurance....**" (Emphasis added) (Curci Decl. Ex A, Page 20 of 44)   The California
7  Court of Appeal, recently held, in *Padilla Construction Co., Inc. v. Transportation Ins. Co.*, 150
8  Cal.App.4th 984 (2007), that this type of other insurance clause read in conjunction with the
9  defense provision confirms the application of the horizontal exhaustion rule in a case involving the
10  duty to defend. *Id.* at 1000.

11      **2.    Gerling's Public Policy and Equity Arguments Are Invalid and Do Not
12             Trump Great American's Policy Language.**

13      Gerling does not argue, because it cannot, that the Great American defense provision does
14  not require the exhaustion of all primary insurance before there is a duty to defend. Instead, it
15  argues that the provision should not be applied because it is "void against public policy" and that
16  "equity requires the excess carriers to contribute to defense costs." Both of these arguments fail.
17      Gerling's "public policy" argument is based on the unfounded assertion that the Great
18  American excess policies should be treated as "primary policies on the same level as Gerling's
19  policy." (Op. at pg. 18:3-4) Gerling then relies on the authority of *USF Insurance Co. v.
20  Clarendon America Insurance Company*, 452 F.Supp.2d 972 (C.D.Cal. 2006), a case involving
21  three *primary* insurers with conflicting other insurance clauses for its public policy argument. The
22  *USF* case is completely inapplicable to the facts here. In *USF*, the dispute was between three
23  insurers who issued primary policies to the same insured, containing the identical defense
24  provision, which stated: "Our duty to defend is excess over and shall not contribute where the
25  insured has any other insurance under which, but for the existence of this Policy, an other insurer
26  is obligated to provide a defense." *Id.* at 999. The Court found that because it was not possible to
27  apply the provision in all three primary policies and still provide a defense to the insured, the
28  proper course was "to ignore the excess defense clauses and equitably apportion defense costs

among the three insurers." *Id.* at 1002. Here, the same issues do not exist. Gerling is a primary insurer that admits it was obligated to provide a complete defense to the insured, whereas Great American issued excess policies which specifically state that their defense obligation arises only when all other insurance has been exhausted.

Gerling's "equity" argument also fails. Gerling argues that it is not equitable that it had to defend the insured until its policy was exhausted, without contribution, because its policy was in effect for two months. (Op. at pg. 19) As one of the cases cited by Gerling, *Carmel Development Company v. RLI Insurance Company*, 126 Cal.App.4th 502, 512 (2005), explains, equity arguments do not apply in disputes between insurers under the circumstances here. The Court said, "[e]quity should not be employed to override the terms of the insurance policies in this case. ... Because the policy terms, as they apply in this case, do not conflict or offend public policy and do not infringe on any rights of the insured, there is no reason to disregard the express terms of both policies." *Id.* citing *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.*, 110 Cal.App.4th 710, 727 (2003) and *Community Redevelopment, supra*, 50 Cal.App.4th at 338-340. Further, the cases cited by Gerling to support its equity argument, *Aetna Casualty & Surety Co. v. Certain Underwriters at Lloyd's of London*, 56 Cal.App.3d 791 (1976) and *Signal Companies v. Harbor Insurance Company*, 27 Cal.3d 359 (1985), are factually distinguishable and do not hold that express policy language can be disregarded. To the contrary, in both cases the Court examined the excess policy language to determine the obligations of the excess insurers. *See Aetna Casualty*, 56 Cal.App.3d at 800 and *Signal Companies*, 27 Cal.3d at 368. As a primary insurer, Gerling knew that it would be obligated to defend and indemnify the insured up to its full policy limit when its policy was triggered. This is not unfair. It is nothing more than what is required under its policy and California law. The excess insurers are not required to contribute to the defense of the insured merely because Gerling made its own business decision to issue a policy in effect for two months.[2]

---

[2] Further, as explained in Great American's opening brief, "there is no contribution between a primary and an excess carrier." *See Reliance National Indemnity Company v. General Star Indemnity Company, supra*, 72 Cal. App. 4th 1063, 1078. As one court explained, "[t]he doctrine of equitable contribution applies to insurers who share the same level of obligation on the same risk as to the same insured. As a general rule, there is no contribution between primary and excess carriers absent a specific agreement to the contrary." *Fireman's Fund Insurance Company v. Maryland Casualty Company*, 65 Cal. App. 4th 1279, 1294, fn. 4 (1998).

