UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HDI-GERLING AMERICA INSURANCE COMPANY,

        Plaintiff(s),

    v.

HOMESTEAD INSURANCE COMPANY, et al.,

        Defendant(s).

_____/

No. C 08-1716 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Defendants' motions to dismiss were heard on July 9, 2008. Homestead Insurance Company ("Homestead") appeared by its counsel Howard Wollitz and Great American E&S Insurance Company ("Great American") appeared by its counsel Robert Fineman. Plaintiff HDI Gerling America Insurance Company ("Gerling") appeared by its counsel Richard Eggerth and Christine Fierro.

## BACKGROUND

Gerling brought this action for declaratory relief and contribution against Homestead and Great American. The action arises out of two underlying construction defect cases against Jonce Thomas Construction Company ("Jonce"), *Emery Bay II Associates v. Devcon Construction Incorporated, et al.* ("*Emery Bay*") and *Chartwell HOA, et al. v. 44 Third Street, Ltd. LP, et al.* ("*Chartwell*"). Gerling issued a primary general liability insurance policy to Jonce in effect from June 30, 1995 to September 9, 1995. Homestead issued four excess policies to Jonce together covering the period June 30, 1994 to June 30, 1998. Gerling alleges that the Homestead policy was excess to primary policies issued by United National, AIG, and American Equity. Great American issued four excess policies

1  to Jonce together covering the period June 30, 1998 to February 6, 2001.  Gerling alleges
2  that the Great American policies were excess to primary policies issued by Newmarket
3  Underwriting Insurance Company and Lloyds of London.

4  Gerling defended Jonce in both the *Chartwell* and the *Emery Bay* actions.  Gerling
5  requested that defendants contribute to the defense of both actions, but both insurers
6  refused, maintaining that their policies were excess to Gerling's and therefore were not
7  triggered until exhaustion of Gerling's policy limit.  Gerling paid $425,000 to settle the
8  *Chartwell* action and $302,842 to settle the *Emery Bay* action.  Gerling's policy limits were
9  exhausted upon settlement of the *Emery Bay* action.  Defendants each contributed a
10 portion of their excess policy limits to the *Emery Bay* action because Gerling's limit was
11 exhausted by its contribution to that settlement.  Gerling contends that defendants had a
12 duty to defend and indemnify Jonce in both the *Chartwell* and *Emery Bay* actions.

13 Defendants have moved to dismiss under Fed. R. Civ. Pro. 12(b)(6), arguing that
14 they had no duty to defend or indemnify Jonce until Gerling's policy limit was exhausted
15 because their policies were excess to Gerling's.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests."  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)).  All allegations of material fact

1  are taken as true. Erickson, 127 S.Ct. at 2200.  However, a plaintiff's obligation to provide
2  the grounds of his entitlement to relief "requires more than labels and conclusions, and a
3  formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S.Ct.
4  at 1964-65 (citations and quotations omitted).  Rather, the allegations in the complaint
5  "must be enough to raise a right to relief above the speculative level." Id. at 1965.  A
6  motion to dismiss should be granted if the complaint does not proffer enough facts to state
7  a claim for relief that is plausible on its face. See id. at 1966-67.

8  Generally, the court may not consider any material beyond the pleadings when
9  ruling on a 12(b)(6) motion. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled
10 on other grounds.  When evidence outside the pleadings is presented to the court, the
11 motion is generally treated as one for summary judgment and all parties should be given an
12 opportunity to present pertinent material under Rule 56. Id.  The court may consider a
13 document "outside" the complaint, however, if the complaint specifically refers to the
14 document and neither party questions its authenticity. Id.  "Such consideration does not
15 convert the motion to dismiss to a motion for summary judgment." Id. at 454 (internal
16 quotations and citation omitted).