In summary, the defense provision in the Great American excess policies plainly state that all underlying insurance and any other applicable insurance must be exhausted before the excess policies are obligated to defend. Great American's policy language is consistent with California's horizontal exhaustion rule and should be enforced.

### D. The Great American Policies' "Insuring Agreement" and "Other Insurance" Condition Plainly Require Application of the Horizontal Exhaustion Rule for Indemnity.

The Great American "Insuring Agreement" and "Other Insurance" condition require horizontal exhaustion of all primary policies before the duty to indemnify is triggered. Section I of the Insuring Agreement, "Coverage," states that, "[t]he amount we will pay for damages is limited as described below in the Insuring Agreement Section **II. Limits of Insurance**." (Emphasis in original) (*See* Curci Decl. Ex A, Page 9 of 44). The "Limits of Insurance" section expressly states that Great American's obligation to provide coverage is "**subject to the terms and conditions of this policy**." (Emphasis added) (Curci Decl. Ex A, Page 10 of 44). Further, the "Other Insurance" condition plainly states, "**If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance**...." (Emphasis added) (Curci Decl. Ex A, Page 20 of 44) Thus, it is plain from the Insuring Agreement provisions that Great American's obligation to provide coverage is limited by the "Other Insurance" condition, which states that the policy is excess of other insurance, such as Gerling's primary policy.

Gerling attempts to argue that the "horizontal exhaustion" rule does not apply to Great American's indemnity obligation by contending that *Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co., supra*, 122 Cal.App.4th 949 stands for the proposition that an "other insurance" provision is not relevant to "excess policy's point of attachment." (See Op. pg. 12) For a myriad of reasons, *Travelers* does not support Gerling's position.

First, *Travelers* did not address the situation where, as here, an insurer is seeking contribution for a *continuing loss* through *successive* policy periods. Rather, the *Travelers* case involved policies that overlapped the same policy period – the insured developer's own policies

///

10

provided coverage in the *same period* for the same damage as policies issued to subcontractors that identified the developer as an additional insured.[3]

Second, *Travelers* involved the duty to *defend* only. It is axiomatic that the duty to defend is broader than the duty to indemnify. *Certain Underwriters at Lloyds of London v. Sup.Ct. (Powerine Oil Co., Inc.)* 24 Cal.4th 945, 958 (2001). The duty to indemnify requires payment of money while the duty to defend "entails the rendering of a service, viz., the mounting and funding of a defense." *Id.* at 958. The duty to indemnify arises only after damages are fixed in amount (e.g., by a settlement or judgment), but the duty to defend arises when a potentially covered claim is tendered to the insurer. Notably, Gerling *does not cite a single case* in which an excess policy was found to have a duty to drop down and indemnify when there was no duty to defend, let alone one where all other applicable primary insurance had not exhausted.

Third, the *Travelers* court itself recognized the distinction between the duty to defend (at issue in the case before it) and the duty to indemnify (which was not at issue). See *Travelers*, 122 Cal.App.4th at 957. The court noted that while the "other insurance" clause contained in the excess policy at issue did not constitute a condition to the insurer's duty to defend, it *did* constitute a condition to the insurer's duty to indemnify; the "other insurance" clause was a "condition to *payment of claims*," and "expressly condition[ed] the obligation to make 'any payments.'" *Id.* at 956, 957. The court explained that if the duty to indemnify – i.e., the obligation to make a payment for a loss – were at issue rather than the duty to defend, the "other insurance" clause would require the primary policy to pay first. *Id.* at 957.