17 **B.     The Defendants' Motions**

18 Although Gerling did not attach any of defendants' policies to its complaint,
19 defendants have submitted the policies in support of these motions.  And although Gerling
20 purports to question the authenticity of defendants' policies, the court finds such objection
21 inherently unreasonable and without justification given that Gerling quotes extensively from
22 those very policies in both its complaint and its opposition brief. See United States v.
23 Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a
24 complaint, it may be incorporated by reference into a complaint if the plaintiff refers
25 extensively to the document or the document forms the basis of the plaintiff's claim.").
26 Thus the court considers defendants' policies in ruling on these motions.

3

The positions advanced by defendants, though not identical, are similar. Generally, defendants argue that they are entitled to dismissal because their policies were excess to Gerling's and therefore did not obligate them to defend or indemnify Jonce until Gerling's policy was exhausted. Great American contends that its duty to defend was not triggered until, by its policy's express terms, "the Limits of Insurance of any other insurance providing coverage to the 'Insured' have been exhausted . . . ." Homestead similarly argues that, by its policy's express terms, it had "no duty to defend any claim or suit that any other insurer has a duty to defend." Defendants also argue that although the indemnity provisions of their policies provide that coverage is excess only to scheduled policies, the "other insurance" provisions of their policies are sufficient to overcome that language and require exhaustion of all primary policies, scheduled and unscheduled, before any duty to indemnify is triggered.

Gerling responds that defendants' "other insurance" provisions are insufficient to overcome their promises to indemnify the insured upon exhaustion of the scheduled insurance. Gerling contends that California courts have previously rejected such arguments, holding that provisions that take away or limit coverage must be "conspicuous, plain and clear." Gerling also argues that the defense provisions in defendants' policies are invalid and void as against public policy. Gerling further argues that because both Homestead and Great American paid a portion of the settlement in the *Emery Bay* action, defendants had a duty to pay a proportionate share of the defense costs in that case as well.

Defendants reply that there is a strong presumption under California law that excess coverage is not triggered until exhaustion of all underlying insurance. Regarding its duty to indemnify, Great American distinguishes a case relied on by Gerling, Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co., 122 Cal. App. 4th 949 (2004), on the grounds that Travelers only addressed the duty to defend, not the duty to indemnify. Defendants also

4

argue that they have no duty to contribute to the defense costs in the *Emery Bay* action because all of Gerling's defense costs were incurred prior to exhaustion of its policy limits.

As a threshold matter, Great American argues that Gerling's claim must fail because California law bars contribution between primary and excess carriers. The court disagrees, however, given the numerous cases providing reimbursement to primary carriers when excess carriers wrongfully refuse to contribute to the defense or indemnification of the insured upon exhaustion of the primary insurance. See, e.g., Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyds of London, 56 Cal. App. 3d 791 (1976) (primary carrier had right to reimbursement for defense costs incurred after limit of primary policy was exhausted); Travelers Cas. and Sur. Co. v. Transcontinental Ins. Co., 122 Cal. App. 4th 949 (2004) (excess carrier's defense obligation was triggered upon exhaustion of primary carrier's policy limits).

Indeed, the cases upon which Great American relies do not support its position. In Reliance Nat'l Indemnity Co. v. General Star Indemnity Co., 72 Cal. App. 4th 1063, 1082 (1999), the court simply held that an indemnification agreement between two insureds could not alter the relationship between the primary and excess insurers; the excess policy remained excess to the primary policy despite an indemnification agreement requiring the insured under the excess policy to indemnify the insured under the primary policy. The court in Reliance National and in Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1294 n. 4 (1998), also relied on by Great American, did hold that "[a]s a general rule, there is no contribution between primary and excess carriers of the same insured absent a specific agreement to the contrary." The court in Fireman's Fund went on to explain, however, that "[c]ourts in equitable contribution cases have generally heeded primary/excess provisions in insurance contracts, as long as the rights of the policyholder are not adversely affected." Id. Read in context, the court simply appears to be making the unremarkable point that an excess insurer will not be required to contribute to the primary carrier's defense and indemnity of the insured until the primary limit is exhausted, not that a

5

primary carrier may never recover from an excess insurer even where the excess carrier has wrongfully refused to contribute upon exhaustion of the primary limit.