Finally, in *Travelers*, it does not appear that the Insuring Agreement specifically referenced the conditions of the policy. Here, the Insuring Agreement plainly states that coverage is limited by the "Limits of Insurance" section which expressly states that Great American's obligation is "subject to the terms and conditions of this policy." Thus, the "Other Insurance" condition is

---

[3] *Carmel Development Co. v. RLI Ins. Co.*, *supra*, 126 Cal.App.4th 502, a case which Gerling also cites in support of its position presents this same factual situation: *overlapping* policies issued to two different entities, with the first entity listed as an additional insured on the second entity's policies. *Carmel* does not discuss the issue of horizontal exhaustion of primary policies in any fashion. The discussion is limited to the *order* in which two potential excess policies must respond to contribute to the loss.

11

specifically incorporated into the Insuring Agreement. This is a significant distinction because in *Community Redevelopment*, Justice Croskey specifically identified the "other insurance" condition, which was not materially different from Great American's, and found that the "policy language, particularly when read in the context of the entire policy is certainly unambiguous" and reinforces horizontal exhaustion. *Community Redevelopment, supra*, 50 Cal.App.4th at 335, 338; *see also Padilla Construction Co., Inc. v. Transportation Ins. Co., supra*, 150 Cal.App.4th 984.

Thus, the limited holding of *Travelers* simply does not apply when the duty to *indemnify* for a continuing loss over successive policy periods is at issue.

Gerling also argues that the "Retained Limit" provision in Great American's policies can be interpreted to mean that the Great American policies are "specific excess" to the policies directly underlying them. This interpretation is not reasonable because it requires that the Court ignore the "Other Insurance" and "Limit of Liability" provisions. This is contrary to California law because, as explained above, both *Community Redevelopment* and *Padilla* found that the "other insurance" provisions in the excess policies at issue controlled when they were obligated to pay and required horizontal exhaustion. In addition, under California rules of contract interpretation, the Great American Policies must be read in their entirety and the terms must be read in context. *See London Market Insurers v. Superior Court ("LMI")*, 146 Cal.App.4th 648, 663 (2007), citing *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 847, 868 (1998). These rules require that the Court give effect to all policy provisions. But even if the Court were to find that the Great American policies are excess to specifically defined policies, it should nonetheless find that horizontal exhaustion is required.

Indeed, California courts have adhered to the distinctions between primary and excess policies in requiring the exhaustion of all applicable primary insurance even when an excess insurer's policy is "specific excess" to a particular primary policy. *Olympic, supra*, 126 Cal.App.3d at 600. In *Olympic*, an excess policy issued by Employers was "specific excess" to a Pacific Indemnity primary policy with $20,000 in limits. Another primary policy, issued by INA, had $1 million limits. The insured's liability for a loss resulting from an airplane crash was $495,000, which the trial court prorated among INA, Pacific Indemnity and Employers.

1  Employers challenged this result, asserting that both primary policies had to exhaust before its
2  policy was required to pay. The appellate court agreed, finding that all primary insurance had to
3  exhaust before "liability attache[d]" to the excess insurer:

> A secondary [*i.e.* excess] policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary [*i.e.*, excess] policy.

7  *Id.* at 600 (emphasis added). The court explained that because INA had not exhausted, Employers,
8  as an excess insurer, had no duty to indemnify the insured, *regardless of the fact that the*
9  *Employers policy was identified as specifically excess to a different policy. Id.* at 601; see also
10 *Signal Cos. v. Harbor Ins. Co.,* 27 Cal.3d 359, 367-371 (1980).

11      California law is clear: where, as here, an underlying construction defect action involves a
12 continuing loss over multiple policy periods, all primary insurance must exhaust by payment of
13 covered claims before an excess insurer has any obligation to indemnify. Pursuant to this
14 "horizontal-exhaustion" rule, Great American had no obligation to indemnify the insured before
15 the Gerling primary policy was exhausted.