### 1. Horizontal Exhaustion

The main issue raised by these motions is whether defendants' policies were excess to Gerling's and therefore not triggered until exhaustion of Gerling's policy limit. The issue is controlled by the "horizontal exhaustion" rule, which was thoroughly explained in the leading case Comty. Redevelopment Agency of the City of Los Angeles v. Aetna Cas. and Sur. Co., 50 Cal. App. 4th 329 (1996). In Community Redevelopment, a group of developers were sued for construction defects in at least 27 separate lawsuits. Id. at 336. The developers were covered by a primary insurance policy issued by State Farm with a limit of $1 million. The developers were also covered by another primary insurance policy issued by United, also with a limit of $1 million. The developers were also covered by an excess policy issued by Scottsdale with a limit of $5 million. The Scottsdale policy was specifically excess to the State Farm policy. State Farm negotiated a settlement of some of the claims, to which it contributed the $1 million limit of its primary policy. United then demanded that Scottsdale "drop down" and contribute to the defense of the remaining claims. Scottsdale refused, arguing that it had no duty to drop down until exhaustion of all primary insurance, including the United policies. Id.

The Court of Appeal agreed with Scottsdale, relying on language in Scottsdale's policy which stated that it was excess to "underlying insurance listed in the Schedule of Underlying Insurance (Schedule A), *plus the applicable limits of any other underlying insurance collectible by the insured.*" Id. at 335 (emphasis in original). The policy also provided that Scottsdale would have no duty to defend the insured unless "no other insurance affording a defense or indemnity against such suit is available to the insured." Id. Finally, the policy's "other insurance" clause provided that the policy "shall be excess insurance over any other valid and collectible insurance available to the insured, whether or not described in the Schedule of Underlying Insurance." Id.

The court held that an excess carrier generally "does not cover a loss, nor does any duty to defend the insured arise, until all of the primary insurance has been exhausted." Id. at 339. The presumption of horizontal exhaustion may be overcome, however, by policy language "specifically describing and limiting the underlying insurance." Id. at 340. "If an excess policy states that it is excess over a specifically described policy and will cover a claim when that specific primary policy is exhausted, such language is sufficiently clear to overcome the usual presumption that all primary coverage must be exhausted." Id. n. 6. The Scottsdale policy did not limit its coverage to the excess over the State Farm policy, but instead expressly extended it to "the applicable limits of any other underlying insurance collectible by the insured." Id. at 341.

The question whether horizontal exhaustion applies in this case thus requires examination of each defendant's policies. Although each defendant insured Jonce under multiple policies covering consecutive policy periods, the relevant language is identical in each policy. Because the policies distinguish between the duty to defend and the duty to indemnify, the following discussion addresses each duty separately.

### 2. Duty to Defend

**Great American**. Great American's duty to defend is described in the Insuring Agreements of its policy as follows:

> A. We will have the right and duty to investigate any "claim" and defend any "suit seeking damages covered by the terms and conditions of this policy when:
>
> 1. the applicable Limits of Insurance of the underlying policies listed in the schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment if "claims" for any "occurrence" to which this policy applies; or
>
> 2. damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

Thus, the policy plainly requires exhaustion of scheduled insurance and "any other insurance providing coverage to the 'Insured' . . . ." Accordingly, Great American's duty to

defend was not triggered until exhaustion of <u>all</u> underlying primary insurance, including Gerling's. As in Community Redevelopment, the Great American policy also contains an "other insurance" clause that reinforces this interpretation of the insuring agreement which provides: "If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance."