16      E.   **Gerling's Argument That "Other Insurance" Conditions Are only Relevant in Disputes Between Insurers on the Same Level Is Invalid and Mischaracterizes California Case Law.**

18      Gerling argues that "other insurance provisions do not control when an excess policy
19 attaches, but rather would come into play with regard to Gerling only after the excess policy
20 dropped down to the primary layer." (Op. at pgs. 12-13) This argument conflicts with *Community*
21 *Redevelopment, Padilla,* and even *20th Century Insurance Company v. Liberty Mutual,* 965 F.2d
22 747 (9th Cir. 1992), cited by Gerling, all of which analyzed the excess policies' "other insurance"
23 provision for purposes of determining when the excess policy must pay. This argument also
24 conflicts with *Travelers Casualty and Surety Co. v. Transcontinental Insurance Co., supra,* 122
25 Cal.App.4th 949, which, as discussed above, held that an "other insurance" provision was relevant
26 to the issue of when the indemnity obligation of an excess insurer arises, but in that case, not
27 when defense applies.
28 ///

Gerling's argument is also based on a mischaracterization of cases such as *Reliance National Indemnity Co v. General Star Indemnity, supra*, 72 Cal.App.4th 1063, which Gerling cites for the proposition that "an other insurance clause dispute cannot arise between an excess and primary carriers as they are not on the same level."[4] *Reliance*, and the other cases cited by Gerling for this point, in fact, recognize the distinction between primary and excess insurers and acknowledge that horizontal exhaustion of all primary policies is required. The cases point out that there cannot be an "other insurance" clause conflict between excess and primary policies because they provide different levels of coverage. These cases do not hold, as Gerling suggests, that the "other insurance" provision is not relevant to the issue the excess insurance policies attachment point. In fact, in *Reliance*, the Court examined the excess policy's "other insurance" provision to determine that "under the express terms of its insurance policy, General Star's coverage was excess." 72 Cal.App.4th at 1075.

Gerling's argument that its policy's "other insurance" clause must also be analyzed is a red herring. This is not an "other insurance" clause dispute between two primary insurers and thus, Gerling's policy provisions have no relevance to the issue of when Great American's excess policies must pay. The coverage afforded under Great American's excess policies is controlled by Great American's own policy wording and California's horizontal exhaustion rule. The terms of Gerling's primary policy are irrelevant. Again, Gerling is attempting to blur the distinction between Great American's excess policies and its own primary policy.[5] Gerling's argument that the Great American policies should be treated as primary policies has no merit. It is plain from the

---

[4] Gerling also cites *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079 (2002) and *Travelers Casualty & Surety Company v. American Equity Insurance Company*, 93 Cal.App.4th 1142 (2001) for this same point and they are distinguishable on the same grounds as the *Reliance* case.

[5] Gerling's other arguments are also inapplicable. For example, Gerling argues that it can seek contribution from Great American under the "tenents of *Buss v. Superior Court*, 16 Cal.4th 35 (1997)," but the contribution contemplated by *Buss* comes into play only when both insurers have a duty to defend. Here, Great American does not have a duty to defend until all primary insurance is exhausted so *Buss* does not apply. For this reason, Gerling's suggestion that there is a factual issue as to whether any of the damages first arose during Great American's policies is a red herring. It does not matter when the damage first occurred because Great American had no obligation to defend, and Gerling does not dispute that it had a duty to defend the entire underlying lawsuits.

face of the Great American excess policies that they are excess policies that provide coverage only when all primary insurance is exhausted.

### III. CONCLUSION

For the foregoing reasons, Great American respectfully requests that Gerling's Complaint against it be dismissed pursuant to Rule 12(b)(6), without leave to amend, because California law and the applicable Great American policy language is clear that the Great American excess policies have no duty to defend or indemnify until all primary insurance is exhausted, and Gerling acknowledges that its primary policy was not exhausted during the relevant periods of time at issue.

Dated: June 25, 2008

**DUANE MORRIS** LLP

By: /s/ Robert M. Fineman
Peter J. Whalen
Robert M. Fineman
Terrance J. Evans
Attorneys for Defendant,
Great American E&S Insurance Company, an Ohio Corporation, fka Agricultural Excess and Surplus Insurance Company