Gerling nonetheless argues that Great American had a duty to drop down and contribute to defense costs upon exhaustion of only the scheduled insurance. The case on which Gerling relies, however, does not support this argument. In USF Ins. Co. v. Clarendon America Ins. Co., 452 F. Supp. 2d 972 (C.D. Cal. 2006), the policies of two primary carriers covering the same insured both contained "other insurance" clauses making them excess to other insurance. The court held that the clauses were mutually irreconcilable and therefore against public policy. Id. at 1002. Following California law, the court held that "'[w]here two or more primary insurers' policies contain 'other insurance' clauses purporting to be excess to each other, the conflicting clauses will be ignored and the loss prorated among the insurers on the ground the insured would otherwise be deprived of protection.'" Id. at 1101 (quoting Fireman's Fund, 65 Cal. App. 4th at 1304).

USF plainly does not support the proposition that an "other insurance" clause is void as against public policy under all circumstances. Even if the "other insurance" section of Great American's policy were ignored, the insuring agreement makes clear that Great American's duty to defend is triggered only upon exhaustion of all scheduled and unscheduled primary insurance. Accordingly, Great American had no duty to drop down and defend Jonce in the underlying actions until Gerling's policy limit was exhausted.

**Homestead.** The "Defense Settlements" section of Homestead's policy provides:
> We will have no duty to defend any claim or suit that any other insurer has a duty to defend. If we elect to join in the defense of such claims or suits, we will pay all expenses we incur. You shall give us the opportunity to associate with you or the underlying insurers or both in the defense and control of any claims, suits or proceedings which involve or appear likely to involve this insurance. You and your Insurers shall cooperate with us in the defense of such claim, suit or proceeding.

Based on this language, Homestead plainly agreed to defend Jonce only if no other insurer had a duty to defend. Homestead therefore had no duty to contribute to Gerling's defense of Jonce at least until Gerling's policy limit was exhausted. See <u>Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyds of London</u>, 56 Cal. App. 3d 791, 804 (1976) (primary carrier had no duty to defend after exhaustion of primary policy without a right of reimbursement from excess carriers).

As discussed above, Gerling makes no persuasive arguments as to why the plain language of defendants' defense provisions should not control. In both instances, defendants promised to defend Jonce only upon exhaustion of all scheduled and unscheduled primary insurance. Accordingly, the horizontal exhaustion rule applies to the duty to defend under both the Great American and the Homestead policies.

### 3. Duty to Indemnify

**Great American**. Great American's policy defines its duty to indemnify as follows:

> We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes places during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the Insuring Agreement Section II. LIMITS OF INSURANCE.

The "Limits of Insurance" section includes a sub-section titled "Retained Limit" that provides:

> We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:
>
> 1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or
>
> 2. the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period . . .

9

Great American's duty to indemnify is therefore triggered upon exhaustion of scheduled policies and other insurance providing coverage to Jonce during the Policy Period. Gerling alleges that its policy period ended three years prior to the first Great American policy, and therefore did not provide coverage to Jonce during Great American's policy period. The plain language of Great American's policy therefore supports Gerling's argument that Great American had a duty to drop down and provide coverage to Jonce upon exhaustion of the policies listed in the Schedule of Underlying insurance.

Great American argues that the "retained limit" language is insufficient to overcome the presumption of horizontal exhaustion because coverage is subject to the "limits of insurance" section, which in turn provides that coverage is subject to "the terms and conditions of this policy." The "Conditions" section of the policy contains an "other insurance" section (quoted above) that makes Great American's coverage excess to all other insurance. This exact argument has been rejected by at least two California courts.

In Travelers Cas. and Sur. Co. v. Transcontinental Ins. Co., 122 Cal. App. 4th 949, 956 (2004), the excess carrier's duty to defend was triggered upon exhaustion of only scheduled insurance. The insurer argued, however, that the policy's "other insurance" provision was a condition precedent to its duty to defend and that horizontal exhaustion therefore applied. Id. The court rejected this argument, reasoning first that the "other insurance" provision conditioned the carrier's obligation to "make payments" once coverage attached, but it did not condition either the existence of coverage or the duty to defend. Id. at 957. The court also pointed out that the location of the "other insurance" section within the "Conditions" section, which set forth "rights, obligations and interpretive aids 'applicable to' coverage under the policy" further suggested that the "other insurance" provision was not a condition to the existence of coverage. Id. Finally, the court held that the carrier's interpretation was "contrary to the rule that insurance provisions that take away or limit coverage must be conspicuous, plain and clear." Id. at 958. Rather than place the exclusionary language in the "Insuring Agreements," "Defense and Supplementary

10

Payments," or "Exclusions" sections, the carrier had placed its "other insurance" clause "among boilerplate provisions such as those requiring written endorsement to change the terms of the policy and providing that the stated premium 'is a flat premium.'" This was insufficient to overcome the plain language of the insuring agreement: "If Federal intended to have coverage be dependent upon the exhaustion of 'other insurance,' it was required to make such an exclusionary clause conspicuous, plain, and clear." Id. The court distinguished Community Redevelopment, holding that the language of the insuring agreement was "'sufficiently clear to overcome the usual presumption that all primary coverage must be exhausted.'" (quoting Community Redevelopment, 50 Cal. App. 4th at 340 n.6).

The Court of Appeal reached a similar conclusion in Carmel Development Co. v. RLI Ins. Co., 126 Cal. App. 4th 502 (2005). There, a policy was excess to a specific primary policy, but the excess carrier argued that its "other insurance" clause made its coverage excess to all other insurance. Id. at 511. The court rejected this argument, reasoning that the excess carrier "did not clearly and unequivocally inform the insured that it was excess over all other insurance, primary and excess, but buried its limitation on the second to the last page in a generally worded 'other insurance' clause, a condition generally accorded judicial disfavor." Id.

These cases suggest that where a carrier promises in the insuring agreements to make its coverage excess to a specific policy or policies, an "other insurance" clause contained within the policy's "conditions" section does not defeat the applicability of the general presumption. Although the court in Community Redevelopment considered the policy's "other insurance" clause, it viewed the clause as reinforcing the language of the insuring agreement, which itself expressly made coverage excess to all underlying insurance. Great American expressly agreed to provide coverage in excess of the retained limit, which is defined as the limits of insurance listed on the Schedule of Underlying Insurance and any other policy providing coverage during the policy period. Great

1  American's argument that its "other insurance" clause overcomes this promise is
2  unpersuasive.

3      <u>Homestead</u>.  Coverage A of Homestead's policy provides:

> We will pay those sums that the Insured must legally pay as damages because of bodily injury, property damage, personal injury, or advertising injury, caused by an occurrence which occurs during the policy period of this policy in excess of the sums payable as damages in the underlying insurance or would have been payable but for the exhaustion of the applicable limit of insurance

8      "Underlying insurance" is defined as the insurance policies listed in Schedule
9  A—Schedule of Underlying Insurance Policies, including any renewals or replacements
10 thereof which provide the underlying coverages and limits stated in Schedule
11 A—Schedule of Underlying Insurance Policies."

12     The plain language of Homestead's policy therefore makes its indemnity coverage
13 excess only to the specific policies listed in the Schedule of Underlying Insurance Policies.
14 Homestead nonetheless argues that the horizontal exhaustion rule applies, relying on
15 <u>Community Redevelopment</u> for its argument that "[i]t is not enough to defeat the
16 presumption that all primary coverage must be exhausted simply to point to a provision that
17 the subject excess policy is excess over a specifically described policy."  Homestead
18 argues that <u>Community Redevelopment</u> applied the horizontal exhaustion rule even though
19 the excess carrier's coverage was excess to a specific policy.

20     Homestead's argument mischaracterizes the facts in <u>Community Redevelopment</u>.
21 The policy there <u>was</u> excess to a specific policy—the Scottsdale policy—but, as noted by
22 the court, it was not <u>exclusively</u> excess to that policy.  50 Cal. App. 4th at 334.  Instead,
23 coverage was excess to both the limits of the Scottsdale policy <u>and</u> "the applicable limits of
24 any other underlying insurance collectible by the insured."  <u>Id.</u> at 335.  No such language
25 appears in Homestead's policy.

26     Like Great American's, Homestead's policy contains an "other insurance" paragraph
27 in the "Conditions" section that provides:

28

> The insurance afforded by this policy shall be excess insurance over all underlying insurance covering a loss covered by this policy whether or not valid and collectible. It shall also be excess insurance over all other valid and collectible insurance not described in the Schedule A—Schedule of Underlying Insurance Policies (except other insurance purchased specifically to apply in excess of this insurance) which is available to the Insured, covering a loss also covered by this policy.

For the same reasons discussed above with respect to Great American's "other conditions" provision, the court finds this provision does not require application of the horizontal exhaustion rule. Homestead's insuring agreement plainly made coverage excess to the specific policies listed in the schedule of insurance. The "other insurance" condition is not sufficient to overcome this agreement.

### 4. Remaining Issues

There are several issues that the court does not reach at this time. First, while the court has determined that the motions to dismiss insofar as they are based on each defendant's duty to defend must be granted, given the clear language of the policies, it is not clear to the court whether the court's finding that Gerling has stated a claim with respect to defendants' duty to indemnify, precludes dismissal of the complaint in its entirety. Counsel for defendants both emphasized at the hearing the well established rule, enunciated in Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945 (2001), that where there is a duty to defend, there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify. Both suggested but did not specifically state that even if the policies provided a duty to indemnify under these circumstances, there could be no liability given the absence of a duty to defend. They also pointed out that plaintiff cited no authority in which an excess policy insurer was found to have a duty to drop down and indemnify when there was no duty to defend. The court has reviewed the parties' briefs again and has confirmed that plaintiff provided no authority that the well established principle does not apply to an excess as well as a primary insurer. However, defendants' briefs similarly did not squarely address this issue and the court is reluctant to make any findings on the record before it. Moreover, the defendants have not

explained why, if there was no duty to indemnify because there was no duty to defend, they contributed to the settlement of the *Emery Bay* action following exhaustion of Gerling's policy limits. Nor have they explained how the court should factor the contributions into the findings they are urging upon the court.

Second, Homestead argues that even if it had a duty to "drop down" to the primary layer and provide coverage to Jonce prior to exhaustion of Gerling's policy, that coverage was still excess to Gerling's policy limits under Homestead's "other insurance" provision. Homestead cites no authority in support of this position and the court finds this issue not appropriate for resolution on a motion to dismiss because the effect of Homestead's "other insurance" provision at the primary layer cannot be evaluated without reference to Gerling's policy, which is not before the court.

Third, Gerling argues that because defendants paid a portion of the settlement in the *Emery Bay* action, defendants had a duty to pay a proportionate share of the defense costs as well. It appears to the court, however, that a determination of this issue depends to some extent on whether the primary insurer's defense costs were incurred prior to the settlement of litigation and prior to exhaustion of the primary policy limits. See e.g. Aetna, 56 Cal. App. 3d at 804; Signal Companies v. Harbor Ins. Co., 27 Cal. 3d 359 (1980). As this kind of evidence is outside of the four corners of the complaint or defendants' policies, it is not appropriate for consideration on this motion. Moreover, the court is unclear on whether its finding of no duty to defend actually obviates the need for resolution of this issue.

## **CONCLUSION**

Neither defendant had a duty to defend under the clear language of their excess policies. Thus their motions to dismiss plaintiff's claims for declaratory relief and contribution, to the extent those claims are based on the duty to defend, are GRANTED, with prejudice. To the extent the claims are based on the duty of defendants to indemnify, the motions are DENIED. The parties shall set forth the status of any remaining claims in

their case management statement and be prepared to discuss scheduling of any future proceedings at the case management conference scheduled for August 7, 2008.

**IT IS SO ORDERED.**

Dated: July 11, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge